# APPENDIX A

Mayer Brown LLP
1999 K Street, N.W.
Washington, DC 20006-1101
United States of America

T: +1 202 263 3000
F: +1 202 263 3300
mayerbrown.com

## MAYER | BROWN

**Kenneth L. Wainstein**
Partner
T: +1 202-263-3050
kwainstein@mayerbrown.com

December 22, 2025

BY EMAIL

Chief Judge Cecilia M. Altonaga
Wilkie D. Ferguson, Jr. United States Courthouse
400 North Miami Avenue
Room 13-3
Miami, Florida 33128

Re:    Director John Brennan

Dear Chief Judge Altonaga:

We write this letter to Your Honor in your capacity as Chief Judge of the United States District Court for the Southern District of Florida (SDFL) on behalf of our client John Brennan, the former Director of the Central Intelligence Agency. We have been formally advised by prosecutors of the Office of the United States Attorney for the Southern District of Florida that Director Brennan is a target of grand jury investigation NS 1840-020 in the Miami Division (24-06), which is examining the circumstances surrounding the production of the 2017 Intelligence Community Assessment about Russian efforts to interfere in the 2016 presidential election in the United States.

As explained below, it has become clear that irregular activity is taking place in connection with that grand jury investigation, which is affecting our client's rights to fair and impartial treatment by the criminal justice system. One example is the violation of grand jury secrecy rules, by which information about the investigation is being leaked to the media (*see* below at pages 15-16). Another example of irregular activity – which is even more troubling and potentially harmful to our client's rights – relates to the government's apparent effort to manipulate grand jury and case assignment procedures to ensure that this investigation and any resulting prosecution will be overseen by a particular District Judge of its preference.

Given the corrosive effect of judge-shopping on the perceived fairness and impartiality of the criminal justice system – particularly when conducted by a federal prosecutor – we wish to alert the Court to the evidence underlying our concern. And, as counsel to the identified target of this investigation – who has legal standing to challenge questionable prosecutorial conduct in the handling of the investigation[1] – we request that Your Honor carefully consider this evidence and

---

[1] Fed. R. Crim. P. 6(b); *Blalock v. United States*, 844 F.2d 1546, 1548 (11th Cir. 1988) (permitting grand jury target to seek injunctive relief); *In re Grand Jury Investigation*, 610 F.2d 202, 219 (5th Cir. 1980) (recognizing that "the target of an ongoing grand jury investigation" can seek to have the grand jury dismissed, a case that is binding on the

the clear inference of prosecutorial judge-shopping as you exercise your supervisory authority over the prosecution's handling of this grand jury investigation.[2] In short, we are seeking assurance that any litigation arising out of this grand jury proceeding will be heard by a judge who is selected by the court's neutral and impartial processes, not by the prosecution's self-interested maneuvering contrary to the interests of justice.

This letter will proceed through the following lines of discussion: (I) an introduction describing the current environment in which certain federal prosecutors are increasingly overreaching as a result of overt political pressure, and in which federal courts are, therefore, more closely scrutinizing prosecutorial conduct and decision making; (II) an overview of the historical background of the ongoing grand jury investigation; (III) a description of the Justice Department's repeated efforts to forum-shop this investigation among different federal districts, including the Eastern District of Pennsylvania and the Eastern District of Virginia, before assigning it to prosecutors in this District; (IV) a description of the circumstances demonstrating that the United States Attorney in your district is also judge-shopping the matter by steering it toward a favored judge – *the only judge* – in the Fort Pierce Division; (V) a discussion of the case law that prohibits and condemns such judge-shopping, especially when conducted by the prosecution in a criminal matter; and (VI) our request that the Court scrutinize the government's conduct in the current grand jury investigation to detect and head off any prosecutorial judge-shopping that may threaten both the perceived legitimacy of this Court and the judicial system and the due process rights of our client.

I.      Introduction

We recognize that the courts have traditionally afforded the United States Attorneys and their activities in the grand jury process a presumption of regularity. *See United States v. Cannon*, 987

---

Eleventh Circuit because it predates the division of the Fifth and Eleventh circuits). *See also In re Grand Jury Investigation,* 59 F.3d 17, 19 (2d Cir. 1995) (target of grand jury investigation had standing to "invoke[] the court's supervisory powers over the grand jury"); *In re Grand Jury Proceedings*, 814 F.2d 61, 67 (1st Cir. 1987) (target had standing based on allegations of grand jury abuse); *see generally Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (summarizing three general requirements of standing).

[2] Under established precedent, the Court has supervisory authority over the troubling conduct in this matter. Courts have uniformly held that they may, and indeed on occasion must, use their supervisory authority to "safeguard the integrity of the grand jury process." *United States v. Strouse*, 286 F.3d 767, 771 (5th Cir. 2002). *United States v. DiBernardo*, 775 F.2d 1470, 1475-76 (11th Cir. 1985) (in the context of grand jury proceeding, "[f]ederal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials") *aff'd in part after remand,* 880 F.2d 1216 (11th Cir. 1989); *United States v. Butler*, 828 F. App'x 602, 606 (11th Cir. 2020) (citing *United States v. Pabian*, 704 F.2d 1533, 1536 (11th Cir. 1983)); *Carlson v. United States*, 837 F.3d 753, 762 (7th Cir. 2016) ("The inherent supervisory power of the court over the grand jury is well established."); *United States v. Williams*, 504 U.S. 36, 46-50 (1992) (recognizing courts have supervisory power to enforce or vindicate legally compelled standards of prosecutorial conduct before the grand jury).

Moreover, this District's Internal Operating Procedures clearly indicate that this supervisory authority also extends to the judge-assignment process. The procedures provide for random assignment, but importantly incorporate an exception by which the Court "whenever necessary *in the interest of justice* . . . may modify the assignments made to active or senior Judges." SDFL IOP 2.01.01(a) (emphasis added); *see also* 28 U.S.C. 137(a) ("The chief judge of the district court shall be responsible for the observance of [] rules and orders"). This supervisory authority is similarly reflected in the Code of Conduct for United States Judges, which obligates a judge to take action to preserve the integrity and independence of the judiciary (Canon 1). *Code of Conduct for United States Judges,* Guide to Judiciary Policy, Vol. 2A, Ch. 2 (2019), https://www.uscourts.gov/administration-policies/judiciary-policies/ethics-policies/code-conduct-united-states-judges#d [https://perma.cc/2U98-7V8C].

F.3d 924, 937 (11th Cir. 2021) (citing *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996)); *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J. concurring) (grand jury proceedings entitled to presumption of regularity). As such, were we in a normal time, we might hesitate to question the propriety of the government's actions in the grand jury process. However, we are no longer in a normal time.

