**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN O. BRENNAN<br><br>*Plaintiff*<br>v.<br><br>TODD W. BLANCHE, in his official capacity as Acting Attorney General, et al.,<br><br>*Defendants* | Civil Action Case No. <u>26-2323</u><br><br>ORAL ARGUMENT REQUESTED |

<u>**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**</u>

**TABLE OF CONTENTS**

**Page**

FACTUAL BACKGROUND ................................................................................................ 1

ARGUMENT ...................................................................................................................... 9

    I.     Director Brennan Is Likely To Succeed On The Merits ..................................... 10

          A.     Director Brennan will Raise a Well-Founded Claim of Vindictive and Selective Prosecution ........................................................................ 11

          B.     Director Brennan's Vindictive and Selective Prosecution Challenges Would Merit a Probing Evaluation by the Reviewing Court ...................................................................................................... 19

          C.     The Court Reviewing Director Brennan's Challenges Would Require Access to Government Materials and Communications to Examine the Justice Department's Conduct and Decisions in this Matter ..................................................................................................... 23

          D.     The Government's Duty to Produce Materials and Communications in the Future Necessarily Imposes a Duty to Preserve Those Records Now ................................................................... 25

          E.     The Government Is Not Upholding Its Obligation To Preserve Records ...................................................................................................... 26

          F.     The High Risk that the Government Will Not Preserve the Materials and Communications that Would Be Important for the Protection of Director Brennan's Constitutional Rights Necessitates the Issuance of an Injunction Ordering Their Preservation ............................................................................................. 30

          G.     Director Brennan Is Therefore Highly Likely To Satisfy The Elements Of Each Of The Causes Of Action ........................................... 31

    II.     Director Brennan Is Likely To Suffer Irreparable Harm ..................................... 34

    III.    The Balance of Equities Favors Director Brennan ............................................. 36

    IV.    A Preliminary Injunction Supports The Public Interest ...................................... 36

CONCLUSION ................................................................................................................. 38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B.A. v. DOJ*,
   783 F. Supp. 3d 236 (D.D.C. 2025) ...................................................................................9, 37

*Rhode Island Hosp.*, 2026 WL 1392565 (D.R.I. May 14, 2026) ....................................................22

*In re al-Nashiri*,
   791 F.3d 71 (D.C. Cir. 2015) ...........................................................................................34

*Am. First Legal Found. v. Becerra*,
   2024 WL 3741402 (D.D.C. Aug. 9, 2024) ...............................................................36

*\*Am. Hist. Ass'n v. Trump*,
   --- F. Supp. 3d. ---, 2026 WL 1412395 (D.D.C. May 20, 2026) .................................27, 31, 35

*Am. Oversight v. Hegseth*,
   788 F. Supp. 3d 14 (D.D.C. 2025) ...................................................................................35

*\*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) ....................................................................................................20, 31

*\*Att'y Gen. of United States v. Irish People, Inc.*,
   684 F.2d 928 (D.C. Cir. 1982) ..........................................................................................19, 24

*\*Blackledge v. Perry*,
   417 U.S. 21 (1974) ..........................................................................................................11

*\*Bordenkircher v. Hayes*,
   434 U.S. 357 (1978) ........................................................................................................11

*\*California v. Trombetta*,
   467 U.S. 479 (1984) ........................................................................................................25

*In re 2025 Subpoena to Children's Nat'l Hosp.*, 2026 WL 160792 (D. Md. Jan.
   21, 2026) ....................................................................................................................21

*Citizens for Resp. & Ethics in Wash. v. Exec. Off. of President*,
   587 F. Supp. 2d 48 (D.D.C. 2008) ...................................................................................36

*Citizens for Resp. & Ethics in Wash. v. Off. of Admin.*,
   565 F. Supp. 2d 23 (D.D.C. 2008) ...................................................................................36

*Conley v. United States*,
   5 F.4th 781 (7th Cir. 2021) ...........................................................................................20

*Dascola v. City of Ann Arbor*,
  22 F. Supp. 3d 736 (E.D. Mich. 2014).........................................................................34

*Endocrine Soc'y v. FTC*,
  ---F. Supp. 3d ---, 2026 WL 1257289 (D.D.C. May 7, 2026) ...................................31

*\*Frederick Douglass Found. v. District of Columbia*,
  82 F.4th 1122 (D.C. Cir. 2023).............................................................................16, 19

*\*Gayle v. Meade*,
  614 F. Supp. 3d 1175 (S.D. Fla. 2020) .......................................................................37

*Goodfellas, Inc. v. Dunkel*,
  2016 WL 6599977 (M.D. Pa. Nov. 8, 2016) ........................................................16, 17

*Gordon v. Holder*,
  721 F.3d 638 (D.C. Cir. 2013)....................................................................................37

*In re Grand Jury Subpoenas*,
  No. 26-mc-43 (D. Minn. June 22, 2026), Dkt. No. 1....................................................3

*\*In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*,
  823 F. Supp. 3d 1 (D.D.C. Mar. 13, 2026) ......................................................4, 15, 21

*\*In re Grand Jury Subpoenas*
  *Nos.* 2022R00519-A, 2022R00519-B, 2022R00519-C, 2022R00519-D,
  2022R00519-E, 2022R00519-F, 2026 WL 1783899 (D. Minn. June 22, 2026) .....................15

*L.G.M.L. v. Noem*, 800 F. Supp. 3d 100 (D.D.C 2025) ..................................................21

*\*Honeyfund.com Inc. v. Governor*,
  94 F.4th 1272 (11th Cir. 2024) .............................................................................36, 37

*Media Matters for Am. v. FTC*,
  805 F. Supp. 3d 105 (D.D.C. 2025)............................................................................31

*In re Mohammad*,
  866 F.3d 473 (D.C. Cir. 2017).....................................................................................34

*Muthana v. Pompeo*,
  985 F.3d 893 (D.C. Cir. 2021).....................................................................................33

*In re Nat'l Nurses United*,
  47 F.4th 746 (D.C. Cir. 2022)......................................................................................34

*Nken v. Holder*,
  556 U.S. 418 (2009).....................................................................................................37

iii

*President & Fellows of Harvard Coll. v. United States Dep't of Homeland Sec.*,
   788 F. Supp. 3d 182, 205 (D. Mass. 2025). .............................................................22

*Reno v. American-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999).................................................................................................16

*Tate v. District of Columbia*,
   627 F.3d 904 (D.C. Cir. 2010)................................................................................17

*In re the Search of the Real Property & Prop. and Premises of Hannah Natanson*,
   2026 WL 510727, at *6 (E.D. Va. Feb. 24, 2026)...................................................22

*In re Trump*,
   172 F.4th 44 (D.C. Cir. 2026)................................................................................33

*United States v. Abrego*,
   --- F. Supp. 3d ---, 2026 WL 1454303 (M.D. Tenn. May 22, 2026) .................................15, 23

*United States v. Abrego*,
   802 F. Supp. 3d 1055 (M.D. Tenn. 2025).......................................................15, 23

*United States v. Adams*,
   870 F.2d 1140 (6th Cir. 1989) ...............................................................................25

*United States v. Armstrong*,
   517 U.S. 456 (1996)................................................................................................20

*United States v. Carey*,
   816 F. Supp. 3d 129 (D.D.C. 2026).......................................................11, 21, 24

*United States v. Carlisi*,
   1993 WL 339079 (N.D. Ill. Aug. 30, 1993) ..........................................................30

*United States v. Chem. Found.*,
   272 U.S. 1 (1926).................................................................................................20

*United States v. Comey*,
   809 F. Supp. 3d 396 (E.D. Va. 2025) ...................................................................20

*United States v. Fieger*,
   2008 WL 205244 (E.D. Mich. Jan. 24, 2008).......................................................24

*United States v. Gallegos-Curiel*,
   681 F.2d 1164 (9th Cir. 1982) ...............................................................................11

*United States v. Goodwin*,
   457 U.S. 368 (1982)................................................................................................11

*United States v. Grammatikos*,
   633 F.2d 1013 (2d Cir. 1980)...................................................................................25

*United States v. Harris*,
   2021 WL 1546541 (D.D.C. Apr. 20, 2021) ......................................................25, 36

*United States v. Jarrett*,
   2010 WL 1577670 (N.D. Ind. Apr. 20, 2010) .........................................................24

*United States v. Judd*,
   579 F. Supp. 3d 1 (D.D.C. 2021) .............................................................................16

*United States v. Letitia James,* No. 25-cr-122 (E.D. Va. Nov. 4, 2025), Dkt. No.
   46.............................................................................................................................15

*United States v. Lujan*,
   530 F. Supp. 2d 1224 (D.N.M. 2008) ......................................................................30

*United States v. McGraw-Hill Cos., Inc.*,
   2014 WL 1647385 (C.D. Cal. Apr. 15, 2014) ..........................................................25

*United States v. Mechanik*,
   475 U.S. 66 (1986).................................................................................................20

*United States v. Meyer*,
   810 F.2d 1242 (D.C. Cir. 1987)...............................................................................11

*United States v. Mullen*,
   243 F.R.D. 54 (W.D.N.Y. 2006)...............................................................................25

*United States v. Navarro*,
   651 F. Supp. 3d 212 (D.D.C. 2023).........................................................................17

*United States v. Oregon*,
   --- F. Supp. 3d ---, 2026 WL 318402 (D. Or. Feb. 5, 2026) ...................................22

*United States v. P.H.E., Inc.*,
   965 F.2d 848 (10th Cir. 1992) .................................................................................24

*United States v. Patel*,
   2002 WL 1750948 (N.D. Ill. July 26, 2002)............................................................26

*United States v. Petrova*,
   2026 WL 892470 (D. Mass. Apr. 1, 2026) ..............................................................24

*United States v. Pittman*,
   642 F.3d 583 (7th Cir. 2011) ..................................................................................11

*United States v. Salad*,
    779 F. Supp. 2d 503 (E.D. Va. 2011) ..................................................................25

*United States v. Torquato*,
    602 F.2d 564 (3d Cir. 1979)...............................................................................17

*United States v. Vega*,
    826 F.3d 514 (D.C. Cir. 2016) ......................................................................25, 36

*United States v. Webb*,
    2011 WL 322394 (E.D.N.C. Jan. 31, 2011) ........................................................30

*United States v. Weber,* 816 F. Supp. 3d 1168 (C.D. Cal. 2026)...................................22

*United States v. Wilson*,
    262 F.3d 305 (4th Cir. 2001) .............................................................................24

*United States v. Zakhari*, No. 19-cr-208 (W.D. Ky.), Dkt. Nos. 224, 235 ...................23

*\*Vill. of Willowbrook v. Olech*,
    528 U.S. 562 (2000).........................................................................................16

*Walker v. Bellnier*,
    146 F.4th 228 (2d Cir. 2025) .............................................................................20

*Wayte v. United States*,
    470 U.S. 598 (1985).........................................................................................17

*\*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)..............................................................................................9

*World Pro. Ass'n for Transgender Health v. FTC*,
    2026 WL 1257321 (D.D.C. May 7, 2026)............................................................31

**Statutes and Rules**

18 U.S.C. § 1001................................................................................................18

18 U.S.C. § 3231................................................................................................34

Mandamus Act 28, U.S.C. § 1361 .............................................................9, 32, 33

All Writs Act, 28 U.S.C. § 1651 .......................................................9, 10, 33, 34

Presidential Records Act, 44 U.S.C. §§ 2201-09..........................................26, 27, 33

Federal Records Act, 44 U.S.C. § 3101 .......................................................26, 28, 33

**Other Authorities**

Fed. R. Crim. P. 6(e) ................................................................................................5, 14

Former Director of the Central Intelligence Agency John O. Brennan ("Plaintiff" or "Director Brennan") brings this action for preliminary injunctive relief to protect his constitutional rights as the current target of two federal investigations that the U.S. Department of Justice ("DOJ" or "Justice Department") has undertaken at the direct urging of President Trump.

