**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JOHN O. BRENNAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 26-2323 (JMC) |
| | ) | |
| TODD W. BLANCHE, in his official capacity as Acting Attorney General, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD.......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

    I.      Plaintiff Is Unlikely to Succeed on the Merits of His Claims................................ 5

            A.      Plaintiff Lacks Standing Because His Claimed Future Injury Is Speculative, Not Imminent .......................................................................... 5

            B.      Plaintiff's Claims Are Unripe .................................................................. 11

            C.      Plaintiff Lacks a Valid Cause of Action .................................................. 13

    II.     Plaintiff Cannot Show a Likelihood of Imminent Irreparable Harm .................... 21

    III.    The Balance of the Equities Weighs Strongly Against Injunctive Relief............. 23

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ................................................................................................... 12

*Am. First Legal Found. v. Becerra*,
No. 1:24-cv-1092, 2024 WL 3741402 (D.D.C. Aug. 9, 2024) ............................................. 22

*Am. Hist. Ass'n. v. Trump*,
--- F. Supp. 3d ---, 2026 WL 1412395 (D.D.C. May 20, 2026) .................................. 11, 17, 22

*Am. Oversight v. Hegseth*,
788 F. Supp. 3d 14 (D.D.C. 2025) ....................................................................... 22

*Arizona v. Youngblood*,
488 U.S. 51 (1988) ............................................................................................. 15, 16

*Armstrong v. Exceptional Child Center, Inc.*
575 U.S. 320 (2015) ............................................................................................. 13

*Barnhart v. Devine*,
771 F.2d 1515 (D.C. Cir. 1985) ............................................................................. 18

*Barrett v. Atl. Monthly Group LLC,*
No. 1:22-cv-49-LLA, 2024 WL 4119400 (D.D.C. Sep. 9, 2024) ........................................... 8

*Bergh v. Washington*,
535 F.2d 505 (9th Cir. 1976) ............................................................................... 24

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978) ............................................................................................. 9

*Branch Ministries v. Rossotti*,
211 F.3d 137 (D.C. Cir. 2000) ............................................................................... 9

*California v. Trombetta*,
467 U.S. 479 (1984) ......................................................................................... 14, 15

* *Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ....................................................................... 2, 5, 21, 23

*Cisco Sys., Inc. v. Doe I*,
146 S. Ct. 1882 (2026) ....................................................................................... 13

*Citizens for Resp. & Ethics in Wash. v. Off. of Admin.*,
565 F. Supp. 2d 23 (D.D.C. 2008) ....................................................................... 22

*Citizens for Resp. & Ethics in Washington v. Exec. Off. of President*,
587 F. Supp. 2d 48 (D.D.C. 2008) ....................................................................... 22

\* *Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................................ *passim*

*Clinton v. Goldsmith*,
526 U.S. 529 (1999) ....................................................................................... 19

*Dalton v. Specter*,
511 U.S. 462 (1994) ....................................................................................... 16

*Defenders of Wildlife v. Perciasepe*,
714 F.3d 1317 (D.C. Cir. 2013) ...................................................................... 7

*Elec. Privacy Info. Ctr. v. Pres. Advisory Comm'n on Election Integrity*,
878 F.3d 371 (D.C. Cir. 2017) ..................................................................... 5-6

*Ex parte Rowland*,
104 U.S. (14 Otto) 604 (1881) ...................................................................... 19

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ......................................................................................... 6

*Florida v. HHS*,
19 F.4th 1271 (11th Cir. 2021) ...................................................................... 24

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) ........................................................................ 5

*Frederick Douglass Found., Inc. v. District of Columbia*,
82 F.4th 1122 (D.C. Cir. 2023) ....................................................................... 9

*FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*,
146 S. Ct. 1546 (2026) .................................................................................. 13

*Glob. Health Council v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) .......................................................................... 16

*Hanson v. District of Columbia*,
120 F.4th 223 (D.C. Cir. 2024) ....................................................................... 5

*Hecate Energy LLC v. FERC*,
126 F.4th 660 (D.C. Cir. 2025) ................................................................. 7, 10

\* *Illinois v. Ferriero*,
60 F.4th 704 (D.C. Cir. 2023) ....................................................... 2, 17, 18, 19

*In re Al Baluchi*,
952 F.3d 363 (D.C. Cir. 2020) ...................................................................... 18

*In re al-Nashiri*,
791 F.3d 71 (D.C. Cir. 2015) ........................................................................ 18

iii

*In re Cheney*,
  406 F.3d 723 (D.C. Cir. 2005) ........................................................................................ 18

*In re Medicare Reimbursement Litig.*,
  414 F.3d 7 (D.C. Cir. 2005) ...................................................................................... 17, 19

\* *In re Tennant*,
  359 F.3d 523 (D.C. Cir. 2004) .................................................................................. 19, 20

*Kim v. FINRA*,
  698 F. Supp. 3d 147 (D.D.C. 2023) ................................................................................ 23

\* *Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................... 5, 6, 9

*Murthy v. Missouri*,
  603 U.S. 43 (2024) .................................................................................................. 6, 7, 10

\* *Nat'l Treasury Emps. Union v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996) .............................................................................. 2, 11, 12

*Nken v. Holder*,
  556 U.S. 418 (2009) ......................................................................................................... 5

*Storch v. Hegseth*,
  804 F. Supp. 3d 216 (D.D.C. 2025) ................................................................................ 21

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ......................................................................................................... 5

*Trump v. New York*,
  592 U.S. 125 (2020) .................................................................................................... 2, 12

*United States ex rel. Chicago Great W. R.R. Co. v. ICC*,
  294 U.S. 50 (1935) ......................................................................................................... 18

*United States ex rel. McLennan v. Wilbur*,
  283 U.S. 414 (1931) ....................................................................................................... 18

*United States v. Armstrong*,
  517 U.S. 456 (1996) ......................................................................................................... 9

*United States v. Belcher*,
  762 F. Supp. 666 (W.D. Va. 1991) ................................................................................. 22

*United States v. Carey*,
  816 F. Supp. 3d 129 (D.D.C. 2026) .................................................................................. 8

*United States v. Carlisi,*
  No. 92 CR 1064, 1993 WL 339079 (N.D. Ill. Aug. 30, 1993) ........................................ 14

*United States v. Chem. Found.*,
  272 U.S. 1 (1926) ................................................................................. 10

*United States v. Elliott*,
  83 F. Supp. 2d 637 (E.D. Va. 1999) ..................................................... 22

