**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JOHN O. BRENNAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 26-2323 (JMC) |
| | ) | |
| TODD W. BLANCHE, in his official capacity as Acting Attorney General, *et al.*, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD...................................................................................................... 4

ARGUMENT................................................................................................................... 5

I.     Plaintiff Lacks Standing to Bring This Lawsuit Because His Claimed Future Injury Is Speculative, Not Imminent........................................................................ 5

II.    Plaintiff's Claims Are Unripe ................................................................... 10

III.   Plaintiff Cannot State a Claim Because He Lacks a Valid Cause of Action ........ 12

    A.    Plaintiff Cannot State a Claim for an Equitable Action to Enjoin Unconstitutional Conduct ......................................................... 12

    B.    Plaintiff Fails to Invoke this Court's Jurisdiction for Mandamus Relief.......................................................................... 16

    C.    Plaintiff Fails to Invoke the Court's Jurisdiction Under the All Writs Act................................................................... 18

CONCLUSION........................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ................................................................................................ 11

*Am. Hist. Ass'n v. Trump*,
--- F. Supp. 3d ---, 2026 WL 1412395 (D.D.C. May 20, 2026) ...................................... 10, 16

*Arizona v. Youngblood*,
488 U.S. 51 (1988) ............................................................................................... 14, 15

*Armstrong v. Exceptional Child Center, Inc.*
575 U.S. 320 (2015) ................................................................................................. 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 5

*Barnhart v. Devine*,
771 F.2d 1515 (D.C. Cir. 1985) .................................................................................. 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 4, 5

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978) .................................................................................................. 8

*Branch Ministries v. Rossotti*,
211 F.3d 137 (D.C. Cir. 2000) ................................................................................... 8-9

*California v. Trombetta*,
467 U.S. 479 (1984) .............................................................................................. 13, 14

*Cisco Sys., Inc. v. Doe I*,
146 S. Ct. 1882 (2026) .............................................................................................. 12

\* *Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........................................................................................... *passim*

*Clinton v. Goldsmith*,
526 U.S. 529 (1999) .................................................................................................. 19

*Dalton v. Specter*,
511 U.S. 462 (1994) .............................................................................................. 15, 16

*Defenders of Wildlife v. Perciasepe*,
714 F.3d 1317 (D.C. Cir. 2013) ................................................................................... 6

*Dvorak v. DHS, No. 1:18-cv-1941-DLF*,
2019 WL 1491743 (D.D.C. Apr. 3, 2019) ....................................................................... 4

*Ex parte Rowland*,
    104 U.S. (14 Otto) 604 (1881) .......................................................................................... 18

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ...................................................................................................... 5

*Frederick Douglass Found., Inc. v. District of Columbia*,
    82 F.4th 1122 (D.C. Cir. 2023) ...................................................................................... 8

*FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*,
    146 S. Ct. 1546 (2026) ................................................................................................. 12

*Glob. Health Council v. Trump*,
    153 F.4th 1 (D.C. Cir. 2025) ........................................................................................ 15

*Harrington v. DC Winery, LLC*,
    No. 1:22-cv-689-TSC, 2023 WL 5561604 (D.D.C. Aug. 29, 2023) ........................................ 4

*Hecate Energy LLC v. FERC*,
    126 F.4th 660 (D.C. Cir. 2025) ................................................................................. 7, 9

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
    608 U.S. ___, 2026 WL 1593307 (June 4, 2026) ............................................................. 4, 5

\* *Illinois v. Ferriero*,
    60 F.4th 704 (D.C. Cir. 2023) ............................................................................. 2, 16, 17

*In re Al Baluchi*,
    952 F.3d 363 (D.C. Cir. 2020) ...................................................................................... 17

*In re al-Nashiri*,
    791 F.3d 71 (D.C. Cir. 2015) .................................................................................. 17, 18

*In re Cheney*,
    406 F.3d 723 (D.C. Cir. 2005) ...................................................................................... 17

*In re Medicare Reimbursement Litig.*,
    414 F.3d 7 (D.C. Cir. 2005) .......................................................................................... 17

\* *In re Tennant*,
    359 F.3d 523 (D.C. Cir. 2004) ...................................................................................... 19

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994) ...................................................................................................... 4

\* *Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................... 5, 8

*Marino v. NOAA*,
    451 F. Supp. 3d 55 (D.D.C. 2020) .................................................................................. 4

iii

*Moran v. U.S. Capitol Police Bd.*,
   820 F. Supp. 2d 48 (D.D.C. 2011) ............................................................................... 4

*Murthy v. Missouri*,
   603 U.S. 43 (2024) ...................................................................................... 6, 7, 9

\* *Nat'l Treasury Emps. Union v. United States*,
   101 F.3d 1423 (D.C. Cir. 1996) ......................................................................... 2, 11, 12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................... 5

*Trump v. New York*,
   592 U.S. 125 (2020) .......................................................................................... 2, 11

*United States ex rel. Chicago Great W. R.R. Co. v. ICC*,
   294 U.S. 50 (1935) .............................................................................................. 17

*United States ex rel. McLennan v. Wilbur*,
   283 U.S. 414 (1931) ............................................................................................ 17

*United States v. Armstrong*,
   517 U.S. 456 (1996) .............................................................................................. 8

*United States v. Belcher*,
   762 F. Supp. 666 (W.D. Va. 1991) ......................................................................... 18

