**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOHN O. BRENNAN

*Plaintiff*,

v.

TODD BLANCHE, in his official capacity as
Acting Attorney General, et al.,

*Defendants*.

Civil Action Case No. 1:26-cv-02323-JMC

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR A
PRELIMINARY INJUNCTION AND OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Former CIA Director John Brennan is currently the target of two federal grand jury investigations, which are demonstrably motivated by President Trump's effort to use the criminal justice system to seek retribution against Director Brennan for his lawful conduct while serving as CIA Director and for his criticism of the President in the years since. To ensure that he can effectively challenge any unconstitutionally vindictive and selective criminal charges, Director Brennan has sought injunctive relief ordering the government Defendants to preserve the internal government records and communications that will demonstrate the retributive motivations behind an eventual prosecution.

In filing this action, Director Brennan seeks nothing more than to ensure that the government does what it is already obligated to do – preserve all records and communications relevant to the government's preordained decision to investigate and prosecute him. Rather than simply stipulating to uphold that constitutional obligation, however, the Defendants devote their responsive pleadings to arguing the limits of that obligation and disputing when and how Director Brennan has the right to enforce it. This concentration on technical arguments only

underscores the merits of Director Brennan's concerns and reinforces the due process imperative behind his request for injunctive relief.[1]

In their effort to avoid addressing the underlying constitutional violation, the Defendants also challenge the proposed injunctive remedy as "unprecedented." While this certainly is a cause of action with little precedent, it is in direct response to the unprecedented campaign that the Department of Justice ("Justice Department") is waging against Director Brennan and the President's other retribution targets. There is no precedent for a President bending the Justice Department to his personal and political agenda; for Justice Department leaders to publicly prejudge an individual's guilt and announce him a target before even determining his alleged crime; or for the Executive Branch to show such systematic disdain for the government's record preservation obligations and the individual rights those obligations are designed to protect. These are historically unique government actions, and they highlight both the urgent threat to Director Brennan's constitutional rights and the compelling need for the application of injunctive relief to defend those constitutional rights and the rule of law.

---

[1] The government Defendants filed an Opposition to Director Brennan's Motion for Preliminary Injunction ("Opposition") and a Motion to Dismiss his Complaint. Given that the Defendants' two filings share the same substance — with additional points in the Opposition addressing the likelihood of irreparable harm and the balancing of the equities — the Court granted Director Brennan leave to file a single pleading in response.

## TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................................... 1

    I.     Director Brennan Has Standing ................................................................ 3

             Likelihood of an Investigation ................................................................ 4

             Likelihood of Charges ............................................................................ 5

             Likelihood that a Reviewing Court Would Order Production of
             Internal Government Records .................................................................. 6

             Likelihood that the Government will Fail to Preserve all Relevant Internal
             Records ................................................................................................... 8

    II.    Director Brennan's Claims Are Ripe ..................................................... 11

    III.   Director Brennan Has Valid Causes Of Action .................................... 13

             Defendants' Challenge to an Equitable Action to Enjoin Unconstitutional
             Conduct ................................................................................................. 13

             Defendants' Challenge to Director Brennan's Request for a Writ of Mandamus
             to Protect his Constitutional Rights ..................................................... 16

             Defendants' Challenge to Director Brennan's Request for Injunctive Relief in Aid
             of the Court's Jurisdiction ..................................................................... 17

    IV.   Director Brennan Will Suffer Irreparable Harm In the Absence of
          Injunctive Relief ................................................................................... 20

    V.    The Balance of Equities Weighs In Favor Of Injunctive Relief .......... 22

CONCLUSION ................................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abouammo v. United States*,
608 U.S. ---, 146 S. Ct. 1571 (2026)................................................................................19

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015)..............................................................................................13, 16

*Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017).............................................................................................11

*Blalock v. United States*,
844 F.2d 1546 (11th Cir. 1988) .........................................................................................14

*California v. Trombetta*,
467 U.S. 479 (1984)....................................................................................13, 15, 16

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006)............................................................................................21

*Cherokee Nation v. U.S. Dep't of the Interior*,
643 F. Supp. 3d 90 (D.D.C. 2022)..............................................................................10, 11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..............................................................................................................11

*In re Grand Jury Investigation*,
59 F.3d 17 (2d Cir. 1995)....................................................................................................15

*In re Grand Jury Investigation*,
610 F.2d 202 (5th Cir. 1980) ..............................................................................................14

*In re Grand Jury Proceedings*,
814 F.2d 61 (1st Cir. 1987).................................................................................................15

*In Re Grand Jury Subpoenas Dated July 10, 2026*,
No. 1:26-mc-352 (S.D.N.Y. July 23, 2026)........................................................................7

*Johnson v. City of Cheyenne*,
99 F.4th 1206 (10th Cir. 2024) ..........................................................................................13

*Kister v. Ohio Bd. of Regents*,
365 F. Supp. 27 (S.D. Ohio 1973) .....................................................................................15

*L.G.M. v. Noem*,
  No. 1:25-cv-2942 (D.D.C. Aug. 31, 2025) ...............................................................8

*League of Women Voters of United States v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016).................................................................................11

*Murthy v. Missouri*,
  603 U.S. 43 (2024)................................................................................................3

*Steffel v. Thompson*,
  415 U.S. 452 (1974)........................................................................................11, 14

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)........................................................................................11, 12

*Union of Concerned Scientists v. U.S. Dep't of Energy*,
  998 F.3d 926 (D.C. Cir. 2021)...............................................................................12

*United States v. Blandon-Saavedra*,
  No. 5:25-cr-310 (C.D. Cal. Oct. 31, 2025) ..............................................................7

*United States v. Bochene*,
  579 F. Supp. 3d 177 (D.D.C. 2022)........................................................................19

*United States v. Candia-Veleta*,
  104 F.3d 243 (9th Cir. 1996) .................................................................................8

*United States v. Evans*,
  2026 WL 2267774 (D.D.C. Aug. 6, 2026) ...............................................................7

*United States v. Garcia*,
  No. 5:25-cr-01289.............................................................................................9, 13

*United States v. Hirsch*,
  360 F.3d 860 (8th Cir. 2004) .................................................................................8

*United States v. Libby*,
  429 F. Supp. 2d 1 (D.D.C. 2006)...........................................................................13

*United States v. Lloyd*,
  992 F.2d 348 (D.C. Cir. 1993)...............................................................................13

*United States v. Pasha*,
  797 F.3d 1122 (D.C. Cir. 2015).............................................................................16

