**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN O. BRENNAN,<br><br>Plaintiff,<br><br>v.<br><br>TODD W. BLANCHE, in his official capacity as Acting Attorney General, *et al.*,<br><br>Defendants. | ) | Civil Action No. 26-2323 (JMC) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ........................................................................................................ 3

I. Plaintiff Lacks Standing Because He Does Not Allege Imminent Injury-in-Fact ........................................ 3

II. Plaintiff's Claims Are Unripe ........................................ 9

III. Plaintiff Fails to State a Valid Claim ........................................ 12

A. Plaintiff Fails to State a Claim for an Equitable Action to Enjoin Unconstitutional Conduct ........................................ 12

B. Plaintiff Fails to Invoke the Court's Mandamus Jurisdiction .................. 16

C. Plaintiff Fails to Invoke the Court's Jurisdiction Under the All Writs Act ........................................ 17

CONCLUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ........ 12

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ........ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2

*Blalock v. United States*,
844 F.2d 1546 (11th Cir. 1988) ........ 14

*California v. Trombetta*,
467 U.S. 479 (1984) ........ 11, 14

*Center for Democracy & Technology v. Trump*,
507 F. Supp. 3d 213 (D.D.C. 2020) ........ 5

*Chaverra v. ICE*,
1:18-cv-289-JEB, 2018 WL 4762259 (D.D.C. Oct. 2, 2018) ........ 17

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ........ 7

* *Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 3, 8, 9, 10

*Coubaly v. Cargill, Inc.*,
610 F. Supp. 3d 173 (D.D.C. 2022), *aff'd*, 144 F.4th 343 (D.C. Cir. 2025) ........ 2

*Defs. of Wildlife v. Perciasepe*,
714 F.3d 1317 (D.C. Cir. 2013) ........ 5

*Fornaro v. James*,
416 F.3d 63 (D.C. Cir. 2005) ........ 17

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999) ........ 13

*Hecate Energy LLC v. FERC*,
126 F.4th 660 (D.C. Cir. 2025) ........................................................................ 3, 5

* *Illinois v. Ferriero*,
60 F.4th 704 (D.C. Cir. 2023) ............................................................................ 16

*In re Grand Jury Investigation*,
59 F.3d 17 (2d Cir. 1995)................................................................................... 14

*In re Grand Jury Investigation*,
610 F.2d 202 (5th Cir. 1980)............................................................................... 14

*In re Grand Jury Proceedings*,
814 F.2d 61 (1st Cir. 1987) ................................................................................. 14

*In re Tennant*,
359 F.3d 523 (D.C. Cir. 2004) ............................................................................ 18

*Johnson v. City of Cheyenne*,
99 F.4th 1206 (10th Cir. 2024)............................................................................ 12

*Kister v. Ohio Bd. of Regents*,
365 F. Supp. 27 (S.D. Ohio 1973), *aff'd*, 414 U.S. 1117 (1974) ........................................ 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................................ 3

* *Murthy v. Missouri*,
603 U.S. 43 (2024) ....................................................................................... 3, 5, 8

*Nat'l Sec. Counselors v. CIA*,
898 F. Supp. 2d 233 (D.D.C. 2012) ..................................................................... 17

*Nat'l Treasury Emps. Union v. United States*,
101 F.3d 1423 (D.C. Cir. 1996) ........................................................................... 12

*QueerDoc, PLLC v. DOJ*,
--- F. 4th ---, 2026 WL 2359440 (9th Cir. Aug. 14, 2026)............................................. 7

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ....................................................................................... 1, 12

*Steffel v. Thompson*,
415 U.S. 452 (1974) ..................................................................................... 10, 13

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 10

*Texas v. United States*,
523 U.S. 296 (1998) .......... 10

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 13

*Trump v. New York*,
592 U.S. 125 (2020) .......... 10

*United States v. Armstrong*,
517 U.S. 456 (1996) .......... 7

*United States v. Candia-Veleta*,
104 F.3d 243 (9th Cir. 1996) .......... 8

*United States v. Carlisi*,
92 CR 1064, 1993 WL 339079 .......... 15

*United States v. Hirsch*,
360 F.3d 860 (8th Cir. 2004) .......... 8

*United States v. Libby*,
429 F. Supp. 2d 1 (D.D.C. 2006) .......... 11

*United States v. Lujan*,
530 F. Supp. 2d 1224 (D.N.M. 2008) .......... 15

*United States v. Pasha*,
797 F.3d 1122 (D.C. Cir. 2015) .......... 15

* *United States v. S. Poverty L. Ctr., Inc.*,
--- F. Supp. 3d ---, 2026 WL 2280675 (M.D. Ala. Aug. 7, 2026) .......... 2-3, 6, 7, 8