We are now in a time when the Justice Department has surrendered much of its independence and the President is directly commanding his Attorney General and her leadership team to use their prosecutorial authorities against his perceived political adversaries.[3] That command has, in turn, been directly conveyed to line attorneys in the Justice Department, with Attorney General Bondi issuing a memorandum instructing them that the President determines the "interests . . . of the United States," that the line attorneys are to act in furtherance of those interests, and that any resistance to his direction "undermines the constitutional order and deprives the President of the benefit of *his lawyers*."[4] To reinforce that command, the President has fired Justice Department officials who balk at blindly obeying it. For example, he forced the resignation of the United States Attorney for the Eastern District of Virginia ("EDVA") and had a number of prosecutors in that district fired when they resisted his directive to bring charges against New York Attorney General Letitia James and former FBI Director James Comey that they believed could not be supported.[5] Many other prosecutors have been fired for actions seen as inconsistent with the President's political preferences.[6]

Not surprisingly, this unrelenting presidential pressure to pursue political targets without regard to the law or facts has resulted in an unprecedented spike in the incidence of irregular prosecutorial conduct, especially in relation to grand jury investigations and charging decisions relating to matters of political interest to the President.[7] In EDVA, for example, a court recently criticized the then-Interim United States Attorney for returning an indictment against James Comey that had not been fully considered and passed by the grand jury, and for giving grand jury instructions that appeared to unconstitutionally shift the burden of proof to the defense. *United States v. Comey*, -

---

[3] *See* President Trump's September 20, 2025 Truth Social post pushing Attorney General Pam Bondi to pursue cases against three of his perceived political adversaries. President Trump (@realDonaldTrump), Truth Social, (Sept. 20, 2025), https://truthsocial.com/@realDonaldTrump/posts/115239044548033727 [https://perma.cc/ZWV6-S9TH].

[4] Memorandum from United States Office of the Attorney General to All Department Employees (Feb. 5, 2025), https://www.justice.gov/ag/media/1388521/dl?inline (emphasis added) [https://perma.cc/K9YX-JXQU].

[5] Alan Feuer, Tyler Pager, Devlin Barrett, *Prosecutor Who Rejected Trump's Pressure to Charge James is Fired,* N.Y. Times (Oct. 17, 2025), https://www.nytimes.com/2025/10/17/us/politics/trump-prosecutor-fired-letitia-james.html [https://perma.cc/KTT7-H7VX]; Devlin Barrett, Maggie Haberman, *White House Takes Highly Unusual Step of Directly Firing Line Prosecutors*, N.Y. Times (Mar. 30, 2025), https://www.nytimes.com/2025/03/30/us/line-prosecutors-fired-trump-doj.html [https://perma.cc/33GH-HAH7].

[6] Recently, Attorney General Pam Bondi fired an Assistant United States Attorney in the Southern District of Florida for negative comments about President Trump made prior to joining the U.S. Attorney's Office. Jay Weaver, *Bondi fires a third federal prosecutor in Miami Office, linked to anti-Trump posts,* Miami Herald (Sept. 25, 2025), https://www.miamiherald.com/news/politics-government/article312247303.html [https://perma.cc/7SSP-NWPA]. Other attorneys within the office have been fired for their work on cases relating to President Trump and January 6th. *Id.*

[7] The irregular conduct also extends to civil cases. *See* Devon Ombres, *Does a Politically Directed Department of Justice Merit the Presumption of Regularity?,* Center for American Progress (Sept. 17, 2025), https://www.americanprogress.org/article/does-a-politically-directed-department-of-justice-merit-the-presumption-of-regularity/ [https://perma.cc/JB45-F92D].

-- F. Supp. 3d ----, 2025 WL 3202693, at *8 (E.D. Va. Nov. 17, 2025).[8]  In the prosecution of a woman for allegedly assaulting an ICE officer during a protest against immigration enforcement in Washington, D.C., prosecutors failed to secure a felony indictment from a federal grand jury. Rather than respecting that grand jury's decision, they took the very same case to two other federal grand juries and got the same result before giving up on the felony charge and filing a misdemeanor information; a jury ultimately acquitted her at trial.[9]  Finally, as a telling measure of this environment of overreaching, federal grand juries around the country are now turning down proposed indictments at an unprecedented rate.[10]  This includes, for example, the indictment in EDVA against Letitia James.  After a federal judge dismissed the first indictment, the United States Attorney's Office re-presented the case first to a grand jury in Norfolk, Virginia, and then to a grand jury in Alexandria, Virginia.  Both grand juries returned no true bills.[11]

---

[8] In the same district, another judge recently dismissed indictments against Comey and Letitia James, finding that the indictments had been procured by a United States Attorney who was improperly appointed.  Op. & Order Granting Mot. to Dismiss Indictment (ECF No. 60) at 1, *United States v. Comey,* No. 25-cr-00272 (E.D. Va. Nov. 24, 2025), Dkt. No. 213.

[9] Alan Feuer, Minho Kim, *Prosecutors Fail 3 Times to Charge Woman With Felony Assault of F.B.I. Agent in D.C.,* N.Y. Times (Aug. 25, 2025), https://www.nytimes.com/2025/08/25/us/politics/fbi-agent-assault-dc.html [https://perma.cc/K8WB-RECW]; Jordan Fischer, *Third grand jury refuses to indict DC woman accused of assaulting agent during ICE arrest,* WUSA9 (Aug. 25, 2025), https://www.wusa9.com/article/news/crime/for-third-time-grand-jury-refuses-to-indict-dc-woman-accused-of-assaulting-agent-during-ice-arrest-jeanine-pirro-sidney-reid-sandwich-guy/65-785e2e30-46cf-4e90-b81a-9e9c219c6750 [https://perma.cc/Z758-CN59]; Sophie Rosenthal, *Woman found not guilty of assaulting FBI agent during ICE arrest outside DC Jail,* WUSA9 (Oct. 16, 2025), https://www.wusa9.com/article/news/legal/sidney-reid-trial-not-guilty-fbi-agent-ice-arrest-assault-charge-dc-jail/65-fa3b180e-e72f-43d2-ad36-bbcc91fad9d0 [https://perma.cc/69JB-KSM9].  In similar fashion, District of Columbia prosecutors recently took a federal gun case to a local District of Columbia grand jury after the federal grand jury rejected the proposed felony.  While the Chief Judge considering a challenge to the resulting indictment deemed the practice technically permissible under the unique interplay of local and federal authorities in the District of Columbia, he found the practice "troubling."  Mem. Op. at 15, *United States v. Kevontae Stewart*, No. 1:25-mj-00225-ZMF (D.D.C. Nov. 20, 2025), Dkt. No. 38.  Then, as one more way of circumventing the grand jury's constitutional role as a check on prosecutorial overreaching, it was reported recently that an Associate Deputy Attorney General "told prosecutors [in the District of Columbia] that if sitting grand jurors rejected their efforts to bring serious charges, they should simply impanel new grand juries."  Feuer, *supra*; Jacqueline Sweet, *US justice official leading prosecutions of minor crimes,* Guardian (Sept. 23, 2025), https://www.theguardian.com/us-news/2025/sep/23/doj-official-dui [https://perma.cc/NTN9-PJU7].