If and when one of those investigations produces an indictment, Director Brennan will challenge and move to dismiss the indictment as the product of unconstitutionally vindictive and selective prosecution. To assess that challenge, the court presiding over Director Brennan's case would review internal materials and communications among the prosecutors and others to determine the true motivations behind the prosecution.

Given the recent record of officials in the U.S. Department of Justice and other Administration officials failing to abide by relevant preservation obligations, it is quite likely that some number of those records will no longer exist by the time those challenges are filed and heard. Director Brennan therefore requests that the Court enjoin the government to preserve any and all materials and communications that are potentially relevant to the consideration of Director Brennan's legal and constitutional challenges to any future criminal charges.

## FACTUAL BACKGROUND

Director Brennan is a former longtime public servant who provided more than 33 years of nonpartisan government service working for six administrations — three Republican and three Democratic — in a wide variety of national security and intelligence positions. His public service career culminated in his term as the Director of the Central Intelligence Agency ("CIA") from March 8, 2013 to January 20, 2017.[1]

---

[1] Declaration of Kenneth L. Wainstein ("Declaration"). For a more comprehensive description of Director Brennan's career, *see* Compl. ¶¶ 14-17.

While serving as Director, he participated in coordinating and issuing the January 6, 2017 Intelligence Community Assessment ("ICA"), which concluded that Russia had interfered in the 2016 presidential election in an effort to boost candidate Donald Trump's chances of winning the election. In the years since the issuance of the ICA, President Trump has often expressed his anger at Director Brennan for his role in the issuance of the ICA and for his regular public criticism of President Trump, his policies and his actions.

Since the beginning of his first administration in 2017, President Trump has made more than 100 verbal or written statements that personally criticize and demonize Director Brennan.[2] In a variety of communications — from Tweets and Truth Social posts to formal media interviews and Presidential statements — President Trump has excoriated Director Brennan as "a very bad guy," "a total low-life," a "loser" and a "political hack."[3] He has declared Director Brennan guilty of crimes ranging from treason to lying before Congress and recently reposted a Truth Social post stating that "Barack Obama and his CIA puppet John Brennan cooked up the entire Russia Hoax to steal the 2016 election and overthrow a duly elected President Trump."[4] And finally, the President has affirmatively demanded that his Justice Department serve up a prosecution, posting a Truth Social message on May 11, 2026 expressly urging Acting Attorney General Blanche to indict Director Brennan, Hillary Clinton and President Obama,[5] and following up two weeks later

---

[2] Appendix of Selected Public Statements of President Donald J. Trump about John O. Brennan (Ex. 1).

[3] *Id.*

[4] Donald J. Trump (@realDonaldTrump), Truth Social (May 11, 2026, at 22:15 ET), https://perma.cc/D4JU-SWQV (Ex. 2).

[5] Donald J. Trump (@realDonaldTrump), Truth Social (May 11, 2026, at 22:40 ET), https://perma.cc/T2GH-LLC2 (Ex. 3).

with the posting of a concocted image showing Director Brennan with seven other Obama Administration officials in orange jumpsuits.[6]

Regrettably, some in the current DOJ and Federal Bureau of Investigation leadership have acceded to that direction, and are converting the Justice Department into a tool of retribution against Director Brennan and the President's other perceived adversaries.[7]

This effort has resulted in the opening of two federal investigations that purport to be investigating Director Brennan for what amounts to phantom criminal conduct.[8] The first

---

[6] Donald J. Trump (@realDonaldTrump), Truth Social (May 24, 2026, at 08:01 ET), https://perma.cc/PN5S-24D9 (Ex. 4).

[7] In detailing how some individuals in the Justice Department have succumbed to pressure from the President to selectively and vindictively target Director Brennan, there is no intent to suggest that responsibility for the resulting lapses is widely shared within the Department. To the contrary, the concerns that necessitate this complaint apply to only a small subset of officials, and the vast majority of Justice Department personnel are maintaining adherence to professional standards and are carrying out their duties in the best tradition of the Justice Department.

[8] Hannah Rabinowitz, *Attorney General Bondi Orders Prosecutors to Start Grand Jury Probe into Obama Officials Over Russia Investigation*, CNN (Aug. 4, 2025), https://perma.cc/HCG8-H5KJ (Ex. 5); Press Release, U.S. Dep't of Just., Justice Department Announces Formation of Strike Force to Assess Evidence Publicized by ODNI (July 23, 2025), https://perma.cc/ZFX6-KC5A (Ex. 6); Ashley Oliver, David Spunt & Jake Gibson, *DOJ Launching Grand Jury Investigation into Russiagate Conspiracy Allegations: Sources*, Fox News (Aug. 4, 2025), https://perma.cc/Q5JS-XTZQ (Ex. 7); LA Times Studios, *Straight to the Point: The Grand Conspiracy Against Trump*, (YouTube, May 7, 2026), https://www.youtube.com/watch?v=h03Rtq3SwYM (https://perma.cc/7EBH-NGDC on file with plaintiff) (Ex. 8); Hang out with Sean Hannity & Fox News, *Kash Patel Uncovers Secret FBI Documents; The De-Weaponization Plan | Hang Out with Sean Hannity*, (YouTube, May 5, 2026), https://www.youtube.com/watch?v=0zhi1bmlIjc (https://perma.cc/QZ2H-WYLZ on file with plaintiff) (Ex. 9); Letter from Jim Jordan, Chairman of the H. Comm. on the Judiciary, 119th Cong., to Pamela J. Bondi, Att'y Gen., U.S. Dep't of Just. (Oct. 21, 2025), https://perma.cc/R257-56FL) (Ex. 10); Taylor Penley, *Jim Jordan Says Probe into Former CIA Director John Brennan is 'Heating Up" as DOJ Seeks Testimony Records*, Fox News (Mar. 26, 2026), https://perma.cc/JWZ3-F6TJ (Ex. 11); Anthony Adragna, Briana Reilly & Jake Sherman, *House Intel Sends Brennan Docs to DOJ*, Punchbowl News (Mar. 25, 2026), https://perma.cc/K46P-ZZP3 (Ex. 12). Given the focus of this motion is on the government's conduct in contexts outside of Director Brennan's personal knowledge, many of the assertions herein will be based on media reports. In *In re Grand Jury Subpoenas*, No. 26-mc-43 (D. Minn. June 22, 2026), Dkt. No. 1, the district court (at 3) expressly took notice of "news reports and other publicly available sources" in finding the constitutional basis to quash federal subpoenas directed at Minnesota Governor Tim Walz and others. Similarly, a judge in this district recently took notice

investigation, as publicly described by senior Justice Department officials, is examining an alleged

"grand conspiracy" involving Director Brennan and a number of Obama and Biden Administration

officials.[9] This fictitious "grand conspiracy" is ill-defined but is apparently based on the theoretical

premise that the investigations into Russian interference in the 2016 election and the other Trump-

related investigations in the succeeding years were all the product of a conspiracy to deny President

Trump his civil rights.[10] The second investigation centers on an October 21, 2025 referral from

Congressman Jim Jordan, Chairman of the House Judiciary Committee, which asserts without

valid support that Director Brennan made false statements about the ICA in a 2023 interview with

the House Judiciary Committee.[11]

     The Justice Department has undertaken separate grand jury investigations as to each of

these matters. In November 2025 and January 2026, the Southern District of Florida ("SDFL")

U.S. Attorney's Office issued two sets of grand jury subpoenas — one set seeking documents

---

of news reports and social media posts to find that prosecutors issued grand jury subpoenas for an improper purpose. *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, 823 F. Supp. 3d 1, 3-6 (D.D.C. Mar. 13, 2026), *reconsideration denied*, 2026 WL 1224046 (D.D.C. Apr. 3, 2026).

[9] Exs. 7, 8; Press Release, Off. of Pub. Affs., CIA Director John Ratcliffe Declassifies Internal Tradecraft Review of 2016 Election ICA to Promote Analytic Objectivity and Transparency (July 2, 2025), perma.cc/UR6K-P7VJ (Ex. 13); Devlin Barrett, *How the Drive to Find a Conspiracy Against Trump Rocked the Justice Dept.*, N.Y. Times (June 8, 2026), https://perma.cc/63DZ-3KUH (Ex. 14).

[10] Ex. 9; Fox News, DiGenova: *John Brennan Should Get a Good Lawyer*, (YouTube, May 18, 2018) (clip of Fox News television broadcast), https://www.youtube.com/watch?v=e7v22N2QrW8 (https://perma.cc/W5XD-GR43 on file with plaintiff) (Ex. 15); Press Release, Off. of the Dir. of Nat'l Intel., New Evidence of Obama Administration Conspiracy to Subvert President Trump's 2016 Victory and Presidency (July 18, 2025), perma.cc/AHS5-RKV5 (Ex. 16).

[11] Ex. 10; Erin Banco, Andrew Goudsward & John Landay, *FBI Questions CIA Officers Over Russia Assessment in Brennan Probe, Sources Say*, Reuters (May 12, 2026), https://perma.cc/K3YQ-ZULR (Ex. 17); Memorandum from Deputy Dir. of CIA for Analysis to Dir. of the CIA (June 26, 2025), perma.cc/4YVQ-SS4X (Ex. 18); Memorandum to Tulsi Gabbard, Dir. of Nat'l Intel., perma.cc/3RGY-2478 (Ex. 19); Memorandum from the Dir. of Nat'l Intel. to [Redacted] (Sep. 2, 2016), perma.cc/KW2W-CJEQ (Ex. 20).

relating to the supposed "grand conspiracy" and the other relating to Director Brennan's alleged false statements to Congress.[12] Then, over the weekend of April 18, 2026, a federal grand jury in Washington, D.C. issued subpoenas to a number of current and former Intelligence Community personnel who had worked on the ICA, requiring them to testify before the grand jury in the false-statements investigation.[13] Those subpoenas were subsequently withdrawn in favor of requests for voluntary interviews.[14]

In their work on these presidentially-driven investigations, certain Justice Department officials have taken steps that clearly violate well-established norms and limitations on prosecutorial conduct. Among those activities have been the following: issuing pronouncements that evince a pre-conceived belief in Director Brennan's guilt;[15] making statements that disclose matters relating to open grand jury investigations, in violation of Federal Rule of Criminal Procedure 6(e);[16] removing or sidelining career prosecutors who have balked at using the criminal process to promote the President's retribution agenda;[17] engaging in forum-shopping by moving

---

[12] Declaration ¶ 6.

[13] Charlie Savage, *U.S. Abruptly Rescinds Subpoenas It Had Just Issued in John Brennan Inquiry*, N.Y. Times (Apr. 21, 2026), https://perma.cc/8ZNT-GXWB (Ex. 21).

[14] Perry Stein, *DOJ's Vast Conspiracy Investigation into Trump Foes Picks Up Steam*, Washington Post (Apr. 21, 2026), https://perma.cc/75GV-HPC5 (Ex. 22).

[15] Ex. 15; Anna Bower & Molly Roberts, *The Grand Conspiracy's New Prosecutor May be the Case's Biggest Liability*, Lawfare (Apr. 27, 2026), https://perma.cc/3LTF-UPW2.

[16] Letter from Counsel for Director John O. Brennan to Chief Judge Cecilia M. Altonaga, U.S. Dist. Ct. for S.D. Fla., at 15-16 (Dec. 22, 2025), https://perma.cc/3UX5-XCMT ("Dec. 22, 2025 Ltr.") (attached as Appendix A to the Complaint).