*United States v. Grammatikos*,
  633 F.2d 1013 (2d Cir. 1980) ............................................................... 14

*United States v. Harris*,
  No. 1:20-cr-108, 2021 WL 1546541 (D.D.C. Apr. 20, 2021) ............... 14

*United States v. Laurent*,
  607 F.3d 895 (1st Cir. 2010) ................................................................. 22

*United States v. Lujan*,
  530 F. Supp. 2d 1224 (D.N.M. 2008) ................................................... 14

*United States v. Mullen*,
  243 F.R.D. 54 (W.D.N.Y. 2006) ........................................................... 14

*United States v. Patel*,
  No. 01 CR 716, 2002 WL 1750948 (N.D. Ill. July 26, 2002) ............... 14

*United States v. Salad*,
  779 F. Supp. 2d 503 (E.D. Va. 2011) ................................................... 14

*United States v. Sivilla*,
  714 F.3d 1168 (9th Cir. 2013) .............................................................. 22

*United States v. Vanterpool*,
  No. 1:25-cr-138-RJL, 2026 WL 810005 (D.D.C. Mar. 24, 2026) ........ 21-22

*United States v. Vega*,
  826 F.3d 514 (D.C. Cir. 2016) (per curiam) .................................... 14, 16

*United States v. Webb*,
  No. 2:10-CR-41-H-3, 2011 WL 322394 (E.D.N.C. Jan. 31, 2011) ....... 14

*United States v. Wilson*,
  262 F.3d 305 (4th Cir. 2001) .................................................................. 9

*United Transp. Union v. Nat'l Mediation Bd.*,
  No. Civ. A. 93-0428 (HHG), 1993 WL 764220 (D.D.C. June 8, 1993) .............. 24

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
  751 F.2d 721 (5th Cir. 1985) ................................................................. 24

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ................................................................................ 6

*Winter v. Nat. Res. Def. Council,*
  555 U.S. 7 (2008) ................................................................................................ 4, 5

*Youngstown Sheet & Tube Co. v. Sawyer,*
  343 U.S. 579 (1952) ............................................................................................. 16

**Constitutional Provisions**

U.S. Const. amend. V ............................................................................................ 14

U.S. Const. amend. XIV, § 1 ................................................................................. 14

**Statutes**

28 U.S.C. § 1361 ............................................................................................... 4, 17

28 U.S.C. § 1651 ........................................................................................... 2, 4, 19

**Other Authorities**

Charles Allen Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) ........... 5

**INTRODUCTION**

In this lawsuit, Plaintiff John Brennan asks this Court to take the unprecedented step of managing potential discovery in a hypothetical future criminal case in Florida.  He professes fear that the federal government will indict him in the Southern District of Florida, and he asks this Court to order the federal government to preserve "any and all materials . . . that are potentially relevant to the consideration of Director Brennan's legal and constitutional challenges to any future criminal charges," including "but . . . not limited to" a set of eleven broad document requests that reads like the discovery wish of a civil plaintiff.  *See* Compl., Request for Relief, ECF No. 1.  In this Motion for Preliminary Injunction, he asks this Court preliminarily to order that relief now.  *See* Proposed Order, ECF No. 2-82.  Plaintiff cannot cite a single example of a court ever directing the government to preserve documents because someone who is *not* a criminal defendant *might* need them if he is indicted *in the future*.  His request for that extraordinary relief fails at every step.

To start, he fails to present a case or controversy within the jurisdiction of the federal courts.  Article III standing requires an "actual or imminent" injury in fact.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  When a plaintiff predicates a claim on threatened future injury, "that threatened injury must be certainly impending to constitute injury in fact."  *Id.* at 410 (citations omitted).  Yet Plaintiff's claimed future harm rests on a long chain of contingencies: that the Department of Justice will seek an indictment, that a grand jury will return an indictment, that he will move to dismiss the claims for vindictive and selective prosecution, that the court presiding over his criminal case will find that he has met the threshold to obtain discovery on such a motion, and that the government will have failed to preserve documents that this future court determines are discoverable.  Such contingencies rest on a chain of speculative steps about future actions not only of the Executive Branch, but also independent actors such as a grand jury and another Article III judge.  That these "contingent future events that may not occur as anticipated, or indeed may

not occur at all," *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation omitted), also render Plaintiff's claims unripe. For this Court to weigh in on discovery obligations in a hypothetical criminal case that has not arisen would be to "prematurely entangl[e] [it]sel[f] in abstract disagreements." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996).

Plaintiff is also unlikely to succeed on the merits of his claims because he lacks a valid cause of action. Plaintiff asserts an equitable cause of action to prevent violations of his constitutional rights, but no court has ever held that someone who is not a criminal defendant has a constitutional right to preservation of documents that might be relevant to a potential future criminal case. Even for criminal defendants, courts have sharply limited constitutional preservation obligations to materials central to a defendant's defense, not all potentially relevant materials as Plaintiff asserts. Plaintiff gets no further by seeking a writ of mandamus or relief under the All Writs Act. Mandamus relief requires "a clear and indisputable right" to relief, government violation of "a clear duty to act," and lack of any "adequate alternate remedy." *Illinois v. Ferriero*, 60 F.4th 704, 713 (D.C. Cir. 2023). Far from clear, Plaintiff's claimed right and duty are unsupported by any case law. The All Writs Act permits a court to issue writs in aid of its jurisdiction, 28 U.S.C. § 1651, but Plaintiff can neither articulate how this Court would have jurisdiction over a future criminal indictment he expects to arise in Florida, nor how a document preservation order is necessary to preserve such jurisdiction.

Nor can Plaintiff show a likelihood of imminent irreparable harm, as required for a preliminary injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Rather than being imminent, his claimed future harm of being deprived of documents in a potential future criminal case rests on numerous speculative contingencies. And even if that

harm comes to pass, it is not irreparable, because courts handling criminal cases have authority to issue appropriate relief for spoliation.

Finally, the equitable balance confirms that the Court should not grant Plaintiff's requested injunction. Considerations of comity weigh against this Court reaching out to prejudge issues that would come before the judge handling his potential future criminal case, if he is ever indicted. And because Plaintiff could bring any appropriate motions regarding document preservation or spoliation in such a case, his interest in preemptive extraordinary relief is slight.