*United States v. Carey*,
   816 F. Supp. 3d 129 (D.D.C. 2026) ......................................................................... 7

*United States v. Carlisi*,
   No. 92 CR 1064, 1993 WL 339079 (N.D. Ill. Aug. 30, 1993) ............................................. 13

*United States v. Chem. Found.*,
   272 U.S. 1 (1926) ................................................................................................. 9

*United States v. Elliott*,
   83 F. Supp. 2d 637 (E.D. Va. 1999) ......................................................................... 18

*United States v. Grammatikos*,
   633 F.2d 1013 (2d Cir. 1980) ................................................................................ 13

*United States v. Harris*,
   No. 1:20-cr-108, 2021 WL 1546541 (D.D.C. Apr. 20, 2021) ................................................ 13

*United States v. Laurent*,
   607 F.3d 895 (1st Cir. 2010) .................................................................................. 18

*United States v. Lujan*,
   530 F. Supp. 2d 1224 (D.N.M. 2008) ...................................................................... 13

*United States v. Mullen*,
243 F.R.D. 54 (W.D.N.Y. 2006) ................................................................. 13

*United States v. Patel*,
No. 01 CR 716, 2002 WL 1750948 (N.D. Ill. July 26, 2002) ................................ 13

*United States v. Salad*,
779 F. Supp. 2d 503 (E.D. Va. 2011) ...................................................... 13

*United States v. Sivilla*,
714 F.3d 1168 (9th Cir. 2013) ............................................................ 18

*United States v. Vega*,
826 F.3d 514 (D.C. Cir. 2016) (per curiam) ............................................. 13, 15

*United States v. Vanterpool*,
No. 1:25-cr-138-RJL, 2026 WL 810005 (D.D.C. Mar. 24, 2026) ........................... 18

*United States v. Webb*,
No. 2:10-CR-41-H-3, 2011 WL 322394 (E.D.N.C. Jan. 31, 2011) ........................... 13

*United States v. Wilson*,
262 F.3d 305 (4th Cir. 2001) .............................................................. 8

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ....................................................................... 5

*Youngstown Sheet & Tube Co. v. Sawyer*
343 U.S. 579 (1952) ...................................................................... 15

**Constitutional Provisions**

U.S. Const. amend. V ..................................................................... 13

U.S. Const. amend. XIV, § 1 .............................................................. 13

**Statutes**

28 U.S.C. § 1361 ...................................................................... 4, 17

28 U.S.C. § 1651 ................................................................... 2, 4, 18

**Rules**

Fed. R. Civ. P. 12 ....................................................................... 4

**INTRODUCTION**

In this lawsuit, Plaintiff John Brennan asks this Court to take the unprecedented step of managing potential discovery in a hypothetical future criminal case in Florida. He professes fear that the federal government will indict him in the Southern District of Florida, and he asks this Court to order the federal government to preserve "any and all materials . . . that are potentially relevant to the consideration of Director Brennan's legal and constitutional challenges to any future criminal charges," including "but . . . not limited to" a set of eleven broad document requests that reads like the discovery wish of a civil plaintiff. *See* Compl., Request for Relief, ECF No. 1. Plaintiff cannot cite a single example of a court ever directing the government to preserve documents because someone who is *not* a criminal defendant *might* need them if he is indicted *in the future*. His lawsuit suffers from numerous legal defects that mandate dismissal.

To start, he fails to present a case or controversy within the jurisdiction of the federal courts. Article III standing requires an "actual or imminent" injury in fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). When a plaintiff predicates a claim on threatened future injury, "that threatened injury must be certainly impending to constitute injury in fact." *Id.* at 410 (citations omitted). Yet Plaintiff's claimed future harm rests on a long chain of contingencies: that the Department of Justice will seek an indictment, that a grand jury will return an indictment, that he will move to dismiss the claims for vindictive and selective prosecution, that the court presiding over his criminal case will find that he has met the threshold to obtain discovery on such a motion, and that the government will have failed to preserve documents that this future court determines are discoverable. Such contingencies rest on a chain of speculative steps about future actions not only of the Executive Branch, but also independent actors such as a grand jury and another Article III judge.

That these "contingent future events that may not occur as anticipated, or indeed may not occur at all," *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation omitted), also render Plaintiff's claims unripe. For this Court to weigh in on discovery obligations in a hypothetical criminal case that has not arisen would be to "prematurely entangl[e] [it]sel[f] in abstract disagreements." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996).

Plaintiff also cannot state a claim because he lacks a valid cause of action. Plaintiff asserts an equitable cause of action to prevent violations of his constitutional rights, but no court has ever held that someone who is not a criminal defendant has a constitutional right to preservation of documents that might be relevant to a potential future criminal case. Even for criminal defendants, courts have sharply limited constitutional preservation obligations to materials central to a defendant's defense, not all potentially relevant materials as Plaintiff asserts. Plaintiff gets no further by seeking a writ of mandamus or relief under the All Writs Act. Mandamus relief requires "a clear and indisputable right" to relief, government violation of "a clear duty to act," and lack of any "adequate alternate remedy." *Illinois v. Ferriero*, 60 F.4th 704, 713 (D.C. Cir. 2023). Far from clear, Plaintiff's claimed right and duty are unsupported by any case law. And Plaintiff's ability to seek appropriate remedies for any unlawful spoliation in the event he is indicted is an adequate alternative that also precludes mandamus. The All Writs Act permits a court to issue writs in aid of its jurisdiction, 28 U.S.C. § 1651, but Plaintiff can neither articulate how this Court would have jurisdiction over a future criminal indictment he expects to arise in Florida, nor how a document preservation order is necessary to preserve such jurisdiction.