*United States v. Stickle*,
  355 F. Supp. 2d 1317 (S.D. Fla. 2004) ...................................................................19

**Statutes and Rules**

28 U.S.C. § 515................................................................................................................18

28 U.S.C. § 1651(a) .........................................................................................................17

Fed. R. Crim. P. 5(c)(3)(D)(i)-(ii)......................................................................................8

Fed. R. Crim. P. 21 (a)-(b) ..............................................................................................19

**Other Authorities**

Affidavit of Patrick J. Fitzgerald in Support of Mot. to Dismiss, *United States v. Comey*, No. 4:26-cr-16 (E.D.N.C. July 28, 2026)  ....................................................7

*Business Meeting on Amendment to Committee Rules and Release of Committee Transcripts Before the H. Select Comm. on Intelligence*, 119th Cong. (Mar. 24, 2026) .........................................................................................................................12

*Committee Business to Consider: 1) Amendment to Committee Rules; 2) Release of Committee Transcripts*, Congress.gov (last visited Aug. 11, 2026)....................................12

Defendant Morrow's Response to Government's Motion to Preclude Evidence at 1, *United States v. Stanley*, No. 3:25-MJ-320 (W.D.N.C. Aug. 5, 2026), Dkt. No. 64 ........................................................................................................................9

Jay Weaver, *Justice Dept. 'Weaponized' South Florida Office to Target Ex-CIA Chief: Critics*, Miami Herald (July 4, 2026).............................................................5

Julia Coin, *ICE Agents Lost 'Irreplaceable Video' in Charlotte Assault Case, Records Allege*, Charlotte Observer (Aug. 1, 2026) ................................................9

Kaelen Deese, *DOJ Inquiry into John Brennan Intensifies After House Sends Classified Transcripts*, Washington Examiner (Mar. 25, 2026)............................12

Mike McIntire, et al., *They Were Charged With Assaulting ICE Agents. The Cases Are Crumbling.* N.Y. Times (July 18, 2026) .........................................................9

U.S. Const. art. III...................................................................................................11, 14

U.S. Dep't of Just., Just. Manual § 9-11.151 (2020) .....................................................5

## ARGUMENT

It is typically the purpose of a plaintiff's reply to address the arguments in a defendant's opposition. While this Reply will address the arguments the Defendants made in their Opposition, it will start by addressing the arguments that defendants did *not* make. In this case, the arguments that were *not* made say much more than the arguments that *were* made.

Three important arguments that one would have expected to see in the Defendants' Opposition to the Motion for Preliminary Injunction are conspicuously absent from their pleadings. First and most importantly, the Defendants say nothing to provide the Court assurance that the government is, in fact, abiding by its obligation to preserve the records that would be subject to the requested injunction. As laid out in Director Brennan's initial filings, *see* Memorandum of Law in Support of a Motion for a Preliminary Injunction ("Mem.") 25-26, there is no question that the government is obligated to prospectively retain those records, both by the statutory requirements in the Federal Records Act and the Presidential Records Act and by the constitutional requirement that the government preserve information that may be relevant to a defendant's challenge to an eventual prosecution (which is the basis for this action). As such, in ordinary times, one would expect the government's Response to simply argue that it is not necessary for the Court to issue an injunction because the government is dutifully preserving all such records, both to satisfy its legal and constitutional obligations, and to preserve the evidence that will show that government decision making is unaffected by vindictiveness and selectivity. That assurance is absent from the Defendants' pleadings, and its absence speaks volumes. It says that in these extraordinary times, there can be no such assurance of compliance, and that in these retribution cases, the Justice Department's advocacy is constrained by the fact that the government no longer has clean hands.

1

Second, the Defendants say virtually nothing to dispute the factual allegations in Director Brennan's pleadings. There is no contesting the allegations of prosecutorial vindictiveness and selectivity; the Defendants do not respond to the charge that Justice Department and other government officials are ignoring their obligation to preserve records; and they say nothing about the litany of recent examples in Director Brennan's pleadings of Justice Department overreaching in cases involving the President's perceived adversaries. The Defendants' pleadings gloss over those critical factual issues, notwithstanding their criticality to the Court's evaluation of whether injunctive relief is warranted under these circumstances. Instead, they devote the majority of their text to lengthy procedural arguments about standing, ripeness, judicial comity and jurisdiction, suggesting a clear desire to deflect attention away from the uncomfortable reality of these underlying facts.

Finally, the Defendants' pleadings say nothing to contest Director Brennan's assertion that the government no longer enjoys a presumption of regularity in cases that are a part of the President's retribution campaign. That presumption has historically insulated federal prosecutorial activities — in particular those activities in the investigation and charging decision stages of a prosecution — from judicial scrutiny on the premise that Justice Department personnel typically conduct themselves in accordance with traditional standards of propriety and with respect for fairness and due process. It is a critical question in this case whether the Justice Department's recent misconduct in the retribution cases has forfeited its right to that insulation from judicial scrutiny, as it determines the extent to which the Court will scrutinize the government's decision making and thereby require production of those internal records that reveal the motivations behind that decision making. By ignoring that question, the Defendants

2

effectively concede that the presumption of regularity has evaporated in those cases involving President Trump's retribution targets.

* * * * * * * *

With these three significant omissions in mind, Director Brennan will now respond to the primary arguments in the Defendants' pleadings in opposition to his request for injunctive relief. Those arguments are the following: (1) that Director Brennan lacks standing to bring this action; (2) that his claims are both "constitutionally unripe" and "prudentially unripe;" (3) that the three causes of action pleaded in Director Brennan's original filings are all invalid; (4) that Director Brennan cannot demonstrate that he will suffer irreparable harm in the absence of injunctive relief; and (5) that the balance of equities weighs against the granting of injunctive relief. These arguments all fail when evaluated against the points made in Director Brennan's original filings and the supplemental argument herein.

### I.    Director Brennan Has Standing

The Defendants first assert that Director Brennan cannot obtain an injunction because he lacks standing to demand that relief. The flaw in Director Brennan's standing, they contend, lies in the fact that the injury for which he seeks a remedy — i.e. the non-preservation of records that will be critical to an eventual constitutional challenge to his prosecution — is too "speculative" and not sufficiently "imminent" to constitute " 'a substantial risk that, in the near future, [he] will suffer an injury that is traceable to a Government defendant and redressable by the injunction [he] seek[s].' " Opposition (Opp.) 6 (quoting *Murthy v. Missouri*, 603 U.S. 43, 49-50 (2024)). In his original pleadings, Director Brennan carefully explained how the government's failure to preserve its records is highly likely to ultimately jeopardize his constitutional rights, methodically describing how each juncture in the litigation process will lead inexorably toward such an outcome. To challenge that explanation, the Defendants' pleadings purport to analyze

3

that process and sow doubts whether each juncture will lead to that eventuality. The following section refutes that argument and demonstrates that a real-world analysis of that process raises no doubts about the likelihood of Director Brennan suffering a significant violation of his constitutional rights.