*United States v. Sanders*,
211 F.3d 711 (2d Cir. 2000) .......... 7

*United States v. Webb*,
No. 2:10-CR-41-H-3, 2011 WL 322394 (E.D.N.C. Jan. 31, 2011) .......... 15

*Wannall v. Honeywell, Inc.*,
775 F.3d 425 (D.C. Cir. 2014) .......... 18

**Constitutional Provisions**

U.S. Const., amend. V ........................................ 5

U.S. Const., art. III, § 1 ........................................ 1

U.S. Const., art. III, § 2, cl. 1 ........................................ 9

**Statutes**

28 U.S.C. § 1651 ........................................ 17

**Rules**

Federal Rule of Criminal Procedure 6(e) ........................................ 14

## INTRODUCTION

As Defendants explained in moving to dismiss,[1] Plaintiff's Complaint suffers from two fundamental defects that require dismissal. First, his claimed harm rests on an attenuated chain of contingencies — Defendants will seek to indict Plaintiff, a grand jury will return an indictment, a judge will grant a motion for discovery on a vindictive and selective prosecution motion, and Defendants will fail to preserve discoverable documents — that is too speculative to generate an imminent injury-in-fact or a ripe controversy. Second, someone who is not a criminal defendant has no constitutional right to have the government preserve documents that allegedly may be potentially relevant in a hypothetical future criminal case.

In his Opposition,[2] Plaintiff criticizes the government for focusing on "technical arguments" about "the limits of" any constitutional "obligation" to preserve documents and "when and how Director Brennan has the right to enforce it," Opp'n i, and "procedural arguments about standing, ripeness, judicial comity and jurisdiction," *id.* at 2. Yet this Court's subject-matter jurisdiction, as defined by constitutional doctrines such as standing and ripeness, is a core limitation on "the judicial Power of the United States," U.S. Const. art. III, § 1, *i.e.*, the Court's power to act under Article III. It is not a mere procedural nicety that a court may look past. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). And Defendants' arguments about the limits of any constitutional obligation to preserve documents are not mere technical arguments. Rather, Defendants' core merits argument is that Plaintiff's claims cannot succeed because there is no constitutional right for someone who is not a criminal defendant to insist that the government

---

[1] *See* Mem. in Supp. of Defs.' Mot. to Dismiss the Compl., ECF No. 21-1 ("MTD Mem.").

[2] Pl's. Reply in Further Supp. of His Mot. for a Prelim. Inj. and Opp'n to Defs.' Mot. to Dismiss, ECF No. 26 ("Opp'n").

preserve documents that he predicts may be potentially relevant in a hypothetical future criminal case.

Plaintiff also criticizes Defendants for not contesting Plaintiff's factual allegations or offering conflicting factual evidence. *See* Opp'n 1-2. But on a Rule 12(b)(6) motion, the Court evaluates whether a plaintiff's factual allegations, taken as true, plausibly establish a legal claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Likewise, on a facial 12(b)(1) challenge, such as this one, the Court evaluates whether the plaintiff's factual allegations, taken as true, would establish the Court's jurisdiction. *See Coubaly v. Cargill, Inc.*, 610 F. Supp. 3d 173, 176 n.1 (D.D.C. 2022), *aff'd*, 144 F.4th 343 (D.C. Cir. 2025). Plaintiff fails his burden at the pleading stage to plead a valid claim or a basis for the Court's jurisdiction, so this lawsuit should not advance to a stage where the Defendants would be called on to offer evidence or rebut the Plaintiff's allegations.[3]

Plaintiff's Opposition fails to rebut Defendants' arguments that he fails to plead a basis for jurisdiction or a valid claim. As to jurisdiction, he does not dispute that Article III requires an imminent injury-in-fact, and that his claimed future injury rests on numerous contingencies. He confidently predicts that there is "no doubt[]" that "each juncture in the litigation process" of his hypothetical future criminal case "will lead inexorably toward" realization of his feared future injury. Opp'n 3, 4. Yet just last week, a federal judge denied a motion for discovery on a vindictive prosecution motion filed by a prominent political opponent of President Trump who (like Plaintiff) pointed to public criticism by President Trump and other officials as evidence of vindictiveness. *See United States v. S. Poverty L. Ctr., Inc.*, --- F. Supp. 3d ---, 2026 WL 2280675, at *1-6 (M.D.

[3] Defendants also did not offer factual evidence in opposing Plaintiff's Motion for a Preliminary Injunction. That was unnecessary because, for the same reasons that Plaintiff fails to state a valid claim or a basis for jurisdiction (and additional reasons related to the difficult preliminary injunction standard), Plaintiff has failed to meet his burden to establish entitlement to a preliminary injunction. *See generally* Defs.' Mem. in Opp'n to Pl's. Mot. for Prelim. Inj., ECF No. 20.