[10] While in the past, it has been "exceedingly rare" for a federal grand jury to return a no true bill, that has changed recently.  James Queally, Brittny Mejia, *Trump's top federal prosecutor in L.A. struggles to secure indictments in protest cases,* L.A. Times (July 23, 2025), https://www.latimes.com/california/story/2025-07-23/protester-charges-essayli [https://perma.cc/DZ45-KJMN].  For example, over four weeks in late summer, grand juries in the District of Columbia refused to return indictments in seven cases.  Carrie Johnson, *As Trump cracks down on D.C. Crime, grand juries emerge as a check on overreach,* NPR (Sept. 5, 2025), https://www.npr.org/2025/09/05/nx-s1-5526925/as-trump-cracks-down-on-d-c-crime-grand-juries-emerge-as-a-check-on-overreach [https://perma.cc/TRP6-NMYM]. Also in 2025, in the Northern District of Illinois, a grand jury refused to indict two defendants, Jon Seidel, *In unusual move, federal grand jury refuses to indict couple found with guns outside Broadview ICE facility*, Chicago Sun Times (Oct. 8, 2025), https://chicago.suntimes.com/immigration/2025/10/08/feds-dropping-charges-against-couple-who-lawfully-carried-guns-outside-ice-facility [https://perma.cc/W5ZG-RQHB] and in the Central District of California, grand juries have reportedly rejected felony indictments, causing the government to reduce the charges to misdemeanors, Queally, *supra*.

[11] Katherine Faulders, Alexander Mallin, Nicholas Kerr, *2nd grand jury refuses to indict New York AG Letitia James: Sources,* ABC News (Dec. 11, 2025), https://abcnews.go.com/US/2nd-time-grand-jury-refuses-indict-new-york/story?id=128279779 [https://perma.cc/P7JH-GZK2].

4

As a result of this recent pattern of prosecutorial overreach[12] and the President's unprecedented insertion of his own political interests into the Justice Department's decision making, courts have started to question whether this Justice Department should continue to enjoy the traditional presumption of regularity, especially in cases directed at President Trump's perceived political adversaries. In the EDVA case against James Comey, for example, the court determined that the United States Attorney's conduct "call[ed] into question the presumption of regularity," thereby justifying the court's order that her activities in the grand jury be subject to scrutiny by the court and counsel. *Comey*, 2025 WL 3202693, at \*9.[13]

We submit that the government's conduct in this matter – as seen in the light of the national trends cited above – similarly calls into question the presumption of regularity and requires the Court to scrutinize the government's judge-shopping actions, as they are detailed in the balance of this letter. These actions clearly suggest that the government is seeking to transfer the current grand jury investigation to the Fort Pierce Division – where Judge Aileen Cannon is the sole sitting judge and would likely supervise the grand jury investigation and preside over the litigation of any resulting indictment[14] – rather than keeping it in the Miami Division, where it would be supervised by a duty judge selected from the active judges of that division and any resulting prosecution would be randomly assigned to one of those judges. We submit that such manipulation amounts to a clear case of prosecutorial judge-shopping and thereby threatens the "appearance of impartiality that is required to maintain the confidence of the public and the accused in the [criminal justice] system." *Tyson v. State of Ind.*, 619 N.E. 2d 276, 300 (Ind. Ct. App. 1993).[15] We further submit that everyone – the court, the target of an investigation and the prosecution team seeking a just result – should have an interest in maintaining that confidence.

---

[12] We do not attempt to cite all the recent examples of problematic conduct. There have been many others, ranging from punishing federal prosecutors for simply acknowledging in court that the January 6th attacks at the United States Capitol were a "riot" to a federal judge's finding that government attorneys had "affirmatively misled" the court in their effort to keep Kilmar Abrego Garcia in custody. Alan Feuer, *Prosecutors Who Called Jan. 6 Attackers a 'Mob of Rioters' Are Punished,* N.Y. Times (October 29, 2025), https://www.nytimes.com/2025/10/29/us/politics/prosecutors-jan-6-trump.html [https://perma.cc/8V6M-ZKD6]; Mem. Op. at 29, *Abrego Garcia v. Noem*, No. 25-cv-02780 (D. Md. Dec. 11, 2025), Dkt. No. 111.

[13] In a civil challenge to the Administration's federal union membership policies, a judge came to a similar conclusion. Citing four pages of instances where courts have questioned the government's conduct since the January 2025 inauguration, the district court wrote in August of this year that "[i]n just six months, the President of the United States may have forfeited the right to such a presumption of regularity." Op. at 25, *Fed. Educ. Ass'n v. Trump*, No. 25-cv-01362, (D.D.C. Aug. 14, 2025), Dkt. No. 35.

[14] As the only judge sitting in Fort Pierce, Judge Cannon, by default, supervises the grand jury sitting there. *See* SDFL IOP 8.00.00, SDFL IOP 8.01.00. Any case stemming from an indictment would be assigned to Judge Cannon in Fort Pierce (subject to the "one division rule," which allows for assignment to a judge from an adjacent division in certain circumstances for caseload considerations). *See* SDFL IOP 2.02.00; SDFL IOP 2.02.02 n.1.

[15] *See In re BellSouth Corp.,* 334 F.3d 941, 959-60 (11th Cir. 2003) ("We have no difficulty concluding that a contrivance to interfere with the judicial assignment process constitutes a threat to the orderly administration of justice."); *United States v. Pearson*, 203 F.3d 1243, 1263-64 (10th Cir. 2000) (prosecutorial judge-shopping gives unfair advantage to the government, is an "abuse of the judicial system," and undermines confidence in the impartiality of the judicial system); *Boe v. Marshall*, 767 F. Supp. 3d 1226, 1329 (M.D. Ala. 2025) ("Judge-shopping is an affront to the rule of law. It erodes public confidence in judicial impartiality, burdens courts with procedural glut, and casts unwarranted suspicion on judges and case assignments alike. In short, it poses an intolerable threat to the fair and orderly administration of justice. There can be no doubt that judge-shopping undermines what should be a fair and impartial process[.]").

II.    Background to the Grand Jury Investigation

To depict the contours of the judge-shopping machinations that appear to be underway in Your Honor's district, we need to first lay out the background to the current grand jury investigation.

The origins of the investigation lie in the presidential election of 2016, when the Intelligence Community ("IC") started to see indications that the Russian government was engaged in a determined and methodical effort to influence that election.  That realization led to an IC inquiry into those Russian efforts and ultimately to the drafting and publication of an interagency Intelligence Community Assessment ("ICA") that laid out the intelligence revealing the Russian election interference efforts.  The ICA, published on January 6, 2017, concluded that the Russian government had undertaken to interfere in the election, and specifically that it "aspired to help President-elect Trump's election chances when possible by discrediting Secretary Clinton and publicly contrasting her unfavorably to him."[16]

That conclusion has been supported by every serious review that followed the ICA.  Each of those reviews – to include the investigation by Special Counsel Robert Mueller, the bipartisan Senate Select Committee on Intelligence Committee investigation (which resulted in a five-volume report that was co-released by then-Acting Chairman Marco Rubio) and even a Tradecraft Review that CIA Director John Ratcliffe recently commissioned – has largely validated the ICA's analysis and findings.  Despite that repeated validation, President Trump has railed for years against the ICA's conclusion, claiming it to be a "hoax" that was intended to politically discredit his election and his presidency.[17]

Over the following years, President Trump was the subject of a series of federal investigations relating to the 2016 election and other issues.  Those investigations include:  the investigation into the possible coordination between the Russian agents behind the 2016 election interference efforts and any members of his presidential campaign; the investigations of his role in the January 6th violence at the United States Capitol; the investigation and prosecution of his alleged efforts to subvert the 2020 election; and the investigation and prosecution of his alleged retention of classified documents at his residence at Mar-a-Lago, Florida.[18]

When he was reelected in 2024, President Trump announced that he expected his Administration to prosecute the government officials who had been responsible for those investigations.[19]  On

---

[16] US Office of the Director of National Intelligence, *"Assessing Russian Activities and Intentions in Recent US Elections": The Analytic Process and Cyber Incident Attribution* (2017), https://nsarchive.gwu.edu/sites/default/files/documents/4530313/The-Office-of-the-Director-of-National.pdf [https://perma.cc/SY7K-WWLK].