[17] Eric Tucker, *Key Prosecutor in John Brennan Investigation Has Been Removed From Case, AP Source Says*, AP News (Apr. 17, 2026), https://perma.cc/4362-XJE5 (Ex. 23).

the investigations from federal district to federal district in an effort to find a sufficiently pliant United States Attorney;[18] and engaging in judge-shopping.[19]

Those overreaching actions have violated Director Brennan's constitutional rights and will serve as the basis for challenges to any resulting charges, including motions to dismiss any indictment on the grounds that it is the result of selective and vindictive prosecution. To fully consider those challenges, the reviewing judge would need to scrutinize the motivations of the Justice Department officials who directed, oversaw, or undertook those actions to determine whether they violated Director Brennan's rights, and specifically whether they were motivated by a desire to vindictively prosecute him as an act of retribution.

---

[18] Dec. 22, 2025 Ltr., at 8-9; Ex. 6; Glenn Thrush, Alan Feuer & Charlie Savage, *Trump Loyalists Push 'Grand Conspiracy' as New Subpoenas Land,* N.Y. Times (Nov. 9, 2025), https://perma.cc/EQT7-GLVD (Ex. 24); Vaughn Hillyard & Laura Barrón-López, *U.S. Attorney Investigating Alleged Grand 'Conspiracy' Calls Unit-Wide Meeting After Two Prosecutors Resign*, MS Now (Nov. 10, 2025), https://perma.cc/HYQ2-HY9W (Ex. 25); Ben Penn, *DOJ Miami Office Readies Conspiracy Probe Into Trump Enemies (2),* Bloomberg Law (Nov. 7, 2025), https://perma.cc/X2R9-TU35 (Ex. 26); Julian E. Barnes, Maggie Haberman & Devlin Barrett, *Inquiry Into Ex-C.I.A. Chief John Brennan Stalls After Purge by Gabbard,* N.Y. Times (Sep. 24, 2025), https://perma.cc/A7WT-JARG (Ex. 27). As of the writing of that letter, it was public knowledge that the investigations targeting Director Brennan had migrated through the U.S. Attorneys' Offices for the Eastern District of Pennsylvania and the Eastern District of Virginia before finding a home in SDFL. Recent reporting indicates that FBI Director Kash Patel also shopped the investigations to the Western District of Virginia in July 2025. *See* Ex. 14.

[19] Dec. 22, 2025 Ltr., at 10-12; Charlie Savage, *As Trump's Inquisitors Face Scrutiny, a Divisive Figure Could Play a New Role,* N.Y. Times (Nov. 23, 2025), https://perma.cc/X4C3-LKES (Ex. 28); Peter Charalambous, Katherine Faulders & Alexander Mallin, *Trump Ally Says Grand Jury Empaneled In Florida To Investigate A Sweeping Conspiracy Against Trump,* ABC News (Oct. 25, 2025), https://perma.cc/8BND-EF6N (Ex. 29); Frontline Interview with Mike Davis, PBS (Apr. 4, 2025), https://www.pbs.org/wgbh/frontline/interview/mike-davis/ (https://perma.cc/LV8W-WXF8 on file with Plaintiff) (Ex. 30); Zoe Tillman, *Trump Ally Pushing Conspiracy Case Says Grand Jury Empaneled (1),* Bloomberg Law (Oct. 22, 2025), https://perma.cc/Q4GL-YTHP (Ex. 31); Mike Davis (@mrddimia), Instagram (Nov. 16, 2025), https://perma.cc/7SDL-JCTW (Ex. 32); Perry Stein, Jeremy Roebuck & David Ovalle, *The Trump Prosecutor Probing Former Top Obama Administration Officials*, Washington Post (Nov. 17, 2025), https://perma.cc/J63T-NWK7 (Ex. 33).

That judicial scrutiny in this case would be particularly probing for two reasons. First, the evidence of vindictiveness and selectivity in this matter is so stark and compelling that it necessarily demands a probing review of the constitutionality of the government's actions against Director Brennan. Second, in the category of cases involving the President's retribution targets, the presumption of regularity that has traditionally limited the judicial scrutiny of prosecutorial conduct and decision making has been negated by the Justice Department's recent record of irregular behavior in those matters. As such, the Justice Department's investigative and prosecutive efforts against Director Brennan will be examined and evaluated without a presumption that the prosecutors' conduct was motivated by "regular" prosecutorial considerations.

To perform that scrutiny after an indictment, the Court would demand access to a wide range of the government's communications and materials surrounding its investigative and prosecutive decisions. A careful examination of the prosecutors' emails, texts, instant messages, internal memoranda and the like would enable a court to determine whether their decisions were based on legitimate law enforcement concerns or on a desire to selectively and/or vindictively prosecute Director Brennan.

There is a very real risk, however, that some of these materials and communications will no longer exist by the time any such challenges are filed and the court hears them. This risk exists for two reasons. First, as technology changes and becomes more ephemeral, government officials are increasingly relying on communications that are not routinely preserved, even though they should be, pursuant to the government's statutory and discovery obligations. Among those new technologies are encrypted messaging apps that can be set to auto delete, internal messaging

7

systems such as Microsoft Teams, AI queries, and the like.[20] Second, there is ample evidence in the public record that many in the Administration, and in the Justice Department specifically, are failing to observe their legal obligations to maintain such records.[21] The loss of these records will impair, perhaps fatally, the ability of the court reviewing Director Brennan's challenges to do so on the full record of contemporaneous materials and communications that are so important for divining the true intentions behind the prosecutors' decisions and actions. And, Director Brennan and the Court cannot rely on pre-trial sanctions as a remedy for spoliation of records that should have been preserved and produced in discovery, as it may never come to light that a particular discoverable communication ever existed in the first place and was auto-deleted or otherwise not preserved.

---

[20] U.S. Dep't of Just., *Private Impact Assessment for the Email and Collaboration Services* (2024), https://perma.cc/HS8T-K2SY (announcing DOJ is using Microsoft Teams) (Ex. 34); U.S. Dep't of Just., *AI Inventory* (Jan. 30, 2026), https://perma.cc/DG59-PCFZ (Ex. 35); *see also 2025 DOJ AI Use Case Inventory_downloadable.xlsx*, U.S. Dep't of Just., https://perma.cc/8ERX-WDY4 (spreadsheet showing more than 300 AI use cases at DOJ) (Ex. 36); Anna Bower, *"Anna, Lindsey Halligan Here."*, Lawfare (Oct. 20, 2025), https://perma.cc/DP74-U7XN (Lindsey Halligan using Signal) (Ex. 37). *See* Fed. Trade Comm'n, *FTC and DOJ Update Guidance That Reinforces Parties' Preservation Obligations for Collaboration Tools and Ephemeral Messaging* (Jan. 26, 2024), https://perma.cc/GHL4-TU9C (guidance from DOJ Antitrust acknowledging that "collaboration tools and ephemeral messaging applications, such as Slack, Microsoft Teams, and Signal" "allow, or even automatically enable, immediate and irretrievable destruction of communications and documents").

[21] *See*, *e.g.*, Ex. 37; Nate Jones, *Trump Library Says no Twitter DMs Can be Found, Despite Evidence he Sent Them*, Washington Post (June 3, 2026), https://perma.cc/95LK-AWUR (Ex. 38); Annie Karni, *Meet the Guys who Tape Trump's Papers Back Together*, Politico (June 10, 2018), https://perma.cc/3A7S-6HZY (Ex. 39). The conduct of Justice Department officials who fail to fulfill their legal obligations to maintain such records (*e.g.*, Ex. 37) is contrary to the Justice Manual, which states that "[a]ll prosecution team members should be aware of the government's obligations regarding the preservation and disclosure of electronic communications, or 'e-communications,' which include emails, text messages, SMS (short message service), instant messages, voice mail, pin-to-pin communications, and similar means of electronic communication. … Prosecution team members should preserve for later review and possible disclosure all substantive e-communications created or received by team members during the course of an investigation and prosecution … regardless of content." U.S. Dep't of Just., Just. Manual § 9-5.004 (2019) (Ex. 40).

For this reason, Director Brennan filed a complaint today asking the Court to enjoin the government to preserve any and all materials and communications that are potentially relevant to the consideration of Director Brennan's legal and constitutional challenges to any future criminal charges. As explained in the complaint, absent this injunctive relief, the court hearing those challenges will be severely limited in its ability to fully assess and rule on them, and Director Brennan will be denied the ability to protect his constitutional rights. As an alternative to issuing an injunction, Director Brennan asked this Court to provide the same relief by issuing a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, or the Mandamus Act, 28 U.S.C. § 1361.

Director Brennan now moves this Court to issue a preliminary injunction ordering the government to preserve materials and communications listed in the proposed order to avoid irreparable harm and ensure his ability to protect his constitutional rights in the event that he faces federal charges arising from the ongoing investigations.

## ARGUMENT

To obtain a preliminary injunction, a party must make a clear showing of the following factors: (1) a likelihood of success in litigation on the merits; (2) irreparable harm to the party in the absence of preliminary injunctive relief; (3) a balance of equities between the parties that tips in favor of the moving party; and (4) a finding that preliminary relief serves the public's interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428-29 (2006); *A.B.A. v. DOJ*, 783 F. Supp. 3d 236, 242 (D.D.C. 2025) (Cooper, J.). Based on the above factual discussion, Director Brennan meets all the requirements to be entitled to injunctive relief in this case.

Director Brennan asserts three causes of action. He first seeks an equitable action to enjoin unconstitutional conduct. Alternatively, he seeks a writ of mandamus to protect his rights under

9

the Constitution, or a writ of mandamus in aid of the Court's jurisdiction under the All Writs Act. *See* Compl. ¶¶ 71-77.

## I.    Director Brennan Is Likely To Succeed On The Merits

Director Brennan is likely to succeed on the merits of his complaint seeking injunctive relief. The record clearly demonstrates that he is entitled to an injunction ordering the government to preserve the government's materials and communications that would be used by a court reviewing his vindictive and selective prosecution challenges to divine the government's motivations. The government's obligation to Director Brennan to preserve these materials will derive from the process of litigating these challenges to any indictment. That process will entail (1) the filing of a colorable claim that the indictment was the product of vindictive and/or selective prosecutorial motivations, (2) the hearing and probing examination of those prosecutorial motivations, and (3) the court's demand for and access to internal government materials and communications that reflect those motivations throughout the investigation and potential prosecution of Director Brennan. The result of that process will be a judicial finding that the government will have a future obligation to produce those records, which by law translates into a current obligation to preserve them.

The following sections will describe each step of that process and ultimately establish that the government has an affirmative and current obligation to Director Brennan to preserve the records listed in the attached proposed order.

A. *Director Brennan will Raise a Well-Founded Claim of Vindictive and Selective Prosecution*

The factual record provides a strong basis to challenge any charges that may ultimately arise from the government's current investigations as the product of vindictive and selective prosecution.[22] Both challenges are strongly supported under the facts of this case.

Vindictive Prosecution*:* The law is clear that a prosecutor is constitutionally prohibited from bringing charges to punish a defendant for the exercise of legal rights in the past or to deter that person from exercising such rights in the future. *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978); *United States v. Carey*, 816 F. Supp. 3d 129, 138 (D.D.C. 2026) (Boasberg, C.J.). "The doctrine of vindictive prosecution embodies a basic principle: while the Government can prosecute someone because he broke the law, it cannot prosecute him in retaliation for exercising his rights." *Carey*, 816 F. Supp. 3d at 138-39 (citing *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)) (explaining vindictive prosecution is "especially concerned with chilling effects when it comes to free speech"); *United States v. Goodwin*, 457 U.S. 368, 372 (1982)); *see United States v. Pittman*, 642 F.3d 583, 586 (7th Cir. 2011).