## BACKGROUND

Plaintiff served as Director of the CIA under President Obama after a long career in government service. *See* Compl. ¶¶ 14-16. Relying largely on media reports, Plaintiff contends that the Department of Justice has opened two criminal investigations against him. *See id.* at 3 & n.8. He asserts that the U.S. Attorney's Office of the Southern District of Florida has issued grand jury subpoenas related to these two alleged investigations. Mem. 4-5. Plaintiff is concerned that these alleged investigations will lead to one or more indictments, *id.* at 1, in the Fort Pierce Division of the Southern District of Florida, where he alleges the investigations are operating, *see id.* at 13; *see also* Compl. ¶ 37 (criticizing the Department of Justice allegedly locating investigations at the Fort Pierce Division as a "judge-shopping plan"). Plaintiff asserts that "[i]f and when one of those investigations produces an indictment, Director Brennan will challenge and move to dismiss the indictment as the product of unconstitutionally vindictive and selective prosecution." Mem. 1. If he is indicted, Plaintiff intends to seek discovery of "the government's communications and materials surrounding its investigative and prosecutive decisions" in support of a vindictive and selective prosecution motion. *Id.* at 7. He predicts that the court handling a potential future indictment "would demand access" to those materials. *Id.*

3

Yet he contends that "[t]here is a very real risk" that the discovery materials he would intend to seek would not be preserved. *Id.* He contends that this risk exists for two reasons. First, he asserts that the federal government uses some electronic applications "that can be set to auto delete." *Id.* Second, he cites materials (including media reports) describing incidents that do not involve him or the alleged investigations, in which he asserts that certain government officials have not fully complied with record preservation obligations. *See id.* at 8, 28-29.

Based on these assertions, Plaintiff now seeks a preliminary injunction (and ultimately seeks a permanent injunction) directing Defendants to preserve all materials "that are potentially relevant to the consideration of Director Brennan's legal and constitutional challenges to any future criminal charges." Proposed Order 1; *see also* Compl., Request for Relief. The materials he asks the Court to order Defendants to preserve "encompass[] but [are] not limited to" eleven enumerated categories of documents. Proposed Order 1-4.

Plaintiff's Complaint brings three causes of action, each of which Plaintiff presses as a basis for a preliminary injunction. First, he brings a claim for "equitable action to enjoin unconstitutional conduct," Compl., Count I (capitalization omitted), based on the argument that it would violate his constitutional rights if the government failed to preserve documents, *id.* ¶¶ 66-70. Second, he seeks a writ of mandamus under the Mandamus Act, 28 U.S.C. § 1361, and All Writs Act, *id.* § 1651, again seeking an order directing the government to preserve documents, Compl. ¶¶ 71-74. Finally, he brings a claim for "injunctive relief in aid of the Court's jurisdiction under the All Writs Act," Compl., Count III (capitalization omitted), arguing that the All Writs Act justifies the injunction he seeks, *id.* ¶¶ 75-77.

## LEGAL STANDARD

Plaintiff seeks a preliminary injunction—"an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). To obtain such extraordinary relief,

4

a plaintiff "must show (1) 'he is likely to succeed on the merits,' (2) 'he is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in his favor,' and (4) issuing 'an injunction is in the public interest.'" *Hanson v. District of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (quoting *Winter*, 555 U.S. at 20), *cert. denied*, 145 S. Ct. 2776 (2025) (mem.). When "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiff must do more than merely show the possibility of prevailing on the merits, but rather must show "a substantial likelihood of success on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Plaintiff also must establish irreparable harm, as failure do so is "grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy*, 454 F.3d at 297; *accord* Charles Allen Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) ("Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief.").

## ARGUMENT

### I.     Plaintiff Is Unlikely to Succeed on the Merits of His Claims

#### A.     Plaintiff Lacks Standing Because His Claimed Future Injury Is Speculative, Not Imminent

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The plaintiff bears the burden of establishing all three elements of standing. The 'manner and degree of evidence required' depends on the 'stage[] of the litigation." *Elec. Privacy*

*Info. Ctr. v. Pres. Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017) (quoting *Lujan*, 504 U.S. at 561). "In the context of a preliminary injunction motion, [courts] require the plaintiff to show a substantial likelihood of standing under the heightened standard for evaluating a motion for summary judgment. Thus, the plaintiff cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts that, if taken to be true, demonstrate a substantial likelihood of standing." *Id.* (cleaned up).

To support standing, "an injury must be concrete, particularized, and actual or imminent." *Clapper*, 568 U.S. at 409 (citation omitted). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Id.* (emphasis omitted) (quoting *Lujan*, 504 U.S. at 564 n.2). To that end, the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Id.* (alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("[T]he injury must be actual or imminent, not speculative— meaning that the injury must have already occurred or be likely to occur soon."). That is, "[t]o establish standing, the plaintiff[] must demonstrate a substantial risk that, in the near future, [he] will suffer an injury that is traceable to a Government defendant and redressable by the injunction [he] seek[s]." *Murthy v. Missouri*, 603 U.S. 43, 49-50 (2024).

Plaintiff fails to show a substantial likelihood of standing because his claimed future injury is speculative, not imminent. Plaintiff's claimed future injury is that documents he will be entitled to obtain to litigate a motion to challenge a future criminal indictment will be lost. That potential future harm rests on numerous contingencies: (1) the Department of Justice will seek an indictment

of Plaintiff from a federal grand jury; (2) a grand jury will return an indictment of Plaintiff; (3) Plaintiff will file a motion to dismiss his indictment for selective prosecution and vindictive prosecution; (4) the court handling Plaintiff's criminal case, presumably the Fort Pierce Division of the Southern District of Florida, *see* Mem. 13, will rule that Plaintiff has met his burden to obtain discovery in support of his motion to dismiss the indictment; and (5) documents that Plaintiff would have obtained in discovery will have been lost or destroyed.  Each of these contingencies, except whether Plaintiff would file a motion to challenge a potential indictment, are beyond Plaintiff's control.