## BACKGROUND

Plaintiff served as Director of the CIA under President Obama after a long career in government service. *See* Compl. ¶¶ 14-16. Plaintiff alleges that the Department of Justice has

opened two criminal investigations against him. *See id.* ¶¶ 33-34. He asserts that the U.S. Attorney's Office of the Southern District of Florida has issued grand jury subpoenas related to these two alleged investigations. *Id.* ¶ 6. Plaintiff is concerned that these alleged investigations will lead to one or more indictments, *id.* ¶ 7, in the Fort Pierce Division of the Southern District of Florida, where he alleges the investigations are operating, *id.* ¶ 37 (criticizing the Department of Justice allegedly locating investigations at the Fort Pierce Division as a "judge-shopping plan"). Plaintiff asserts that if he is indicted, he will move to dismiss the indictment on the basis of vindictive and selective prosecution. *Id.* ¶ 7. If he is indicted, Plaintiff intends to seek discovery of "the government's communications and materials surrounding its investigative and prosecutive decisions" in support of a vindictive and selective prosecution motion. *Id.* ¶ 9. He predicts that the court handling a potential future indictment "would demand access" to those materials. *Id.*

Yet he contends that "[t]here is a very real risk" that the discovery materials he would intend to seek would not be preserved. *Id.* ¶ 10. He contends that this risk exists for two reasons. First, he asserts that the federal government uses some electronic applications "that can be set to auto delete." *Id.* Second, he cites materials (including media reports) describing incidents that do not involve him or the alleged investigations, in which he asserts that certain government officials have not fully complied with record preservation obligations. *See id.* ¶¶ 57-61.

Based on these assertions, Plaintiff now seeks an injunction directing Defendants to preserve all materials "that are potentially relevant to the consideration of Director Brennan's legal and constitutional challenges to any future criminal charges." Compl., Request for Relief. The materials he asks the Court to order Defendants to preserve "encompass[] but [are] not limited to" eleven enumerated categories of documents. *Id.*

Plaintiff's Complaint brings three causes of action.  First, he brings a claim for "equitable action to enjoin unconstitutional conduct," *id.*, Count I (capitalization omitted), based on the argument that it would violate his constitutional rights if the government failed to preserve documents, *id.* ¶¶ 66-70. Second, he seeks a writ of mandamus under the Mandamus Act, 28 U.S.C. § 1361, and All Writs Act, *id.* § 1651, again seeking an order directing the government to preserve documents, Compl. ¶¶ 71-74.  Finally, he brings a claim for "injunctive relief in aid of the Court's jurisdiction under the All Writs Act," Compl., Count III (capitalization omitted), arguing that the All Writs Act justifies the injunction he seeks, *id.* ¶¶ 75-77.

## LEGAL STANDARD

"Under Rule 12(b)(1), a party may move to dismiss a claim over which the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1)."  *Marino v. NOAA*, 451 F. Supp. 3d 55, 59 (D.D.C. 2020), *aff'd*, 33 F.4th 593 (D.C. Cir. 2022).  "Federal district courts are courts of limited jurisdiction, and it is 'presumed that a cause lies outside this limited jurisdiction.'"  *Dvorak v. DHS*, No. 1:18-cv-1941-DLF, 2019 WL 1491743, at *1 (D.D.C. Apr. 3, 2019) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).  "Thus, 'the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.'"  *Id.* (quoting *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011)).  "If the court determines that it lacks jurisdiction, the court must dismiss the claim or action." *Marino*, 451 F. Supp. 3d at 59-60.

"A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint."  *Harrington v. DC Winery, LLC*, No. 1:22-cv-689-TSC, 2023 WL 5561604, at *2 (D.D.C. Aug. 29, 2023).  "In order to proceed to discovery, a plaintiff must 'state a claim to relief that is plausible on its face.'"  *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. ___, 2026 WL 1593307, at *6 (June 4, 2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "If the complaint 'pleads facts that are merely consistent with a defendant's

4

liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Instead, to nudge a claim 'across the line from conceivable to plausible,' a plaintiff must plead facts that, if true, 'allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' and to rule out 'obvious alternative explanation[s]' for the defendant's conduct." *Id.* (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 567).

## ARGUMENT

**I.      Plaintiff Lacks Standing to Bring This Lawsuit Because His Claimed Future Injury Is Speculative, Not Imminent**

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

To support standing, "an injury must be concrete, particularized, and actual or imminent." *Clapper*, 568 U.S. at 409 (citation omitted). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Id.* (emphasis omitted) (quoting *Lujan*, 504 U.S. at 564 n.2). To that end, the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Id.* (alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("[T]he injury must be actual or imminent, not speculative— meaning that the injury must have already occurred or be likely to occur soon."). That is, "[t]o

establish standing, the plaintiff[] must demonstrate a substantial risk that, in the near future, [he] will suffer an injury that is traceable to a Government defendant and redressable by the injunction [he] seek[s]." *Murthy v. Missouri*, 603 U.S. 43, 49-50 (2024).