**Likelihood of an Investigation:** The Defendants mystifyingly start off by questioning the very existence of a criminal investigation into Director Brennan. Positing that "[Director Brennan's] assertions about the alleged investigations against him are based largely on media reports," Defendants ask the Court to question the accuracy of Director Brennan's supporting evidence and assert that "[e]ven taken at face value, these articles would establish no more than that there was, at one time, an investigation or investigations involving Plaintiff's conduct." Opp. 8.

Contrary to this suggestion, there is no ambiguity about the existence of active, ongoing criminal investigations targeting Director Brennan for prosecution. Director Brennan's pleadings contain substantial evidence of the existence of such investigations, including: (1) the statements by Attorney General Todd Blanche and FBI Director Kash Patel in their respective television interviews with Sean Hannity that directly and publicly acknowledge the existence and contours of the investigative activity targeting Director Brennan, Compl. ¶ 48; (2) the issuance of subpoenas from three different grand juries to dozens of individuals, including Director Brennan, Mem. 4-5; Declaration of Kenneth L. Wainstein ("Decl.") ¶¶ 6, 27; the investigative interviews being conducted by federal prosecutors and FBI agents in furtherance of those grand jury investigations, Compl. ¶ 48; and (4) the clear statements to undersigned counsel by the supervising prosecutors, including Counselor to the Attorney General, Joseph diGenova, that they are conducting these investigations and that Director Brennan is the target thereof, Decl. ¶ 6.

**Likelihood of Charges:** The Defendants next assert that it is overly speculative whether that investigation will result in the issuance of criminal charges. That assertion is refuted by the abundant evidence suggesting that criminal charges appear virtually inevitable. As laid out in Director Brennan's original pleadings, that evidence includes: (1) that President Trump has emphatically directed his prosecutors to charge Director Brennan, Compl. ¶ 40, Compl. Appendix B; (2) that the Justice Department has shown a consistent willingness to respond to such direction by ginning up specious charges against the President's perceived adversaries, *id.* ¶ 3; (3) that the officials overseeing the two pending investigations have identified Director Brennan as a "target" (*see* Decl. ¶ 6), which is a status defined by Justice Department policy as "a person as to whom the prosecution or grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant," U.S. Dep't of Just., Just. Manual § 9-11.151 (2020); (4) the investigations targeting Director Brennan have publicly prejudged his guilt and telegraphed that he should face criminal charges, Compl. ¶¶ 44, 48; and (5) that the Justice Department is committing substantial resources to building and mobilizing a team to investigate and bring such charges to fruition, Mem. 14.[2] Given these circumstances, it is clearly more than "speculative" that Director Brennan, who is the only declared target of this investigative effort, will be charged in an indictment.

In further pressing this argument, Defendants cite the possibility that, even if the prosecutors are determined to seek charges, a grand jury may reject the indictment they propose. While there certainly has been an increase in the number of instances under this Administration where grand juries have rejected proposed charges, that outcome remains the clear exception to

---

[2] *See also* Jay Weaver, *Justice Dept. 'Weaponized' South Florida Office to Target Ex-CIA Chief: Critics*, Miami Herald (July 4, 2026), https://perma.cc/Y3ZA-FLCN (Ex. A) (describing how a "shadow" U.S. Attorney's Office has been established in the Fort Pierce Division of the Southern District of Florida to run the Brennan investigations).

the rule. As this Court well knows, the prosecutor still exercises substantial control over the grand jury and usually prevails when seeking an indictment. There is no better example of this reality than the most recent case against former FBI Director James Comey charging him with threatening the President by posting a photograph of seashells on the beach that spelled out "8647." *See* Indictment, *United States v. Comey*, No. 4:25-cr-16 (E.D.N.C. Apr. 28, 2026), Dkt. No. 1.

**Likelihood that a Reviewing Court Would Order Production of Internal Government Records:** The Defendants then argue that "[e]ven if Plaintiff were indicted, it is speculative whether the judge handling his case would grant his request for discovery to support a vindictive and selective prosecution motion." Opp. 8. Again, the Defendants ignore the reality of this situation. As explained in Director Brennan's Memorandum (Mem. 11-19), it is hard to imagine a case with a clearer record of prosecutorial vindictiveness and selectivity. That record — along with the evaporation under this Administration of the presumption of regularity that would normally restrain a court's review of prosecutorial decision making — ensures that the court handling Director Brennan's constitutional challenge will demand production and conduct a probing review of the internal records and communications that shed light on the motivations behind the government's investigative and prosecutorial decisions.[3]

In a futile attempt to challenge Director Brennan's argument on that point, the defendants cite the fact that "Plaintiff spends nine pages of his brief arguing that he 'will raise a well-founded claim of vindictive and selective prosecution,'" and they then draw the inference from

---

[3] For purposes of this analysis, it is immaterial whether that court would require production of the records to Director Brennan and his counsel, or only to the court for *in camera* review. The relevant point is that the clear record of vindictiveness and selectivity in this case — along with the loss of the presumption of regularity — would compel a court to demand and thoroughly examine those materials in deciding Director Brennan's constitutional challenge to a prosecution.

the length of that argument that making that showing will be "a meaningful hurdle," Opp. 9.

Defendants draw the wrong inference. The fact is that it took that many pages in the Argument

section — and many more in the Factual Background sections of Director Brennan's Complaint

and Memorandum — simply because there is so much evidence supporting a claim of

prosecutorial vindictiveness and selectivity in this case.