Ala. Aug. 7, 2026) ("*SPLC*"). That underscores why courts do not accept "standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Hecate Energy LLC v. FERC*, 126 F.4th 660, 666 (D.C. Cir. 2025) (quoting *Murthy v. Missouri*, 603 U.S. 43, 57-58 (2024)).

On the merits, Plaintiff cannot state a valid claim because the Constitution does not confer on individuals who are not criminal defendants the right to have the government preserve documents that may be potentially relevant to a hypothetical future criminal case. Plaintiff gets it mostly right with his concession that his "cause of action" has "little precedent." Opp'n ii. In fact, *no* precedent or constitutional text supports his claimed constitutional right, and the cases he cites are inapposite and far afield. Plaintiff's mandamus claim also fails because he would have an adequate remedy if his feared injury came to pass: the ability to seek spoliation remedies in a potential future criminal case if the government wrongfully failed to preserve evidence. And he cannot invoke the All Writs Act for the additional reasons that it is speculative that a hypothetical future criminal case against him would end up in this District, and even if it did, a preservation order would not be necessary to preserve this Court's jurisdiction over such a case.

## ARGUMENT

### I. Plaintiff Lacks Standing Because He Does Not Allege Imminent Injury-in-Fact

Plaintiff lacks standing because he fails to allege an injury-in-fact that is "concrete, particularized, and actual *or imminent*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis added). Imminence requires that a claimed future "injury is certainly impending," *id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992)), meaning that there is "a substantial risk that, in the near future, [plaintiff] will suffer an injury that is traceable to a Government defendant and redressable by the injunction [he] seek[s]," *Murthy*, 603 U.S. at 49-50. As Defendants explained, Plaintiff cannot satisfy this requirement because his claimed future harm

is not imminent, but rests on numerous speculative contingencies. MTD Mem. 5-10. Specifically, he claims he will be harmed if the Department of Justice seeks to indict him, a grand jury returns an indictment, a judge handling his hypothetical future criminal case grants him discovery on a motion to dismiss the indictment for vindictive and selective prosecution, and documents he would have obtained in discovery are lost. *See id.* at 6.

In response, Plaintiff does not dispute the governing legal standard or cite any case law on Article III standing that supports his position. Nor does Plaintiff dispute that he alleges only future harm that rests on numerous contingencies, acknowledging that his theory of harm rests on predictions about "each juncture in the litigation process" of a hypothetical future criminal case. Opp'n 3. Instead, he argues that there is "no doubt[]" that each of these contingencies will come to pass. *Id.* at 4; *see also id.* at 10 ("it remains overwhelmingly likely that the process detailed in Director Brennan's pleadings will, in fact, produce constitutional harm"). Yet examining Plaintiff's arguments only confirms that many of the contingencies that would have to occur before he suffered any injury are speculative.

**1.** Plaintiff first asserts that "criminal charges" against him "appear virtually inevitable." *Id.* at 5. In support, he argues that "there is no ambiguity about the existence of active, ongoing criminal investigations targeting Director Brennan for prosecution." *Id.* at 4. Defendants do not dispute that the Complaint contains factual allegations, taken as true at the pleading stage, of federal criminal investigations involving Plaintiff's conduct.[4] But even if the Court credits those allegations, not every investigation leads to criminal charges. And courts, including this Court and the D.C. Circuit, have been reluctant to find standing based on predictions of future

[4] For avoidance of doubt, the government neither confirms nor denies Plaintiff's allegations about the existence or status of any alleged criminal investigations.

adverse government action, concluding that "Article III standing requires more than the possibility of potentially adverse regulation." *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013); *accord Center for Democracy & Technology v. Trump*, 507 F. Supp. 3d 213 (D.D.C. 2020), *vacated as moot sub nom. Center for Democracy & Technology v. Biden*, No. 21-5062, 2021 WL 11659822 (D.C. Cir. Aug. 9, 2021) (per curiam).

**2.** Plaintiff also acknowledges that for him to be indicted, a grand jury would have to return an indictment based on a finding of probable cause that he committed a crime. *See* Opp'n 5; U.S. Const., amend. V. He further acknowledges that grand juries sometimes "reject[] proposed charges." Opp'n 5. The D.C. Circuit and the Supreme Court have warned against accepting "standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Hecate Energy*, 126 F.4th at 666 (quoting *Murthy*, 603 U.S. at 57-58). Thus, even if the Court accepts Plaintiff's assertion that "the prosecutor . . . usually prevails when seeking an indictment," Opp'n 6, the Court should reject his assertion that "criminal charges appear virtually inevitable," *id.* at 5, when the indictment he predicts would depend on the actions of an independent constitutional actor, the grand jury.