[17] It is worth noting that, although the Intelligence Community originally arrived at that conclusion in the summer of 2016, our client and his colleagues went to great lengths to keep it from the public so as to protect candidate Trump and avoid any effect on the election.  It was only <u>after</u> the election that the conclusion was released publicly with the issuance of the ICA.  This important fact is hard to square with the claim that the same people were involved in a conspiracy to subvert President Trump's election.  Letter from undersigned counsel, Ken Wainstein, to Special Counsel John Durham (Mar. 31, 2022), https://cdn.theatlantic.com/media/files/3-31-2022_letter_to_john_durham_2.pdf [https://perma.cc/9EVB-6FL2].

[18] President Trump has also been the defendant in several state cases.

[19] Alexandra Ulmer, *Who has Donald Trump threatened to prosecute as president?,* Reuters (Jan. 20, 2025), https://www.reuters.com/world/us/trumps-threats-prosecute-opponents-election-workers-google-2024-10-30/ [https://perma.cc/VQF2-J4KZ]; Tom Dreisbach, *Trump has made more than 100 threats to prosecute or punish*

6

numerous occasions, he has stated publicly that the conduct of these officials was "a disgrace," that they "cheated, they lied, they did so many bad things, evil things that were so bad for the country," and "that they should all be arrested."[20]

President Trump has particularly focused his ire on our client, Director Brennan, whom he condemns for allegedly promoting the "hoax" of Russian election interference in the January 2017 ICA and for publicly criticizing the President and his conduct in the years since. Branding Director Brennan "crooked as hell" and suggesting that he will "have to pay a price for that,"[21] President Trump has stated that it would "not bother [him] at all" to see Director Brennan handcuffed and arrested live on TV.[22] He once even posted an image showing Director Brennan, former Director of National Intelligence James Clapper and others behind bars, under a headline: "Now that Russia collusion is a proven lie, when do trials for treason begin?"[23]

In recent months, the President's subordinates have started acting on his direction. On or about July 8, 2025, CIA Director John Ratcliffe sent the Justice Department a criminal referral for the investigation and possible prosecution of Director Brennan for unspecified crimes in relation to his involvement in the ICA.[24] Then, on July 18, 2025, Director of National Intelligence Tulsi Gabbard followed up with her own criminal referral,[25] contending that President Obama and his intelligence officials (including Director Brennan) had engaged in a "years-long coup and treasonous conspiracy against the American people."[26] In response to DNI Gabbard's referral, the

---

*perceived enemies,* NPR (Oct. 22, 2024), https://www.npr.org/2024/10/21/nx-s1-5134924/trump-election-2024-kamala-harris-elizabeth-cheney-threat-civil-liberties [https://perma.cc/TZ5X-GTS9].

[20] Sarah Fortinsky, *Trump: 'Would not bother me' to see Comey, Brennan arrested,* The Hill (Aug. 31, 2025), https://thehill.com/regulation/court-battles/5479962-trump-russia-comey-brennan-2016-election-probe/ [https://perma.cc/457W-U8U7].

[21] *Trump says ex-FBI, CIA Heads may 'have to pay the price',* TRTWorld (July 10, 2025), https://www.trtworld.com/article/d4fa80ade4fb [https://perma.cc/5MEA-JNEG].

[22] Fortinsky, *supra* note 20; *see also* Mark Landler, Eileen Sullivan , *Trump Says He Laid Down the Law in His Latest Account of His Meeting With Putin,* N.Y. Times (July 18, 2018), https://www.nytimes.com/2018/07/18/us/politics/trump-putin-higher-intelligence.html [https://perma.cc/8LTE-XE87] (reporting President Trump called Director Brennan a "lowlife").

[23] Ulmer, *supra* note 19. This drumbeat continues. On November 17, 2025, weeks after a grand jury indicted James Comey, President Trump posted an image titled "Obama's Russia HOAX Treason Club" featuring pictures of Comey, our client John Brennan, and 14 other perceived adversaries with a red X over Comey's face. Image posted by Donald J. Trump (@realDonaldTrump) Truth Social (Nov. 17, 2025), Truth Details | Truth Social, https://truthsocial.com/@realDonaldTrump/posts/115565534074829466 [https://perma.cc/PCC3-AHW8]. On December 5, 2025, FBI Director Kash Patel said on Donald Trump Jr.'s podcast "We're going to continue to show up to court, and we're going to continue to make people like Comey and Brennan and Clapper and Page and Strzok and so many others answer for what I believe are their acts of criminal conduct . . .." Triggered With Don Jr.: *Live With FBI Director Kash Patel, Breaking News!!* (Spotify Dec. 5, 2025), https://open.spotify.com/episode/0F8hl3q8KgqkJUSAl0WL6i [https://perma.cc/8ALQ-U9TN].

[24] Brooke Singman, *FBI launches criminal investigations of John Brennan, James Comey: DOJ sources,* FOX News (July 8, 2025), https://www.foxnews.com/politics/john-brennan-james-comey-under-criminal-investigation-doj-sources [https://perma.cc/3MRQ-AGL4]. The referral has not been made public, although its existence was publicly leaked.

[25] DNI Tulsi Gabbard (@DNIGabbard), X (July 18, 2025), https://x.com/DNIGabbard/status/1946293600976785453 [https://perma.cc/74P2-5K54].

[26] Julian E. Barnes, Glenn Thrush, *Gabbard Releases New Documents Targeting Obama Administration, as Justice Dept. Forms Task Force,* N.Y. Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-russia-obama-gabbard.html [https://perma.cc/M2AZ-FHWX].

Justice Department announced on July 23, 2025,[27] that it was forming a "strike force" to investigate the allegations and consider charges relating to this supposed conspiracy.[28]

    III.    Forum Shopping

What then followed were several months when the Justice Department engaged in a classic case of forum-shopping, as the leadership searched for a federal district that would be favorable for this conspiracy investigation.  There seemed to be two objectives animating this search.  The first was to avoid pursuing the case in the District of Columbia at all costs, despite the fact that the District of Columbia is a natural venue for any alleged criminal conspiracy involving a sitting president and his cabinet and sub-cabinet officials.  The jury pools there – overseen by judges who have been openly critical of prosecutorial overreach – have proven very willing to refuse to indict or find guilt where the government has brought flimsy cases.  It therefore is not surprising that the Justice Department decided to look at other districts for this investigation.

The second objective was to find a district with a U.S. Attorney's Office that would be willing to engage in a politically motivated and fact-free criminal investigation.  That was a more challenging objective to accomplish, as prosecutors from different districts resisted being pulled into the case.