A prosecution is deemed unconstitutionally vindictive when there is a "realistic likelihood of 'vindictiveness.'" *Blackledge v. Perry*, 417 U.S. 21, 27 (1974). In asserting such a challenge, a defendant can point to evidence showing that the prosecution was actually vindictive, such as "direct evidence of an expressed hostility or threat to the defendant for having exercised a constitutional right," *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982), or to circumstantial evidence "that suggests that the Government acted vindictively," *Carey*, 816 F. Supp. 3d at 141 (citing *Goodwin*, 457 U.S. at 384); *see Meyer*, 810 F.2d at 1245.

---

[22] The government's irregular conduct in this matter will also support a number of other challenges.

11

There is more than ample evidence that any charges arising from the criminal investigations into Director Brennan would derive directly from the President's and prosecutors' vindictive desire to punish Director Brennan for his lawful exercise of discretion as CIA Director and for his equally lawful exercise of the First Amendment right to criticize the President as a private citizen.[23] The record is replete with such evidence. As a starting point, the President and Justice Department leadership have been very vocal about their animosity toward Director Brennan. In addition to the above-described statements by the President, *see supra* at p. 3,[24] Acting Attorney General Todd Blanche and FBI Director Kash Patel have both recently appeared on the Hang Out With Sean Hannity television show and talked openly about their determination to build a case against Director Brennan.[25] *See* Compl. ¶48.

The vindictiveness is further established by the highly irregular actions Justice Department leaders have undertaken to execute on the President's mandate. For months, Justice Department leaders shopped the investigations involving Director Brennan from district to district to find a United States Attorney who would be willing to pursue them, despite the lack of factual

---

[23] Notably, this is not the first time President Trump has used the machinery of government to vindictively punish Director Brennan for his criticism. On August 15, 2018, President Trump issued his "Statement on the Revocation of the Security Clearance of Former Director of the Central Intelligence Agency John O. Brennan," in which he cited Director Brennan's "frenzied commentary" and his "unfounded and outrageous allegations — wild outbursts on the internet and television — about this administration" as reasons why he revoked Director Brennan's security clearance, contrary to the customary practice of allowing former Intelligence Community agency heads to retain theirs. 2009 Daily Comp. Pres. Doc. 201800534 (Aug. 15, 2018), https://perma.cc/TW4F-JQ6J.

[24] *See also* Ex. 15; Danielle Wallace, Peter Doocy & Brooke Singman, *Trump Says Brennan, Comey 'Crooked as Hell' Amid FBI Probe, May Have to 'Pay the Price'*, Fox News (July 9, 2025), https://perma.cc/53VN-M2CW.

[25] Ex. 9; Hang Out with Sean Hannity & Fox News, *Todd Blanche: The DOJ Room Full of Evidence Nobody Knew Existed | Hang Out with Sean Hannity* (YouTube, June 2, 2026), https://www.youtube.com/watch?v=wMZHAfSQ9vo (https://perma.cc/9X48-5XX5 on file with Plaintiff) (Ex. 44).

predication.[26] Once they selected the U.S. Attorney for the Southern District of Florida to run the investigations, they engaged in a series of machinations to steer the case to the single judge sitting in the Fort Pierce Division.[27] Then, when the respected career prosecutor assigned to the investigations informed them that there was insufficient evidence to charge Director Brennan, they promptly removed her from the case.[28] They replaced her with Joseph diGenova, a long-time ally of President Trump who has often broadcast his belief that Director Brennan is guilty of

---

[26] Katelyn Polantz, Hannah Rabinowitz & Evan Perez, *Justice Department Leans on Prosecutors in Brennan Probe as Other Trump-Foe Investigations Fizzle*, CNN (Mar. 10, 2026), https://perma.cc/K2LY-TR54 (Ex. 45); Charlie Savage & Alan Feuer, *U.S. Installs a Trump Loyalist to Lead 'Grand Conspiracy' Case Into Trump Foes*, N.Y. Times (Apr. 18, 2026), https://perma.cc/55WV-DDBJ (Ex. 46); The National Desk, *Acting Attorney General Blanche and FBI Director Kash Patel Hold a Press Conference*, U.S. Dep't of Just. (YouTube, Apr. 21, 2026), https://www.youtube.com/live/i4H6gQPcdkg (https://perma.cc/G2PC-X8TY on file with Plaintiff) (Ex. 47); U.S. Attorney Jason Reding Quiñones (@USAReding), X (May 19, 2026, at 20:15 ET), https://perma.cc/WZ7Y-CSUT (Ex. 48); Sam Baron, *DiGenova, Toensing to Newsmax: Brennan Lied to American People*, Newsmax (clip of Newsmax television broadcast, aired Oct. 21, 2025, at 17:20 ET), https://www.newsmax.com/newsmax-tv/joe-digenova-victoria-toensing-john-brennan/2025/10/21/id/1231317/ (https://perma.cc/E77Y-4RDS on file with Plaintiff) (Ex. 49); Kristen Welker & Rebecca Shabad, *Trump Accidentally Posted Message Pressuring Pam Bondi to Charge his Enemies, Source Says*, NBC News (Oct. 10, 2025), https://perma.cc/LX38-A439 (Ex. 50); Laura Jarrett & Ryan J. Reilly*, Todd Blanche Says Americans Should be 'Happy' Trump is Deeply Involved in DOJ*, NBC News (Apr. 14, 2026), https://perma.cc/YYJ4-FW67 (Ex. 51); Rudolph Giuliani, *America's Mayor Live (899): Pam Bondi Out as Attorney General with Top Names Emerging to Lead DOJ* (YouTube, streamed Apr. 2, 2026, at 20:00 ET), https://www.youtube.com/watch?v=5G_nT7kFLPA (https://perma.cc/F3SB-MFZ2 on file with Plaintiff) (Ex. 52); *In-Your-Face DOJ Aide Rides Prosecutors for 'Chief Client' Trump*, Bloomberg Law (Feb. 19, 2026), https://perma.cc/6VQG-3HUM (Ex. 53); Associated Press, *Trump Adds New Lawyer to Russia Investigation Legal Team*, PBS News (Mar. 19, 2018), https://perma.cc/ZP79-WTLH (Ex. 54); *see* Compl. ¶¶ 35-36; Dec. 22, 2025 Ltr., at 8-9.

[27] Ex. 14; Evan Perez & Hannah Rabinowitz, *Inside the Justice Department's Shakeup of the John Brennan Investigation*, CNN (May 8, 2026), https://perma.cc/S58G-9MTK (Ex. 55); Paula Reld & Evan Perez, *Justice Department Adds Former Trump Lawyer to Investigation of Trump Critic John Brennan*, CNN (Apr. 18, 2026), https://perma.cc/Z6XV-DNK3 (Ex. 56); *see* Compl. ¶¶ 36-37; Dec. 22, 2025 Ltr., at 10-13.

[28] Exs. 12, 17.

participation in the supposed "grand conspiracy," calling Director Brennan "evil,"[29] branding him

a "traitor,"[30] and declaring that "[t]his conspiracy began with John Brennan and ends with John

Brennan."[31] They authorized diGenova to build a team to pursue the investigation, for which

diGenova has recruited attorneys with demonstrated devotion to President Trump and his

retribution agenda.[32] And throughout this process, these officials have been routinely sharing

details about the grand jury investigations and their belief in Director Brennan's guilt with the

press, in direct violation of Federal Rule of Criminal Procedure 6(e).[33]

Recent court decisions have found a likelihood of a vindictive prosecution in cases with

facts analogous to those in Director Brennan's case. In *United States v. Abrego*, the district court

granted a motion for discovery to establish a vindictive prosecution based, in part, on derogatory

---

[29] James Hoft, *Joe diGenova on John Brennan's Lost Security Clearance: "A Glorious Day for America"*, at 01:26 (YouTube, Aug. 16, 2018) (clip of Fox News television broadcast, aired May 1, 2018, at 19:15 PM ET), https://perma.cc/BAE6-YVH6 (on file with parties) (Ex. 57).

[30] Tamar Auber, *Joe diGenova to Hannity: John Brennan is the "Real Traitor"*, Mediaite (July 18, 2018), clip of Fox News television broadcast, aired July 18, 2018, at 09:41 ET), https://perma.cc/JDX4-P4WG (on file with parties) (Ex. 58).

[31] Ex. 46. When asked about those comments upon diGenova's appointment, Acting Attorney General Blanche dismissed any bias concerns, saying, "I'm not sure what the conflict of interest would be because somebody has said something in the past about, about a particular matter. That doesn't create a conflict necessarily." The reporter then asked, "Well, it creates a sense of bias, doesn't it? That he's coming into the investigation with preconceived views about a target of your investigation. Isn't that a problem?" At that point, Blanche simply responded, "I just completely disagree with the premise," and gave his assurance that diGenova will be "doing everything ethically" and "will follow the facts." Ex. 47, at 25:04-27:05.

[32] Erin Banco & Andrew Goudsward, *Trump 2020 Election Denier Kurt Olsen Joins Justice Department*, Reuters (June 2, 2026), https://perma.cc/N4YM-UWX5 (Ex. 59); Shawn McCreesh, Alexandra Berzon & Nick Corasaniti, *Trump's Director of Election Security is an Election Denier*, N.Y. Times (Feb. 12, 2026), https://perma.cc/483P-DP3P (Ex. 60); *Trump-Russia: President's Legal Team Shake-up Falters*, BBC (Mar. 25, 2018), https://perma.cc/J8RQ-TFC6 (Ex. 61). Katherine Faulders and Alexander Mallin, *Former Clerk for Judge Who Tossed Trump's Classified Docs Case Now in Senior DOJ Position* (April 7, 2025) https://perma.cc/54T5-GURM.

[33] *See* Dec. 22, 2025 Ltr., at 15-16; *see also* Exs. 9, 22, 37; Ken Dilanian, *DoJ Preparing Subpoenas in Investigation into John Brennan,* MS Now (Nov. 6, 2025), https://perma.cc/W37B-GZPH (Ex. 62).

statements about the defendant by Attorney General Pam Bondi, Deputy Attorney Todd Blanche and Secretary of Homeland Security Kristi Noem. *United States v. Abrego*, 802 F. Supp. 3d 1055, 1057-58 (M.D. Tenn. 2025). The court ultimately dismissed the indictment after finding that the prosecution was, in fact, vindictive. *United States v. Abrego*, --- F. Supp. 3d ---, 2026 WL 1454303, at *10 (M.D. Tenn. May 22, 2026) (finding that the prosecutor was not "free of influence, pressure, or direction from Blanche, Main Justice, the White House, or DHS."). Similarly, in the recent challenge to subpoenas that were issued to the Federal Reserve Board targeting Chairman Jerome Powell, Chief Judge Boasberg quashed the subpoenas, finding "abundant evidence that the subpoenas' dominant (if not sole) purpose [was] to harass and pressure [then Federal Reserve Board Chairman] Powell." *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, 823 F. Supp. 3d 1, 4 (D.D.C. 2026), *reconsideration denied*, 2026 WL 1224046 (D.D.C. Apr. 3, 2026). In supporting that finding, the Chief Judge specifically cited the President's numerous comments, tweets, and other statements in which he criticized Chairman Powell with terms similar to those he uses in his criticism of Director Brennan. *Id*. Finally, in a recent similar challenge to subpoenas issued to Minnesota Governor Tim Walz and other Minnesota officials, Chief Judge Patrick Schiltz quashed the subpoenas after finding "overwhelming evidence that these subpoenas were not issued to investigate, but to harass, coerce, and retaliate." *In re Grand Jury Subpoenas Nos.* 2022R00519-A, 2022R00519-B, 2022R00519-C, 2022R00519-D, 2022R00519-E, 2022R00519-F, 2026 WL 1783899, at *10 (D. Minn. June 22, 2026). *See also* Gov'ts Notice of Reason for Not Providing Pre-Vindictive/Selective Prosecution Mot. Related Disc. at 1, *United States v. Letitia James*, No. 25-cr-122 (E.D. Va. Nov. 4, 2025), Dkt. No. 46 (permitting additional discovery for the defendant's vindictive prosecution claim).