This chain of contingencies renders the claimed future harm too speculative to constitute injury in fact.  In *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013), the D.C. Circuit held that a plaintiff lacked standing based on the possibility that an agency would issue an adverse rule, even though the agency was under a consent decree requiring it to conduct a rulemaking proceeding, holding that "Article III standing requires more than the possibility of potentially adverse regulation."  *Id.* at 1324-25.  Here, the possibility of future harm is more speculative because it depends not just on future actions of the Executive Branch but on two independent constitutional actors: the federal grand jury that would determine whether there is probable cause to indict if prosecutors sought an indictment, and the Article III judge who would decide whether to grant discovery on a motion to dismiss such an indictment.  "'[S]tanding theories that require guesswork as to how independent decisionmakers will exercise their judgment' do not suffice."  *Hecate Energy LLC v. FERC*, 126 F.4th 660, 666 (D.C. Cir. 2025) (quoting *Murthy*, 603 U.S. at 57-58); *see also*, *e.g.*, *Clapper*, 568 U.S. at 413-14 ("we have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment" and "decline to abandon [that] usual reluctance").

Examining the links in the causal chain more closely confirms the speculative nature of Plaintiff's future injury.  As Plaintiff acknowledges, his assertions about the alleged investigations against him are based largely on media reports.  Mem. 3 n.8.  Many of these media reports rely on anonymous sources.  *See*, *e.g.*, Decl. of Kenneth L. Wainstein Ex. 5, ECF No. 2-7 (reporting that "a source familiar with the matter told CNN" that then-Attorney General Pam Bondi directed prosecutors to launch a grand jury investigation, but "[t]he Justice Department declined to comment").  Although courts may take judicial notice of the fact that media reports were published, they may not take judicial notice of "the truth of any statements contained in the articles." *Barrett v. Atl. Monthly Group LLC*, No. 1:22-cv-49-LLA, 2024 WL 4119400, at *7 (D.D.C. Sep. 9, 2024). Even taken at face value, these articles would establish no more than that there was, at one time, an investigation or investigations involving Plaintiff's conduct.[1]  To state the obvious, not every criminal investigation results in prosecutors seeking an indictment.  And even if prosecutors sought Plaintiff's indictment, a grand jury would need to find probable cause to return an indictment.

Even if Plaintiff were indicted, it is speculative whether the judge handling his case would grant his request for discovery to support a vindictive and selective prosecution motion.  Discovery in such situations is far from automatic.  In granting discovery in a particular case, Chief Judge Boasberg recently explained that "[t]o obtain discovery" for either a vindictive prosecution or selective prosecution claim, "defendants must clear a hurdle" of "provid[ing] some evidence" to demonstrate "a colorable claim, which is itself a demanding standard." *United States v. Carey*, 816 F. Supp. 3d 129, 143-44 (D.D.C. 2026) (citations omitted).  The Fourth Circuit has similarly held that "even before a court allows a defendant to have discovery on the government's

---

[1] For avoidance of doubt, in this brief, the government neither confirms nor denies any assertions about the status of alleged criminal investigations.

prosecutorial decisions, the defendant must overcome a significant barrier by advancing objective evidence tending to show the existence of prosecutorial misconduct.  The standard is a 'rigorous' one."  *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) (quoting *United States v. Armstrong*, 517 U.S. 456, 468 (1996)).

Perhaps because obtaining discovery on a vindictive or selective prosecution claim is a meaningful hurdle, Plaintiff spends nine pages of his brief arguing that he "will raise a well-founded claim of vindictive and selective prosecution" to "challenge any charges that may ultimately arise from the government's" alleged investigations against him.  Mem. 11; *see id.* at 11-19.  Yet that argument only underscores that it would "stretch[]" the concept of imminence "beyond its purpose," *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 564 n.2), for this Court to guess whether another judge will find that there is a basis for discovery to assess a challenge to an indictment that has not come based on an alleged investigation that Plaintiff contends is still ongoing.  The strength of a vindictive prosecution or selective prosecution motion cannot be assessed in a vacuum, without knowing the nature of the charges or the allegations underlying the charges.  For example, in *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), the Supreme Court cited the undisputed substantive validity of charges in concluding that a criminal defendant had not made out a vindictive prosecution claim.  And a selective prosecution claim "requires a plaintiff to demonstrate he was singled out for enforcement 'from among others similarly situated,'" meaning that his "circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1137 (D.C. Cir. 2023) (quoting *Branch Ministries v. Rossotti*, 211 F.3d 137, 144, 145 (D.C. Cir. 2000)).  At this point, the Court could do no more than speculate about the strength of any motion to challenge a potential future indictment.

9

Adding to the layers of speculation, the question is not whether *this Court* believes that Plaintiff will in the future be able to mount a showing sufficient to obtain discovery on a motion to dismiss a future indictment. The question is whether *the judge handling any future criminal case* would agree. In other words, this Court would have to engage in "guesswork as to how independent decisionmakers will exercise their judgment." *Hecate Energy LLC*, 126 F.4th at 666 (quoting *Murthy*, 603 U.S. at 57-58). As an example of how Plaintiff calls for such guesswork, he asserts that "there will be no presumption of regularity to restrain *the reviewing judge's inquiry* into Director Brennan's claims." Mem. 19 (emphasis added). If Plaintiff is indicted and challenges such an indictment, it would be up to the reviewing judge, not this Court, to determine whether Plaintiff has overcome the traditional presumption of regularity. *See United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926).

Furthermore, Plaintiff claims that the Department of Justice has "engaged in a series of machinations to steer the case to the single judge sitting in the Fort Pierce Division," Mem. 13. Indeed, Plaintiff goes so far as to suggest that if Plaintiff is indicted and his case is assigned to that judge, Judge Aileen Cannon, he will file a "recusal motion" asking to remove her from the case. Compl., App. A, at 15. The government declines to engage with speculative allegations of judge-shopping regarding a hypothetical indictment. But to the extent Plaintiff's theory is that the case could be assigned to Judge Cannon, that a court may order Judge Cannon's recusal, and then the case will be reassigned to a new judge who would order discovery on a vindictive and selective prosecution motion, that only adds to the long list of contingencies in Plaintiff's speculative chain.

Finally, it is speculative whether the government will fail to preserve the documents that Plaintiff contends would be at issue in a future criminal case. Plaintiff does not contend or provide any evidence that the government is failing to preserve documents relevant to alleged

10

investigations into Plaintiff.  Instead, he claims more generally that "the government is failing to uphold its obligations to preserve the records of the type that will be relevant to Director Brennan's challenges to an indictment in this matter."  Mem. 26. Relying largely on media reports and to some extent on court filings in other cases, Plaintiff discusses incidents involving records that do not concern him where he contends that the government did not adequately preserve records.  *See id.* at 28-29. He notes that some government officials use electronic applications, including "messaging apps that can be set to auto delete," and he asserts *without any citation* that "the preservation processes have not been implemented to ensure" that recordkeeping obligations relating to those applications "are being consistently satisfied."  *Id.* at 27.  He notes that the Office of Legal Counsel recently opined that the Presidential Records Act (PRA) is unconstitutional.  *Id.* at 26.  Yet as he acknowledges, a federal court issued an injunction requiring numerous federal officials and agencies to comply with the PRA.  *See Am. Hist. Ass'n. v. Trump*, --- F. Supp. 3d ---, 2026 WL 1412395 (D.D.C. May 20, 2026), *appeal filed*, No. 26-5185 (D.C. Cir. June 3, 2026). None of these contentions establishes that Plaintiff's fear that the government will fail to preserve documents he would seek in discovery is anything more than speculative.