Plaintiff fails to allege standing because his claimed future injury is speculative, not imminent. Plaintiff's claimed future injury is that documents he will be entitled to obtain to litigate a motion to challenge a future criminal indictment will be lost. That potential future harm rests on numerous contingencies: (1) the Department of Justice will seek an indictment of Plaintiff from a federal grand jury; (2) a grand jury will return an indictment of Plaintiff; (3) Plaintiff will file a motion to dismiss his indictment for selective prosecution and vindictive prosecution; (4) the court handling Plaintiff's criminal case, presumably the Fort Pierce Division of the Southern District of Florida, *see* Mem. 13, will rule that Plaintiff has met his burden to obtain discovery in support of his motion to dismiss the indictment; and (5) documents that Plaintiff would have obtained in discovery will have been lost or destroyed. Each of these contingencies, except whether Plaintiff would file a motion to challenge a potential indictment, are beyond Plaintiff's control.

This chain of contingencies renders the claimed future harm too speculative to constitute injury in fact. In *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013), the D.C. Circuit held that a plaintiff lacked standing based on the possibility that an agency would issue an adverse rule, even though the agency was under a consent decree requiring it to conduct a rulemaking proceeding, holding that "Article III standing requires more than the possibility of potentially adverse regulation." *Id.* at 1324-25. Here, the possibility of future harm is more speculative because it depends not just on future actions of the Executive Branch but on two independent constitutional actors: the federal grand jury that would determine whether there is probable cause to indict if prosecutors sought an indictment, and the Article III judge who would

decide whether to grant discovery on a motion to dismiss such an indictment. "'[S]tanding theories that require guesswork as to how independent decisionmakers will exercise their judgment' do not suffice." *Hecate Energy LLC v. FERC*, 126 F.4th 660, 666 (D.C. Cir. 2025) (quoting *Murthy*, 603 U.S. at 57-58); *see also*, *e.g.*, *Clapper*, 568 U.S. at 413-14 ("we have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment" and "decline to abandon [that] usual reluctance").

Examining the links in the causal chain more closely confirms the speculative nature of Plaintiff's future injury. Plaintiff makes allegations, based in part on media reports relying on anonymous sources, about two alleged criminal investigations against him. *See*, *e.g.*, Compl. ¶¶ 33-34. Even taken as true, these factual allegations would establish no more than that there was, at one time, an investigation or investigations involving Plaintiff's conduct.[1] To state the obvious, not every criminal investigation results in prosecutors seeking an indictment. And even if prosecutors sought Plaintiff's indictment, a grand jury would need to find probable cause to return an indictment.

Even if Plaintiff were indicted, it is speculative whether the judge handling his case would grant his request for discovery to support a vindictive and selective prosecution motion. Discovery in such situations is far from automatic. In granting discovery in a particular case, Chief Judge Boasberg recently explained that "[t]o obtain discovery" for either a vindictive prosecution or selective prosecution claim, "defendants must clear a hurdle" of "provid[ing] some evidence" to demonstrate "a colorable claim, which is itself a demanding standard." *United States v. Carey*, 816 F. Supp. 3d 129, 143-44 (D.D.C. 2026) (citations omitted). The Fourth Circuit has similarly

---

[1] For avoidance of doubt, in this brief, the government neither confirms nor denies any assertions about the status of alleged criminal investigations.

held that "even before a court allows a defendant to have discovery on the government's prosecutorial decisions, the defendant must overcome a significant barrier by advancing objective evidence tending to show the existence of prosecutorial misconduct. The standard is a 'rigorous' one." *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) (quoting *United States v. Armstrong*, 517 U.S. 456, 468 (1996)).

Perhaps because obtaining discovery on a vindictive or selective prosecution claim is a meaningful hurdle, Plaintiff spends nine pages in his preliminary injunction brief arguing that he "will raise a well-founded claim of vindictive and selective prosecution" to "challenge any charges that may ultimately arise from the government's" alleged investigations against him. Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. 11, ECF No. 2-1 ("Mem."); *see id.* at 11-19. Yet that argument only underscores that it would "stretch[]" the concept of imminence "beyond its purpose," *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 564 n.2), for this Court to guess whether another judge will find that there is a basis for discovery to assess a challenge to an indictment that has not come based on an alleged investigation that Plaintiff contends is still ongoing. The strength of a vindictive prosecution or selective prosecution motion cannot be assessed in a vacuum, without knowing the nature of the charges or the allegations underlying the charges. For example, in *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), the Supreme Court cited the undisputed substantive validity of charges in concluding that a criminal defendant had not made out a vindictive prosecution claim. And a selective prosecution claim "requires a plaintiff to demonstrate he was singled out for enforcement 'from among others similarly situated,'" meaning that his "circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1137 (D.C. Cir. 2023) (quoting *Branch*

*Ministries v. Rossotti*, 211 F.3d 137, 144, 145 (D.C. Cir. 2000)).  At this point, the Court could do no more than speculate about the strength of any motion to challenge a potential future indictment.