Persisting in this lost-cause line of argument, the Defendants then contend that the

speculativeness is compounded by the fact that a different judge will ultimately make the

decision whether to examine internal government records in considering Director Brennan's

constitutional challenge. Opp. 10. Again, this argument is nothing more than a distraction. The

identity of the reviewing judge is a completely irrelevant factor in this analysis. Rather, the

relevant factor is the objective strength of the evidence that would compel that judge to

thoroughly examine the government's records as to whether the prosecutors were acting out of

vindictive and selective motivations that violated Director Brennan's rights.[4] Given the

---

[4] Director Brennan's Memorandum cites a number of past cases where courts hearing challenges to prosecutorial actions have reviewed internal government communications. Mem. 23-25. *See also* Order at 2, *United States v. Blandon-Saavedra*, No. 5:25-cr-310 (C.D. Cal. Oct. 31, 2025), Dkt. No. 46 (court *sua sponte* ordered the government to provide to the court internal emails in a criminal case). There have been other such cases since the filing of this lawsuit. For example, a district court *sua sponte* ordered the government to produce its internal communications about the decision to subpoena a journalist. *See* Order, *In Re Grand Jury Subpoenas Dated July 10, 2026*, No. 1:26-mc-352 (S.D.N.Y. July 23, 2026), Dkt. No. 38. Also, in a recent filing, former FBI Director James Comey relied on internal emails that the government produced in discovery to support his motion for a vindictive and selective prosecution. Affidavit of Patrick J. Fitzgerald in Support of Mot. to Dismiss ¶ 8, *United States v. Comey*, No. 4:26-cr-16 (E.D.N.C. July 28, 2026), Dkt. No. 43 (Ex. B) (describing emails among AUSAs and Secret Service investigators and emails relating to the President being briefed on the substance of Director Comey's investigative interview). Last week, in a case where the Justice Department issued an administrative subpoena for information about voter rolls, Judge Moss emphasized that "[c]ircumstantial evidence of bad faith is sufficient to justify giving the recipient of an administrative subpoena an opportunity to examine the agency decision-maker about his motive for issuing the subpoena." *United States v. Evans*, 2026 WL 2267774, at *4 (D.D.C. Aug. 6,

overwhelmingly strong evidence of vindictiveness and selectivity in this case, it would be a clear abuse of discretion[5] for that judge — any judge — to deny Director Brennan's challenge and proceed to trial without such a probing examination of the government's motivations.[6]

**Likelihood that the Government will Fail to Preserve all Relevant Internal Records:** Finally, the Defendants argue that it is mere speculation that the government may not preserve all records that would be relevant to Director Brennan's constitutional challenge. Their Opposition faults Director Brennan's Memorandum for "claim[ing] more generally that 'the government is failing to uphold its obligations to preserve the records of the type that will be relevant to Director Brennan's challenges to an indictment in this matter'" without providing evidence that such preservation failure is happening specifically in the investigations targeting him. Opp. 11. Citing the absence of that specific evidence, Defendants reject the proposition "that Plaintiff's fear that the government will fail to preserve documents he would seek in discovery is anything more than speculative." *Id.*

This argument does not withstand scrutiny. As Defendants are well aware, Director Brennan and this Court have no way of knowing what records and communications are or are not

---

2026) (Slip Op.) (ultimately denying additional discovery because Judge Moss resolved the case).

[5] *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004) ("A district court's decision whether to hold an evidentiary hearing or grant discovery requests with regard to claims of selective or vindictive prosecution will be overturned only upon a showing of abuse of discretion."); *United States v. Candia-Veleta*, 104 F.3d 243, 246 (9th Cir. 1996) ("[W]hether to grant discovery related to a selective prosecution claim" is reviewed for abuse of discretion).

[6] It is also worth noting that it is routine for judges to handle preliminary matters in cases before their assignment to a different judge. For example, one judge may issue a search or arrest warrant that is subsequently reconsidered by a different judge; a judge in one district may handle the initial presentment proceeding for a defendant to be prosecuted in a different district (Fed. R. Crim. P. 5(c)(3)(D)(i)-(ii)); and a judge may issue a temporary restraining order that is revisited at the preliminary injunction stage by another judge, *see, e.g.*, *L.G.M. v. Noem*, No. 1:25-cv-2942 (D.D.C. Aug. 31, 2025).

being preserved in the course of these investigations. Only the Defendants have that knowledge, and per the point made at the beginning of this pleading, they have intentionally decided not to share that knowledge with the Court or to provide any assurance that the government is preserving those records and communications. Given that conscious decision on their part, it seems distinctly unfair that the Defendants would urge the Court to hold the absence of evidence on this point against Director Brennan.

In the absence of such a showing and assurance, the Court is left with no choice but to divine the likelihood of preservation in this case based on the government's broader practice across other cases. While the Defendants' pleadings completely overlook that broader practice and the alarming crescendo of instances of non-preservation by this Administration, Director Brennan's pleadings cite a litany of these instances. *See* Mem. 26-29; Compl. ¶¶ 54-63.[7] The persistent disregard of preservation requirements in these other cases makes it unrealistic to expect that the government will be particularly punctilious about observing those requirements here, especially given that this case involves one of the highest-value targets in the President's retribution campaign.

---

[7] Director Brennan has learned of other such instances. For example, a person who was arrested in connection with protesting ICE recently alleged that federal immigration agents destroyed video evidence. *See* Defendant Morrow's Response to Government's Motion to Preclude Evidence at 1, *United States v. Stanley*, No. 3:25-MJ-320 (W.D.N.C. Aug. 5, 2026), Dkt. No. 64 (Ex. C) ("ICE agents, despite warnings from the FBI and Government attorneys, destroyed or allowed to be destroyed video evidence of the encounter."); *see also* Julia Coin, *ICE Agents Lost 'Irreplaceable Video' in Charlotte Assault Case, Records Allege*, Charlotte Observer (Aug. 1, 2026), https://perma.cc/4DCS-KHEX (Ex. D). In January 2026, a judge in the Southern District of Texas dismissed an indictment because "the Government admit[ted] that it destroyed recordings of the incident that occurred." Order at 6, 11, *United States v. Garcia*, No. 5:25-cr-1289, Dkt. No. 41. *See generally* Mike McIntire, et al., *They Were Charged With Assaulting ICE Agents. The Cases Are Crumbling.* N.Y. Times (July 18, 2026), https://perma.cc/8WT5-PUDT (Ex. E) (reporting that "[t]wo judges found that agents purposely destroyed evidence").