**3.** The next contingency on which Plaintiff's theory of harm depends is that the judge handling his hypothetical future criminal case will grant his request to order the government to produce internal records to assess a motion to dismiss the indictment for vindictive and selective prosecution. Here, Plaintiff argues that it is certain that the court "will demand production and conduct a probing review" of government records because "it is hard to imagine a case with a clearer record of prosecutorial vindictiveness and selectivity," and it is a "lost-cause line of argument" to assert otherwise. *Id.* at 6, 7. To the contrary, this Court can do no more than speculate how a different judge would handle a motion that has not been filed in a case that does not yet

exist based on alleged misconduct in an alleged investigation that Plaintiff contends is active and ongoing. That is particularly true because, as Defendants pointed out and Plaintiff does not dispute, selective and vindictive prosecution motions cannot be assessed in a vacuum, without knowing the nature of the charges and allegations. MTD Mem. 8-9.[5]

In arguing that it is inevitable that he will obtain discovery of internal government communications, Plaintiff points out that in some cases, courts hearing challenges to prosecutorial actions have demanded production of internal government communications. *See* Opp'n 7 n.4. That is true, but in some cases, courts reject requests for discovery. A recent case provides a particularly illustrative example. Earlier this year, the Department of Justice charged the Southern Poverty Law Center (SPLC), an organization that has criticized President Trump and his political allies, with fraud and other crimes in the Middle District of Alabama. *See SPLC*, 2026 WL 2280675, at *1 & 3 n.4. SPLC moved to dismiss the indictment for vindictive prosecution or alternatively to seek discovery into the Government's prosecutorial motives, but Judge Emily Marks denied the motion. *Id.* at *1. SPLC made many of the arguments that Plaintiff makes here, that the Court should infer vindictiveness (or at least find sufficient evidence of vindictiveness to grant discovery) because the President and other administrative officials have made statements criticizing SPLC, and SPLC (like Plaintiff here) also claimed there were purported irregularities in the conduct of the investigation. *Id.* at *2-6.

[5] Plaintiff also does not dispute that he alleges that the government is engaged in "judge-shopping" to steer a criminal prosecution toward a judge Plaintiff believes would be unfavorable, and that if that occurs, Plaintiff plans to file a motion seeking to force the recusal of that judge. *See* MTD Mem. 9-10; Compl. ¶ 37, ECF No. 1; *id.* App. A, at 15, ECF No. 1-1. Plaintiff dismisses this issue as "a distraction," Opp'n 7, but it illustrates how it is speculative for *this Court* to predict what *another judge* will do in a hypothetical future case.

In rejecting these arguments, Judge Marks explained that the standard to obtain discovery on a vindictive prosecution motion "is a 'rigorous' one." *Id.* at *6 (quoting *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000)). That is because "[h]istory confirms that prosecutors are entitled to a 'presumption of regularity,' meaning that, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Id.* at *7 (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). Because of that presumption of regularity, "[j]udges should not peek behind the prosecutorial curtain in all but the most unusual cases, where the prosecutor has acted so *irregularly* that he has forfeited the presumption of regularity." *Id.* at *8. Judge Marks determined that the public statements against SPLC and purported irregularities in the investigation did not satisfy the rigorous standard for discovery. She concluded that the "the Government is entitled to the presumption of regularity," and the SPLC case was "not the rare case in which" it would be "appropriate" to issue the "extraordinary relief" of "order[ing] the Government to produce discovery into a prosecutor's motivations to ensure the defendant's due process rights are protected." *Id.* at *15.

To be sure, if Plaintiff is indicted and files a vindictive prosecution motion, he can argue that Judge Marks got it wrong, or that his evidence is distinguishable from the SPLC's evidence. But this case illustrates that despite Plaintiff's wishful thinking, "the presumption of regularity" has not "evaporat[ed]." Opp'n 6. Just days ago, the Ninth Circuit reversed a district court's order quashing a subpoena as purportedly based on an improper purpose, because "DOJ's actions are 'entitled to a presumption of regularity,'" and "the district court improperly disregarded the presumption of regularity." *QueerDoc, PLLC v. DOJ*, --- F. 4th ---, 2026 WL 2359440, at *13 (9th Cir. Aug. 14, 2026) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)). That is emblematic of how judges in particular cases must examine the circumstances

before them to determine whether the presumption of regularity has been overcome.[6] Further, even political opponents of President Trump who have been the target of harsh words by President Trump, *see SPLC*, 2026 WL 2280675, at *5 (quoting an interview and a social media post in which President Trump referred to SPLC as "a total scam run by the democrats" and "one of the greatest political scams in American History") (citations omitted), face a difficult burden to obtain discovery to support a vindictive prosecution motion. Just as it is not this Court's place to judge whether Judge Marks ruled correctly in *SPLC*, it is not this Court's place to *prejudge* whether some other judge would grant discovery if Plaintiff's hypothetical future criminal case ripens into an actual case. Yet Plaintiff's "standing theor[y]" requires precisely this kind of "guesswork" as to the judgment of "independent decisionmakers" that makes the Supreme Court "reluctant to endorse" such theories. *Murthy*, 603 U.S. at 57 (quoting *Clapper*, 568 U.S. at 413).[7]