Defense counsel saw that process play out in real time.  In the late-summer timeframe, witnesses and counsel were contacted and interviewed about the 2017 ICA by FBI agents who said they were working under the auspices of the United States Attorney for the Eastern District of Pennsylvania ("EDPA").  Within a short time, EDPA dropped from the scene after they reportedly "struggl[ed] to put together a criminal case against [our client] John O. Brennan."[29]  Next, attorneys from EDVA started interviews on the same topic.  Their involvement was similarly short-lived, as those interviews ended after a couple of weeks.

The Justice Department leadership ultimately found a home for the investigation in the United States Attorney's Office for the Southern District of Florida, where the recently confirmed United States Attorney, Jason Reding Quiñones, was reportedly quite willing to take on the assignment.[30]  In short order, the United States Attorney established a special group to run the investigation, reworked the office hierarchy to ensure politically friendly leadership and circumvent career supervisors, and inserted his personally appointed Executive Assistant U.S. Attorney into the direct

---

[27] Press Release, US Office of Public Affairs U.S. Dept. of Justice, Justice Department Announces Formation of Strike Force to Assess Evidence Publicized by ODNI (July 23, 2025), https://www.justice.gov/opa/pr/justice-department-announces-formation-strike-force-assess-evidence-publicized-odni [https://perma.cc/Z3N6-B59X].

[28] It is important to note that the Justice Department is undertaking this effort, despite the fact that the Intelligence Community's conduct around the Russian election interference inquiry and the Intelligence Community Assessment has already been subject to several very probing investigations – to include investigations by Special Counsel John Durham, the Senate Select Committee on Intelligence, and the Justice Department Inspector General – all of which came up with no evidence of anything close to criminal misconduct, much less conspiratorial activity, by our client and his colleagues.

[29] Glenn Thrush, Alan Feuer, Charlie Savage, *Trump Loyalists Push 'Grand Conspiracy' as New Subpoenas Land,* N.Y. Times (Nov. 9, 2025), https://www.nytimes.com/2025/11/09/us/politics/trump-conspiracy-probe-subpoenas.html [https://perma.cc/EQT7-GLVD]; Julian E. Barnes, Maggie Haberman, Devlin Barrett, *Inquiry Into Ex-C.I.A. Chief John Brennan Stalls After Purge by Gabbard,* N.Y. Times (Sept. 24, 2025), https://www.nytimes.com/2025/09/24/us/politics/john-brennan-tulsi-gabbard-cia-trump.html [https://perma.cc/A7WT-JARG].

[30] Thrush, *supra* note 29.

management of the investigation.[31]   Soon thereafter, two newer assistant U.S. attorneys resigned "under duress after being asked . . . to join [that] grand jury investigation."[32]   At least one of those attorneys reportedly resigned because that person "felt like there was something they could not take part in because it would violate their ethical responsibilities."[33]

The United States Attorney also opened an investigation in a grand jury of the Miami Division of the Southern District of Florida – Grand Jury Investigation Number NS 1840-020.  On November 11, 2025, Director Brennan received a subpoena dated November 7, 2025, from that grand jury investigation requesting the production of materials from 2016-2017 "related to the preparation of, discussion of, creation of, or otherwise associated with the 2017 Intelligence Community Assessment ("ICA") published on or about January 6, 2017, titled 'Assessing Russian Activities and Intentions in Recent US Elections.'"  The subpoena and accompanying letter were signed by the Executive Assistant United States Attorney.[34]   News reports indicate that at least 30 other current and former officials of the United States Intelligence Community received similar subpoenas and letters.[35]

While it is mystifying how the prosecutors could possibly believe there is any legally justifiable basis for undertaking this investigation, they have done nothing to explain that mystery.  When asked by this counsel and counsel for other subpoena recipients to identify the specific federal crime or crimes being investigated with those subpoenas – a question that prosecutors typically answer so that the recipient can knowingly evaluate his or her posture in the investigation and decide how to respond to the subpoena – the Executive Assistant U.S. Attorney and his colleagues remained vague.  When asked how they expect to work around the 5-year statute of limitations[36] and establish venue in the SDFL for the prosecution of conduct involving an intelligence report that was issued almost nine years ago and produced by personnel in the Washington, D.C. area, they were equally unforthcoming.[37]

---

[31] Vaughn Hillyard, Laura Barrón-López, *U.S. Attorney investigating alleged grand 'conspiracy' calls unit-wide meeting after two prosecutors resign*, MS Now (Nov. 10, 2025), https://www.ms.now/news/us-attorney-investigating-alleged-grand-conspiracy-calls-unit-wide-mee-rcna243100 [https://perma.cc/HYQ2-HY9W]; Ben Penn, *DOJ Miami Office Readies Conspiracy Probe Into Trump Enemies (2),* Bloomberg Law (Nov. 7, 2025), https://news.bloomberglaw.com/us-law-week/doj-miami-office-plans-probe-into-anti-trump-liberal-conspiracy [https://perma.cc/X2R9-TU35].

[32] Penn, *supra* note 31.

[33] Hillyard, *supra* note 31.

[34] It is notable – and quite possibly telling about the environment in the Office – that the Executive AUSA signed the subpoenas and accompanying documentation, contrary to the standard practice for subpoenas to be signed by the line prosecutor handling the investigation.  Hillyard, *supra* note 31.

[35] Thrush, *supra* note 29; Hillyard, *supra* note 31.

[36] It is worth noting that the subpoena to Director Brennan only asked for documents from July 1, 2016 to February 28, 2017, a time period well outside the statute of limitations.

[37] The only reference to a criminal statute and to venue in our conversation with the prosecutors was to the allegation in a recent criminal referral by the Chairman of the House Judiciary Committee that alleges (demonstrably falsely) that our client violated 18 U.S.C. Section 1001 in 2023 by lying in his testimony before that Committee about the ICA (specifically about whether a batch of materials known as the "Steele Dossier" was used in the analysis in the ICA).  When asked how they could possibly find venue in the Southern District of Florida for an investigation of alleged false statements that were made in a congressional committee room in Washington, D.C., the prosecutors refused to answer.

So, it appears that the answers to these important questions are unknown for now.  What is known, however, is that Justice Department leadership has at last found a U.S. Attorney's Office, or at least an office leadership, that is willing to handle this manufactured criminal investigation.[38]

IV.    Judge Shopping

While the foregoing effort to forum-shop the case among districts is troubling enough, significantly more troubling – both legally and ethically – is the indication that the SDFL is attempting to judge-shop the case *within the District*.  As has been widely reported in the press, there are several circumstances that  indicate that the United States Attorney is intent on steering this case to the Fort Pierce Division and to the sole judge who sits in that courthouse, Judge Aileen Cannon.[39]  These circumstances – which establish a strong circumstantial case for judge shopping – include the following:

- The SDFL Assignment:  The Justice Department's decision to locate the grand jury investigation in the Southern District of Florida, where there is no apparent venue for the factual subject cited by the prosecutors and referenced in the grand jury's subpoenas, *i.e.* the 2017 Intelligence Community Assessment that was written and published in the Washington, D.C. area.