15

Selective prosecution*:* The facts of this case also provide a strong basis for the related claim

of selective prosecution under the equal protection component of the Due Process Clause.[34] It is

well established that "[t]he executive cannot selectively enforce the law in a way that violates the

Constitution," *Frederick Douglass Found. v. District of Columbia*, 82 F.4th 1122, 1137 (D.C. Cir.

2023), and that a prosecution is unconstitutionally selective where the record indicates that the

defendant "has been intentionally treated differently from others similarly situated and that there

is no rational basis for the difference in treatment," *Vill. of Willowbrook v. Olech*, 528 U.S. 562,

564 (2000); *see id.* at 565 (the complaint's allegations that government's actions were "'rrational

and wholly arbitrary" were "sufficient to state a claim for relief under traditional equal protection

analysis"); *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2021) ("[T]he Government cannot

base its decision to prosecute on some unjustifiable standard, such as a defendant's political

beliefs." (internal quotation marks omitted)).

"To make out a selective enforcement claim, the [defendant] must displace 'the

presumption that a prosecutor has acted lawfully,'" *Frederick Douglass Found.*, 82 F.4th at 1137

(quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999)), by

"demonstrat[ing] he was singled out for enforcement from among others similarly situated," *id.*

(internal quotation marks omitted). In reviewing such a claim, a court will "assess whether [the

---

[34] There are two general types of selective prosecution that are recognized as discriminatory and violative of the Equal Protection clause. One is the initiation of a prosecution because the defendant is a member of a particular class (race, gender, religion, etc.), and the other is prosecution of a defendant for exercising a constitutional right, which is otherwise known as a "class-of-one" equal protection claim. *See Goodfellas, Inc. v. Dunkel*, 2016 WL 6599977, at *10 n.4 (M.D. Pa. Nov. 8, 2016) (explaining that a class-of-one equal protection claim focuses on the irrationality of the government's conduct and that "the fact that the Supreme Court has approved of class-of-one equal protection claims suggests that a selective enforcement claim premised on individual rather than class-based discrimination is cognizable"). Director Brennan's selective prosecution challenge would be a class-of-one equal protection claim.

defendant] is similarly situated to a person against whom the law was not enforced across the relevant prosecutorial factors," *id.*, and will find the defendant similarly situated "[w]hen a person's circumstances present no distinguishable legitimate prosecutorial factors that might justify different prosecutorial decisions between him and the defendant," *United States v. Navarro*, 651 F. Supp. 3d 212, 235 (D.D.C. 2023) (Mehta, J). The reviewing court will then determine whether a prosecution is unconstitutionally selective upon a finding of intentional different treatment between the defendant and that person, and no rational basis for the difference. *See Tate v. District of Columbia*, 627 F.3d 904, 910 (D.C. Cir. 2010).[35]

Once again, the government's conduct to date has more than met the evidentiary threshold for such a challenge. The above-cited record of vindictive prosecution provides direct evidence that Director Brennan is being singled out. *See Wayte v. United States*, 470 U.S. 598, 608 (1985) (holding that the government commits constitutionally impermissible selective prosecution when it charges an individual vindictively, *i.e.*, for "the exercise of protected statutory and constitutional rights"); *see also United States v. Torquato,* 602 F.2d 564, 568 (3d Cir. 1979) (holding that the government is prohibited from selectively prosecuting an individual based on "personal or political bias"); *Goodfellas, Inc. v. Dunkel*, 2016 WL 6599977, at \*9 (M.D. Pa. Nov. 8, 2016) (explaining that a "prosecuting body's personal bias unrelated to suspect classifications may serve as a cognizable 'arbitrary factor' for purposes of a selective enforcement claim").

---

[35] Of particular relevance to the case against an Administration critic like Director Brennan is the application of this principle in *Dixon v. District of Columbia*, where the D.C. Circuit deemed that when the government "punishes those who complain against police misconduct and excuses those who do not," it engages in selective prosecution. 394 F.2d 966, 968 (D.C. Cir. 1968). *See also Navarro*, 651 F. Supp. 3d at 235 ("[F]orbidden reason can include prosecution of a defendant based on his 'political beliefs.'" (quoting *Branch Ministries, Inc. v. Rossotti*, 40 F. Supp. 2d 15, 21 (D.D.C. 1999))).

17

The Administration's selective pursuit of Director Brennan can also be seen by comparison with analogous factual scenarios where the Administration has not pursued investigations. Members of Congress have referred numerous appointees from this Administration for investigation of alleged false testimony in violation of 18 U.S.C. § 1001 (the statute Rep. Jordan referred Director Brennan for allegedly violating), yet none have been charged or apparently even investigated based on public information. In March 2025, Congressman Jerry Nadler called for the investigation of then-Director of National Intelligence Gabbard and Central Intelligence Agency Director Ratcliffe for allegedly committing perjury when they testified before the Senate Intelligence Committee regarding the use of Signal to communicate war plans.[36] Congressmen Ted Lieu and Dan Goldman referred then-Attorney General Bondi for investigation of her testimony that the Epstein files contained "no evidence that Donald Trump has committed a crime," when, in fact, it turned out that there was an allegation — which qualifies as "evidence" no matter how credible it might or might not be — that the President had engaged in clearly criminal conduct.[37] Finally, Senator Richard Durbin and Congressman Jamie Raskin sent a letter to Attorney General Bondi referring Secretary of the Department of Homeland Security ("DHS") Kristi Noem for investigation regarding her appearances before the House and Senate Judiciary Committees on March 3 and 4, 2026, in which she made what appear to be false statements across a variety of

---

[36] Press Release, Jerry Nadler, U.S. House of Representatives, 118th Cong., Nadler Calls for Gabbard and Ratcliffe to be Prosecuted for Perjury Following Latest Signalgate Release (Mar. 26, 2025), https://perma.cc/DV2D-A5EK.

[37] Forbes Breaking News, *SHOCK MOMENT: Ted Lieu Accuses Bondi of Lying Under Oath to Her Face Leading to All-Out Clash*, at 3:57-4:00 (YouTube, Feb. 11, 2026), https://www.youtube.com/watch?v=bQ5O0NHWjpg (https://perma.cc/U5DG-BRNR on file with parties); Press Release, Ted Lieu, U.S. House of Representatives, 119th Cong., Reps Lieu and Goldman Call for Special Counsel to Investigate AG Bondi Allegedly Lying Under Oath (Feb. 25, 2026), https://perma.cc/C378-8ZXQ.

topics.[38] In all of these scenarios, there were clear indicia of falsity and of a potential intent to deceive or mislead — unlike the scenario involving Director Brennan where there was no evidence of either falsity or deceit — yet the Administration has apparently chosen not to take any action. This clearly demonstrates how Director Brennan is being "singled out for enforcement from among others similarly situated." *Frederick Douglass Found.*, 82 F.4th at 1137.[39]

B. *Director Brennan's Vindictive and Selective Prosecution Challenges Would Merit a Probing Evaluation by the Reviewing Court*

These well-founded claims of vindictive and selective prosecution will necessarily lead to a probing and thorough hearing and examination of the motivations behind the government's investigative and prosecutive decisions. First, the evidence of vindictiveness and selectivity in this matter is so overwhelming, *see supra* at pp. 12-15, 18-19, that it more than meets the threshold for discovery and fact-finding. *See Carey*, 2026 WL 141919, at *2 (to be entitled to discovery for a vindictive or selective prosecution claim, a defendant need only make a colorable claim thereof); *Att'y Gen. of United States v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982) (same).

Second, there will be no presumption of regularity to restrain the reviewing judge's inquiry into Director Brennan's claims. Courts have traditionally afforded representatives of the

---

[38] Letter from Richard J. Durbin, Ranking Member, S. Comm. on the Judiciary, 119th Cong. & Jamie Raskin, Ranking Member, H. Comm. on the Judiciary, 119th Cong., to Pamela J. Bondi, Attorney General, U.S. Dep't of Just. (Mar. 16, 2026), https://perma.cc/93ZX-EAVU. Those statements include her assertions that (1) DHS was complying with court orders, (2) that a DHS advertising contract had been competitively bid out, (3) that DHS did not detain U.S. citizens, and (4) that detainees receive adequate medical care — all of which appear to be inconsistent with the facts.

[39] It is impossible to do such a comparative selectivity analysis for the "grand conspiracy" case for the simple reason that this case is completely *sui generis*. As an alleged conspiracy without anything resembling a criminal objective, this investigation has no comparable precedent. However, the fact that it is completely unique and that Justice Department leadership has gone to such great lengths to pursue non-existent criminal activity is, in and of itself, strong evidence that the government is selectively targeting Director Brennan for investigation and potential prosecution.

19

government a "presumption of regularity," whereby "in the absence of clear evidence to the contrary, courts presume that [those representatives] have properly discharged their official duties." *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926). This presumption has often operated to temper judicial investigation into prosecutors' actions and motivations. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996); *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J. concurring) (grand jury proceedings entitled to presumption of regularity). But it so operates only to the extent that the prosecutors deserve the trust it represents because "[t]he presumption … is … not an excuse to rubberstamp any and all executive action as lawful absent clear evidence to the contrary." *Walker v. Bellnier*, 146 F.4th 228, 255 n.48 (2d Cir. 2025) (quoting *Conley v. United States*, 5 F.4th 781, 791 (7th Cir. 2021)). In those cases involving the President's perceived adversaries, it has become clear that the Justice Department has lost the requisite trust and that the courts ought to scrutinize the government's activities without any presumption that it adhered to traditional standards of conduct.

With that recognition in mind, federal judges across the country have been closely scrutinizing the government's conduct in these retribution cases without regard to the presumption of regularity. One such case was the now-dismissed false-statements prosecution of former FBI Director James Comey, *see United States v. Comey*, 809 F. Supp. 3d 396, 410 (E.D. Va. 2025) (determining that the Acting U.S. Attorney's conduct "calls into question the presumption of regularity" and ordering that her activities in the grand jury process — where the prosecution has traditionally enjoyed the strongest presumption of regularity — be subject to scrutiny by the court and counsel). Another was the grand jury investigation of Federal Reserve Chairman Jerome Powell, in which Chief Judge Boasberg quashed the grand jury subpoenas, finding that "the

20

Government has offered no evidence whatsoever that Powell committed any crime other than displeasing the President."[40]

We have also seen that enhanced scrutiny in response to the government's efforts against groups that the President has targeted for political or policy reasons. Those groups have included members of immigrant communities,[41] protesters against Administration policies,[42] voting

---

[40] *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, 823 F. Supp. 3d 1 at 4.

[41] Federal judges have been increasingly questioning DOJ representations in immigration enforcement cases. Judge Kelly of the District of Columbia found that the Deputy Assistant Attorney General's assurance in one case that children slated for deportation all "ha[d] parents or guardians in Guatemala who have requested their return" was unfounded and "crumbled like a house of cards [because there was] no evidence before the Court that the parents of these children sought their return." Kyle Cheney & Josh Gerstein, *DOJ Backs Off Claims About Guatemalan Children it Sought to Deport*, Politico (Sep. 10, 2025), https://perma.cc/C7JQ-MXS9. *L.G.M.L. v. Noem*, 800 F. Supp. 3d 100, 109 (D.D.C 2025).