Any of these contingencies would be sufficient on its own to show that Plaintiffs' claimed future injury is speculative.  Together, they demonstrate beyond doubt that Plaintiff cannot show, as required, that his "injury is certainly impending."  *Clapper*, 568 U.S. at 409 (citation omitted).

### B.    Plaintiff's Claims Are Unripe

For similar reasons that Plaintiff lacks standing, his claims are unripe.  The ripeness doctrine is both constitutional and prudential.  As a constitutional doctrine, ripeness "shares the constitutional requirement of standing that an injury in fact be certainly impending."  *Nat'l Treasury Emps. Union*, 101 F.3d at 1427.  A claim is not ripe if it is "dependent on 'contingent

future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. at 131  (citation omitted).  Plaintiff's claims are constitutionally unripe because, as explained above, *see supra*, pp. 6-11, his claims are dependent on contingent future events that may not occur.

"Prudentially, the ripeness doctrine exists to prevent the courts from wasting [courts'] resources by prematurely entangling ourselves in abstract disagreements, and, where, as here, other branches of government are involved, to protect the other branches from judicial interference until their decisions are formalized and their 'effects felt in a concrete way by the challenging parties.'" *Nat'l Treasury Emps. Union*, 101 F.3d at 1431 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).  The prudential ripeness doctrine entails "evaluating '[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Labs.*, 387 U.S. at 149).

Under that standard, Plaintiff's claims are prudentially unripe.  The scope of the government's document preservation obligations with respect to any potential future case against Plaintiff would depend on the nature of the charges.  The issue would not be fit for decision until after any indictment is "formalized." *Id.*  Further, there would be no hardship to Plaintiff in withholding consideration of the government's preservation obligations until there is an actual criminal case.  Plaintiff will no doubt counter that documents may be lost in the interim.  Yet as explained below, courts presiding over criminal cases are capable of issuing appropriate remedies to criminal defendants if they determine that the government has not complied with document preservation obligations.  *See infra*, pp. 21-22.  This Court should not "prematurely entangle [it]sel[f] in [an] abstract disagreement[]," *Nat'l Treasury Emps. Union*, 101 F.3d at 1431, about

12

document preservation in a hypothetical future criminal case. If Plaintiff ever becomes a criminal defendant, then the court presiding over his criminal case can address such issues.

### C.    Plaintiff Lacks a Valid Cause of Action

Beyond the standing and ripeness issues, Plaintiff is unlikely to succeed on the merits because he lacks a valid cause of action. "[T]he power to create causes of action belongs to Congress," and the Supreme Court has "rejected the practice of fashioning rights of action as we see fit." *Cisco Sys., Inc. v. Doe I*, 146 S. Ct. 1882, 1890 (2026) (quoting *FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, 146 S. Ct. 1546, 1552-53 (2026)). No cause of action allows a plaintiff who is not a criminal defendant to sue for an injunction requiring the government to preserve documents that might hypothetically be useful in a potential future criminal case in another jurisdiction. Plaintiff cites three causes of action, one equitable and two statutory, but none applies to his circumstances or authorizes the relief he seeks. His reliance on these causes of action amounts to forcing the proverbial square peg into a round hole.

1.    Plaintiff first brings a claim for "equitable action to enjoin unconstitutional conduct," Compl., Count I (capitalization omitted), arguing that "courts have the inherent authority to provide injunctive relief when the government is taking action that may violate an individual's constitutional rights"). He relies on *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), which rejected an implied right of action to enforce the Supremacy Clause, but stated in dicta that "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England," *id.* at 327. Whatever the scope of such equitable causes of action to enjoin violations of constitutional rights, no such cause of action is available here because there is no constitutional right for someone who is not a criminal defendant to have evidence preserved because it might be of use in a future criminal case. The cases cited by Plaintiff involve criminal

13

defendants who were charged or indicted, and then challenged the supposed failure to preserve evidence in their criminal case,[2] in a direct appeal of a criminal conviction,[3] or in a collateral attack on a criminal conviction.[4]

Plaintiff cites no case extending any purported constitutional right for preservation of evidence to someone who is not a criminal defendant. For good reason. Any constitutional obligation to preserve evidence derives from the Due Process Clause, which prohibits the government from "depriv[ing]" a person "of life, liberty, or property, without due process of law." U.S. Const. amend. V; *see also* U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"). It is through a criminal case brought against a criminal defendant that prosecutors can deprive a person of life, liberty, or property. As the Supreme Court framed the issue in the primary Supreme Court case on which Plaintiff relies, the Due Process Clause "require[s] that *criminal defendants* be afforded a

---

[2] *United States v. Harris*, No. 1:20-cr-108, 2021 WL 1546541, at *1 (D.D.C. Apr. 20, 2021) (criminal defendant filed "motion to dismiss the indictment," claiming that "the Government failed to preserve potential forensic evidence"); *United States v. Mullen*, 243 F.R.D. 54, 58, 76-77 (W.D.N.Y. 2006) (criminal defendant filed motion for preservation of evidence in criminal case), *aff'd in part sub nom. United States v. Funderburk*, 243 F.R.D. 53 (W.D.N.Y. 2007); *United States v. Salad*, 779 F. Supp. 2d 503, 504 (E.D. Va. 2011) (criminal defendant filed motion for preservation of evidence in criminal case); *United States v. Patel*, No. 01 CR 716, 2002 WL 1750948, at *1 (N.D. Ill. July 26, 2002) (criminal defendant filed motion for preservation of evidence in criminal case); *United States v. Carlisi*, No. 92 CR 1064, 1993 WL 339079, at *1, 4-5 (N.D. Ill. Aug. 30, 1993) (criminal defendants filed motion for preservation of evidence in criminal case); *United States v. Webb*, No. 2:10-CR-41-H-3, 2011 WL 322394, at *3 (E.D.N.C. Jan. 31, 2011) (criminal defendant filed motion for preservation of evidence in criminal case); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1228-29 (D.N.M. 2008) (criminal defendant filed motion for preservation of evidence in criminal case).