Adding to the layers of speculation, the question is not whether *this Court* believes that Plaintiff will in the future be able to mount a showing sufficient to obtain discovery on a motion to dismiss a future indictment.  The question is whether *the judge handling any future criminal case* would agree.  In other words, this Court would have to engage in "guesswork as to how independent decisionmakers will exercise their judgment." *Hecate Energy LLC*, 126 F.4th at 666 (quoting *Murthy*, 603 U.S. at 57-58).  As an example of how Plaintiff calls for such guesswork, he asserts that "*[t]he Court reviewing the vindictive and selective prosecution challenges* would engage in a probing analysis, as it will no longer afford the traditional presumption of regularity to the government."  Compl., heading before ¶ 52 (emphasis added) (capitalization omitted).  If Plaintiff is indicted and challenges such an indictment, it would be up to the presiding judge, not this Court, to determine whether Plaintiff has overcome the traditional presumption of regularity. *See United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926).

Furthermore, Plaintiff claims that the Department of Justice has engaged in a "judge-shopping plan," to "steer any . . . eventual prosecution . . . to the Fort Pierce Division of the Southern District of Florida and to the only judge in that Division — Judge Aileen Cannon." Compl. ¶ 37.  Indeed, Plaintiff goes so far as to suggest that if Plaintiff is indicted and his case is assigned to Judge Cannon, he will file a "recusal motion" asking to remove her from the case. *Id.*, App. A, at 15.  The government declines to engage with speculative allegations of judge-shopping regarding a hypothetical indictment.  But to the extent Plaintiff's theory is that the case could be assigned to Judge Cannon, that a court may order Judge Cannon's recusal, and then the case will

9

be reassigned to a new judge who would order discovery on a vindictive and selective prosecution motion, that only adds to the long list of contingencies in Plaintiff's speculative chain.

Finally, it is speculative whether the government will fail to preserve the documents that Plaintiff contends would be at issue in a future criminal case. Plaintiff does not contend or provide any evidence that the government is failing to preserve documents relevant to alleged investigations into Plaintiff. Instead, he claims more generally that "[a]dministration officials are failing to uphold [their] preservation obligations," Compl. ¶ 57, in cases that do not involve him, relying largely on media reports and to some extent on court filings in other cases, *see id.* ¶¶ 57-62. He notes that some government officials use electronic applications, including "messaging apps that can be set to auto delete," *id.* ¶ 57 and he conclusorily asserts that "the preservation processes have not been implemented to ensure" that recordkeeping obligations relating to those applications "are being consistently satisfied," *id.* He notes that the Office of Legal Counsel recently opined that the Presidential Records Act (PRA) is unconstitutional. *Id.* ¶ 61. Yet as he acknowledges, a federal court issued an injunction requiring numerous federal officials and agencies to comply with the PRA. *See Am. Hist. Ass'n v. Trump*, --- F. Supp. 3d ---, 2026 WL 1412395 (D.D.C. May 20, 2026), *appeal filed*, No. 26-5185 (D.C. Cir. June 3, 2026). None of these contentions establishes that Plaintiff's fear that the government will fail to preserve documents he would seek in discovery is anything more than speculative.

Any of these contingencies would be sufficient on its own to show that Plaintiffs' claimed future injury is speculative. Together, they demonstrate beyond doubt that Plaintiff cannot show, as required, that his "injury is certainly impending." *Clapper*, 568 U.S. at 409 (citation omitted).

## II.   Plaintiff's Claims Are Unripe

For similar reasons that Plaintiff lacks standing, his claims are unripe. The ripeness doctrine is both constitutional and prudential. As a constitutional doctrine, ripeness "shares the

10

constitutional requirement of standing that an injury in fact be certainly impending." *Nat'l Treasury Emps. Union*, 101 F.3d at 1427. A claim is not ripe if it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. at 131 (citation omitted). Plaintiff's claims are constitutionally unripe because, as explained above, *see supra*, pp. 6-10, his claims are dependent on contingent future events that may not occur.

"Prudentially, the ripeness doctrine exists to prevent the courts from wasting [courts'] resources by prematurely entangling ourselves in abstract disagreements, and, where, as here, other branches of government are involved, to protect the other branches from judicial interference until their decisions are formalized and their 'effects felt in a concrete way by the challenging parties.'" *Nat'l Treasury Emps. Union*, 101 F.3d at 1431 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). The prudential ripeness doctrine entails "evaluating '[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Labs.*, 387 U.S. at 149).

Under that standard, Plaintiff's claims are prudentially unripe. The scope of the government's document preservation obligations with respect to any potential future case against Plaintiff would depend on the nature of the charges. The issue would not be fit for decision until after any indictment is "formalized." *Id.* Further, there would be no hardship to Plaintiff in withholding consideration of the government's preservation obligations until there is an actual criminal case. Plaintiff will no doubt counter that documents may be lost in the interim. Yet as explained below, courts presiding over criminal cases are capable of issuing appropriate remedies to criminal defendants if they determine that the government has not complied with document preservation obligations. *See infra*, pp. 17-18. This Court should not "prematurely entangle

11

[it]sel[f] in [an] abstract disagreement[]," *Nat'l Treasury Emps. Union*, 101 F.3d at 1431, about document preservation in a hypothetical future criminal case.  If Plaintiff ever becomes a criminal defendant, then the court presiding over his criminal case can address such issues.