Aside from its weakness, the Defendants' argument on this point also reflects a troubling evasion of government responsibility. It suggests that a court cannot evaluate the government's conduct in one case in light of its conduct beyond the context of that case. Contrary to that suggestion, the Justice Department is — and should be — held to account in each of its cases for its conduct across all of its cases. Just as the courts have historically drawn a positive inference — i.e. the presumption of regularity — from largely admirable conduct by Department personnel, courts are equally entitled to draw a different inference from a high incidence of misconduct across the Department. As such, it is perfectly appropriate for the Court to consider the government's general flouting of its record preservation obligations in assessing the likelihood that these obligations are being observed in this case. The Defendants' suggestion otherwise appears to be an attempt to evade responsibility for institutional accountability, which is a responsibility that previous generations of Justice Department lawyers have shouldered with confidence and pride.

For these reasons, the Defendants fail in their effort to demonstrate that Director Brennan is unlikely to succeed in establishing his standing to seek injunctive relief. Notwithstanding their strained arguments about speculativeness, it remains overwhelmingly likely that the process detailed in Director Brennan's pleadings will, in fact, produce constitutional harm, i.e. the impairment of his ability to protect his due process and equal protection rights against a vindictive and selective prosecution. In light of that likely outcome, Director Brennan easily satisfies the requirements both for his standing to bring this action and for his eligibility for injunctive relief on the merits.[8]

---

[8] Director Brennan's response focuses on the Defendants' arguments about "speculativeness" and "substantial risk." As to the question of whether an injury would be "fairly traceable" to the government Defendants' conduct, the law is clear. For an injury to be fairly traceable, the

## II.      Director Brennan's Claims Are Ripe

The Defendants next take strands of their standing argument and repackage them into a perfunctory argument that Director Brennan's request for injunctive relief to protect his constitutional rights in the future is unripe. Citing the contingencies referenced in their standing argument, they categorically argue that "Plaintiff's claims are constitutionally unripe because . . . his claims are dependent on contingent future events that may not occur." Opp. 12.

This position runs counter to the well-established doctrine that injunctive relief can be secured to prevent *potential* government violations of an individual's constitutional rights. There is no requirement that a party seeking judicial protection against constitutional harm "demonstrate that it is literally certain that the harms they identify will come about." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). The Supreme Court has recognized, for example, that a party fearing potential enforcement satisfies the injury-in-fact requirement, of which ripeness is a component, where the plaintiff faces a "credible threat of prosecution" or has "an actual and well-founded fear" of prosecution. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (internal quotation marks omitted); *id.* at 165 (holding that "threatened" enforcement proceedings, like "arrest or prosecution" establish ripeness). As the D.C. Circuit has explained, "a preliminary injunction requires only a likelihood of irreparable injury[;] Damocles's sword does not have to actually fall on all [movants] before the court will issue an injunction." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 8-9 (D.C. Cir.

---

plaintiff need show only "but for" causation, meaning "if some part of the alleged injury would not have occurred, or will not occur, but for the challenged action, then the injury is fairly traceable to the challenged action." *Cherokee Nation v. U.S. Dep't of the Interior*, 643 F. Supp. 3d 90, 106 (D.D.C. 2022). A party has standing "even if the challenged action is not 'the most immediate cause, or even a proximate cause,' of the injury." *Id.* (quoting *Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017)). Article III standing is not met only where there is a "separate action [that] would independently cause [the injury] in full." *Id. See* U.S. Const. art. III. Here, there is no separate action from an independent third-party, such as a grand jury or judge, from which the harm to Director Brennan flows.

2016); *see also Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (in declaratory relief case, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights").

Director Brennan clearly meets that standard, as there is more than "'substantial risk'" that constitutional harm will occur in this case. *Union of Concerned Scientists v. U.S. Dep't of Energy*, 998 F.3d 926, 929 (D.C. Cir. 2021) (quoting *Susan B. Anthony List*, 573 U.S. at 158). He is the subject of criminal referrals from two cabinet officers and a Member of Congress. Compl. ¶¶ 33-34. He is the officially named target of two grand jury investigations. Decl. ¶ 6. He has received two subpoenas. *Id.* The prosecution team is actively conducting witness interviews in its investigation of those referrals. *Id.* ¶ 27. And the House Intelligence Committee recently voted to send classified transcripts of his testimony to the Justice Department to facilitate its false-statement investigation. *See Business Meeting on Amendment to Committee Rules and Release of Committee Transcripts Before the H. Select Comm. on Intelligence*, 119th Cong. (Mar. 24, 2026) (voting 14-11 along party lines to provide the DOJ and the FBI with the classified transcripts of interviews with Director Brennan); *Committee Business to Consider: 1) Amendment to Committee Rules; 2) Release of Committee Transcripts*, Congress.gov, https://perma.cc/E2VH-XTE2 (last visited Aug. 11, 2026); Kaelen Deese, *DOJ Inquiry into John Brennan Intensifies After House Sends Classified Transcripts*, Washington Examiner (Mar. 25, 2026), https://perma.cc/23AN-VNLX. In light of this activity, Director Brennan clearly has "an actual and well-founded fear" of prosecution, *Susan B. Anthony List*, 573 U.S. at 159 (internal quotation marks omitted) — regardless how ill-founded that prosecution would be — that makes judicial intervention at this stage appropriate and necessary to protect his constitutional rights at the post-indictment stage of the proceedings.

Moreover, the courts have made clear that there is room for potentiality in the specific context for which Director Brennan is seeking injunctive relief. In *California v. Trombetta*, 467 U.S. 479 (1984), a case involving the government's obligation to preserve potential evidence in a criminal prosecution, the Court specifically cited the constitutional requirement that the government preserve evidence "that *might be* expected to play a significant role in the suspect's defense." *Id.* at 488 (emphasis added). *See Johnson v. City of Cheyenne*, 99 F.4th 1206, 1226 (10th Cir. 2024) (due process requires the government to preserve evidence that "'might be'" expected to play a significant role in the defense (quoting ultimately *Trombetta*, 467 U.S. at 488-89)); *United States v. Libby*, 429 F. Supp. 2d 1, 6 (D.D.C. 2006) (materiality is not onerous and requires only a "'strong indication'" of playing an important role at trial (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)); Order at 10, *United States v. Garcia*, No. 5:25-cr-01289, Dkt. No. 41 (finding the government violated defendant's due process rights where the government failed to preserve "potentially useful evidence").

### III.   Director Brennan Has Valid Causes Of Action

The Defendants next challenge the validity of the three causes of action underlying Director Brennan's Complaint and Motion for Preliminary Injunction. As to each cause of action, the Defendants' brief focuses on a discrete central argument in opposition to its use in this case.[9] The following identifies the deficiencies that undermine each of these arguments.