**4.** Plaintiff's standing theory also rests on the contingency that the government will fail to preserve documents that would be discoverable in his hypothetical future criminal case. Defendants pointed out that it is speculative whether this will occur because Plaintiff merely

---

[6] Contrary to Plaintiff's assertion, Defendants did not "effectively concede that the presumption of regularity has evaporated in those cases involving President Trump's retribution targets." Opp'n 3. Defendants explained that a "traditional presumption of regularity" applies, and that if Plaintiff were indicted, "it would be up to the presiding judge" of his hypothetical future criminal case "to determine whether Plaintiff has overcome" that presumption. MTD Mem. 9. The *SPLC* and *QueerDoc* rulings indicate that Plaintiff's view of the presumption of regularity has not taken hold in the federal judiciary.

[7] Plaintiff also argues that "it would be a clear abuse of discretion" for a trial judge handling his hypothetical future criminal case to deny a motion for discovery, citing appellate cases in which a court of appeals reviewed a denial of discovery under an abuse of discretion standard. Opp'n 8 (citing *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004); *United States v. Candia-Veleta*, 104 F.3d 243, 246 (9th Cir. 1996)). To the extent Plaintiff is suggesting that the judge handling his case may *reject* his motion from discovery, but that ruling will be *reversed on appeal* even under a deferential standard, that adds to his list of speculative contingencies. The list of independent decisionmakers whose judgment is implicated by his standing theory apparently has grown from a grand jury and a district judge to now include an appellate panel.

alleges there have been other incidents not involving him where the government has allegedly failed to preserve documents. MTD Mem. 10. In response, Plaintiff admits that he has "no way of knowing what records and communications are or are not being preserved," but that the Court should "divine the likelihood of preservation in this case based on the government's broader practice across other cases." Opp'n 8, 9. In other words, because he alleges that the government has not preserved documents in some other cases, the Court should assume that it is inevitable that the government will fail to preserve documents in his hypothetical future case. Plaintiff even goes so far as to suggest that in his case, the government should be "held to account" for allegations of misconduct in other cases. *Id.* at 10. That is not how Article III works. This Court's role is not to sit in judgment of how well the Department of Justice has performed across its litigation portfolio. It is to resolve a "Case[ ]" or "Controvers[y]" between the parties, if one exists. U.S. Const., art. III, § 2, cl. 1. No one is perfect when it comes to document preservation, and Defendants do not argue otherwise. But Plaintiff's assertion that it is "overwhelmingly likely," Opp'n 10, that the government will fail to preserve documents in his hypothetical future case rests on nothing but speculation.

* * *

In *Clapper*, the Supreme Court rejected a standing theory based on potential future injury that "relie[d] on a highly attenuated chain of possibilities," including government investigative and enforcement decisions and the rulings of Article III judges in a hypothetical future case. 568 U.S. at 410. The same is true here. Because Plaintiff's claimed future injury is "speculative," rather than "certainly impending," *id.*, he lacks standing to sue.

## II. Plaintiff's Claims Are Unripe

Plaintiff's claims are constitutionally unripe for similar reasons that he lacks standing: his claims are "dependent on 'contingent future events that may not occur as anticipated, or indeed

may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); MTD Mem. 10-11. In arguing to the contrary, Plaintiff points out that a plaintiff is not required to "demonstrate that it is literally certain that the harms they identify will come about." Opp'n 11 (quoting *Clapper*, 568 U.S. at 414 n.5). Yet the case cited by Plaintiff holds that for a future injury to give rise to an Article III controversy, it must be "certainly impending." *Clapper*, 568 U.S. at 409; *see also id.* at 414 n.5 ("In some instances, we have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm.") (citation omitted).

None of the cases cited by Plaintiff supports his argument that his claims are ripe. Plaintiff relies on cases in which the Supreme Court held that a plaintiff had standing to seek to enjoin enforcement of laws that prohibited protected First Amendment activity, so long as there existed "circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). But in those cases, the plaintiffs claimed that the enforcement itself violated their constitutional rights, and the imminent threat of enforcement chilled the exercise of their First Amendment right to free speech. *See id.* ("[W]e have held that a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.") (citation omitted); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (where the petitioner was "warn[ed]" by police "that he will likely be prosecuted" if he engages in handbilling, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"). Here, however, Plaintiff is not challenging or seeking to enjoin his potential prosecution. He is seeking an order requiring *preservation of documents* in a hypothetical

future criminal case. His claimed harm rests on far more contingencies than the claimed injuries in *Susan B. Anthony List* or *Steffel*, including that a judge would grant his request for discovery on a vindictive and selective prosecution motion, and that the government will fail to preserve discoverable documents. *See supra*, pp. 4-9.