- The Additional Grand Jury Request:  The United States Attorney's decision to seek an "additional" grand jury in the Fort Pierce Division, which is a division that has no apparent caseload need for a second grand jury and that has historically been fully served by one grand jury (and reportedly has only one room for grand jury proceedings).[40]

- The Timing of the Additional Grand Jury Request:  The timing of the decision to impanel an "additional" grand jury in Fort Pierce, which coincided with the initiation of the SDFL investigation.  Combined with the absence of any other apparent reason for the grand jury, this timing supports the inference that the additional grand jury is specifically for this investigation.

- Mike Davis's Prosecution Plan:  The widely reported public statements of Mike Davis,[41] who has been described as an unofficial legal adviser to President Trump and Attorney

---

[38] While we had serious concerns about the validity of the subpoena and the underlying grand jury investigation in light of statute of limitations and venue requirements, Director Brennan decided to cooperate – as he has in all the myriad investigations around this topic since 2017 – and complied with the subpoena on the return date of November 20, 2025.

[39] Charlie Savage, *As Trump's Inquisitors Face Scrutiny, a Divisive Figure Could Play a New Role,* N.Y. Times (Nov. 23, 2025), https://www.nytimes.com/2025/11/23/us/politics/trump-florida-cannon-grand-jury.html [https://perma.cc/X4C3-LKES]; Peter Charalambous, Katherine Faulders, Alexander Mallin, *Trump ally says grand jury empaneled in Florida to investigate a sweeping conspiracy against Trump,* ABC News (Oct. 25, 2025), https://abcnews.go.com/Politics/trump-ally-grand-jury-empaneled-florida-investigate-sweeping/story?id=126854433 [https://perma.cc/8BND-EF6N].

[40] Nor would the Fort Pierce Division make practical sense for prosecution personnel on the investigation.  The main SDFL United States Attorney's Office is located approximately 130 miles from the Fort Pierce Division courthouse, whereas it is just down the street from the Miami Division courthouse.

[41] Frontline Interview with Mike Davis, PBS (Apr. 4, 2025), https://www.pbs.org/wgbh/frontline/interview/mike-davis/ [https://perma.cc/LV8W-WXF8].

General Pam Bondi,[42] and is a known close associate of the United States Attorney, whom Davis calls his "very good friend"[43] and "buddy."[44] Embracing DNI Gabbard's conspiracy theory, Davis has urged the Justice Department to prosecute the alleged conspirators, and has specifically called for the case to be situated in Fort Pierce. As Davis explained, "[f]or the last three-and-a-half years since the Mar-a-Lago raid I have very publicly called for a grand jury in Fort Pierce" to hold persons accountable for the "Russian collusion hoax" and the "Mar-a-Lago raid."[45] Once Your Honor granted the request for an additional grand jury to be impaneled in Fort Pierce, he reiterated his belief in that plan, exclaiming that he was "very pleased that [United States Attorney Reding Quiñones] has successfully got the court to agree to this grand jury in Fort Pierce."[46] While it might not be typical to place weight on such statements and prognostications from a political strategist with no government affiliation, there may be cause to do so in this case, given Davis's ties to the United States Attorney and the clear alignment between the prosecution plan he has been publicly propounding and the irregular procedural steps now being taken by the SDFL prosecutors.

- Judge Cannon's Past Decisions: The numerous past decisions by Judge Cannon that could reasonably cause the prosecutors to believe that hers would be an accommodating courtroom for an investigation and possible prosecution of President Trump's perceived political adversaries. While we do not suggest, for purposes of this letter, that Judge Cannon would, in fact, lean in the government's favor in any future proceedings, the record of her decisions in prior cases could provide a basis for the prosecutors to believe that she would. Among those decisions are:

    1. When Judge Cannon presided over President Trump's lawsuit against the FBI for its search of Mar-a-Lago, she took the unprecedented step of appointing a special master to determine whether any of the seized documents were protected under executive privilege and barring the criminal investigators from reviewing them, thereby significantly delaying the investigation and prosecution of President Trump for mishandling classified documents. A panel of the Eleventh Circuit Court of Appeals unanimously held that "the district court improperly exercised equitable jurisdiction" in appointing a special master. *Trump v. United States*, 54 F.4th 689,

---

[42] Charalambous, *supra* note 39.

[43] Zoe Tillman, *Trump Ally Pushing Conspiracy Case Says Grand Jury Empaneled (1),* Bloomberg Law (Oct. 22, 2025), https://news.bloomberglaw.com/white-collar-and-criminal-law/trump-ally-pushing-conspiracy-case-says-grand-jury-empaneled-1 [https://perma.cc/Q4GL-YTHP]; Mike Davis (@mrddimia), Instagram (Nov. 16, 2025, 1:22), https://www.instagram.com/reel/DRICvmaj33E/ [https://perma.cc/5TZP-KHN7].

[44] Charalambous, *supra* note 39. The Washington Post reported that Davis said that he had recommended Reding Quiñones for the United States Attorney job. Perry Stein, Jeremy Roebuck, David Ovalle, *The Trump prosecutor probing former top Obama administration officials*, Washington Post (Nov. 17, 2025), https://www.washingtonpost.com/national-security/2025/11/17/trump-obama-jason-quiones-miami-prosecutor/ [https://perma.cc/J63T-NWK7].

[45] Penn, *supra* note 31. In an in-person panel discussion that Reding Quiñones moderated, Mike Davis laid out his prosecution plan, stating that "until these lawfare Democrats face these severe consequences legally, politically, and financially, this lawfare will never end." *See* Michael Berry, Anna Bower, Mike Davis, Jason A. Reding Quiñones & Jesus Manuel Suarez, Audio recording *Panel 4: Modern Lawfare and the American Democracy,* 2025 Fla. Chapters Conference The Federalist Society (Mar. 12, 2025, 57:32), https://fedsoc.org/commentary/podcasts/panel-4-modern-lawfare-and-the-american-democracy [https://perma.cc/M2DQ-5CC6] (recording on file with author).

[46] Savage, *supra* note 39.

701 (11th Cir. 2022) (per curiam). Importantly, the appellate court found that Judge Cannon's approach, which seemingly created a "special exception" for President Trump, "would defy our Nation's foundational principle that our law applies 'to all, without regard to numbers, wealth, or rank.'" *Id.* (quoting *State of Georgia v. Brailsford*, 3 U.S. (3 Dall.) 1, 4, 1 L.Ed. 483 (1794)).

2. When Judge Cannon then presided over the prosecution that ultimately arose from that long-delayed classified documents investigation, many observers believed she unduly prolonged the proceedings by repeatedly extending deadlines and entertaining time-consuming defense motions and arguments that would have been summarily resolved by other judges.[47]

3. In the summer of 2024, Judge Cannon took the extraordinary step of dismissing the classified documents case against President Trump on the grounds that the prosecutor on the case, Special Counsel Jack Smith, had been appointed in violation of the Appointments Clause of the United States Constitution.[48] That decision directly contradicted the rulings of multiple courts that had uniformly rejected such challenges to special and independent counsel prosecutions over the years. Her ruling was appealed, but the government filed a motion to dismiss on November 25, 2024, after President Trump's re-election, based on the Office of Legal Counsel's position that a sitting president cannot be prosecuted.[49]

4. On January 21, 2025, Judge Cannon issued an order preventing the release of Special Counsel Jack Smith's report on President Trump's mishandling of classified documents, based on his co-defendants' right to a fair trial, despite the historical practice of releasing such special counsel reports.[50] Since that date, Judge Cannon has refused to grant numerous motions to lift the order and allow the release of the report, despite the fact that the co-defendants' criminal cases were also dismissed in February 2025. Two of the parties seeking release of the report ultimately resorted to filing a mandamus petition with the Eleventh Circuit Court of Appeals, and in early November of this year the appellate panel unanimously found that Judge Cannon's failure to rule on that party's motion for over eight months constituted "undue delay" and gave her 60 days to resolve the issue.[51]

The United States Attorney's efforts to funnel this investigation to the judge who issued this string of rulings that consistently favored President Trump's positions in previous litigations should be seen for what it is. Viewed in their totality, the above circumstances clearly indicate that the United States Attorney is attempting to steer this matter toward Judge Cannon in direct alignment with

---

[47] Savage, *supra* note 39.