[42] One federal judge in the Northern District of Illinois determined that the Department of Justice had lost the presumption of regularity in its antipathy to protesters. She concluded that the trust underlying that presumption "has been broken" after finding that federal prosecutors handling a case against immigration protesters engaged in misconduct in the grand jury (including excusing grand jurors who disagreed with the government's case) and then redacted the transcripts to cover up that misconduct. Hr'g Tr. at 20-24, *United States v. Rabbitt*, No. 25-cr-693 (N.D. Ill. May 21, 2026), Dkt. 187, https://perma.cc/S55U-H2GJ (Ex. 63). *See also Carey*, 816 F. Supp. 3d at 144 (finding that defendant, a protester, had overcome the presumption of regularity and established a presumption of vindictive prosecution).

21

authorities in Democratic-leaning states,[43] members of the transgender community,[44] institutions

of higher education[45] and journalists.[46]

In light of this Justice Department's highly irregular conduct, courts now recognize that it

no longer deserves the presumption of regularity in certain categories of cases, and in particular in

---

[43] Federal judges handling federal demands for access to state voting records have found a troubling pattern of dissembling by the government representatives, with one judge in California reacting to the "pretextual, formalistic explanations untethered to the reality of what the government has said outside of the courtroom" and declaring that "the Court does not take lightly DOJ's obfuscation of its true motives." *United States v. Weber*, 816 F. Supp. 3d 1168, 1186 (C.D. Cal. 2026. A judge in Oregon similarly found that "[t]he presumption of regularity that has been previously extended to [the government] that it could be taken at its word — with little doubt about its intentions and stated purposes — no longer holds" and that the government's assurances about the regularity of its conduct "must be thoroughly scrutinized." *United States v. Oregon*, --- F. Supp. 3d ---, 2026 WL 318402, at *11 (D. Or. Feb. 5, 2026), *appeal filed,* No. 26-1231 (9th Cir. Mar. 3, 2026).

[44] Federal judges around the country have quashed many of the administrative subpoenas that DOJ has issued to providers of transgender care for children. One judge in Maryland found that the subpoena issued to Children's National Hospital was "an overreach untethered to any lawful purpose," was issued to "intimidate and harass" care providers and children, and was "a pretext to fulfill the Executive's well-publicized policy objective to terminate and block gender affirming healthcare." *In re 2025 Subpoena to Children's Nat'l Hosp.*, 2026 WL 160792, *8 (D. Md. Jan. 21, 2026). A judge in Rhode Island similarly found that the Department's attorneys "have, in their crusade to obtain transgender children's medical records, acted in ways that appear to deviate from the norms of professional conduct expected of attorneys representing the United States." *Rhode Island Hosp.*, 2026 WL 1392565, at *2 n.5 (D.R.I. May 14, 2026).

[45] When Harvard College sought to enjoin the government's effort to suspend entry of international students studying at Harvard, the district court judge found that the government was not entitled to the presumption of regularity because the government's conduct was "so unusual and therefore irregular on its face." *President of Harvard Coll. v. U.S. Dep't of Homeland Sec.*, 788 F. Supp. 3d 182, 205 (D. Mass. 2025), *appeal filed*, No. 25-1627 (1st Cir. July 1, 2025). In making that finding, the judge pointed to the government's constant barrage of threats and disparagement against Harvard and the government's use of a statute directed at foreign nationals in an unprecedented manner to target domestic activities. *Id*.

[46] Upon learning that DOJ lawyers, including a high-level DOJ official, had failed to identify relevant case law in their effort to secure a search warrant for a reporter's materials and communication devices, a federal judge in the Eastern District of Virginia wrote that although "this Court affords government attorneys a presumption of regularity, including by assuming that federal prosecutors have satisfied their obligation to disclose controlling and relevant authority … [t]he government's conduct has disturbed that baseline posture of deference." *n re the Search of the Real Property & Prop. and Premises of Hannah Natanson,* 2026 WL 510727, at *6 (E.D. Va. Feb. 24, 2026).

those against the President's perceived adversaries. As such, any cognizable challenge to the conduct of this Department — especially in a case directed against one of the President's primary targets for retribution — merits careful examination and a full disclosure and airing of all relevant evidence.

C. *The Court Reviewing Director Brennan's Challenges Would Require Access to Government Materials and Communications to Examine the Justice Department's Conduct and Decisions in this Matter*

That careful examination would require the court reviewing Director Brennan's challenge to any indictment to review the materials and communications relating to the government's decision making throughout the investigations and ultimate prosecution. To assess his claim of vindictive and selective prosecution, the court will need to evaluate the motivations of the involved government personnel, up to the President of the United States. That is best accomplished with a thorough examination of the contemporaneous statements, communications, and writings that reflect and reveal these motivations. *See* Compl. ¶ 53.

Courts reviewing such challenges have routinely required discovery of such materials and communications, and have accorded them significant evidentiary weight in their assessment of the government's motivations. In the recent criminal case against Kilmar Armando Abrego Garcia, the man who has been the target of numerous Administration efforts to prosecute and deport him, the judge reviewing the claims of vindictive and selective prosecution ordered the discovery of internal DOJ communications and documents. *United States v. Abrego*, 802 F. Supp. 3d 1055, 1065 (M.D. Tenn. 2025). The court ultimately cited those materials as a basis for finding the government engaged in a vindictive prosecution and for dismissing the indictment against Mr. Abrego. *United States v. Abrego Garcia*, --- F. Supp. 3d ---, 2026 WL 1454303, at *2 (M.D. Tenn. May 22, 2026). In another vindictive prosecution case, the court examined prosecution memoranda, emails among USAO employees and law enforcement relating to the charging

23

decision, calendar entries, meta data and internal summaries of law enforcement statements. Mot. for Protective Order at 3, *United States v. Zakhari*, No. 19-cr-208 (W.D. Ky. Apr. 11, 2014), Dkt. No. 224; May 13, 2024 Hr'g Tr. at 37, 42, 60, 97, 112, *id.*, Dkt. No. 235. In a third case where a defendant raised a vindictive prosecution challenge, the court reviewed internal communications between U.S. Attorneys to assess the government's motivations. *United States v. Wilson*, 262 F.3d 305, 316 (4th Cir. 2001). *See United States v. Jarrett*, 2010 WL 1577670, at *4 (N.D. Ind. Apr. 20, 2010) (stating that "the only method for Jarrett, who, it must be repeated, has already met the threshold for discovery by Order of this Court, to uncover evidence sufficient to prove his claim [of vindictive prosecution] is in the deliberative process of the Government as evidenced through its internal communications" and noting that the court did an *in camera* review of "hundreds of documents" in assessing that claim); *United States v. P.H.E., Inc.*, 965 F.2d 848, 850, 853, 858 (10th Cir. 1992) (district court reviewed prosecution memoranda and letter from U.S. Attorney to Attorney General to evaluate vindictive prosecution claim implicating the First Amendment); *United States v. Fieger*, 2008 WL 205244, at *8 (E.D. Mich. Jan. 24, 2008), *as amended* (Feb. 1, 2008) (in vindictive prosecution claim, the court considered *in camera* material from the government "related to the DOJ's recusal of the three principal Detroit U.S. Attorneys" and ordered that evidence turned over to defendant). *See also Irish People, Inc.*, 684 F.2d at 947 (requiring a colorable claim of vindictive and selective prosecution for discovery); *Carey*, 816 F. Supp. 3d at 143-45 (to be entitled to discovery for a vindictive or selective prosecution claim, a defendant need only make a colorable claim thereof);[47] *United States v. Petrova*, 2026 WL 892470,

---

[47] Notably, a month after Chief Judge Boasberg held a hearing and said, "As I have ruled, I think there is a basis for you to get discovery," Hr'g Tr. at 2:25-3:1, *United States v. Carey*, No. 25-cr-251 (D.D.C. Feb. 2, 2026), Dkt. Nos. 24-25, the government moved to dismiss the case with prejudice, *id.*, Dkt. No. 26 (Mar. 13, 2026).

at *4-7 (D. Mass. Apr. 1, 2026) (granting discovery for a vindictive and selective prosecution where the Trump Administration prosecuted a Russian international student to pressure her to self-deport), *appeal of magistrate's decision to district court docketed*, No. 25-cr-10272 (D. Mass. May 4, 2026); *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (remanding for additional discovery on vindictive prosecution claim); *United States v. McGraw-Hill Cos., Inc.*, 2014 WL 1647385, at *13 (C.D. Cal. Apr. 15, 2014) (applying criminal standards to civil enforcement action and ordering government to provide discovery to defendant on selective-prosecution claim).

D. *The Government's Duty to Produce Materials and Communications in the Future Necessarily Imposes a Duty to Preserve Those Records Now*

As courts have long recognized, the duty to disclose materials to court and/or counsel in the context of criminal litigation necessarily carries with it an obligation to preserve that material. "[The] duties to disclose include[] a correlative duty to preserve that evidence in the first place." *United States v. Vega*, 826 F.3d 514, 533 (D.C. Cir. 2016); *see United States v. Harris*, 2021 WL 1546541, at *2 (D.D.C. Apr. 20, 2021) (Contreras, J). As the Supreme Court held, the government has a duty under the Constitution to preserve evidence "that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984); *see United States v. Grammatikos*, 633 F.2d 1013, 1019 (2d Cir. 1980) ("The government has long been on notice of its duty to preserve discoverable evidence and has been repeatedly warned of the jeopardy in which it places its prosecutions when it disregards this obligation."); *United States v. Mullen*, 243 F.R.D. 54, 77 (W.D.N.Y. 2006) ("The Government is under a continuing duty to preserve discoverable evidence."), *aff'd in part sub nom. United States v. Funderburk*, 243 F.R.D. 53 (W.D.N.Y. 2007); *United States v. Salad,* 779 F. Supp. 2d 503, 508 (E.D. Va. 2011) (ordering government to preserve evidence based on "the Government's obligations under the Federal Rules of Criminal Procedure and the Court's inherent authority to order the preservation of evidence");

25

*United States v. Patel*, 2002 WL 1750948, at \*1 (N.D. Ill. July 26, 2002) ("The Government has agreed to preserve this material pursuant to its duty to disclose material.").

These records are also subject to statutory preservation requirements. Many of these materials and communications — including the communications by which the President is influencing the Justice Department's decision making — are covered by the Presidential Records Act ("PRA"), 44 U.S.C. §§ 2201-09, which governs the preservation of records that are created in the course of the President, Vice President, their staff and their advisers carrying out their constitutional, statutory or other responsibilities. Others are covered by the Federal Records Act ("FRA"), which requires an agency to "make and preserve records containing adequate and proper documentation" of its activities "to protect the legal … rights … of persons directly affected by the agency's activities." 44 U.S.C. § 3101.

As such, the government is obligated to preserve all relevant internal materials and communications in order to fully protect Director Brennan's constitutional right to challenge an indictment in this case.

E.    *The Government Is Not Upholding Its Obligation To Preserve Records*

It is clear, however, that the government is failing to uphold its obligations to preserve the records of the type that will be relevant to Director Brennan's challenges to an indictment in this matter.[48] It is defying those obligations as a matter of both policy and practice.

In terms of policy, this Administration has broken new ground in its hostility to preservation requirements. In April 2026, the Office of Legal Counsel ("OLC") at the Justice Department issued an opinion that the Presidential Records Act is unconstitutional,[49] which was

---

[48] *See* Compl. ¶¶ 54, 57-62.