[3] *United States v. Vega*, 826 F.3d 514, 521-22 (D.C. Cir. 2016) (per curiam) (defendants "were indicted," "were tried . . . and convicted," and "come before us now appealing their convictions and sentences"); *United States v. Grammatikos*, 633 F.2d 1013, 1016 (2d Cir. 1980) (criminal defendant was convicted, appealed conviction seeking dismissal of his indictment or new trial).

[4] *California v. Trombetta*, 467 U.S. 479, 483 (1984) (criminal defendants were convicted and filed writs of habeas corpus to challenge convictions).

14

meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479 485 (1984) (emphasis added).  To issue an injunction to Plaintiff on the basis that the Court has equitable authority to enjoin unconstitutional actions, the Court would have to break new ground in recognizing a new constitutional right to document preservation for someone who *might* become a criminal defendant in the future.  Doing so would be unjustified by the text of the Constitution or any case law, and would inevitably ensnare courts in the speculative endeavor of trying to predict what criminal cases are likely to arise in the future.

Plaintiff also cannot show that, even if he were indicted in the future, the broad class of documents he seeks would be subject to a constitutional obligation to preserve evidence.  Plaintiff asks this Court to order preservation of "any and all materials and communications . . . that are potentially relevant to the consideration of Director Brennan's legal and constitutional challenges to any future criminal charges," which "encompasses but is not limited to" eleven broad requests, each of which are a paragraph long and begin with the word "[a]ll."  Compl., Request for Relief; *accord* Proposed Order.  The Constitution does not grant criminal defendants a right to preservation of all "potentially relevant" evidence.  In *Trombetta*, the Supreme Court explained that "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." 467 U.S. at 488.  The Supreme Court held that in drunk driving prosecutions, samples of the defendants' breath during the defendants' traffic stops did not qualify.  *Id.* at 489.  And as the D.C. Circuit recognized in a case cited by Plaintiff, "the Supreme Court's subsequent decision in *Arizona v. Youngblood*, 488 U.S. 51 (1988), narrowed the Government's constitutional obligations regarding the preservation of evidence" by "confin[ing] the Due Process Clause to superintending only those cases in which the missing evidence is material and exculpatory or in which 'the police

15

themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.'" *Vega*, 826 F.3d at 533 (quoting *Youngblood*, 488 U.S. at 58). Thus, the relief Plaintiff seeks from this Court goes far beyond any conceivable constitutional right that he would have to preservation of evidence, even if he were a criminal defendant.

Plaintiff also argues briefly that some of the documents whose preservation he seeks are covered by the Presidential Records Act (PRA) or the Federal Records Act. Mem. 26. To the extent Plaintiff is attempting to reframe a perfunctory argument that the government might violate statutes as a claim for violation of his constitutional rights, that move is "foreclosed . . . by *Dalton v. Specter*." *Glob. Health Council v. Trump*, 153 F.4th 1, 13 (D.C. Cir. 2025) (citing *Dalton v. Specter*, 511 U.S. 462 (1994)), *reh'g en banc denied*, No. 25-5097, 2025 WL 2709437 (D.C. Cir. Aug. 28, 2025). *Dalton* makes clear that allegations that an official has acted in opposition to a statute are statutory claims—not "'constitutional' claims" that can be asserted through a direct cause of action. 511 U.S. at 473.

As the Supreme Court has explained, not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. Rather, the Court has carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases). The Constitution may be implicated, for example, if executive officers rely on it as an independent source of authority to act, as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), or if the officers rely on a statute that itself violates the Constitution. *See Dalton*, 511 U.S. at 473 & n.5. But claims alleging simply that an official has "exceeded his statutory authority are not 'constitutional' claims" that can be asserted through a direct cause of action. *Id.* at 473.

16

Plaintiff relies on *American Historical Association*, 2026 WL 1412395, which found that plaintiffs had an equitable constitutional claim to challenge White House guidance that the Court viewed as authorizing violations of the PRA based on the Office of Legal Counsel's opinion that the PRA is unconstitutional. *Id.* at *11-13. Although the government respectfully disagrees with that decision, it is inapposite here. The Court there reasoned that "the Guidance was issued under the President's inherent Article II authority and not under any statutory authority," based on the "OLC's position that the [PRA] is unconstitutional." *Id.* at *11. By contrast, this case arises in a posture in which the *American Historical Association* court has enjoined various federal government entities to comply with the PRA, *see id.* at *28, the federal government is operating under that injunction,[5] and Plaintiff merely speculates that the government might nonetheless violate the PRA. That is not a constitutional claim.

2.        Plaintiff is unlikely to succeed in his request for a writ of mandamus because he falls far short of meeting the demanding standard for mandamus. "To establish entitlement to mandamus relief, the plaintiff must demonstrate 1) a clear and indisputable right to the particular relief sought against the federal official, 2) that the federal official is violating a clear duty to act, and 3) that the plaintiff has no adequate alternate remedy." *Ferriero*, 60 F.4th at 713. "And even if those three requirements are met, the plaintiff must additionally show 'compelling equitable grounds' before [courts] will grant mandamus relief." *Id.* at 714 (quoting *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005)). "Few legal standards are more exacting than the requirements for invoking mandamus jurisdiction under [28 U.S.C.] § 1361. Mandamus

---

[5] The government has appealed the injunction, *see Am. Hist. Ass'n v. Trump*, No. 26-5185 (D.C. Cir.), but it has not asked the D.C. Circuit to stay the injunction pending appeal.

17

is a 'drastic' remedy, only available in 'extraordinary situations,' and thus 'is hardly ever granted[.]'" *Id.* (quoting *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc)).