### III.      Plaintiff Cannot State a Claim Because He Lacks a Valid Cause of Action

Beyond the standing and ripeness issues, Plaintiff cannot state a claim because he lacks a valid cause of action.  "[T]he power to create causes of action belongs to Congress," and the Supreme Court has "rejected the practice of fashioning rights of action as we see fit."  *Cisco Sys., Inc. v. Doe I*, 146 S. Ct. 1882, 1890 (2026) (quoting *FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, 146 S. Ct. 1546, 1552-53 (2026)).  No cause of action allows a plaintiff who is not a criminal defendant to sue for an injunction requiring the government to preserve documents that might hypothetically be useful in a potential future criminal case in another jurisdiction.  Plaintiff cites three causes of action, one equitable and two statutory, but none applies to his circumstances or authorizes the relief he seeks.  His reliance on these causes of action amounts to forcing the proverbial square peg into a round hole.

#### A.      Plaintiff Cannot State a Claim for an Equitable Action to Enjoin Unconstitutional Conduct

Plaintiff first brings a claim for "equitable action to enjoin unconstitutional conduct," Compl., Count I (capitalization omitted), arguing that "courts have the inherent authority to provide injunctive relief when the government is taking action that may violate an individual's constitutional rights," *id.* ¶ 67.  He relies on *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), which rejected an implied right of action to enforce the Supremacy Clause, but stated in dicta that "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England," *id.* at 327.  Whatever the scope of such equitable causes of action

12

to enjoin violations of constitutional rights, no such cause of action is available here because there is no constitutional right for someone who is not a criminal defendant to have evidence preserved because it might be of use in a future criminal case.  The cases cited by Plaintiff in his Preliminary Injunction brief involve criminal defendants who were charged or indicted, and then challenged the supposed failure to preserve evidence in their criminal case,[2] in a direct appeal of a criminal conviction,[3] or in a collateral attack on a criminal conviction.[4]

Plaintiff has cited no case extending any purported constitutional right for preservation of evidence to someone who is not a criminal defendant.  For good reason.  Any constitutional obligation to preserve evidence derives from the Due Process Clause, which prohibits the government from "depriv[ing]" a person "of life, liberty, or property, without due process of law." U.S. Const. amend. V; *see also* U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law").  It is through a criminal case

---

[2] *United States v. Harris*, No. 1:20-cr-108, 2021 WL 1546541, at *1 (D.D.C. Apr. 20, 2021) (criminal defendant filed "motion to dismiss the indictment," claiming that "the Government failed to preserve potential forensic evidence"); *United States v. Mullen*, 243 F.R.D. 54, 58, 76-77 (W.D.N.Y. 2006) (criminal defendant filed motion for preservation of evidence in criminal case), *aff'd in part sub nom. United States v. Funderburk*, 243 F.R.D. 53 (W.D.N.Y. 2007); *United States v. Salad*, 779 F. Supp. 2d 503, 504 (E.D. Va. 2011) (criminal defendant filed motion for preservation of evidence in criminal case); *United States v. Patel*, No. 01 CR 716, 2002 WL 1750948, at *1 (N.D. Ill. July 26, 2002) (criminal defendant filed motion for preservation of evidence in criminal case); *United States v. Carlisi*, No. 92 CR 1064, 1993 WL 339079, at *1, 4-5 (N.D. Ill. Aug. 30, 1993) (criminal defendants filed motion for preservation of evidence in criminal case); *United States v. Webb*, No. 2:10-CR-41-H-3, 2011 WL 322394, at *3 (E.D.N.C. Jan. 31, 2011) (criminal defendant filed motion for preservation of evidence in criminal case); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1228-29 (D.N.M. 2008) (criminal defendant filed motion for preservation of evidence in criminal case).

[3] *United States v. Vega*, 826 F.3d 514, 521-22 (D.C. Cir. 2016) (per curiam) (defendants "were indicted," "were tried . . . and convicted," and "come before us now appealing their convictions and sentences"); *United States v. Grammatikos*, 633 F.2d 1013, 1016 (2d Cir. 1980) (criminal defendant was convicted, appealed conviction seeking dismissal of his indictment or new trial).

[4] *California v. Trombetta*, 467 U.S. 479, 483 (1984) (criminal defendants were convicted and filed writs of habeas corpus to challenge convictions).

brought against a criminal defendant that prosecutors can deprive a person of life, liberty, or property. As the Supreme Court framed the issue in the primary Supreme Court case on which Plaintiff relies, the Due Process Clause "require[s] that *criminal defendants* be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984) (emphasis added). To issue an injunction to Plaintiff on the basis that the Court has equitable authority to enjoin unconstitutional actions, the Court would have to break new ground in recognizing a new constitutional right to document preservation for someone who *might* become a criminal defendant in the future. Doing so would be unjustified by the text of the Constitution or any case law, and would inevitably ensnare courts in the speculative endeavor of trying to predict what criminal cases are likely to arise in the future.