**Defendants' Challenge to an Equitable Action to Enjoin Unconstitutional Conduct:** In challenging Director Brennan's request for injunctive relief to protect his future ability to defend his constitutional rights, the Defendants accept for the sake of argument that *Armstrong v.*

---

[9] As to each cause of action, Defendants make other points besides that central argument. Because each of those other points gets more thorough treatment in later sections of the Defendants' brief, Director Brennan's responses to those points will be deferred until this pleading addresses those sections.

*Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), and other cases grant courts the authority to enjoin violations of constitutional rights by the federal government. However, they then suggest an exception to that rule — i.e. that "there is no constitutional right for someone who is not a criminal defendant to have evidence preserved because it might be of use in a future criminal case," Opp. 13. Noting that Director Brennan has not yet been charged — and therefore is not currently a "criminal defendant" — the Defendants contend without any supporting case law that he is ineligible for the requested injunctive relief, and they caution the court not to "break new ground in recognizing a new constitutional right to document preservation for someone who *might* become a criminal defendant in the future." *Id.* at 15.

There are two reasons we know that this asserted exception to the courts' equitable authority to protect constitutional rights is a product of the Defendants' imagination. First, it flies in the face of the jurisprudence underlying that authority. Accepted at face value, this exception would mean that courts are unable to use their injunctive authority to prospectively protect the rights that have the highest level of constitutional significance — those enshrined in the Bill of Rights that protect an individual facing the prospect of criminal punishment.

Second, contrary to Defendants' argument, the case law clearly demonstrates that individuals can have standing to challenge prosecutorial action before that action evolves into an actual criminal case. *See Steffel*, 415 U.S. at 459 (person had Article III standing and statutory cause of action to seek declaratory relief where "petitioner has alleged threats of prosecution that cannot be characterized as imaginary or speculative" (internal quotation marks omitted)); *Blalock v. United States*, 844 F.2d 1546, 1548 (11th Cir. 1988) (permitting grand jury target to seek injunctive relief); *In re Grand Jury Investigation*, 610 F.2d 202, 219 (5th Cir. 1980) (recognizing that "the target of an ongoing grand jury investigation" can seek to have the grand

14

jury dismissed); *see also In re Grand Jury Investigation*, 59 F.3d 17, 19 (2d Cir. 1995) (target of grand jury investigation had standing to "invoke[] the court's supervisory powers over the grand jury"); *In re Grand Jury Proceedings*, 814 F.2d 61, 67 (1st Cir. 1987) (target had standing based on allegations of grand jury abuse); *Kister v. Ohio Bd. of Regents*, 365 F. Supp. 27, 33 (S.D. Ohio 1973), ("A plaintiff who has been indicted, arrested or threatened with prosecution would certainly have standing" to seek injunctive and declaratory relief against a state prosecution), *aff'd*, 414 U.S. 1117 (1974).

The Defendants further contend that, even if Director Brennan does get indicted and becomes a "criminal defendant," he would not be entitled to preservation of the breadth of materials requested in his Complaint. Opp. 15. Pushing back on Director Brennan's request for a judicial order requiring the preservation of all "potentially relevant" records and communications, the Defendants argue that the government is obligated to preserve only those records that are "material and exculpatory," *Id*. However, the case law that Defendants cite actually benefits Director Brennan's position, as the materials identified in the Complaint would contain information that is potentially exculpatory and material to Director Brennan's constitutional challenge. Moreover, as explained in his Memorandum, courts do not require a prospective determination of discoverability before requiring the government to preserve a category of potentially relevant information. Mem. 30 n.61. That is particularly the case where the putative defendant — in this case, Director Brennan — cannot yet know the scope of the potentially discoverable and relevant material, and where that material continues to be generated as the government moves forward with the investigations targeting him.

It is also important to note that this conclusion is consistent with the Supreme Court's admonition in *California v. Trombetta*, 467 U.S. at 486, about the difficulty of redressing the loss

15

of exculpatory evidence. As the Court explains, "fashioning remedies for the illegal destruction of evidence can pose troubling choices [because] [w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Id.* at 488; *see United States v. Pasha*, 797 F.3d 1122, 1138 (D.C. Cir. 2015) (noting the difficult choice in fashioning a remedy for constitutional violations where government fails to preserve evidence and collecting cases). In this case, preservation of the "potentially exculpatory evidence" in the categories of materials listed in the Request for Relief, Compl. pp. 39-42, is the best means of avoiding that "treacherous" situation.[10]

**Defendants' Challenge to Director Brennan's Request for a Writ of Mandamus to Protect his Constitutional Rights:** In challenging Director Brennan's request for a writ of mandamus to protect his constitutional rights, the Defendants focus on the purported absence of (1) a clear duty on the part of the federal government to preserve the records that will allow Director Brennan to effectively challenge an indictment in pretrial litigation on constitutional grounds and (2) a clear right on the part of Director Brennan to mandamus relief that will require the government to perform that preservation duty. Opp. 17-18.[11] Aside from citing various

---

[10] The Defendants try one other argument to undermine Director Brennan's first cause of action. They misconstrue his motion as a request for equitable relief based on the government's *statutory* preservation duty under the Federal Records Act and the Presidential Records Act, and then they argue that that relief is not available to address the government's violation of a statutory duty. *See* Opp. 16-17. While Director Brennan's Memorandum references those two statutes to demonstrate that the government has a multilayered obligation to preserve these records, Director Brennan clearly bases his request for equitable relief on the government's *constitutional* duty to preserve those records, Compl. ¶¶ 66-70; Mem. 31-32, which is unquestionably cognizable under *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015).

[11] The Opposition also argues in this section that there are adequate alternative remedies, i.e. spoliation sanctions at trial (Opp. 21), and that the balancing of equities weighs against the

16

articulations of the standards that apply to those points, the Defendants provide no new argument for why Director Brennan's pleadings fail to meet those standards. In the absence of any such argument, Director Brennan stands on (1) the showing in his original Memorandum of Law (Mem. 23-25) and *supra* at pp. 6-8 that the requested records and communications would be discoverable at a hearing on Director Brennan's constitutional challenge and (2) the showing in his Memorandum of Law (Mem. 25-26) that the law imposes a current duty on the government to preserve such materials that will be discoverable in the future. Together, those showings demonstrate that the government has a clear duty to preserve those materials, which can be enforced by a writ of mandamus now in order to protect Director Brennan's future ability to defend his constitutional rights.