Plaintiff also argues that "there is room for potentiality in the specific context" of preservation of evidence. Opp'n 13. Yet the cases he cited rested on the *potential significance* of evidence to the defense of an *actual criminal defendant*. None of them held that a plaintiff who is not a criminal defendant has a ripe cause of action to seek preservation of documents for a *potential future criminal case*. For example, in *California v. Trombetta*, 467 U.S. 479 (1984), the Supreme Court opined that "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." *Id.* at 488. It grounded this observation in the conclusion that under the Due Process Clause, "criminal defendants [must] be afforded a meaningful opportunity to present a complete defense." *Id.* at 485. And *Trombetta* rejected the specific criminal defendant's claim that the state had a constitutional duty to preserve the evidence at issue. *Id.* at 488. The other cases cited by Plaintiff also involved cases in which a criminal defendant sought preservation of evidence (or sought remedies for failure to preserve evidence) in an ongoing criminal case, *see United States v. Libby*, 429 F. Supp. 2d 1, 7 (D.D.C. 2006);[8] Order at 10, *United States v. Garcia*, No. 5:25-cr-01289, Dkt. No. 41 (S.D. Tex. Jan. 12, 2026), or a case in which a person who had

[8] Plaintiff argues that *Libby* recognized a materiality standard for preservation of evidence that is "not onerous." Opp'n 13; *see Libby*, 429 F. Supp. 2d at 7. But *Libby* did not involve a constitutional claim; it involved the government's obligations to provide discovery to a criminal defendant under Rule 16 of the Federal Rules of Criminal Procedure. *See Libby*, 429 F. Supp. 2d at 5 ("Here, the Court is concerned with Federal Rule of Criminal Procedure 16.").

been charged with and convicted of a crime brought a § 1983 claim for failure to preserve evidence during his criminal case, *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1212-13 (10th Cir. 2024).

Finally, Plaintiff fails to respond to Defendants' argument that his claims are prudentially unripe because they are not "fit[] . . . for judicial decision," *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)), since the government's preservation obligations in a hypothetical future criminal case would depend on the nature of the charges, MTD Mem. 11.

## III. Plaintiff Fails to State a Valid Claim

If this Court agrees that Plaintiff lacks standing or his claims are unripe, it need go no further. *See Steel Co.*, 523 U.S. at 94. But if this Court reaches the substance of Plaintiff's claims, it should nevertheless hold that his Complaint must be dismissed for the independently sufficient reason that he fails to state a valid claim.

### A. Plaintiff Fails to State a Claim for an Equitable Action to Enjoin Unconstitutional Conduct

Defendants explained why Plaintiff cannot bring an equitable action to enjoin unconstitutional conduct. MTD Mem. 12-16. Although courts have, under certain circumstances, allowed equitable actions to enjoin violations of constitutional rights, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015), that does not help Plaintiff because "there is no constitutional right for someone who is not a criminal defendant to have evidence preserved because it might be of use in a future criminal case," MTD Mem. 13.

Plaintiff derides Defendants' argument as an "asserted exception to the courts' equitable authority to protect constitutional rights." Opp'n 14. To the contrary, Defendants argue that what Plaintiff seeks to protect (preservation of evidence that might be useful in a hypothetical future criminal case) is not a constitutional right in the first place. No text of the Constitution guarantees

a right to have the government preserve documents for a hypothetical future criminal case. Plaintiff offers no evidence that the original understanding of the words of the Fifth Amendment, or any other constitutional provision, would encompass such a right. He cites no case law recognizing such a right. Nor does Plaintiff cite any historical evidence suggesting that at the founding, courts of equity entertained actions for preservation of documents for hypothetical future criminal cases. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) (holding that the Judiciary Act of 1789's grant to federal courts of jurisdiction over suits in equity "encompasses only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception") (quoting *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)).

Plaintiff argues that "the case law clearly demonstrates that individuals can have standing to challenge prosecutorial action before that action evolves into an actual criminal case." Opp'n 14. But the cases he cites in support of this proposition, *see id.* at 14-15, offer no support to his position that the Constitution guarantees someone who is not a criminal defendant a right to preservation of documents for a hypothetical future criminal case. At most, these cases establish that under some circumstances, a threatened prosecution or the conduct of grand jury proceedings can violate a person's rights and give rise to an action for legal relief. For example, *Steffel*, 415 U.S. at 459, and *Kister v. Ohio Bd. of Regents*, 365 F. Supp. 27, 33 (S.D. Ohio 1973), *aff'd*, 414 U.S. 1117 (1974), hold that where a plaintiff is threatened with a prosecution for arguably protected First Amendment activity, that plaintiff has standing to challenge the statute's constitutionality to prevent the chilling of the exercise of First Amendment rights. But here, Plaintiff does not claim any chilling of the exercise of his constitutional rights. He is not challenging a threatened prosecution but seeking a document preservation order for a potential future prosecution.