[48] Order Granting Motion to Dismiss Superseding Indictment Based on Appointments Clause Violation, *United States v. Trump*, No. 23-c-80101 (S.D. Fla. July 15, 2024), Dkt. No. 672.

[49] Government's Motion to Dismiss, *United States v. Trump,* No. 23-cr-00257 (D.D.C. Nov. 25, 2024), Dkt. No. 281.

[50] Order Granting Defendants' Emergency Motion to Preclude Release of Volume II of Special Counsel's Report and Denying Without Prejudice President-Elect Trump's Motion to Intervene, *United States v. Trump*, No. 23-cr-80101 (S.D. Fla. Jan. 21, 2025), Dkt. No. 714; Rebecca Beitsch, *Jack Smith says he'd do it all over again in testimony on Trump to House GOP*, The Hill (Dec. 17, 2025), https://thehill.com/homenews/house/5652753-trump-documents-investigation-smith/ [https://perma.cc/5CGV-BPYB].

[51] Order of the Court, *In re: American Oversight*, No. 25-13400 (11th Cir. Nov. 3, 2025), Dkt No. 11.

Mike Davis's prosecution plan and the President's mandate to use the courts to punish his perceived political adversaries.[52]

### V.    The Courts' Condemnation of Prosecutorial Judge-Shopping

Our Nation's courts operate on the principle that the court system – and not a litigating party – selects the judge who presides over a litigation.  Reflecting that principle, this Court's Internal Operating Procedures provide for a random case assignment process.   These procedures specifically explain that that process is "designed to prevent any litigant from choosing the Judge to whom an action or proceeding is to be assigned," and sternly warns that "*all attorneys shall conscientiously refrain from attempting to vary this Local Rule.*"  SDFL IOP 2.01.01(b) (emphasis added).

Judges have been equally stern in their intolerance of instances of judge-shopping in their courts.  "[A]ttempts to manipulate the random case assignment process are subject to universal condemnation," *United States v. Phillips*, 59 F. Supp. 2d 1178, 1180 (D. Utah 1999); *see Disability Advocs. & Counseling Grp., Inc. v. Betancourt*, 379 F. Supp. 2d 1343, 1344 (S.D. Fla. 2005) (collecting cases), as they are rightly recognized as "a threat to the orderly administration of justice."  *In re BellSouth Corp.,* 334 F.3d 941, 959-60 (11th Cir. 2003).[53]

That condemnation is particularly pronounced when the judge-shopping party is the prosecutor in a criminal matter that involves the rights of the accused.  In adherence to the "fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion," *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810 (1987), and the principle that the prosecution's sole "interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done," *Berger v. United States*, 295 U.S. 78, 88 (1935), courts have reacted strongly whenever they have perceived the prosecution misusing its powerful role in the criminal justice system to steer cases to a favored court or judge.

In *United States v. Gotti*, 593 F. Supp. 2d 1260, 1264 (M.D. Fla. 2008), for example, the government opted to indict the alleged gangster in the Middle District of Florida after failing to secure a conviction against him in several trials in New York.  The District Court granted the defense motion to transfer the case back to New York after concluding that "the charging decision of the United States, apparently unaccountable on neutral principles, creates the unmistakable and disquieting impression of 'forum shopping.'"  *Id.* at 1270.  Similarly, in *In re Search of One Digital*

---

[52] In considering the direct throughline from the President's agenda to the actions of "his attorneys," it is worth noting that President Trump has been very complimentary of Judge Cannon's work on his past civil and criminal cases.  He has publicly lauded her for being "courageous" and "strong and tough" and has deemed her an "amazing judge" and "the absolute model of what a judge should be."  Savage, *supra* note 39; The White House, President Trump Delivers Remarks at the Department of Justice, (YouTube, Mar. 14, 2025), https://www.youtube.com/watch?v=6i41Av4eYO8 [https://perma.cc/563U-GZAA].

[53] *See Disability Advocs. & Counseling Grp.*, 379 F. Supp. 2d at 1344 (collecting cases condemning judge-shopping); *Boe*, 767 F. Supp. 3d at 1274-76 ("[J]udge-shopping infringes federal law.  Under 28 U.S.C. § 137(a), '[t]he business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court.'  . . . The system of random case assignment is one expressly adopted in accordance" with statute and has been "'well understood'" to prevent judge shopping. (brackets in original) (quoting *Phillips,* 59 F. Supp. 2d at 1180)) (collecting cases condemning judge-shopping); Order, *Blue Sphere, Inc. et al. v. Partnerships, and Unincorporated Ass'ns Identified on Schedule A*, No. 22-cv-05599 (N.D. Ill. Jan. 18., 2023), Dkt. No. 28 ("Parties can pick their lawyers, and parties can pick their cases.  But parties cannot pick their judges.").

13

*Device Currently Located at 601 4th Street NW, Washington, DC under Rule 41*, 734 F. Supp. 3d 107 (D.D.C. 2024), the court criticized the government for applying for a search warrant in Washington, D.C. after the same application had been denied by a California judge, explaining that "[s]eeking reversal of a judge's decision before a coordinate judge that the government thinks will be more favorably disposed to its arguments is the very essence of judge-shopping." *Id.* at 113. Finally, in *United States v. Pearson*, the court considered allegations that the government steered the case to a specific judge on both due process grounds and under the court's supervisory powers; it rejected Pearson's argument on harmless error grounds but emphasized the importance of having "an assignment system that prevents prosecutors from selecting judges." *United States v. Pearson*, 203 F.3d 1243, 1263-66 (10th Cir. 2000). In its opinion, the Tenth Circuit explained how "allowing prosecutors to steer cases to particular judges" corrupts the criminal justice system in four different ways – (1) it "arguably affords the government an unfair advantage"; (2) it "may involve an abuse of the judicial system" and thereby "violate ethical rules"; (3) it undermines the public's confidence that the judiciary is impartial; and (4) it "arguably threatens the independence of the judiciary" because judges might be tempted "to base their decisions in a given case on the effect of those decisions on their future assignments." *Id.* As these cases show, to prevent this corrupting influence, courts have been particularly vigilant in guarding against prosecutorial judge-shopping.[54]

## VI.    Conclusion

Like the government's charging decision in *Gotti*, the above-described actions by the United States Attorney in this district are entirely "unaccountable on neutral principles" and can best be explained as an effort to steer this matter to his favored forum and favored judge. We would be pleased to be shown otherwise – possibly by a public statement from the United States Attorney in which he forswears any effort to move this matter to the Fort Pierce Division – in which case, we would look forward to litigating any of our venue, statute of limitations and other arguments against this concocted case before an impartially selected judge of the Miami Division. Absent such a statement, however, the facts laid out above compel the conclusion that this is a naked attempt to steer this case toward Fort Pierce and Judge Cannon in order to obtain a favorable forum. Based on that conclusion, we would ask Your Honor to follow the lead of the above-cited courts in condemning that course of action and using the Court's supervisory authority to ensure the United States Attorney cannot pursue it.