[49] *See* Constitutionality of the Presidential Records Act, 50 Op. O.L.C. (Apr, 1, 2026) (slip op. at 1, 50), https://perma.cc/V4M7-NQFA (Ex. 73); *see generally Am. Hist. Ass'n*, 2026 WL 1412395, at 3.

followed the next day with a memorandum from White House Counsel David Warrington. The Warrington memorandum significantly limited the circumstances under which text communications need to be retained, despite the fact that a large percentage of the government communications subject to statutory preservation requirements are by text.[50]

This policy failure can also be seen in the government's unwillingness to account for the advent and growing use by Administration officials of ephemeral methods of communication, to include social media posts, encrypted messaging apps that can be set to auto delete, internal messaging systems such as Microsoft Teams, AI queries, and the like.[51] While these ephemeral communications are fully subject to the above-listed preservation requirements, the preservation processes have not been implemented to ensure those requirements are being consistently satisfied. This is despite clear guidance from the National Archives and Research Administration warning federal agencies that "[t]he auto-delete function of third party messaging apps may violate federal record-keeping requirements" and instructing them on the "strict requirements" in the Federal Records Act for the preservation of all such records.[52]

---

[50] Memorandum from David Alan Warrington, Assistant to the President and Counsel to the President, to Staff, Executive Office of the President (Apr. 2, 2026), https://perma.cc/R5G5-UAFW (Ex. 74). *See* Mem. 3-4, *Am. Hist. Ass'n v. Trump*, No. 26-cv-1169 (D.D.C. Apr. 21, 2026), Dkt. No. 19-2. A federal judge of this Court has since enjoined implementation of the OLC opinion, FPI PI Order, *supra* note 50, rejecting the government's claim that it did not need to preserve text messages (or other related messaging apps such as Signal and WhatsApp). FPF Order at 14 & n.6, *supra* note 50.

[51] Ex. 34 (announcing DOJ is using Microsoft Teams); Ex. 35; *see also* Ex. 35; Ex. 37 (Lindsey Halligan using Signal).

[52] Ex. 64.

27

The Administration's disdain for records preservation in its policy is equally reflected in its practice.[53] Officials of this Administration routinely flout their preservation obligations.[54] *See* Compl. ¶¶ 55-56. President Trump has repeatedly deleted social media posts that should be retained,[55] including a Truth Social post in which he directed then-Attorney General Bondi to accelerate prosecutions against James Comey, Adam Schiff and Letitia James.[56] A number of his Cabinet officers and his Vice President engaged in a Signal chat about air strikes in Yemen — the quintessential important government record subject to statutory preservation requirements — but

---

[53] Exs. 41-42; Ex. 63, at 20-24; Memorandum from William Fischer, Chief Records Officer, to Fed. Records Mgmt. Contacts (May 2, 2025), https://perma.cc/TAB5-E2ZX (Ex. 64); Edward Helmore, *Photos Suggest Trump Blocked Toilets with Ripped-up White House Documents*, Guardian (Aug. 8, 2022), https://perma.cc/A7VV-GP25 (Ex. 65); Mike Allen, *Exclusive Photos: Trump's Telltale Toilet*, Axios (Aug. 8, 2022), https://perma.cc/98QG-ULBK (Ex. 66); Rebecca Beitsch, *Whistleblower Accuses Ed Martin of 'Concealing and Destroying' Records Related to DOJ's Weaponization Group*, Hill (Nov. 17, 2025), https://perma.cc/BG4A-UB6V (Ex. 67); Letter from Jamie Raskin, Ranking Member, H. Comm. on the Judiciary, to Edward P. Martin, Jr., Pardon Att'y and Dir., Weaponization Working Grp., U.S. Dep't of Just. (Nov. 17, 2025), https://perma.cc/AZ83-JPKH (Ex. 68); Alexander Mallin, *Top DOJ Official Deletes Post on Alternate 'Anti-weaponization' Compensation Plan*, ABC News (June 3, 2026), https://perma.cc/QNU3-RX5L (Ex. 69); Pls' Reply in Support of Mot. for Rule 37(E) Remedies at 3, 11-14, *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-cv-3698 (N.D. Cal. June 17, 2026), Dkt. No. 421 (Ex. 70); Letter, *United States v. McIver*, No. 25-cr-388 (D.N.J. Sep. 10, 2025), Dkt. No. 26-2 (Ex. 71); Letter Mot. at 2-11, *United States v. McIver*, No. 25-cr-388 (D.N.J. Dec. 23, 2025), Dkt. No. 57 (Ex. 72).

[54] *See generally A Disappearing Data Chronology*, Nat'l Sec. Archive, https://perma.cc/55SN-66EV (last visited June 5, 2026) (collecting instances of the Trump Administration changing or removing information) (Ex. 75). *See also DON'T SHRED ON ME! USAID Documents Destruction Breaks the Law, According to National Security Archive*, Nat'l Sec. Archive, https://perma.cc/3RZE-VJNC (USAID's Acting Executive Secretary inviting employees to shred or burn classified records and personnel files in March 2025) (Ex. 76); Kayla Epstein, *USAID Staff Told to Shred and Burn Classified Documents*, BBC News (Mar. 11, 2025), https://perma.cc/5M2F-JQMZ (Ex. 77).

[55] Bernd Debusmann Jr., *Trump Deletes Post Depicting Him as Jesus-like Figure After Backlash*, BBC News (Apr. 13, 2026), https://perma.cc/6EBF-N3EJ; Alex Nguyen, *A Non-Exhaustive List of Trump's Deleted Posts*, Mother Jones (Apr. 13, 2026), https://perma.cc/M8M7-WARP (Ex. 78).

[56] Ex. 50; Josh Dawsey, Sadie Gurman & Aruna Viswanatha, *Inside the Justice Department Where the President Calls the Shots*, Wall Street Journal (Oct. 8, 2025), https://perma.cc/DD4C-35MH (Ex. 79).

28

the messages for some participants were programmed to auto-delete.[57] And on one recent evening, the Associate Attorney General issued a controversial post indicating that the Department would pursue an alternative to the derailed plan to establish a fund to compensate victims of supposed "weaponization," *see* Compl. 53 n.47, but the post was deleted from his X account the next morning.[58]

This disregard for preservation requirements is also playing out in court proceedings. In the prosecution of Congresswoman LaMonica McIver for allegedly interfering with federal officers during a fracas while conducting an oversight visit to an ICE facility, it was revealed that important discovery material had been lost, including relevant messages on the phones of federal agents at the scene that had not been collected and information on a senior official's phone that had been wiped, despite the existence of a litigation hold.[59] And, in a recent challenge to the Administration's mass terminations of government employees, discovery revealed that high-level officials in the Department of Homeland Security used Signal groups on their personal phones to communicate, and that Justice Department attorneys failed to adequately preserve those materials.[60]

---

[57] Ex. 41. According to reports, the National Security Advisor's team had set up at least 20 Signal group chats to discuss crises in Ukraine, China, Gaza, the broader Middle East, Africa and Europe. Ex. 42. Importantly, the messages about the Yemen strikes were ultimately deleted from the phone of CIA Director John Ratcliffe. Ex. 43.

[58] Ex. 69.

[59] Ex. 72, at 2.

[60] Ex. 70, at 3, 11-14 ("Either DOJ attorneys were willfully blind to their clients' extensive use of disappearing Signal messages in disregard of their obligation to investigate, or they knowingly participated in the concealment.").

F.  *The High Risk that the Government Will Not Preserve the Materials and Communications that Would Be Important for the Protection of Director Brennan's Constitutional Rights Necessitates the Issuance of an Injunction Ordering Their Preservation*

Based on the foregoing, the government's internal materials and communications relating to its investigative and prosecutive decisions in this case will be critical to the consideration and determination of Director Brennan's challenges to the vindictiveness and selectivity of any future indictment. Given the Administration's demonstrably dismissive approach to its preservation obligations, there is a high risk that many of those records will be destroyed or deleted in the normal course of its activities And in those situations where internal communications — which are often the most valuable source of information about the prosecutors' true motivations — were auto deleted or otherwise not preserved, the court cannot count on pre-trial sanctions as a remedy for that spoliation as it may never become aware that the communications ever existed. Therefore, there is a high likelihood that Director Brennan will succeed in his request in Count 1 that the Court enjoin the government to preserve those records in order to protect Director Brennan's ability to defend his constitutional rights against vindicative and selective prosecution.[61] There is an equally high likelihood that Director Brennan, in the alternative, will succeed in his request for mandamus relief in Counts 2 and 3.

---

[61] There is no particularity issue with Director Brennan requesting that the Court order preservation of the broad categories of internal records and communications laid out below without identifying the specific materials that will be relevant to his post-indictment challenges. The law is clear that a court need not determine whether any particular piece of evidence is discoverable before ordering the government to preserve that evidence. Courts have often ordered the government to preserve evidence even where that evidence may not be ultimately discoverable. *See*, *e.g.*, *United States v. Carlisi*, 1993 WL 339079, at *5 (N.D. Ill. Aug. 30, 1993) ("Whether or not those notes constitute discoverable material, the government is not prejudiced by preserving them, and they are ordered to do so."); *United States v. Webb*, 2011 WL 322394, at *3 (E.D.N.C. Jan. 31, 2011) (ordering government to retain copies of agents' rough notes); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1267 (D.N.M. 2008) ("Because the contents of rough interview notes may in some cases be subject to disclosure and because the potential impeachment value of the notes may not become evident until trial, I will grant Defendants' request for an order to preserve rough interview notes").

G. *Director Brennan Is Therefore Highly Likely To Satisfy The Elements Of Each Of The Causes Of Action*

Director Brennan is highly like to satisfy the elements for each of the three causes of action alleged.

Count 1: As for Count 1, Director Brennan requests that this Court enjoin Defendants to preserve all records enumerated below in the Request for Relief in order to prevent the government's violation of his constitutional rights. It is well established that courts have the inherent authority to provide injunctive relief when the government is taking action that may violate an individual's constitutional rights. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England."); *Am. Hist. Ass'n*, 2026 WL 1412395, at *13 (finding plaintiffs likely had an equitable cause of action under *Armstrong* to require that White House officials preserve records pursuant to the PRA); *Media Matters for Am. v. FTC*, 805 F. Supp. 3d 105, 126 (D.D.C. 2025) (Sooknanan, J.) (granting preliminary injunction where plaintiff had a cause of action under *Armstrong* for violation of First Amendment); *Endocrine Soc'y v. FTC*, --- F. Supp. 3d ---, 2026 WL 1257289, at *8 (D.D.C. May 7, 2026) ("[A] plaintiff subject to unconstitutional action by executive officers may sue to enjoin those actions.") (Boasberg, C.J.); *World Pro. Ass'n for Transgender Health v. FTC*, 2026 WL 1257321, at *2 (D.D.C. May 7, 2026) (Boasberg, C.J.) ("A plaintiff may, moreover, sue to enjoin executive officers from maintaining such unconstitutional actions.").

Based on the above factual discussion, Director Brennan is clearly likely to succeed in making the requisite showing for a permanent injunction. *See* Compl. ¶¶ 68-70. As explained above, he will suffer irreparable harm to his constitutional rights in the absence of injunctive relief,

31

given the government's demonstrated inability and/or unwillingness to preserve relevant records and the centrality of those records to his constitutional challenge to an indictment. There are no other remedies at law that can redress that harm, given that pre-trial sanctions may not constitute an adequate remedy in the case of unpreserved communications. *See supra* at p. 9. The balance of equities tips strongly in favor of Director Brennan's interest in vindicating his constitutional rights over any claimed governmental interest in failing to satisfy well-established federal record preservation and discovery requirements. *See supra* at pp. 25-26. Finally, the requested injunction to protect constitutional rights against violative government conduct is squarely in the public interest. *See infra* at pp. 37-38.