Plaintiff fails to meet any of the requirements for mandamus. To begin, he cannot show a clear and indisputable right to relief or a clear duty for the government to act. "The 'clear and indisputable right to relief' and 'clear duty to act' standards are equally stringent. To meet the 'clear and indisputable' requirement, the plaintiff must show that the challenged action is 'plainly and palpably wrong as [a] matter of law.'" *Id.* (quoting *United States ex rel. Chicago Great W. R.R. Co. v. ICC*, 294 U.S. 50, 61 (1935)). "Accordingly, [courts] will deny mandamus even if a petitioner's argument, though 'pack[ing] substantial force,' is not clearly mandated by case law." *Id.* (quoting *In re Al Baluchi*, 952 F.3d 363, 369 (D.C. Cir. 2020)). "Likewise, to meet the 'clear duty to act' standard, '[t]he law must not only authorize the demanded action, but require it; the *duty must be clear and indisputable*.'" *Id.* at 715 (quoting *United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 420 (1931)). As explained above, *supra*, pp. 13-16, Plaintiff's argument to extend the constitutional rights of criminal defendants to someone who claims that he might in the future become a criminal defendant is unsupported by any case law. Plaintiff's creative argument asking this Court to break new legal ground falls far short of the clear right and clear duty needed to justify mandamus relief.

Likewise, his mandamus claim is unlikely to succeed because if he were indicted in the future, adequate alternate remedies would be available to him in his criminal case. "[Mandamus] is not available unless 'no adequate alternative remedy exists.'" *In re al-Nashiri*, 791 F.3d 71, 78 (D.C. Cir. 2015) (quoting *Barnhart v. Devine*, 771 F.2d 1515, 1524 (D.C. Cir. 1985)). "Chief Justice Waite summed it up well: 'The general principle which governs proceedings by *mandamus* is, that whatever can be done without the employment of that extraordinary remedy, may not be

18

done with it.'" *Id.* (quoting *Ex parte Rowland*, 104 U.S. (14 Otto) 604, 617 (1881)).  As explained below, *see infra*, pp. 21-22, if Plaintiff is indicted in the future, he would have all the constitutional and statutory rights of a criminal defendant.  He would be able to file motions related to preservation of evidence, and if the court handling the criminal case found that any spoliation occurred in violation of his rights, the court could consider appropriate remedies.  The availability of alternative remedies if his fear of a future indictment comes to pass dooms his request for mandamus.

Finally, even if Plaintiff satisfied the requirements for mandamus, he could not "show 'compelling equitable grounds'" for this Court to exercise its discretion to grant mandamus relief. *Ferriero*, 60 F.4th at 714 (quoting *In re Medicare Reimbursement Litig.*, 414 F.3d at 10).  As explained below, *see infra*, p. 24, equitable considerations of comity between courts weigh strongly against this Court issuing orders that would affect what Plaintiff describes as a potential future criminal case in Florida.

3.    Plaintiff fares no better with his claim for injunctive relief in aid of the Court's jurisdiction under the All Writs Act, 28 U.S.C. § 1651, *see* Compl. ¶ 76, because he cannot show how this Court would have any jurisdiction over a potential future criminal case in Florida.  The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law."  28 U.S.C. § 1651 (emphasis added).  "'While the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction. . . . [T]he Act does not enlarge that jurisdiction.'" *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004) (Roberts, J.) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999)).  In *Tennant*, then-Judge Roberts explained that the D.C. Circuit lacked jurisdiction under the All Writs Act in aid of

19

prospective jurisdiction over Federal Communications Commission (FCC) proceedings because the petitioner "never initiated a proceeding with the FCC." *Id.* at 528. Thus, the court could not say that the case was within its "prospective jurisdiction," rejecting the notion that the court could enter relief in aid of its jurisdiction under the All Writs Act "however prospective or potential that jurisdiction might be." *Id.* at 529.

Here, Plaintiff cannot show that an injunction regarding document preservation is necessary to preserve *this Court*'s jurisdiction, for two reasons. First, this Court would not have any jurisdiction over a future criminal case that Plaintiff expects the government to bring in the Southern District of Florida. Plaintiff alleges and contends that the government has steered the alleged criminal investigation to the Southern District of Florida, and specifically to the Fort Pierce Division. *See* Compl. ¶¶ 35-37 (accusing the Justice Department of "locating in Fort Pierce . . . to carry out the Justice Department's judge-shopping plan"); Mem. 13 ("Once they selected the U.S. Attorney for the Southern District of Florida to run the investigations, they engaged in a series of machinations to steer the case to the single judge sitting in the Fort Pierce Division."). For that reason, Plaintiff names as a defendant the U.S. Attorney for the Southern District of Florda, but not the U.S. Attorney for the District of Columbia. *See* Compl. ¶ 20. This Court would have no jurisdiction over a future criminal case in the Southern District of Florida.

Second, even if Plaintiff were eventually indicted in this District, he does not articulate how a document preservation order now would be necessary to preserve the court's jurisdiction over the criminal case. As explained below, the judge presiding over any potential future criminal case can handle motions relating to the preservation of evidence and can consider appropriate remedies if the government is found to have violated the defendant's rights through the spoliation of evidence. *See infra*, pp. 21-22.

20

## II.    Plaintiff Cannot Show a Likelihood of Imminent Irreparable Harm

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy*, 454 F.3d at 297. The moving party must demonstrate an injury "both certain and great" and "of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id.* (citation omitted). The injury must also "be beyond remediation," meaning that the possibility of corrective relief "at a later date . . . weighs heavily against a claim of irreparable harm." *Id.* at 297-98 (citation omitted). "A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Id.* at 297; *see also Storch v. Hegseth*, 804 F. Supp. 3d 216, 228 (D.D.C. 2025) (plaintiffs "cannot satisfy the irreparable-harm factor," which "alone is sufficient to defeat" their preliminary injunction motion).

Plaintiff fails show a likelihood of irreparable harm for two independently sufficient reasons. First, his claimed harm is not "of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Chaplaincy*, 454 F.3d at 297 (citation omitted). As explained above, *see supra*, 6-11, his claimed future harm rests on numerous speculative contingencies. Largely for the same reasons that Plaintiff cannot show an imminent injury-in-fact, he cannot show imminent irreparable harm.

Second, even if his feared future harm came to pass, it would not "be beyond remediation." *Id.* If Plaintiff were indicted, and if he moved to dismiss his indictment for vindictive and selective prosecution, and if the court handling his criminal case held that he raised a sufficient claim to obtain discovery on his motion, and if some documents that he sought in discovery were not preserved, he could pursue remedies for alleged spoliation in the criminal case. "When the Government has failed to preserve evidence, the Court has discretion to impose a wide range of sanctions." *United States v. Vanterpool*, No. 1:25-cr-138-RJL, 2026 WL 810005, at *6 (D.D.C.