Plaintiff also cannot show that, even if he were indicted in the future, the broad class of documents he seeks would be subject to a constitutional obligation to preserve evidence. Plaintiff asks this Court to order preservation of "any and all materials and communications . . . that are potentially relevant to the consideration of Director Brennan's legal and constitutional challenges to any future criminal charges," which "encompasses but is not limited to" eleven broad requests, each of which are a paragraph long and begin with the word "[a]ll." Compl., Request for Relief. The Constitution does not grant criminal defendants a right to preservation of all "potentially relevant" evidence. In *Trombetta*, the Supreme Court explained that "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." 467 U.S. at 488. The Supreme Court held that in drunk driving prosecutions, samples of the defendants' breath during the defendants' traffic stops did not qualify. *Id.* at 489. And as the D.C. Circuit recognized in a case cited by Plaintiff, "the Supreme Court's subsequent decision in *Arizona v. Youngblood*, 488

14

U.S. 51 (1988), narrowed the Government's constitutional obligations regarding the preservation of evidence" by "confin[ing] the Due Process Clause to superintending only those cases in which the missing evidence is material and exculpatory or in which 'the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.'" *Vega*, 826 F.3d at 533 (quoting *Youngblood*, 488 U.S. at 58). Thus, the relief Plaintiff seeks from this Court goes far beyond any conceivable constitutional right that he would have to preservation of evidence, even if he were a criminal defendant.

Plaintiff also suggests briefly that some of the documents whose preservation he seeks are covered by the Presidential Records Act (PRA) or the Federal Records Act. Compl. ¶ 55. To the extent Plaintiff is attempting to reframe a perfunctory argument that the government might violate statutes as a claim for violation of his constitutional rights, that move is "foreclosed . . . by *Dalton v. Specter*." *Glob. Health Council v. Trump*, 153 F.4th 1, 13 (D.C. Cir. 2025) (citing *Dalton v. Specter*, 511 U.S. 462 (1994)), *reh'g en banc denied*, No. 25-5097, 2025 WL 2709437 (D.C. Cir. Aug. 28, 2025). *Dalton* makes clear that allegations that an official has acted in opposition to a statute are statutory claims—not "'constitutional' claims" that can be asserted through a direct cause of action. 511 U.S. at 473.

As the Supreme Court has explained, not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. Rather, the Court has carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases). The Constitution may be implicated, for example, if executive officers rely on it as an independent source of authority to act, as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), or if the officers rely on a statute that itself violates the Constitution. *See Dalton*, 511

15

U.S. at 473 & n.5.  But claims alleging simply that an official has "exceeded his statutory authority are not 'constitutional' claims" that can be asserted through a direct cause of action.  *Id.* at 473.

In his Preliminary Injunction brief, Plaintiff relies on *American Historical Association*, 2026 WL 1412395, which found that plaintiffs had an equitable constitutional claim to challenge White House guidance that the Court viewed as authorizing violations of the PRA based on the Office of Legal Counsel's opinion that the PRA is unconstitutional.  *Id.* at *11-13.  Although the government respectfully disagrees with that decision, it is inapposite here.   The Court there reasoned that "the Guidance was issued under the President's inherent Article II authority and not under any statutory authority," based on the "OLC's position that the [PRA] is unconstitutional." *Id.* at *11.  By contrast, this case arises in a posture in which the *American Historical Association* court has enjoined various federal government entities to comply with the PRA, *see id.* at *28, the federal government is operating under that injunction,[5] and Plaintiff merely speculates that the government might nonetheless violate the PRA.  That is not a constitutional claim.

**B.    Plaintiff Fails to Invoke this Court's Jurisdiction for Mandamus Relief**

Plaintiff fails to plead a claim that meets the demanding standard to invoke this Court's mandamus jurisdiction and obtain mandamus relief.  "To establish entitlement to mandamus relief, the plaintiff must demonstrate 1) a clear and indisputable right to the particular relief sought against the federal official, 2) that the federal official is violating a clear duty to act, and 3) that the plaintiff has no adequate alternate remedy."  *Ferriero*, 60 F.4th at 713.   "If the plaintiff cannot establish all three of these threshold requirements, [a court] must dismiss the case for lack of subject matter jurisdiction."  *Id.* at 714.  "And even if those three requirements are met, the plaintiff must additionally show 'compelling equitable grounds' before [courts] will grant mandamus relief."  *Id.*

---

[5] The government has appealed the injunction, *see Am. Hist. Ass'n v. Trump*, No. 26-5185 (D.C. Cir.), but it has not asked the D.C. Circuit to stay the injunction pending appeal.

16

(quoting *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005)).  "Few legal standards are more exacting than the requirements for invoking mandamus jurisdiction under [28 U.S.C.] § 1361.  Mandamus is a 'drastic' remedy, only available in 'extraordinary situations,' and thus 'is hardly ever granted[.]'"  *Id.* (quoting *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc)).

Plaintiff cannot meet any of the requirements for mandamus.  To begin, he fails to plead a clear and indisputable right to relief or a clear duty for the government to act.  "The 'clear and indisputable right to relief' and 'clear duty to act' standards are equally stringent.  To meet the 'clear and indisputable' requirement, the plaintiff must show that the challenged action is 'plainly and palpably wrong as [a] matter of law.'"  *Id.* (quoting *United States ex rel. Chicago Great W. R.R. Co. v. ICC*, 294 U.S. 50, 61 (1935)).  "Accordingly, [courts] will deny mandamus even if a petitioner's argument, though 'pack[ing] substantial force,' is not clearly mandated by case law.'"  *Id.* (quoting *In re Al Baluchi*, 952 F.3d 363, 369 (D.C. Cir. 2020)).  "Likewise, to meet the 'clear duty to act' standard, '[t]he law must not only authorize the demanded action, but require it; the *duty must be clear and indisputable*.'"  *Id.* at 715 (quoting *United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 420 (1931)).  As explained above, *supra*, pp. 12-15, Plaintiff's argument to extend the constitutional rights of criminal defendants to someone who claims that he might in the future become a criminal defendant is unsupported by any case law.  Plaintiff's creative argument asking this Court to break new legal ground falls far short of the clear right and clear duty needed to justify mandamus relief.