**Defendants' Challenge to Director Brennan's Request for Injunctive Relief in Aid of the Court's Jurisdiction:** As the central argument in their challenge to this cause of action, Defendants argue that this Court lacks authority to grant the requested injunction. Citing the authorization in the All Writs Act for federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. § 1651(a), the Defendants argue that that authority does not extend to this case because the jurisdiction to be aided would not be that of this District, but rather that of the Southern District of Florida where any future criminal case would be brought. As such, they conclude, this Court has no authority to issue such a writ.

In making this argument, the Defendants incorrectly presume that a criminal case would necessarily be brought in the Southern District of Florida. In arriving at that presumption, defendants place significant weight on two facts: (1) the fact that the team running the two

requested relief. This pleading will respond to each of those points below in response to their more thorough treatment in later sections of the Defendants' pleadings.

17

investigations targeting Director Brennan is operating out of Fort Pierce in the Southern District of Florida, and (2) the fact that, as detailed in Director Brennan's December 22, 2025 letter to Chief Judge Altonaga (*see* Compl. Appendix A, at 8-13), the prosecutors have been engaged in a district and judge-shopping exercise to steer this investigation and any resulting prosecution to their favored judge in the Fort Pierce Division of the Southern District of Florida. They then draw from those facts the conclusion that any prosecution would necessarily be sited in that district. Opp. 20.

That conclusion is misplaced. While the investigative team is certainly operating out of the Southern District of Florida, their supervisors have advised undersigned counsel that the Attorney General specially designated the office in that district to run these investigations pursuant to 28 U.S.C. § 515, which authorizes the Attorney General to assign responsibility for a case to any Justice Department official, regardless of whether that person is a resident in the district where that case arises. Supp. Decl. ¶ 5. As such, the assignment of these investigations to that U.S. Attorney's Office says more about the personnel handling the investigation and nothing about where a prosecution can ultimately be brought.

To ascertain the location of the prosecution, it is necessary to look at the venue rules and to apply those rules to the two ongoing investigations — the investigation into Director Brennan's alleged false statements to Congress and the investigation into the "grand conspiracy" referral.[12] As to the former, the venue law is quite clear — and the supervising prosecutor expressly acknowledged to undersigned counsel — that any charges must be brought in the District of Columbia, where the supposed false statements allegedly occurred in the course of

---

[12] *See* Compl. ¶¶ 32-34 (describing the two investigations).

testimony before Congress.[13] Supp. Decl. ¶ 5; *see Abouammo v. United States*, 608 U.S. --- , 146 S. Ct. 1571, 1576 (2026) (the Constitution requires bringing charges where the elements of the offense occurred); Fed. R. Crim. P. 21.

As to the "grand conspiracy" investigation, there is a significantly stronger argument for venue in the District of Columbia than in the Southern District of Florida. The vast majority of the acts and decisions that supposedly underlie the alleged conspiracy took place in the seat of government in Washington, D.C.; most of the relevant records and documents are in relevant agencies in Washington, D.C.; and many more of the putative defendants and witnesses are in the D.C. area than in Southern Florida. As such, even if the prosecutors seek to file the "grand conspiracy" charges in the Southern District of Florida in furtherance of their forum and judge-shopping plan, the likelihood is that the case would ultimately be transferred to the District of Columbia under Federal Rule of Criminal Procedure 21(a) and (b). *See United States v. Bochene*, 579 F. Supp. 3d 177, 183 (D.D.C. 2022) (factors to consider for motion for change of venue include the location of the criminal defendant, the possible witnesses, the events likely to be in issue, the documents and records likely to be involved, and the counsel, as well as the disruption of the defendant's business, the expense to the parties, the relative accessibility of place of trial, the docket condition of each district, and any other special elements which might affect the transfer); *see also United States v. Stickle*, 355 F. Supp. 2d 1317, 1321 (S.D. Fla. 2004) (same factors), *aff'd*, 454 F.3d 1265 (11th Cir. 2006). Accordingly, there is every reason to believe that this Court would, in fact, be aiding its own jurisdiction by issuing an injunction to ensure preservation of records relevant to an eventual prosecution. And the mere possibility that another

---

[13] This conclusion is further supported by the fact that the subpoenas for testimony in the false statements case that were issued to witnesses (and then withdrawn) were issued by a grand jury in the District of Columbia. *See* Compl. ¶ 6; Decl. ¶ 27.

19

district may share jurisdiction over a potential case should not deny this Court the ability to use its writ authority to ensure access to the government records necessary to fully exercise its jurisdiction over that case.

### IV.    Director Brennan Will Suffer Irreparable Harm In the Absence of Injunctive Relief

Defendants assert that Director Brennan fails to make the requisite case for a preliminary injunction because he cannot show that he will suffer irreparable harm if the Court refuses to grant him injunctive relief.[14] Besides citing the above-addressed argument that any feared harm is too speculative to warrant judicial relief, *see supra* at p. 3, the Defendants focus their argument on the contention that any such harm could be completely redressed through other means. Specifically, they argue, the loss of records through non-preservation by the government would be redressable with spoliation sanctions in the normal course of the criminal process. Opp. 21-22. As they rightly observe, courts routinely apply such sanctions — in the form of remedial jury instructions, the dismissal of criminal counts, the application of an adverse inference from the lost evidence and the like — in situations where the government fails to preserve discoverable information and evidence. Those sanctions, the Defendants contend, would adequately redress any harm in the event that relevant government records are lost before they can be considered in a hearing on his constitutional challenge and would thereby obviate the need for injunctive relief.

---

[14] While not directly relevant to the potential harm examined in this equitable-relief analysis — i.e. the harm Director Brennan will suffer from the government's disregard of its preservation obligations — the government's disregard of its ethical obligations has already caused significant harm to Director Brennan. As the target of two concocted investigations over the past year, and the subject of countless scurrilous statements and threats by government officials, Director Brennan has already suffered extensively at the hands of the federal government, in the form of reputational harm, lost income, legal costs and threats of violence. This targeting and slandering of an innocent man may not be addressable by the requested injunction in this case, but it provides important context for the Court's evaluation of irreparable harm.