Another case cited by Plaintiff, *Blalock v. United States*, 844 F.2d 1546 (11th Cir. 1988), cuts against his position. That case held that the target of a grand jury investigation *cannot* obtain an injunction to halt the investigation on the basis of alleged misconduct before the grand jury because he "has an adequate legal remedy in the form of a motion to dismiss his indictment, if one is handed down." *Id.* at 1550.

The other cases concerned grand jury proceedings but did not involve constitutional claims at all. In two cases, a party sought sanctions for violation of Federal Rule of Criminal Procedure 6(e) regarding grand jury secrecy, *see In re Grand Jury Investigation*, 610 F.2d 202, 207 (5th Cir. 1980); *In re Grand Jury Proceedings*, 814 F.2d 61, 70 (1st Cir. 1987), and the other involved a request that the government return subpoenaed documents to a grand jury witness, *In re Grand Jury Investigation*, 59 F.3d 17, 18-20 (2d Cir. 1995). In sum, Plaintiff's concession that "this certainly is a cause of action with little precedent," Opp'n ii, does not go far enough. There is *no precedent* for a constitutional right to preservation of documents for a hypothetical future criminal case.

Even if Plaintiff were a criminal defendant, he would not have a constitutional right to preservation of "any and all materials . . . that are potentially relevant" to his defenses, Compl., Request for Relief, as he claims, particularly not if potential relevance is defined so capaciously as to encompass the eleven broadly worded document requests in his Complaint, *see id.* Rather, any constitutional duty to preserve evidence in a criminal case "must be limited to evidence that might be expected to play a significant role in the suspect's defense." *Trombetta*, 467 U.S. at 488. As reflected by the Supreme Court's ruling that breath samples of a defendant charged with drunk driving *need not* be preserved, *id.* at 489-90, that standard has bite. In response, Plaintiff argues in a perfunctory manner that all of the documents he asks this Court to preserve are "potentially

exculpatory and material," Opp'n 15, but he does not explain why or how. Nor does he argue, as required by *Trombetta*, that each document he requests would be expected to play a *significant* role in his defense.

Plaintiff also argues that "courts do not require a prospective determination of discoverability before requiring the government to preserve a category of potentially relevant information." Opp'n 15 (citing Pl's. Mem. in Supp. of Mot. for Prelim. Inj. 30 n.61, ECF No. 2-1). But in each of those cases, the court simply ordered preservation of a discrete category of documents: agents' notes of witness interviews. *United States v. Carlisi*, No. 92 CR 1064, 1993 WL 339079, at *4-5 (N.D. Ill. Aug. 30, 1993); *United States v. Webb*, No. 2:10-CR-41-H-3, 2011 WL 322394, at *3 (E.D.N.C. Jan. 31, 2011); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1265-67 (D.N.M. 2008). In none of those cases did a court hold that preservation was constitutionally required, nor did those courts extend a preservation obligation to all potentially relevant evidence, as Plaintiff seeks to have this Court impose here. *See*, *e.g.*, *Lujan*, 530 F. Supp. 2d at 1267 (granting motion to preserve interview notes, but "deny[ing] the motion in all other respects").

Finally, Plaintiff argues that the Court should order preservation of evidence because it can be difficult to fashion remedies for the unlawful destruction of evidence. *See* Opp'n 15-16. Yet one of the cases he cites shows that courts are capable of doing so. *See United States v. Pasha*, 797 F.3d 1122, 1139 (D.C. Cir. 2015) (setting forth a three-step "remedy analysis for a *Brady* violation").[9]

[9] Plaintiff acknowledges that Count I of his Complaint is based solely a claim for an equitable action to enjoin violations of constitutional rights, and that his perfunctory references to various statutes regarding preservation of records do not support his claim. Opp'n 16 n.10; MTD Mem. 15-16.

Because Plaintiff does not have a constitutional right to have the government preserve documents simply because he believes they may be potentially relevant to a hypothetical future criminal case, he cannot state a claim for an equitable action to enjoin violations of his constitutional rights.