We recognize that it is exceptional for the target of an investigation to make such a request. However, we believe this is the exceptional case where such judicial supervision is needed for a number of important reasons:

- First, to protect the Court from the judge-shopping that undermines "the appearance of impartiality that is required to maintain the confidence of the public and the accused," *Tyson*, 619 N.E. 2d at 300, and thereby brings "'the judicial system itself into disrepute.'" *In re BellSouth Corp.,* 334 F.3d at 959-60 (quoting *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1265 (5th Cir. 1983)).

---

[54] *See also Suri v. Trump*, 785 F. Supp. 3d 128, 148 (E.D.V.A. 2025) ("Just as a habeas petitioner should not be permitted to forum shop, neither should the United States Government."), *aff'd*, 2025 WL 1806692 (4th Cir. 2025).

14

- Second, to protect the career prosecutors from following the President's instructions into prosecutorial conduct that is ethically hazardous.[55]

- Third, to protect Judge Cannon from the litigation around the recusal motion that will inevitably be filed if and when she assumes any judicial role over the matter. The recusal argument in that motion will have two prongs:

  - The first prong will argue that Judge Cannon's demonstrated pattern of favoring Donald Trump's litigation positions (*see* pages 11-12 above) establishes a reasonable basis for questioning her impartiality, thereby requiring her recusal to protect both our client's rights and the perceived legitimacy of the criminal process.

  - The second prong will argue for Judge Cannon's recusal based on the fact that she would be a potential fact witness to conduct underlying the government's supposed conspiracy case. To charge that case with any semblance of proper venue in Florida, the government presumably intends to claim that the Mar-a-Lago classified documents search (which took place in the West Palm Beach Division) and the resulting prosecution of President Trump in the Fort Pierce Division were acts in furtherance of that conspiracy. Indeed, the only conceivable link between such a conspiracy theory and the Fort Pierce Division would be the actual prosecution of the classified documents case, which is identified by proponents of this conspiracy theory as one of the acts by which the conspirators "politicized and weaponized . . . law enforcement to take out Trump."[56] Given that Judge Cannon presided over that prosecution, she would arguably be a fairly central fact-witness to that part of the charged conspiracy and therefore have to recuse herself from the proceedings.[57]

- Fourth, to protect against the government's apparent flouting of grand jury rules, as reflected in the ongoing leaking of information about the Miami grand jury's activities. That leaking was evident in the October statements of private citizen Mike Davis in which

---

[55] Judges and disciplinary committees have established that attorneys who engage in judge-shopping can be sanctioned. *See Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1443 (9th Cir. 1995) ("Judge-shopping doubtless disrupts the proper functioning of the judicial system and may be disciplined."); *In re Fieger*, 191 F.3d 451 (6th Cir. 1999) (Tbl.) ("[Attorney's] actions fully warranted the imposition of sanctions. He circumvented the random assignment rule, specifically tried to control the assignment of judges to his cases, and boasted publicly that he had done so. These actions violated the rules, as well as his duties as an officer of the court."); *Boe*, 767 F. Supp. 3d at 1293-1329 (judge issued an order punishing responsible attorneys for judge-shopping and obstructing subsequent investigation by publicly reprimanding them, disqualifying them from the case, fining them, referring the case to the U.S. Attorney's Office to investigate whether criminal conduct occurred, and requiring the order be sent to the attorneys' bar associations); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988) (to handle alleged prosecutorial misconduct in a grand jury proceeding, "the court may direct a prosecutor to show cause why he should not be disciplined and request the bar or the Department of Justice to initiate disciplinary proceedings against him").

[56] Mike Davis (@mrddmia), X (Oct. 12, 2025, at 11:41 ET), https://perma.cc/8KZH-DXKL. In fact, in an article about his comments in a series of podcast interviews, ABC News reported that "Davis claims the classified documents case . . . is part of the conspiracy against Trump." Charalambous, *supra* note 39.

[57] *See* 28 U.S.C. § 455; Code of Conduct for United States Judges, Canon 3(C)(1)(b) ("A judge shall disqualify . . . herself . . . in a proceeding in which the judge's impartiality might reasonably be questioned, including [where] the judge . . . has been a material witness.").

15

he detailed the nature and purpose of the grand jury's investigation.[58]  It was also evident in the November 6, 2025 MS NOW (MSNBC) article describing "source" reporting that "[t]he Department of Justice is preparing to issue a series of grand jury subpoenas as part of a South Florida-based investigation into former CIA Director John Brennan and the probes by the CIA and FBI into Russian interference in the 2016 election," when those subpoenas were not dated and issued until the next day, November 7.[59]  This prima facie evidence of a Rule 6(e) violation emphasizes the need to prevent further abuse of the grand jury process.  It also emphasizes how certain government actors in this case – and in other cases against the President's perceived adversaries (*see* pages 3-5 above) – are taking advantage of the secrecy around the grand jury process to undertake irregular activity outside of public view.  It is for this reason that we will be making this letter public, as a means of shedding light on the government's course of action in this matter.

- Fifth, to protect our client's due process rights to fair and impartial treatment in the criminal justice system.  *McDonald v. Goldstein*, 191 Misc. 863, 869, 83 N.Y.S.2d 620 (N.Y. Special Term 1948), *aff'd*, 273 A.D. 649, 79 N.Y.S.2d 690 (App. Div. 1948) ("The people, on the one hand, and the defendant on the other, in a criminal case, have the right to a trial in a designated court, not before a selected judge."); *Pearson*, 203 F.3d at 1263.

- Finally, to defend and reinforce the rule of law in our criminal justice system at this fragile moment in our Nation's history.

For all these reasons, we urge Your Honor to exercise your supervisory authority as Chief Judge to ensure the United States Attorney does not steer this matter to the Fort Pierce Division and to the courtroom of Judge Aileen Cannon.

We appreciate your consideration of this important request, and we stand ready to answer any questions you might have.

Sincerely,

Ken Wainstein
Mayer Brown LLP

Natasha Harnwell-Davis
Mayer Brown LLP

---

[58] *See* Charalambous, *supra* note 39.

[59] Ken Dilanian, *DoJ preparing subpoenas in investigation into John Brennan,* MS Now (Nov. 6, 2025), https://www.ms.now/news/doj-preparing-subpoenas-investigation-john-brennan-rcna242338 [https://perma.cc/W37B-GZPH].

16

cc:    Jason Reding Quiñones, United States Attorney
       Manolo Reboso, Executive Assistant United States Attorney
       Maria Medetis Long, National Security Section Chief