For these reasons, Director Brennan is entitled to injunctive relief to require the government to preserve any and all materials and communications that are potentially relevant to the consideration of his legal and constitutional challenges to any future criminal charges, and is likely to succeed in securing that relief.

Count 2: As for Count 2, Director Brennan requests in the alternative that this Court issue a writ of mandamus to enjoin Defendants to preserve all records enumerated below in the Request for Relief in order to prevent the government's violation of his constitutional rights. The Mandamus Act, 28 U.S.C. § 1361, vests this Court with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Under the Mandamus Act, "a court may grant mandamus relief only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Muthana v. Pompeo*, 985 F.3d 893, 910 (D.C. Cir. 2021) (internal quotation marks and brackets omitted). Similarly, to be entitled to a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, a court must find

32

that "(1) the petitioner has no other adequate means of relief; (2) there is a clear and indisputable right to relief; and (3) the court is satisfied that mandamus is appropriate under the circumstances." *In re Trump*, 172 F.4th 44, 51-52 (D.C. Cir. 2026) (internal quotation marks omitted), *vacated*, 2026 WL 1785978 (D.C. Cir. June 22, 2026) (granting rehearing en banc).

Director Brennan meets the three elements to be entitled to a writ of mandamus under the Mandamus Act. He has a clear right to relief, given the demonstrated danger that the government will fail to preserve the records necessary for a court to fully consider his constitutional challenge to any future indictment. *See supra* at pp. 28-30. The Defendants have a clear duty to act because they are required to preserve these types of materials as part of their discovery obligations and the Federal Records Act and the Presidential Records Act. *See supra* at pp. 26-27. And absent injunctive relief — and in light of the government's demonstrated unwillingness to abide by required preservation obligations—Director Brennan has no other adequate legal remedy to avoid or redress the irreparable harm to his ability to vindicate his constitutional rights.

That same factual showing satisfies the elements for relief under the All Writs Act and demonstrates that mandamus would be "appropriate under the circumstances."

For these reasons, it is appropriate for this Court, in the alternative, to issue a writ of mandamus pursuant to 28 U.S.C. § 1361 or § 1651, and Director Brennan is likely to succeed in securing that relief.

Count 3: As for Count 3, Director Brennan requests, in the alternative, that this Court issue an order in aid of its jurisdiction directing Defendants to preserve all records enumerated below in the Request for Relief.

The All Writs Act authorizes this Court to issue all writs "necessary or appropriate" in aid of its jurisdiction, which includes its jurisdiction over criminal proceedings. *See* 18 U.S.C. § 3231;

33

*In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022) (finding the court had jurisdiction to issue a writ of mandamus in aid of future jurisdiction); *In re al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015) (a court can "can issue a writ of mandamus *now* to protect the exercise of [its] appellate jurisdiction *later*"); *In re Mohammad*, 866 F.3d 473, 475 (D.C. Cir. 2017) (same); *Dascola v. City of Ann Arbor*, 22 F. Supp. 3d 736, 746-47 (E.D. Mich. 2014) (granting writ of mandamus in aid of district court's jurisdiction). The very purpose of the requested injunction in this matter is to protect the Court's jurisdiction over the criminal proceedings. *See* 18 U.S.C. § 3231. Director Brennan asks the Court to act now so that it has the evidence necessary to review the challenges to any indictment filed in the future. It is therefore "necessary" and "appropriate" that the Court now enjoin the government to preserve those records until such time as they are required for production and review in a pretrial hearing examining whether the government acted vindictively and selectively in charging Director Brennan.

For these reasons, it is appropriate for this Court, in the alternative, to issue a writ of mandamus pursuant to 28 U.S.C. § 1651, and Director Brennan is likely to succeed in securing that relief.

## II.    Director Brennan Is Likely To Suffer Irreparable Harm

It is also clear that Director Brennan will suffer irreparable harm if the Court does not enjoin the government to preserve that material. In light of this Justice Department's increased use of ephemeral communication methods and widespread disregard of its discovery and records preservation obligations over the past year and a half, *see* Compl. ¶¶ 57-62, there is no reason to expect that these obligations will be observed in this case. To the contrary, given the animus and overreaching directed at Director Brennan by the President and senior Administration officials, this is the last case where we should expect the Justice Department to suddenly honor these

obligations. Rather, the only reasonable inference from this factual background is that the Justice Department leaders will act to the detriment of Director Brennan's constitutional rights by their continued neglect of their preservation obligations.

As a result, it is highly likely that Director Brennan and the reviewing court will be denied access to evidence that is central to his constitutional challenges in the absence of a judicial order directing the government to preserve those materials.[62] As judges of this Court have previously held, "[u]npreserved or improperly destroyed documents are lost forever to history, and therefore injury from failure to preserve presidential records or the unlawful destruction of those records would be irreparable." *Am. Hist. Ass'n v. Trump*, --- F. Supp. 3d. ---, 2026 WL 1412395, at *25 (D.D.C. May 20, 2026) (Bates, J.) (internal quotation marks omitted) (issuing injunctive relief to require that White House officials comply with the PRA), *appeal docketed*, No. 26-5186 (D.C. Cir. June 3, 2026); *see Am. Oversight v. Hegseth*, 788 F. Supp. 3d 14, 29 (D.D.C. 2025) (Boasberg, J.) (finding when Signal messages sent among high-level Administration officials about military plans are deleted, the harm is irreparable); *Am. First Legal Found. v. Becerra*, 2024 WL 3741402, at *14 (D.D.C. Aug. 9, 2024) (Contreras, J.) (finding CDC's deleting employees' emails was irreparable harm); *Citizens for Resp. & Ethics in Wash. v. Off. of Admin.*, 565 F. Supp. 2d 23, 29-30 (D.D.C. 2008) (Kollar-Kotelly, J.) (noting irreparable harm if records are disposed of during litigation challenging the government's treatment of those records); *Citizens for Resp. & Ethics in*

---

[62] As a practical matter, it is possible that some materials and communications have already been lost to the historical record, in which case the application of sanctions may be the only potential remedy for their loss. However, the requested judicial order would preserve those existing relevant materials generated in the past, as well as those to be generated between now and when a court reviews Director Brennan's challenge to an indictment. Given that the latter period would necessarily include the government's deliberations leading up to issuance of an indictment, it would be particularly critical to subject the records of these deliberations to a judicial preservation order.

*Wash. v. Exec. Off. of President*, 587 F. Supp. 2d 48, 59–61 (D.D.C. 2008) (Kennedy, Jr., J) (finding "real and immediate" harm to plaintiff where plaintiff alleged that "e-mails will be lost in the future").

### III.    The Balance of Equities Favors Director Brennan

The balance of equities leans strongly in Director Brennan's favor. On Director Brennan's side, the constitutional rights to Equal Protection and Due Process in the criminal justice system is in the balance. There is no interest more deserving of protection in our jurisprudence and in our courts than these constitutional rights.

On the government's side, it is impossible to identify a defensible interest that cuts against this injunctive relief, given the government is already obligated to preserve the materials that are the subject of the requested injunction.[63] Simply put, the prosecutors have no cognizable equity in failing to preserve public records or in violating Director Brennan's constitutional rights. *See, e.g., Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1283 (11th Cir. 2024) ("[T]he government has no legitimate interest in enforcing an unconstitutional law.").

### IV.    A Preliminary Injunction Supports The Public Interest

The public interest leans equally strongly in Director Brennan's favor.[64] It is well-established that the public has an overwhelming interest in the government abiding by the Constitution and affording a criminal defendant the opportunity to defend his or her constitutional rights. *See Honeyfund.com Inc.*, 94 F.4th at 1283 ("[A] preliminary injunction is not contrary to

---

[63] As explained *supra*, *see* p. 25, the government will certainly be required to provide this material in discovery, and as courts have often explained, "th[e] duties to disclose include[] a correlative duty to preserve that evidence in the first place." *United States v. Vega*, 826 F.3d 514, 533 (D.C. Cir. 2016); *see United States v. Harris*, 2021 WL 1546541, at *2 (D.D.C. Apr. 20, 2021) (Contreras, J) (same).

[64] *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (when the government is a party, the balance of equities and public interest merge).

the public interest because it is in the public interest to protect First Amendment rights."); *A.B.A. v. DOJ*, 783 F. Supp. 3d at 247-48 ("[G]overnment actions in contravention of the Constitution are 'always contrary to the public interest.'" (first quotation marks omitted, remaining quotation marks ultimately quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013))); *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1206 (S.D. Fla. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights." (internal quotation marks omitted)). Accordingly, the public has a general interest in its courts protecting constitutional rights against government overreaching. It also has a particular interest in seeing that courts are providing that protection during this time of serious concern about the Justice Department's machinations and the ability of the criminal system to provide impartial justice despite those machinations. To that end, the public's interest is directly served by an order directing the government to preserve the materials that will be necessary for Director Brennan to defend his constitutional rights.[65]

Moreover, in assessing the public's interest, the Court need not worry that granting an injunction in this case will open the floodgates to similar suits from other criminal defendants seeking the courts' assistance in forcing the government to observe its preservation obligations in their cases. The exceptionally strong indication of vindictiveness in this case sets it apart from other criminal matters, as it so clearly establishes the need for the judicial scrutiny that will require access to the government's internal materials and communications at a hearing on a vindictive prosecution motion. The vast majority of defendants cannot demonstrate such clear vindictiveness, and therefore cannot show that the government will be obligated to produce those records at a post-

---

[65] In the four-factor analysis for injunctive relief, a strong likelihood of success in showing that the government is violating constitutional rights largely resolves the equity balance and public interest factors of the analysis. *See, e.g., Honeyfund.com Inc.*, 94 F.4th at 1283; *A.B.A. v. DOJ*, 783 F. Supp. 3d at 246; *Gordon*, 721 F.3d at 653; *Gayle*, 614 F. Supp. 3d at 1206.

indictment hearing. As such, they will be unable to establish a pre-indictment right to judicial enforcement of the government's obligation to preserve those records.

## <u>CONCLUSION</u>

For the reasons laid out in this Motion and in the Complaint filed today, Director Brennan has met the requirements for equitable relief in the form of a preliminary injunction. Director Brennan therefore requests that the Court preliminarily enjoin Defendants to preserve any and all materials and communications that are potentially relevant to the consideration of his legal and constitutional challenges to any future criminal charges.

<table>
<tr><td>Dated:  July 1, 2026</td><td>/s/ Kenneth L. Wainstein<br>Kenneth L. Wainstein, DC Bar # 451058<br>Natasha Harnwell-Davis, DC Bar # 1719228<br>Mayer Brown LLP<br>1999 K Street, NW<br>Washington, DC 20006-1101<br>Telephone: (202) 263-3000<br>KWainstein@mayerbrown.com<br><br>Dan Gelber<br>*Pro hac vice forthcoming*<br>Gelber Schachter & Greenberg, P.A.<br>One Southeast Third Avenue, Suite 2600<br>Miami, Florida 33131-1715<br>Telephone: (305)728-0954<br>dan@gsgpa.com<br><br>Joan Silverstein<br>*Pro hac vice forthcoming*<br>Gelber Schachter & Greenberg, P.A.<br>One Southeast Third Avenue, Suite 2600<br>Miami, Florida 33131-1715<br>Telephone: (305) 728-0950<br>jsilverstein@gsgpa.com</td></tr>
</table>