21

Mar. 24, 2026). Remedies that courts have imposed for destruction of evidence in a criminal case include a remedial jury instruction, *United States v. Sivilla*, 714 F.3d 1168, 1174 (9th Cir. 2013), dismissing a count of a criminal case, *United States v. Laurent*, 607 F.3d 895, 900-01 (1st Cir. 2010), allowing an adverse inference regarding the lost evidence, *id.* at 902, excluding evidence related to the lost evidence, *United States v. Elliott*, 83 F. Supp. 2d 637, 648-49 (E.D. Va. 1999), or even dismissing the criminal case in extreme circumstances, *United States v. Belcher*, 762 F. Supp. 666, 672-73 (W.D. Va. 1991).

Plaintiff cites several cases in which the court held that the potential loss of documents would constitute irreparable harm, *see* Mem. 35-36, but those cases are inapposite. In each of those cases, the plaintiffs were historians, journalists, or advocacy organizations who wished to use the documents at issue for historical, journalistic, educational, or advocacy purposes. *See Am. Hist. Ass'n v. Trump*, 2026 WL 1412395, at *6, 25 (plaintiff's members were "historians who have used, are using, and intend to continue using presidential records," and "destroyed documents are 'lost forever to history'"); *Am. Oversight v. Hegseth*, 788 F. Supp. 3d 14, 19 (D.D.C. 2025) (plaintiff was nonprofit entity that used government records for educational purposes); *Citizens for Resp. & Ethics in Washington v. Exec. Off. of President*, 587 F. Supp. 2d 48, 52 (D.D.C. 2008) ("CREW is 'a non-profit, non-partisan ethics watchdog group that seeks to deter the unethical and illegal conduct of public officials by publicly disseminating information regarding their conduct.'"); *Am. First Legal Found. v. Becerra*, No. 1:24-cv-1092, 2024 WL 3741402 (D.D.C. Aug. 9, 2024); *Citizens for Resp. & Ethics in Wash. v. Off. of Admin.*, 565 F. Supp. 2d 23, 29-30 (D.D.C. 2008). Here, by contrast, Plaintiff claims no historical, journalistic, or other intrinsic interest in the documents he seeks to preserve. Rather, his claim is solely that these documents will be discoverable in a potential future legal case, and that he would use them to press a defense

22

in that case.  *See* Mem. 1 (characterizing the documents as "potentially relevant to the consideration of Director Brennan's legal and constitutional challenges to any future criminal charges").  The potential harm from wrongful destruction of discoverable evidence is reparable through spoliation remedies that Plaintiff could pursue in a future criminal case, if it ever arises.

To say that remedies are available in criminal cases where the government wrongfully fails to preserve evidence is not to say that Plaintiff will be indicted, that the government will fail to preserve any relevant evidence, or that any particular remedy would be appropriate.  But the mere potential for adequate remedies in future proceedings negates any assertion of irreparable harm.  In *Chaplaincy*, Navy chaplains claimed that they feared that they would be denied future promotions based on their religion.  454 F.3d at 293.  The D.C. Circuit explained that even if that occurred, that "asserted tangible injury is redressable" because the chaplains could obtain review of a non-promotion from Navy special selection boards.  *Id.* at 298.  The availability of "adequate compensatory or other corrective relief" in the event that their rights were violated "bel[ied] their claims of irreparable tangible harm at this point."  *Id.*  By the same token, the fact that Plaintiff could pursue remedies for spoliation in an eventual criminal case if he were indicted and if relevant evidence were lost belies his claim of irreparable harm.

## III.    The Balance of the Equities Weighs Strongly Against Injunctive Relief

The balance of equities strongly weighs against injunctive relief, and supports denying Plaintiff's motion, regardless of the Court's views on the other factors.  *See Kim v. FINRA*, 698 F. Supp. 3d 147, 172 (D.D.C. 2023) ("Even if the Court were to assume that Plaintiff *has* established a likelihood of success on the merits and irreparable harm, the Court would still deny Plaintiff's motion because both the balance of equities and the public interest strongly disfavor the requested relief and would outweigh even a successful showing on the other two factors.").

As a matter of comity, federal courts should not enter the business of policing document preservation for cases that may arise in the future in far-flung jurisdictions. "When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases." *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976) (Kennedy, J.); *see also* Florida *v. HHS*, 19 F.4th 1271, 1285 (11th Cir. 2021) ("'The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs.'") (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985)); *accord United Transp. Union v. Nat'l Mediation Bd.*, No. Civ. A. 93-0428 (HHG), 1993 WL 764220, at *2 (D.D.C. June 8, 1993).

If, as Plaintiff expects, he later becomes a defendant in a criminal case in the Southern District of Florida, the judge presiding over that case would be capable of addressing any motions, including motions relating to document preservation. Conversely, if this Court were to issue legal rulings concerning the government's obligations with respect to a potential future criminal case, that would interfere with that court's ability to handle the potential future case, because Plaintiff would presumably argue that rulings issued by this Court are binding against the government. The fact that Plaintiff's brief contains nine pages of legal argument about the substantive validity of a potential vindictive and selective prosecution motion he would bring, Mem. 11-19, followed by six pages of argument about how the court presiding over his potential future criminal case would review and rule on a request for discovery, *id.* at 19-25, shows that Plaintiff is asking this Court to issue preemptive judgments about matters that could come before the judge handling a potential future case. Granting an injunction here would also encourage litigants to flood the courts with

similarly speculative cross-jurisdictional document preservation lawsuits that would further erode the comity of the federal courts.

On the other side of the balance, Plaintiff's interests are scant. As explained above, *see supra*, pp. 6-11, the notion that government destruction of documents will deprive him of relevant evidence to which he would have been entitled in a future criminal case rests on numerous speculative contingencies. And Plaintiff's hyperbolic assertion that "the constitutional rights to Equal Protection and Due Process in the criminal justice system is in the balance," Mem. 36, is overblown. If he is indicted, he can seek to vindicate his constitutional rights in that future criminal case. And if the court handling that case finds that the government has wrongfully failed to preserve evidence, it can consider his requests for appropriate remedies. *See supra*, pp. 21-22.

## CONCLUSION

The Court should deny Plaintiff's Motion for Preliminary Injunction.

Dated:  July 28, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director, Federal Programs Branch

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
Chief Litigation Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 532-3114
Fax: (202) 616-8470
Email: jeremy.s.newman@usdoj.gov

*Attorneys for Defendants*

26