Likewise, he cannot obtain mandamus because if he were indicted in the future, adequate alternate remedies would be available to him in his criminal case.  "[Mandamus] is not available unless 'no adequate alternative remedy exists.'"  *In re al-Nashiri*, 791 F.3d 71, 78 (D.C. Cir. 2015)

17

(quoting *Barnhart v. Devine*, 771 F.2d 1515, 1524 (D.C. Cir. 1985)). "Chief Justice Waite summed it up well: 'The general principle which governs proceedings by *mandamus* is, that whatever can be done without the employment of that extraordinary remedy, may not be done with it.'" *Id.* (quoting *Ex parte Rowland*, 104 U.S. (14 Otto) 604, 617 (1881)).

If Plaintiff were indicted, and if he moved to dismiss his indictment for vindictive and selective prosecution, and if the court handling his criminal case held that he raised a sufficient claim to obtain discovery on his motion, and if some documents that he sought in discovery were not preserved, he could pursue remedies for alleged spoliation in the criminal case. "When the Government has failed to preserve evidence, the Court has discretion to impose a wide range of sanctions." *United States v. Vanterpool*, No. 1:25-cr-138-RJL, 2026 WL 810005, at *6 (D.D.C. Mar. 24, 2026). Remedies that courts have imposed for destruction of evidence in a criminal case include a remedial jury instruction, *United States v. Sivilla*, 714 F.3d 1168, 1174 (9th Cir. 2013), dismissing a count of a criminal case, *United States v. Laurent*, 607 F.3d 895, 900-01 (1st Cir. 2010), allowing an adverse inference regarding the lost evidence, *id.* at 902, excluding evidence related to the lost evidence, *United States v. Elliott*, 83 F. Supp. 2d 637, 648-49 (E.D. Va. 1999), or even dismissing the criminal case in extreme circumstances, *United States v. Belcher*, 762 F. Supp. 666, 672-73 (W.D. Va. 1991). The availability of alternative remedies if his fear of a future indictment comes to pass dooms his request for mandamus.

### C. Plaintiff Fails to Invoke the Court's Jurisdiction Under the All Writs Act

Plaintiff fares no better with his claim for injunctive relief in aid of the Court's jurisdiction under the All Writs Act, 28 U.S.C. § 1651, *see* Compl. ¶ 76, because he cannot show how this Court would have any jurisdiction over a potential future criminal case in Florida. The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law." 28 U.S.C. § 1651 (emphasis

18

added). "'While the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction. . . . [T]he Act does not enlarge that jurisdiction.'" *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004) (Roberts, J.) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999)). In *Tennant*, then-Judge Roberts explained that the D.C. Circuit lacked jurisdiction under the All Writs Act in aid of prospective jurisdiction over Federal Communications Commission (FCC) proceedings because the petitioner "never initiated a proceeding with the FCC." *Id.* at 528. Thus, the court could not say that the case was within its "prospective jurisdiction," rejecting the notion that the court could enter relief in aid of its jurisdiction under the All Writs Act "however prospective or potential that jurisdiction might be." *Id.* at 529.

Here, Plaintiff cannot show that an injunction regarding document preservation is necessary to preserve *this Court*'s jurisdiction, for two reasons. First, this Court would not have any jurisdiction over a future criminal case that Plaintiff expects the government to bring in the Southern District of Florida. Plaintiff alleges that the Department of Justice has engaged in a "judge-shopping plan" to steer his investigation and potential prosecution to the Fort Pierce Division of the Southern District of Florida. *See* Compl. ¶ 37. For that reason, Plaintiff names as a defendant the U.S. Attorney for the Southern District of Florda, but not the U.S. Attorney for the District of Columbia. *See* Compl. ¶ 20. This Court would have no jurisdiction over a future criminal case in the Southern District of Florida.

Second, even if Plaintiff were eventually indicted in this District, he does not articulate how a document preservation order now would be necessary to preserve the court's jurisdiction over the criminal case. As explained above, the judge presiding over any potential future criminal case can handle motions relating to the preservation of evidence and can consider appropriate

19

remedies if the government is found to have violated the defendant's rights through the spoliation of evidence.  *See supra*, pp. 17-18.

## CONCLUSION

The Court should grant Defendants' Motion to Dismiss and enter an order dismissing the Complaint.

Dated:  July 28, 2026                    Respectfully Submitted,


                                         BRETT A. SHUMATE
                                         Assistant Attorney General
                                         Civil Division

                                         ALEXANDER K. HAAS
                                         Director, Federal Programs Branch

                                         ELIZABETH J. SHAPIRO
                                         Deputy Director, Federal Programs Branch

                                         */s/ Jeremy S.B. Newman*
                                         JEREMY S.B. NEWMAN
                                         Chief Litigation Counsel
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, N.W.
                                         Washington, DC 20005
                                         Tel: (202) 532-3114
                                         Fax: (202) 616-8470
                                         Email: jeremy.s.newman@usdoj.gov

                                         *Attorneys for Defendants*

21