This argument overlooks a critical caveat that demonstrates the need for relief in this case. Although spoliation sanctions can provide a sufficient remedy in a situation where the court and counsel become aware of the records and their non-preservation, such sanctions provide no such remedy in a situation where they never learn that such records existed in the first place. As Director Brennan clearly and repeatedly argued in his initial pleadings (Compl. ¶¶ 10, 69; Mem. 8, 30), the latter situation is very likely to occur in this case, particularly as to critical records of internal communications. "[I]n those situations where internal communications — which are often the most valuable source of information about the prosecutors' true motivations — were auto deleted or otherwise not preserved, the court cannot count on pre-trial sanctions as a remedy for that spoliation as it may never become aware that the communications ever existed." Mem. 30. Given the distinct likelihood of this eventuality — based in large part on the government's demonstrated inability and/or unwillingness to carefully preserve their communications (*see* Compl. ¶¶ 26-34, 54-64; Mem. 26-29) — the Court and Director Brennan cannot count on future spoliation sanctions to remedy the feared constitutional harm from lost government records.

This point can be further highlighted by comparing this factual scenario with the case cited and discussed by the Defendants, *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006). Opp. 23. In that case, the court found that the appellants' feared harm of non-promotion based on their religion was not irreparable because there was a legal process by which they could seek redress in the event they were denied promotion. With that process in place, the court found that "'adequate compensatory or other corrective relief' [was] available to Appellants, belying their claims of irreparable tangible harm." 454 F.3d at 298. The finding that remediation was "available" made sense in that context because the Appellants would necessarily have the knowledge to avail themselves of that corrective relief — i.e. the knowledge

21

of their denied promotion. Director Brennan and the reviewing court, by contrast, may never become aware that certain critical communications or documents ever existed, so as to seek corrective relief through spoliation sanctions for their loss.[15]

### V.    The Balance of Equities Weighs In Favor Of Injunctive Relief

Defendants' final argument seeks to persuade this Court that the balance of equities favors denial of injunctive relief. In making that argument, the Defendants carefully avoid an actual balancing of the equities, likely because that would require showing how the government could possibly suffer cognizable hardship from being enjoined to preserve records it is already legally and constitutionally required to preserve. *See* Compl. ¶ 69; Mem. 36-38 (collecting cases holding that enjoining constitutional violations is always in the public interest).

Rather than engage with the case law about the balancing of equities, the Defendants focus on an entirely different factor that is not part of the balancing test. They claim that an injunction by this Court would somehow violate the "comity" between federal courts and intrude on the decision-making authority of the court that will handle Director Brennan's criminal prosecution. *See* Opp. 3, 24-25. Specifically, they argue, "if this Court were to issue legal rulings concerning the government's obligations with respect to a potential future criminal case, that would interfere with that court's ability to handle the potential future case." *Id.* at 24.

---

[15] In explaining how the permanent deletion of records can constitute "irreparable harm," Director Brennan cited a number of cases involving plaintiffs who were seeking preservation of government records for their use in political advocacy, journalism or historical research, Mem. 35-36. Citing that line of cases, the defendants point out that Director Brennan "claims no historical, journalistic, or other intrinsic interest in the documents he seeks to preserve," and concludes therefrom that their destruction would not constitute cognizable irreparable harm. Opp. 22. This argument is easily dismissed, as it suggests that the rights of a potential criminal defendant seeking to fend off a vindictive and selective prosecution are somehow less deserving of protection than the rights of historians and journalists seeking to research government records. While the latter activity is certainly very important, it strains credulity to contend that it deserves a higher of judicial protection than the defense of due process and equal protection rights in the criminal justice system.

22

Once again, this argument — like the irreparable harm argument — overlooks a critical caveat, namely a civil injunction ruling by this Court would not have controlling authority over or otherwise interfere with another court's relevance determination in a future criminal case. This Court's ruling would simply determine whether there is a risk of constitutional harm from non-preservation and define the scope of records to be preserved; it would be up to the presiding court in the future criminal case to determine whether and which specific records are relevant and discoverable in that case. As such, it is difficult to perceive how issuing equitable relief to ensure protection of Director Brennan's constitutional rights would do violence to federal court comity or otherwise run counter to any legitimate government or judicial equities.[16]

## CONCLUSION

For the reasons laid out in this consolidated Reply in Further Support of His Motion for a Preliminary Injunction and His Opposition to Defendants' Motion to Dismiss, Director Brennan has met the requirements for equitable relief and has demonstrated that dismissal of the Complaint is not warranted. Director Brennan therefore requests that the Court preliminarily enjoin Defendants to preserve any and all materials and communications that are potentially relevant to the consideration of his legal and constitutional challenges to any future criminal charges.

Respectfully submitted,

Dated:  August 11, 2026                      /s/ Kenneth L. Wainstein
                                             Kenneth L. Wainstein, DC Bar # 451058
                                             Natasha Harnwell-Davis, DC Bar # 1719228
                                             Mayer Brown LLP

---

[16] In arguing the balance of equities, Defendants also contend that "[g]ranting an injunction here would also encourage litigants to flood the courts with similarly speculative cross-jurisdictional document preservation lawsuits that would further erode the comity of the federal courts." Opp. 24-25. Director Brennan anticipated and fully addressed that "flood the courts" concern in his explanation how the issuance of a preliminary injunction would promote the public interest. Mem. 37-38.

1999 K Street, NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
KWainstein@mayerbrown.com
NHarnwell-Davis@mayerbrown.com

Dan Gelber (admitted pro hac vice)
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131-1715
Telephone: (305) 728-0950
dan@gsgpa.com

Joan Silverstein (admitted pro hac vice)
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131-1715
Telephone: (305) 728-0950
jsilverstein@gsgpa.com

Gerald Edward Greenberg (admitted pro hac
vice)
Florida Bar No. 440094
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131-1715
Telephone: (305) 728-0950
GGreenberg@gsgpa.com

24

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2026, I electronically filed the foregoing Plaintiff's Reply in Further Support of his Motion for a Preliminary Injunction and Opposition to Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system to effectuate service on Defendants.

Dated: August 11, 2026                    Respectfully submitted,

                                          /s/ Kenneth L. Wainstein
                                          Kenneth L. Wainstein

                                          *Counsel for Plaintiff*

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOHN O. BRENNAN,

       *Plaintiff*,

v.

TODD W. BLANCHE, in his official capacity
as Acting Attorney General, et al.,

       *Defendants*.

Case No. 1:26-cv-2323-JMC

**[PROPOSED] ORDER**

Before the Court is Plaintiff's Reply in Support of the Motion for a Preliminary Injunction and Plaintiff's Opposition to Defendants' Motion to Dismiss. Having considered the briefs, the Court **GRANTS** a preliminary injunction and **DENIES** the motion to dismiss.

SO ORDERED on this ___ day of _____, 2026.

                                 _____

                                 The Hon. Jia M. Cobb
                                 United States District Judge

1