**B. Plaintiff Fails to Invoke the Court's Mandamus Jurisdiction**

Plaintiff fails to plead that he satisfied any of the requirements to invoke this Court's mandamus jurisdiction. *See* MTD Mem. 16-18; *Illinois v. Ferriero*, 60 F.4th 704, 713 (D.C. Cir. 2023) (mandamus relief requires "a clear and indisputable right" to relief, government violation of "a clear duty to act," and lack of any "adequate alternate remedy"). Plaintiff's response is simply to incorporate his earlier arguments that he alleges a constitutional violation. *See* Opp'n 16-17. Yet Plaintiff fails to address how there could possibly be a "clear and indisputable right" to relief or a "clear duty to act," *Ferriero*, 60 F.4th at 713, when he acknowledges that the relief he seeks has "little precedent," Opp'n ii (and as shown above, actually has no precedent, *see supra*, pp. 13-15).

Plaintiff also cannot satisfy the requirement that there is "no adequate alternate remedy." *Ferriero*, 60 F.4th at 713. If he were indicted and the government wrongfully destroyed evidence, he could pursue remedies in that case for spoliation. MTD Mem. 17-18. Plaintiff rightly acknowledges that "courts routinely apply such sanctions — in the form of remedial jury instructions, the dismissal of criminal counts, the application of an adverse inference from the lost evidence and the like — in situations where the government fails to preserve discoverable information and evidence." Opp'n 20. He argues that the availability of such remedies here is inadequate because he might "never learn that such records existed in the first place." *Id.* at 21. Yet the need to show that relevant records once existed and were destroyed is present in every case in which a litigant seeks spoliation remedies. Plaintiff's fear that it might be difficult for him to

establish entitlement to such remedies does not render them inadequate. Rather, "[m]andamus-style relief is precluded when an adequate alternative remedy exists, even where that alternative remedy is less efficient or less effective than mandamus relief would be." *Chaverra v. ICE*, 1:18-cv-289-JEB, 2018 WL 4762259, at *6 (D.D.C. Oct. 2, 2018) (quoting *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 267 (D.D.C. 2012); *see also Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (alternative remedy precludes mandamus relief even where that remedy "vindicates rights less efficiently" and "may appear" "unsatisfactory" to the plaintiffs).

**C. Plaintiff Fails to Invoke the Court's Jurisdiction Under the All Writs Act**

Plaintiff does not dispute that the All Writs Act, which allows federal courts to issue writs "in aid of their respective jurisdictions," 28 U.S.C. § 1651, could not justify relief as to a future criminal case in the Southern District of Florida. MTD Mem. 18-19. Yet he now argues that he expects his hypothetical future criminal case to be brought in this District. Opp'n 18-19. That is contrary to his allegation that the government is "engaging in apparent judge-shopping" to "engineer assignment of the . . . eventual prosecution of Director Brennan to the docket of a particular judge," Judge Aileen Cannon, who presides over the Fort Pierce Division of the Southern District of Florida. Compl. ¶¶ 35-36. It is also contrary to an article that he submitted in support of his latest brief, which asserted that one of the Defendant prosecutors "hopes to present an indictment to the grand jury in Fort Pierce." Suppl. Wainstein Decl, Ex. A, at 5, ECF No. 26-2.

Plaintiff nonetheless argues that the hypothetical future case will end up in this District because venue would only exist in this District. Even though he contends that Defendants may seek to indict him "in the Southern District of Florida in furtherance of" what he describes as "their forum and judge-shopping plan, the likelihood is that the case would ultimately be transferred to

the District of Columbia." Opp'n 19.[10] Yet this Court could do no more than guess where venue might lie for a potential future indictment based on investigations that Plaintiff alleges are ongoing. *See* Compl. ¶ 32. The prospect of a future case in this District is too speculative to give rise to jurisdiction under the All Writs Act. *See In re Tennant*, 359 F.3d 523, 529 (D.C. Cir. 2004) (Roberts, J.) (All Writs Act does not confer jurisdiction merely based on a "set of facts that could eventually lead to this court," "however prospective or potential that jurisdiction might be").

Plaintiff also fails to respond to Defendants' argument that even if he were later indicted in this District, a document preservation order now would not be necessary to aid the Court's jurisdiction over that hypothetical future case, because the judge handling the criminal case would still have jurisdiction and could address any alleged spoliation. *See* Mem. 19-20. The Court should therefore treat the argument as conceded. *See Wannall v. Honeywell, Inc.* 775 F.3d 425, 428 (D.C. Cir. 2014) ("if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded").

**CONCLUSION**

The Court should grant Defendants' Motion to Dismiss and enter an order dismissing the Complaint.

---

[10] The fact that Plaintiff envisions a venue transfer ruling as a predicate of his claim adds to the list of speculative contingencies underlying this lawsuit. *See supra*, p. 4.

Dated: August 18, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director, Federal Programs Branch

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
Chief Litigation Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 532-3114
Fax: (202) 616-8470
Email: jeremy.s.newman@usdoj.gov

*Attorneys for Defendants*