# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO (AFGE), et al.,

Plaintiffs,

v.

DONALD J. TRUMP, et al.,

Defendants.

Case No. 25-cv-03698-SI

**ORDER GRANTING PLAINTIFFS' MOTION FOR RULE 37(e) REMEDIES**

Re: Dkt. No. 412

In this lawsuit, plaintiffs contend that the Department of Homeland Security ("DHS") unlawfully usurped the Federal Emergency Management Agency's ("FEMA's") statutory authority and unlawfully ordered FEMA to cut its staffing in half. The government does not dispute that high-level officials at DHS and FEMA used the Signal messaging app on their personal cell phones for government business and then deleted those messages. The record demonstrates that at least some of the deleted Signal messages related directly to the staffing cuts at the heart of the case. Plaintiffs now seek sanctions arising from the deletion of these messages. After full briefing, including the filing of numerous declarations and thousands of pages of deposition transcripts, and following oral argument, the Court GRANTS plaintiffs' motion.

As detailed further below, Karen Evans, the former acting head of FEMA, and Joseph Guy, former DHS Deputy Chief of Staff, communicated with each other and with others about information relevant to this litigation; they did so on their personal cell phones; and they deleted most messages within one to four weeks, using a Signal auto-delete feature that the chat participants set. These actions violated federal law and DHS policy. Signal messages from the time period most relevant to this litigation have never been produced. And defendants admit that Evans's and Guy's

United States District Court
Northern District of California

Signal messages are now lost and cannot be recovered.

Evans should have known better. She previously served as Chief Information Officer at DHS, in charge of the agency's records preservation policies. At a hearing on this litigation, her personal attorney touted that "she is more so an expert" on Signal "than anybody else here[.]" Dkt. No. 398 ("May 13, 2026 Tr.") at 25:22-26:2. Yet late last year, Evans created a Signal chat that would appear to be highly relevant to this case and set a four-week auto-delete timer. On March 11, 2026, after she had been named as a defendant in this case and with plaintiffs' emergency motion pending, Evans *shortened* the auto-delete timer on one of her FEMA Signal chats. And it wasn't until April 25, 2026, that Evans created a back-up of her Signal messages, by which point the most timely messages were long since deleted.

As to Joseph Guy, no Signal messages from his phone were *ever* produced, even though the evidence shows he had at least twenty-six FEMA-related Signal chats on his personal phone. While he was under a Court order to search his personal phone for relevant Signal messages, Guy—without consulting anyone, apparently—reinstalled the Signal app, thereby wiping all of his Signal message content. The day before he wiped his Signal app, Guy was supposed to have filed a declaration with the Court about preserving his records. But he missed the deadline. When he filed his declaration—literally a day late and metaphorically a dollar short—he said that none of his relevant Signal chats had been preserved.

For the reasons set forth below, and taking into account all of the circumstantial evidence, including officials' *continued* use of the Signal auto-delete setting even after this Court ordered the production of relevant FEMA communications, the Court concludes that at least Evans deleted Signal chats with the intent to deprive plaintiffs of the use of the chats in this litigation. Under Federal Rule of Civil Procedure 37(e)(2), plaintiffs are therefore entitled to a presumption that the information lost was unfavorable to defendants.

## BACKGROUND

### I. Supplemental Complaint and Procedural Background

The Court recites the factual and procedural history of this case only as necessary to resolve



United States District Court
Northern District of California

the present motion. Plaintiffs originally filed suit on April 28, 2025, challenging the executive branch's authority to conduct large-scale reductions in force ("RIFs") and reorganizations of federal agencies without the participation of Congress. Dkt. No. 1. The Department of Homeland Security has been a defendant from the beginning.[1]

On January 27, 2026, plaintiffs filed an unopposed motion for leave to file a supplemental complaint. Dkt. No. 290. The Court granted the motion on January 30, 2026, and plaintiffs filed the supplemental complaint that day. Dkt. Nos. 295, 298 ("Suppl. Compl."). The supplemental complaint added new defendants FEMA and the then-Senior Official Performing the Duties of FEMA Administrator ("SOPDA"), Karen Evans. Suppl. Compl. ¶¶ 439-440.

The supplemental complaint also added factual allegations specific to DHS and FEMA. According to the supplemental complaint, in December 2025, existing defendant DHS and new defendant FEMA implemented plans to halve the FEMA workforce, pursuant to Executive Order 14356, "Ensuring Accountability in Federal Hiring," 90 Fed. Reg. 48387 (Oct. 15, 2025). Suppl. Compl. ¶¶ 472-522. DHS and FEMA allegedly began to implement this plan by systematically not renewing a category of FEMA staff—the Cadre of On Call Response/ Recovery ("CORE") positions—beginning January 1, 2026. *Id.* ¶ 480. Plaintiffs allege: "These DHS actions to transform and dismantle FEMA (which Congress intended to be independent of DHS control . . .) implement Defendants' continued scheme to downsize the federal government in contravention of Congress's directives and Article I of the U.S. Constitution." *Id.* ¶ 437. According to the supplemental complaint, Congress "removed DHS authority over FEMA in the Post-Katrina Emergency Management Reform Act of 2006[,]"[2] which "transferred FEMA's functions (and personnel), previously transferred by statute to DHS and its Under-Secretary for Emergency Preparedness, back to FEMA[.]" *Id.* ¶¶ 538-539.

Plaintiffs' supplemental complaint brings new claims against DHS and (now former) DHS

[1] DHS is also a defendant in a related action challenging defendants' authority to engage in RIFs during a government shutdown. *See Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Mgmt. & Budget*, No. 25-cv-8302-SI (N.D. Cal., filed Sept. 30, 2025).

[2] Pub. L. No. 109-295, 120 Stat. 1394 (2006).



United States District Court
Northern District of California

Secretary Kristi Noem challenging DHS's alleged "orders" to FEMA to reduce its staff and not to renew CORE employees. Plaintiffs assert that these orders are: agency action not in accordance with law and exceeding statutory authority under the Administrative Procedure Act ("APA") (Claim VIII); *ultra vires* and unconstitutional government action (Claim IX); and arbitrary and capricious agency action under the APA (Claim X). *Id.* ¶¶ 575-589. Plaintiffs add similar claims against FEMA and (now former) Senior Official Performing the Duties of Administrator Evans, alleging Evans and FEMA violated the law and exceeded statutory authority under the APA (Claim XI); that FEMA acted *ultra vires* in not renewing CORE employees (Claim XII); and that the non-renewals are arbitrary and capricious agency action under the APA (Claim XIII). *Id.* ¶¶ 596-604.

On February 10, 2026, plaintiffs filed a motion for a temporary restraining order related to the alleged non-renewals of CORE employees taking place at FEMA beginning January 1. Dkt. No. 301. The Court converted plaintiffs' motion into a motion for preliminary injunction and set a briefing schedule. Dkt. No. 304. On March 3, 2026, following full briefing and oral argument, the Court issued an order authorizing certain expedited discovery, in order to resolve factual disputes that went to the heart of the matter: whether or not DHS ordered or directed that FEMA make staffing cuts (and cut staffing to a certain level). Dkt. No. 321. The preliminary injunction motion remained pending.

## II. March 2026 Expedited Discovery Orders and Subsequent Events

In the March 3, 2026 Order for expedited discovery, the Court ordered defendants to produce, among other things, "communications from DHS and FEMA, including email communications regarding the renewals/nonrenewals of CORE employees as well as 'target reductions' of FEMA and CORE employee staffing." *Id.* at 2. The Court also authorized depositions of then-DHS Secretary Noem, then-SOPDA Evans, and the Chief Human Capital Officers ("CHCOs") of both DHS and FEMA. *Id.* The parties met and conferred about the scope of discovery and filed a statement with the Court. Dkt. No. 327. Among other things, the statement included a declaration from FEMA CHCO La' Toya Prieur identifying Joseph Guy, Deputy Chief of Staff, as one of three individuals at DHS who "were involved in the decisions regarding the



United States District Court
Northern District of California

United States District Court
Northern District of California

renewal of the CORE employees[.]"[3] Dkt. No. 327-1 ¶ 5. Guy served as Deputy Chief of Staff at DHS from January 2025 to March 2026. Dkt. No. 359-1 ("Guy Decl.") ¶ 1.[4]

On March 9, 2026, in response to the parties' filing, the Court issued a further order setting the production deadline for March 17. Dkt. No. 328. Although the parties' filing contained a proposal from plaintiffs that searches should encompass electronic communications including Signal, Dkt. No. 327 at 1, 4, the Court's March 9 Order did not specifically address Signal messages.

On March 10, 2026, the Chief Information Officer sent DHS employees an email reminder about preserving electronic records. Dkt. No. 420-1 ("Weissman Decl."), Ex. J.[5] The email reminded employees that "Department-wide Outlook and Teams messages are automatically retained and preserved." *Id.* at ECF p. 59. However, "[i]f employees send work-related messages using . . . an approved encrypted app such as Signal or WhatsApp, those messages must be archived." *Id.* The email further reminded employees:

> When using electronic messaging on your phone (SMS, iMessage) or encrypted apps (such as Signal or WhatsApp), please remember:
>
> - All work-related communications and records are considered official government records and must be preserved, regardless of format.
> - This manual archiving requirement does not apply to messages sent in mobile Outlook or Teams, which are archived automatically.
> - DHS policy requires employees to use work devices for all work-related activities. If work communications appear on a personal device, the employee must preserve them and transfer them to a work device—for example, by taking screenshots and emailing them to a DHS email account, or forwarding the messages.
>     - This transfer to an official account must be completed within 20 days, and the original messages must be

[3] The other two DHS individuals identified were CHCO Roland Edwards and Troup Hemenway, Principal Deputy Chief of Staff. Dkt. No. 327-1 ¶ 5.

[4] After his departure from DHS, Guy became "Chief of Staff to the Special Envoy to the Shield of the Americas" at defendant State Department. Guy Decl. ¶ 1.

[5] The Weissman declaration, filed by defendants with their opposition brief, is unsigned. However, the March 10, 2026 email attached to the Weissman declaration is the same email plaintiffs attached to one of the discovery dispute statements. *See* Dkt. No. 332-1, Ex. A.

> deleted from the personal account once the employee has confirmed they are archived in a DHS system. This requirement applies to all electronic messages, including SMS and emails.
>
> - Employees are responsible for ensuring that any auto-delete features for messaging are turned off on DHS work devices.

*Id.* at ECF p. 59-60.

Evans had the Signal app installed on her personal cell phone. Dkt. No. 414-1, Ex. A ("3/31 Evans Dep.") at 149:18-24. On the morning of March 11, 2026, Evans took pictures of FEMA-related Signal chats that were on her personal phone, then emailed them to her government account and deleted them from her personal phone.[6] Dkt. No. 420-2 ("Bombard Decl.") ¶¶ 3, 6, 8 & Ex. AA (March 11, 2026 email from redacted email address to Evans's work email account with picture of "FEMA 2.0" chat); 3/31 Evans Dep. at 156:5-10 (testimony that "I took pictures of what I determined were appropriate records. And I sent those pictures into my email account so that they would be saved as part of DHS records."); Dkt. No. 414-1, Ex. G ("5/26 Evans Dep.") at 12:25-13:21; 15:6-20; 16:6-17:3.[7] The screenshot of the "FEMA 2.0" chat Evans emailed to herself on March 11, 2026, shows the chat was set to a four-week auto-deletion timer. Bombard Decl., Ex. AA; 5/26 Evans Dep. at 17:14-21. The members of the FEMA 2.0 chat were Evans, Guy, and Kara Voorhies.[8] Dkt. No. 397-1 ("2d Eshleman Decl."), Exs. B, C.

Also on March 11, Evans shortened the auto-delete timer from four weeks to one week on the "FEMA 2.0" chat and on other FEMA-related Signal chats on her personal phone. 5/26 Evans Dep. at 12:5-17, 17:22-25, 32:12-33:20; 2d Eshleman Decl., Exs. B, C. Evans later testified that "from March 11th going forward I no longer used FEMA 2.0." 5/26 Evans Dep. at 18:14-19.

On March 19, 2026, plaintiffs filed a statement notifying the Court that defendants refused

---

[6] Plaintiffs would not learn this until later, as defendants did not produce these chats until April 15 and May 4, 2026. *See* Bombard Decl. ¶¶ 6, 8.

[7] Some of the May 26 deposition transcript erroneously refers to Evans taking photographs of the FEMA 2.0 chat in March 2025 rather than March 2026. *See* 5/26 Evans Dep. at 16:13-22.

[8] Voorhies worked for DHS beginning in April 2025, first as a "special government employee" and then as a contractor. Dkt. No. 414-1, Ex. E ("Voorhies Dep.") at 30:22-31:17. Karen Evans understood Voorhies to play the role of Senior Advisor to the DHS Secretary on FEMA issues. 3/31 Evans Dep. at 98:19-21, 286:1-6.



United States District Court
Northern District of California

to search for or produce Signal or other electronic communications on phones. Dkt. No. 332 at 1. Plaintiffs further stated:

> Defendants did not base their position on any search or belief that such documents do not exist. To the contrary, Plaintiffs have good reason to believe that decision-makers at DHS and FEMA utilize these methods of communication frequently for government communications, including regarding FEMA matters; indeed, DHS recently (on March 10, the day after this Court's most recent order, ECF 328), sent employees a "reminder" to preserve government records *that includes Signal discussions* (see Ex. A).

*Id.* After defendants responded, Dkt. No. 333, on March 20, 2026, the Court expressly ordered defendants to produce relevant electronic phone communications (including Signal chats) from a limited list of "high-level decisionmakers," including Evans and Guy, by March 26. Dkt. No. 336 at 1.

On March 26, 2026, defendants filed a notice regarding compliance. Dkt. No. 337. Defendants indicated they had "substantially complied" with the Court's March 20 Order after "having largely completed self-reporting and/or self-searches of custodians' DHS- and FEMA-issued work phones that have yielded little if any potentially responsive material . . . ." *Id.* at 1. The DHS custodians, including Guy and Voorhies, "all confirm[ed] that they did not discuss the renewal/nonrenewal of CORE employees or target reductions of FEMA and CORE employee staffing on their work phones via text, Signal, or WhatsApp." *Id.*; Dkt. No. 337-2 ("Kateland Jackson Decl.") ¶ 11. Nevertheless, defendants stated they had collected custodians' work phones for forensic imaging. Dkt. No. 337 at 2-3. However, defendants were unable to image or search Guy's work phone because he was no longer with DHS and was away on international travel. *Id.* at 3. They reported, "nor has Mr. Guy been able to self-search his phone." *Id.* Defendants were also unable "to image the DHS or FEMA phones issued to Kara Voorhies because those phones [we]re not within Defendants' possession, custody, or control, pursuant to a preservation notice issued by the Office of the Inspector General for the Department of Homeland Security prior to the March 20 Order." *Id.* Defendants informed the Court that Voorhies was neither employed by nor a contractor for DHS, since prior to the March 20, 2026 Order. *Id.*

### III. Karen Evans's Signal Chats & April 22, 2026 Discovery Order

On March 31, 2026, plaintiffs deposed Karen Evans. During the deposition, Evans testified that then-DHS Deputy Chief of Staff Joseph Guy told Evans "to include an option that would include a 50% cut" in FEMA's annual staffing plan. 3/31 Evans Dep. at 235:4-25; *see also id.* at 218:12-220:24; Dep. Ex. 17 (December 4, 2025 annual staffing plan incorporating a roughly 50% cut).[9] Evans further testified that she communicated with Voorhies (of DHS), regarding CORE staffing and reappointment; that Guy told Evans to keep Voorhies informed on these matters; and that the three of them participated in weekly meetings when Evans took over the "chief of staff" position at FEMA. *Id.* at 98:19-21, 129:22-133:10. Evans admitted to using Signal on her personal cell phone to communicate about FEMA matters with DHS and FEMA officials, including Guy, Voorhies, Corey Lewandowski,[10] and former DHS Secretary Noem. *Id.* at 149:18-150:18, 150:25-151:11. Evans also testified that she communicated with Voorhies and Guy over Signal on their personal phones. *See id.* at 141:5-24 (testimony that Evans did not know if Voorhies had DHS- or FEMA-issued work phones but that Evans communicated with Voorhies on Voorhies's personal phone), 150:25-151:11, 160:22-161:22 (testimony that Evans communicated with Guy via Signal app and only had a personal number for Guy in her phone). Evans identified three Signal group chats that involved FEMA business. *Id.* at 152:23-154:2. Evans further testified that she "took pictures of what [she] determined were appropriate records" and "sent those pictures into [her] email account so that they would be saved as part of DHS records." *Id.* at 156:1-157:10. She was unsure whether her Signal group chat messages remained on her personal phone because she was "not sure of the settings for the disappearing messages." *Id.* at 157:24-159:2.

The day after plaintiffs deposed Evans, plaintiffs asked defendants to search the personal phones of Evans, Guy, Voorhies, and Lewandowski for responsive documents. Dkt. No. 341-1 ("Leonard Decl.") ¶ 13(a). Defendants replied that they would not search employees' personal

---

[9] References in this Order to "Dep. Ex." are to the deposition exhibits attached to the Leonard Declarations at Dkt. No. 414-2 et seq.

[10] At the relevant time, Lewandowski held the role of chief advisor to Secretary Noem. 3/31 Evans Dep. at 80:22-81:7.



United States District Court
Northern District of California

United States District Court
Northern District of California

phones. *Id.* ¶ 13(b). Plaintiffs then sought relief from the Court. Dkt. No. 341. On April 15, 2026, defendants represented to the Court that "Defendants have already confirmed to Plaintiffs in writing that the custodians whose personal phones remain of interest to Plaintiffs **did not communicate** on their personal phones regarding COREs [sic] renewals or target staffing reductions."[11] Dkt. No. 344 at 15 (emphasis added by defendants).

Also on April 15, defendants produced three photographs of Signal chats from Evans's personal phone. Dkt. No. 350-1 ("Eshleman Decl.") ¶¶ 3-6, Exs. A-C; Bombard Decl., Ex. DD. One of the photographs shows a "FEMA 2.0" Signal group chat in which Voorhies asked Evans to provide FEMA staffing data. Eshleman Decl., Ex. A. When Evans asked how Voorhies wanted the data, Voorhies responded: "I would say ALL. We know we'll need it for the overall staffing plan as well." *Id.* The chat was set to disappear after four weeks. *See id.* (showing "4w" timer at top of chat). Another of the Signal screenshots shows an early morning message from Voorhies to Evans, DHS counsel James Percival,[12] and unknown others, in which Voorhies sent a link to a CNN article about FEMA halting terminations of CORE staffing during the January winter storm, with the question: "Why the hell was that sent out?" Eshleman Decl., Ex. B (sending hyperlink: cnn.com/2026/01/23/politics/fema-halts-terminations-winter-storm).

On April 22, 2026, in light of Evans's deposition testimony and the evidence of the Signal chat screenshots that plaintiffs filed, the Court issued a further order that defendants must search the personal cell phones of Evans, Guy, and Voorhies and produce all responsive communications by April 29. Dkt. No. 351 at 2-4. The Court noted that it was "seriously troubled that Evans's 'FEMA 2.0' Signal messages were set to delete after four weeks, that Evans alone appears to have made the decision regarding what were 'appropriate records' to preserve, and that what should have been preserved under the law may not have been." *Id.* at 4 (citing 3/31 Evans Dep. at 156:1-157:10). The Court ordered, by April 29, that "Evans, Guy and Voorhies attest to the preservation of FEMA-related communications on their personal phones in declarations filed under penalty of perjury." *Id.*

[11] This statement turned out to be false.

[12] Guy Dep. at 37:21-38:1.

On April 25, 2026, Evans created a back-up of her Signal chats and saved them to her personal computer.[13] 5/26 Evans Dep. 34:9-35:2, 57:25-58:12.

On April 29, 2026, Evans filed her declaration with the Court. Dkt. No. 356-1. Evans reiterated that "as to FEMA-related Signal messages on my personal cell phone, because the Signal app auto-deletes messages after a period of time, I took appropriate screen shots of such messages before deletion." *Id.* ¶ 4. Her declaration did not mention the back-up of Signal chats to her personal computer that she had made four days earlier.

Also on April 29, FEMA counsel conducted the Court-ordered search of Evans's personal phone in her office at FEMA with her personal counsel present. 5/26 Evans Dep. at 69:4-70:9; *see also* Bombard Decl., Ex. GG (Errata Sheet). Later that day, defendants produced five additional Signal images from Evans's personal phone, including a chat between Guy and Evans discussing CORE renewals; screenshots from a "FEMA Rapid Response" chat discussing CORE renewals; a redacted screenshot of a "FEMA >< HQ" group; and a screenshot of a "Winter Storm Team" group chat discussing CORE renewals. Dkt. No. 412-2 ("Hoshijima Decl.") ¶ 2 & Exs. A, B. The FEMA Rapid Response chat was set on a one-week deletion timer. *Id.*, Ex. A at USA-AFGE-Exp.-0425305, -0425308.

## IV. Joseph Guy's Signal Chats & Further Expedited Discovery Orders

On the Court-ordered deadline of April 29, 2026, at approximately 9:30 p.m. PT, defendants filed a "Notice of Substantial Compliance with Order of April 22, 2026," in which defendants stated that Guy's last day of federal employment would be the following day, April 30. *See* Dkt. No. 356 at 2. Defendants did not provide the Court-ordered declaration from Guy attesting to his preservation of FEMA-related communications on his personal phone.[14] Defendants stated they had

[13] Plaintiffs would not learn of this back-up until later. Plaintiffs contend that defendants' counsel "were aware" of the Signal backup as of April 25, 2026. Dkt. No. 412-1 at 9. Department of Justice counsel maintains that they were unaware of this backup until May 5, 2026. Dkt. No. 420 at 10-11.

[14] At the hearing on this motion, counsel explained, "We attempted to do so but were unable to obtain the declaration from Mr. Guy. As Department of Justice attorneys, we can ask individuals

found no responsive documents on Guy's work phone. Dkt. No. 356 at 3.

On April 30, 2026, in response to an urgent request from plaintiffs, Dkt. No. 358, the Court reiterated its order for defendants to search Guy's personal phone and to provide a declaration from Guy attesting to the preservation of responsive documents before his imminent departure from federal employment. Dkt. No. 358. Defendants then filed a declaration from Guy, indicating that he conducted a "self-search" of his personal phone using the terms "renewal, core, and staffing plan" but found no responsive documents. Guy Decl. ¶ 4. Guy further declared that "Signal messages on [his] personal device were not preserved" and that it was his "understanding that Karen Evans was preserving any work-related Signal messages, including any from the FEMA 2.0 chat." *Id.* ¶ 5.

On May 1, 2026, the Court issued an order finding Guy's search was inadequate and that a self-search was not authorized. Dkt. No. 362. The Court ordered Guy to bring his personal phone to his upcoming deposition and ordered defense counsel to search his phone again, using different search terms. *Id.* at 1-2.

The May 1, 2026 Order also required defendants to produce all FEMA-related Signal chats from Evans's phone and all of Evans's planner notes reflecting any meetings with Guy, by the commencement of Guy's May 4 deposition. *Id.* at 2. On May 4, 2026, defendants produced another screenshot from the "FEMA 2.0" Signal chat. Hoshijima Decl. ¶ 2, Ex. C. Defendants were unable to comply with the Court's Order regarding Evans's personal phone and planner notes because she was traveling out of state. Dkt. No. 364.

On May 4, 2026, plaintiffs deposed Guy. Guy testified to the existence of more than twenty-five FEMA-related Signal group chats on his personal phone, many of which included Voorhies, Evans, and defendants' officials, employees, and counsel. Dkt. No. 414-1, Ex. D ("5/4 Guy Dep.") at 139:13-145:19; 155:20-157:12, 162:8-165:11; *see also* Dkt. No. 368 at 4-5. Guy testified that eighteen of those FEMA-related chats were set to auto-delete messages after one week. 5/4 Guy Dep. at 155:23-157:12. Guy further testified that on April 30, after submitting his declaration for the Court and on his last day of federal employment, he reinstalled the Signal application on his

---

for declarations, but it's ultimately up to those individuals to execute them." Dkt. No. 487 ("Sept. 1, 2026 Tr.") at 25:23-26:4.

personal phone, resulting in the deletion of all Signal messages prior to April 30. *Id.* at 152:16-155:19, 169:1-8.

In response to spoliation concerns, the Court issued further discovery and preservation orders and granted plaintiffs another half-day to depose Guy. Dkt. Nos. 377, 380, 381, 386.

## V. Further Events

On May 11, 2026, plaintiffs deposed Voorhies. Voorhies testified during her deposition that she, Evans, and Guy were part of a "FEMA RIF" Signal group and that she "was using Signal because [her] client was DHS and that's what they preferred to use to communicate." Voorhies Dep. at 32:18-20, 138:18-139:22, 206:3-11. That same day, in response to a Rule 45 subpoena, Voorhies produced FEMA-related communications from her personal phone that included twenty-seven FEMA-related chats, at least four of which were set to auto-delete. Hoshijima Decl. ¶ 5.

On May 12, 2026, defendants produced screenshots from the back-up of Signal chats that Evans had made on her personal computer on April 25. Dkt. No. 396 at 1-3. Those screenshots included forty-seven Signal chats with DHS and FEMA officials, of which at least fifteen appear to have been set to auto-delete. Hoshijima Decl. ¶ 4. The "FEMA 2.0" Signal group chat contained no messages as of defendants' subsequent search on May 7. Dkt. No. 396 at 1-3; *see also* 2d Eshleman Decl., Ex. B.

On May 15, 2026, plaintiffs deposed Guy again. On May 26, 2026, plaintiffs deposed Evans again. *See* Dkt. No. 396 at 1. By this time Evans was no longer serving in the role of FEMA SOPDA, having been replaced earlier in May, though she could not recall precisely when. 5/26 Evans Dep. at 8:18-9:4. Evans admitted that she had a number of Signal chats on her personal phone, including her chat with Guy, that were set to auto-delete in one week and that some Signal chats were set to auto-delete after one day. *Id.* at 37:3-13, 39:2-40:24, 41:13-44:16.

On May 29, 2026, plaintiffs filed the present motion for Rule 37(e) remedies due to defendants' spoliation of evidence. Dkt. No. 412-1 ("Mot."). The motion is fully briefed. Dkt. No. 420 ("Opp'n"); Dkt. No. 421 ("Reply"). After continuing the hearing on the motion so that it could be heard at the same time as the parties' cross-motions for partial summary judgment on the

DHS/FEMA supplemental claims, the Court heard oral argument on September 1, 2026.[15]

## LEGAL STANDARD

As amended in 2015, Federal Rule of Civil Procedure 37(e) provides,

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Thus, to impose sanctions under Rule 37(e), the Court must find that defendants failed to take reasonable steps to preserve electronically stored information ("ESI") and ESI was lost; the ESI cannot be restored or replaced through additional discovery; and either plaintiffs were prejudiced by the loss of ESI (Rule 37(e)(1)) or defendants "acted with the *intent* to deprive another party of the information's use in the litigation." *See Gregory v. Montana*, 118 F.4th 1069, 1078-79 (9th Cir. 2024) (quoting Fed. R. Civ. P. 37(e)(2)). As amended in 2015, Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." Fed. R. Civ. P. 37(e) advisory committee's note to the 2015 amendment.

With regard to Rule 37(e)(1) sanctions, "[t]he rule does not place a burden of proving or

[15] On June 26, 2026, the Court declined to issue a preliminary injunction on the DHS/FEMA claims due to a change in factual circumstances in the time since plaintiffs filed their motion but granted plaintiffs' request to move quickly to partial summary judgment on those claims. Dkt. No. 433. The Court resolves the cross-motions for summary judgment on the DHS/FEMA claims in a separate, concurrently filed Order.

disproving prejudice on one party or the other." *Id.* "Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information." *Id.* "This is because the finding of intent required by [subdivision (e)(2)] can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." *Id.*

**DISCUSSION**

Plaintiffs argue that relevant communications on high-level officials' personal phones were lost because defendants failed to take reasonable measures to preserve their Signal messages. Mot. at 17-20. Plaintiffs seek an order under Rule 37(e)(1) precluding defendants from offering any hindsight testimony that denies defendants' plan to substantially reduce FEMA staffing, denies DHS's direction over that plan, or denies implementation of the plan through "indiscriminate separation" of CORE employees. *Id.* at 20-22; Dkt. No. 412-3 at 1. Plaintiffs further request that the Court make an adverse inference finding under Rule 37(e)(2) "presum[ing] that the lost Signal messages would have been unfavorable to Defendants because they would have been further evidence of Defendants' plan, DHS's control, and Defendants' implementing actions." Dkt. No. 412-3 at 1. Finally, plaintiffs seek "the opportunity to prove the amount of fees incurred in uncovering and addressing Defendants' spoliation" under Rule 37(e)(1). Mot. at 22.

"The Ninth Circuit has not set forth a specific standard of proof, but district courts in this Circuit apply a preponderance of the evidence standard in making findings to determine whether to impose spoliation sanctions under Rule 37(e)." *Morehead v. City of Oxnard*, No. CV 2:21-cv-07689-SPG-ADSX, 2023 WL 8143973, at *4 (C.D. Cal. Oct. 4, 2023) (collecting cases). As plaintiffs note, the only case defendants cite in support of applying a clear and convincing evidence standard discusses the standard in ruling on a motion for civil contempt, not for Rule 37(e) remedies. *See* Opp'n at 12 (citing *Logistics Guys Inc. v. Cuevas*, No. 2:23-cv-01592-DAD-CSK, 2025 WL 1017659, at *3 (E.D. Cal. Apr. 4, 2025)). Applying the preponderance of the evidence standard, the Court now finds as follows.

**I. High-Level Officials Deleted Relevant Signal Messages That Cannot Be Restored or Replaced.**

Before imposing sanctions under Rule 37(e), the Court must first find that "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery[.]" *See* Fed. R. Civ. P. 37(e). Here, defendants concede that "certain Signal messages were lost and should have been preserved[.]" Opp'n at 1, 13-14; *see also* 2d Eshleman Decl., Ex. A at ECF p. 4-5 ("our understanding [is] that messages in the FEMA 2.0 chat were set to disappear and did disappear . . ."). Defendants further concede that the FEMA 2.0 chat cannot be restored and replaced through additional discovery and that it is unlikely that other lost Signal chats can be restored or replaced. Opp'n at 14.

However, defendants argue that plaintiffs have failed to establish the relevance of the lost information. *Id.* at 13-14. They argue that "what messages were lost and their relevance to the litigation is far from clear" and that "nobody can determine" the relevance of the lost FEMA 2.0 chat messages because those messages cannot be restored or replaced. *See id.* at 14. Even setting aside defendants' rather circular reasoning, the Court is not convinced.

To take the FEMA 2.0 chat as an example, that chat involved three high-level decisionmakers at DHS and FEMA: Karen Evans ("SOPDA," i.e., acting head of FEMA), Joseph Guy (DHS Deputy Chief of Staff), and Kara Voorhies (Senior Advisor to the DHS Secretary on FEMA issues). The record shows that Evans created the FEMA 2.0 chat on November 15, 2025, a few weeks before FEMA's annual staffing plan was due to DHS and about six weeks before the CORE employees' terms began lapsing. *See* 2d Eshleman Decl., Ex. B. When she created the chat, Evans set messages to auto-delete in four weeks. 5/26 Evans Dep. at 17:14-17, 19:19-20:3 ("I set disappearing messages" in the FEMA 2.0 chat). Given the timing of when Evans created the chat (November 15, 2025) and when she stopped using it (March 11, 2026), the chat was likely active during the time period most relevant to this litigation, i.e., in the weeks leading up to the December 2025 deadline for FEMA's annual staffing report through the start of 2026. Of the two FEMA 2.0 chat screenshots defendants produced, one is a message from Voorhies to Evans stating, "Karen we



United States District Court
Northern District of California

United States District Court
Northern District of California

need you to do a data call to find out how many contractors work at FEMA" and that the data would be needed "for the overall staffing plan as well[.]" Eshleman Decl., Ex. A. The second screenshot shows messages between Guy and Voorhies that "Corey also wants to make sure that any 'easy money' is pushed out" and discussing the Flood Mitigation Assistance and Disaster Relief Fund. Hoshijima Decl., Ex. C; Mot. at 6-7. In sum, the few FEMA 2.0 chat messages produced were highly relevant to the claims at issue here. Evans created the FEMA 2.0 at the start of the relevant time period to this case, invited two of the stakeholders (Guy and Voorhies) who appear most critical to the FEMA claims in this lawsuit, and then set the Signal chat to auto-delete after four weeks. Accordingly, the Court concludes plaintiffs have shown by a preponderance of the evidence that FEMA 2.0 Signal chat messages were deleted and that those messages would have been relevant to plaintiffs' claims.

Further, as described above, *all* of Guy's Signal chats were deleted. In other words, despite roughly twenty-six Signal chats on his personal phone with the word "FEMA" in the chat title, *no* messages from any Signal chats on Guy's phone were produced. Yet messages produced from other custodians' chats with Guy show highly relevant discussions of CORE staffing. *See* Hoshijima Decl., Ex. A ("Winter Storm Team" chat discussing response to the media about the halting of CORE renewals), Ex. B (February 4 message from Evans stating, "Here is my list: Restarting CORE renewals . . ."); 5/4 Guy Dep. at 69:14-18 (acknowledging participation in "Winter Storm Team" chat). The relevance of the few messages that were produced involving Guy, coupled with the sheer volume of FEMA-titled Signal chats on Guy's phone, indicate that Guy's deleted Signal messages too would have been relevant to this litigation.[16]

Taking together the timing of the chat and the content of the few messages that were

---

[16] As plaintiffs note, the very name of the FEMA 2.0 chat points to its relevance: the December 11, 2025 Draft Final Report produced by the President's Council to Assess the Federal Emergency Management Agency states that the Council voted to "eliminate FEMA as we know it today, and replace it with a new to-be-named FEMA 2.0[.]" *See* Eshleman Decl., Ex. E at 2; *see also id.* at 7 ("FEMA 2.0 should reduce overall staffing by approximately 50%").

Other Signal chats deleted from Guy's personal phone also would appear relevant to this litigation just on the basis of the chat names: for instance, "FEMA RIF" or "DOGE-FEMA." *See* 5/4 Guy Dep. at 155:23-157:12.

preserved and produced, the Court concludes that the deleted Signal messages were relevant.

**II. Defendants Failed to Take Reasonable Steps To Preserve the Signal Messages.**

Despite their legal obligations and despite court orders specifically calling for the production of communications "regarding the renewals/nonrenewals of CORE employees as well as 'target reductions' of FEMA and CORE employee staffing," Dkt. No. 321 at 2, defendants "failed to take reasonable steps to preserve" the Signal messages. *See* Fed. R. Civ. P. 37(e).

**A. Document Preservation**

Defendants' obligation to preserve the messages stemmed from several separate sources. First, the Federal Records Act of 1950 requires the head of each Federal agency to "make and preserve records containing adequate and proper documentation of the organization, function, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities."[17] 44 U.S.C. § 3101; 36 C.F.R. §§ 1222.22-1222.34 (regulations regarding agency recordkeeping requirements).

Next, DHS maintains its own policies regarding records preservation. According to a declaration submitted by Michael Weissman, DHS Acting Deputy Chief Information Officer of the Office of the Chief Information Officer ("OCIO"), DHS has "three interrelated policies" that provide for the retention of all electronic federal records on government-issued devices and personal devices, as required by the Federal Records Act: DHS Directive 141-01, "Records and Information Management" (Aug. 11, 2014, certified current Sept. 26, 2019); DHS Instruction 141-01-001.1, "Records and Information Management" (June 8, 2017, incorporating Change 1, Sept. 9, 2019); and DHS Policy Directive Memorandum 141-03, "Electronic Records Management Updates for Chat, Text and Instant Messaging" (Feb. 23, 2018). Weissman Decl. ¶¶ 1, 3-4, Exs. A, B, C. DHS Policy Directive 141-03 specifically states that communications via "chat, text, or instant messaging" must

[17] Defendants argue there is no private right of action under the Federal Records Act, but plaintiffs here do not sue under that statute.



United States District Court
Northern District of California

be preserved, whether they are "exchanged on agency networks and devices, on personal devices, or [] hosted by third-party providers." *Id.*, Ex. C at ECF p. 29-30. Additionally, DHS EM Form 210, "Electronic Messaging Retention and Attestation" (Mar. 2023), instructs employees: "You are expected to exclusively use government equipment in the performance of your duties. If, however, you create government electronic messaging records on a personal device, you must also use the same steps in this document to capture and save the records." *Id.*, Ex. F at 1. DHS policy "requires employees to use work devices for all work-related activities," and any work communications appearing on personal devices must be transferred to an official account "within 20 days[.]" *Id.*, Ex. J at ECF p. 59. The DHS Chief Information Officer reminds employees that "[e]mployees are responsible for ensuring that any auto-delete features for messaging are turned off on DHS work devices." *Id.* at ECF p. 60.

Finally, defendants in this case have preservation obligations stemming from the litigation itself. "The common law imposes the obligation to preserve evidence from the moment that litigation is reasonably anticipated." *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012). "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (citations omitted). "The duty to preserve evidence also 'includes an obligation to identify, locate, and maintain[] information that is relevant to specific, predictable, and identifiable litigation.'" *Apple*, 881 F. Supp. 2d at 1137 (citation omitted).

### B. Evans's and Guy's Deletion of Messages

Federal Rule of Civil Procedure 37(e) applies when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it . . . ." Here, high-level officials at DHS and FEMA—most notably FEMA SOPDA Karen Evans and DHS Deputy Chief of Staff Joseph Guy—not only failed to take reasonable steps to preserve their work-related Signal chats but actively took steps to delete those chats in violation of DHS policy, the Federal Records Act, and their obligations due to the



United States District Court
Northern District of California

litigation in this case.

**1. Karen Evans**

The undisputed facts indicate both that Evans affirmatively deleted Signal messages after self-selecting which ones to preserve and that Evans set her Signal chats to auto-delete within a prescribed timeframe, for instance, four weeks. Signal messages do not auto-delete by default. Hoshijima Decl. ¶ 7. Defendants appear to concede this. *See* 5/26 Evans Dep. at 72:12-15. Instead, use of the auto-delete feature is a setting that a Signal user can choose. Hoshijima Decl. ¶ 7 (explaining that Signal "offers participants in a chat the option to affirmatively engage auto-deletion settings" for time periods "from 30 seconds to four weeks, or custom"). Evans testified that she understood that the Signal disappearing timer settings in a group chat "can be determined by the users" and that she knew she "had the ability to remove the auto-delete settings" on her chats. 3/31 Evans Dep. at 157:24-158:4; 5/26 Evans Dep. at 72:16-19, 19:19-20:3.

Evans testified that, following what she understood to be DHS policy, she took screenshots of what she deemed were relevant Signal chats on her personal phone, emailed them to her work account, and then deleted the original messages from her personal phone. 3/31 Evans Dep. at 156:1-157:10; 5/26 Evans Dep. at 12:25-13:21; 15:6-20; 16:6-17:1. The record indicates she did this beginning on March 11, 2026. *See* Bombard Decl. ¶ 3 & Ex. AA. This is problematic for several reasons. First, as explained in Section III, *infra*, the Court has concerns with Evans alone determining what is relevant to this litigation and with her self-selection of relevant material without the involvement of counsel. As plaintiffs note, some of the "screenshots" that were produced appear to have been part of longer conversations, but the other messages in the conversation, as well as the precise timestamp for the screenshot, were not preserved.[18] Second, if Evans emailed herself relevant screenshots on March 11, 2026, and some of the relevant messages were set to a four-week automatic deletion timer (as in the case of the FEMA 2.0 chat, which Evans created in November 2025), then messages from the time period most relevant to the issues in this litigation would have

[18] What defendants call Evans's "screenshots" appear to be photographs taken of the screen of Evans's phone using another camera.

United States District Court
Northern District of California

already been deleted by the time Evans began using this screenshot preservation method.

Evans should not have been deleting *any* messages related to FEMA staffing because there was a litigation hold in this case. DHS has been a defendant in this lawsuit challenging mass layoffs at federal agencies since the case's inception in April 2025. *See* Dkt. No. 1. Since September 2025, DHS has also been a defendant in the related action challenging the Executive's authority to order mass layoffs during a government shutdown. *See Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Mgmt. & Budget*, No. 25-cv-8302 SI (N.D. Cal., filed Sept. 30, 2025). Based on both of these ongoing actions, it was wrong for high-level officials to delete messages related to large-scale layoff plans.

Even taking a very narrow view of defendants' litigation hold obligations, at a minimum Evans was on notice as of January 27, 2026, that documents related to FEMA staffing and CORE nonrenewals were relevant to this litigation. *See* Dkt. No. 290. On January 30, 2026, FEMA and Evans became formally-named defendants in this case. *See* Dkt. No. 298. And Evans testified that she was aware of "plaintiffs' request for an injunction to halt the plan to dismantle FEMA" because she provided a declaration on February 19, 2026, prior to the hearing. *See* 5/26 Evans Dep. at 47:6:13; Dkt. No. 312-1. And yet Evans waited until March 11, 2026, to begin making any sort of back-up of the FEMA-related Signal messages from her personal phone. Had Evans preserved the messages in late January, when she was added as a defendant to this case, then roughly an additional six weeks' worth of messages would have been preserved. And assuming those messages were set on a four-week auto-deletion timer, some of those messages would have covered the early January period, when FEMA began non-renewing the CORE employees. Instead, Evans allowed those messages to be deleted using an auto-delete timer that she set. And she kept those auto-delete settings in effect well after plaintiffs filed their motion for emergency relief as to FEMA and the COREs. For instance, even the two "FEMA 2.0" chat messages that Evans produced in April 2026 had been deleted from her phone as of the time of a subsequent search on May 7, 2026. *See* 2d Eshleman Decl., Ex. B; Dkt. No. 397 at 1-3. As defendants concede, those messages cannot be recovered.

United States District Court
Northern District of California

**2. Joseph Guy**

Guy was a high-level official at DHS and then at the State Department (also a defendant in this litigation) when he deleted the relevant Signal messages. It is no excuse that he was not a named defendant in this case. *See National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987) ("The obligation to retain discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials."); *see also Gregory*, 118 F.4th at 1080 (reversing district court's decision to impose sanctions under Rule 37(e)(2) where district court made no finding of intent "either on the part of the State *or any of its agents*") (emphasis added).

Moreover, since March 20, 2026, Guy was under Court Order for the production of relevant communications from his phone specifically. *See, e.g.,* Dkt. No. 321 at 2 (Mar. 3, 2026 Order for production of "communications from DHS and FEMA . . . regarding the renewals/nonrenewals of CORE employees"); Dkt. No. 328 at 2 (Mar. 9, 2026 Order for certain individuals' communications, including Guy's, setting March 17 deadline); Dkt. No. 336 (Mar. 20, 2026 Order for Signal chats on cell phones of high-level decisionmakers, including Guy, by March 26); Dkt No. 351 at 2-5 (Apr. 22, 2026 Order for searches of Guy's personal and work phones and for Guy to provide declaration); *see also* Dkt. No. 327-1 ¶ 5(b) (identifying Joseph Guy).

Screenshots produced from other custodians' phones show that Guy was involved in Signal chats related to FEMA staffing. *See* Eshleman Decl., Ex. A (FEMA 2.0 Signal chat regarding FEMA contractor data needed for overall staffing plan); 2d Eshleman Decl., Exs. B, C (showing Guy as one of three members of FEMA 2.0 chat); Hoshijima Decl., Ex. B (Feb. 4 Signal chat between Evans and Guy in which Evans lists "Restarting CORE renewals" as first item on "my list"; Guy responds, "Copy").

Despite numerous Court orders, none of Guy's Signal messages were produced. The April 29, 2026 deadline passed without any production from Guy's phone and without Guy's declaration. *See* Dkt. No. 356 at 1 ("Defendants were unable to obtain from Mr. Guy an attestation that he preserved FEMA-related communications on his personal phone"). Instead, on April 30, 2026, i.e.,

one day *after* the production deadline and on what turned out to be Guy's last day of federal employment, Guy reinstalled the Signal app on his personal phone, resulting in the deletion of all the content of his chat messages. 5/4 Guy Dep. at 90:8-91:19; 152:6-154:4 (correcting earlier testimony to clarify that he reinstalled Signal app on April 30 rather than May 1). Guy testified that he reinstalled the app in an attempt to restore his messages but that he did so without consulting counsel and that, because he "didn't have the 60-number key . . . to restore the Signal messages[,] it just wiped everything out again." *Id.* at 90:8-91:19; 155:8-19. He testified that the reinstallation of the messages on April 30 had no practical effect because the messages had already been deleted by that point. *Id.* at 105:2-106:14.

Guy's post hoc explanation that he thought someone else was preserving his messages makes little sense and does not salvage his actions. At his deposition, he testified that he thought someone else was archiving the messages for him, explaining: "I did not do my own travel. I did not file most of my HR paperwork, for the most part. I did not do most of my own scheduling. There was a lot going on. I was under the impression that someone else would be taking care of that, just like most of the other administrative work was taken care of." *Id.* at 53:25-54:10; *see also id.* at 91:1-19. In his declaration, he attested, "It was my understanding that Karen Evans was preserving any work-related Signal messages, including any from the FEMA 2.0 Chat." Guy Decl. ¶ 5. However, Guy admitted that the Signal messages were on his personal phone, that he did not give his personal phone to anyone for archiving, and that any understanding that Evans would be archiving messages was "just kind of an implicit understanding." 5/4 Guy Dep. at 76:25-77:3, 120:22-122:6, 132:1-25. Further, Evans could not have been the one archiving his messages, where Guy described many FEMA-related Signal chats that Evans was not on, including the "FEMA 2" chat with Corey Lewandowski and David Richardson (former FEMA SOPDA), the "FEMA Sanity Club" chat with Victoria Barton and Kara Voorhies, and the "FEMA $$$" chat with Troup Hemenway and Kara Voorhies. *See id.* at 162:8-165:11.

Defendants protest that the Court's earlier discovery orders were silent as to whether production was ordered as to work phones or personal phones. If there was any doubt, defendants could have sought clarification from the Court. Instead, the record indicates that during March 24

and 26 conferences with opposing counsel, defense counsel took the position that they would not search for responsive communications on officials' personal phones, without any apparent basis for knowing whether the officials had used personal phones for government business. *See* Leonard Decl. ¶ 10 ("Defendants' counsel was unaware whether agency counsel had even asked any of its custodians whether they used their personal phones to conduct government business . . ."). As it later turned out, officials had been using their personal phones for government business.

Officials should have been preserving their Signal messages related to FEMA CORE staffing pursuant to federal law, DHS policy, and the litigation hold in this case. The evidence overwhelmingly shows that defendants failed to take reasonable steps to preserve these messages.

**III. Destruction of the Messages Has Prejudiced Plaintiffs Under Rule 37(e)(1).**

Prejudice is a prerequisite to remedies under Federal Rule of Civil Procedure 37(e)(1). Though conceding that messages that should have been preserved were deleted and cannot be recovered, defendants contest whether plaintiffs have been prejudiced by the spoliation. Defendants argue that any sanction under Rule 37(e)(1) "should be minimal[,]" limited to the costs plaintiffs incurred in having to pursue follow-up depositions of Evans and Guy and the costs associated with filing the present motion. Opp'n at 21-22.

"To account for the difficulty in requiring a party to prove the relevance of lost information, courts have held that, to show 'prejudice resulting from the spoliation . . . a party must only come forward with plausible, concrete suggestions as to what the destroyed evidence might have been." *See Khan v. City & Cnty. of San Francisco Dep't of Pub. Health*, No. 24-CV-09289-LJC, 2026 WL 1433089, at *7 (N.D. Cal. May 21, 2026) (citations omitted). Here, the Court finds that plaintiffs have been prejudiced by the spoliation, as evidenced by the handful of Signal chats that were preserved and also because Evans admitted to deleting Signal messages after self-selecting which ones to preserve, and her actions in this case show she has over-redacted relevant discovery in other contexts.

The Court will not repeat its discussion on the relevance of the destroyed messages but incorporates the analysis from Discussion Section I, *supra*. As to Evans's admission that she deleted

work-related Signal messages from her personal phone after self-selecting which ones to preserve, the Court has expressed its concerns about custodians' self-selection of discovery earlier in this litigation, Dkt. Nos. 351 at 4, 362 at 1-2.

Evans in particular has shown her propensity for self-redacting information that goes directly to plaintiffs' claims. In the expedited discovery production, defendants produced Evans's personal planner notes that she herself had redacted by hand with a marker.[19] After the Court ordered the production of the unredacted notes for the Court's *in camera* review, Dkt. No. 351 at 6, defendants withdrew their privilege objections and produced the notes to the Court and to plaintiffs' counsel.[20]

Comparing the self-redacted notes, *see* Dkt. No. 341-1, Ex. B (*in camera*), versus the unredacted notes that were ultimately produced, the Court finds Evans self-redacted highly relevant information from her planner notes. For instance, while Evans left unredacted a December 31, 2025 meeting note re: "not going to approve the CORES," she redacted the critical information that this December 31 meeting was with "Joe," i.e., Joe Guy of DHS. Dkt. No. 341-1, Ex. B, at -0033536; Dep. Ex. 142, at -0425379. As another example, Evans redacted the name of the person with whom she discussed "Looking @ ALL CORE Dates" on December 4, 2025, the same day that she submitted a staffing plan to DHS calling for a roughly 50% cut to FEMA. *See* Dkt. No. 341-1, Ex. B, at -0033534; Dep. Ex. 142, at -0425328; *see also* Dep. Ex. 17; 3/31 Evans Dep. at 218:12-220:24. As another example, Evans initially produced no planner notes for December 3, 2025, i.e., the day before she submitted the FEMA staffing plan.[21] Dkt. No. 441 at 16 n.14. When plaintiffs finally obtained the unredacted notes from that date, they revealed a highly relevant note indicating that Evans met with "Joe Guy" and that one of the topics discussed was "the # for personnel." *See id.*; *see also* Dep. Ex. 142 at -0425324. Thus, Evans's later assurance that she preserved all Signal

---

[19] Evans testified at her deposition that her day planner notes reflect "reminders of me [sic] for activities or things that did occur in meetings." 3/31 Evans Dep. at 167:25-168:6.

[20] Plaintiffs' account of the process of obtaining Evans's planner notes is outlined more fully in their filing at Dkt. No. 341.

[21] On April 27, 2026, defense counsel submitted Evans's unredacted meeting notes for the relevant time period to the Court *in camera*, pursuant to Court Order. The December 3, 2025 notes were not included in that production.



United States District Court
Northern District of California

messages that she deemed relevant does not assuage the spoliation concerns given Evans's flawed self-redaction of her meeting notes. *See In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 993 (N.D. Cal. 2023) (in granting Rule 37(e) sanctions, criticizing Google that it "gave each employee carte blanche to make his or her own call about what might be relevant in this complex antitrust case, and whether a Chat communication should be preserved").

Plaintiffs' theory is that DHS was unlawfully directing FEMA to cut its staffing, and defendants have consistently denied this. Yet the record reflects that Signal was the preferred method of communication for DHS officials and that substantive discussions about FEMA's future staffing were playing out over Signal. The lack of messages from the relevant time period to this case is highly suspect, particularly in light of Evans's creation of a "FEMA 2.0" chat on November 15, 2025. And Evans admitted that she deleted Signal messages after self-selecting which ones to preserve, while discovery in this case shows she over-redacted relevant meeting information. Taking these together, the Court concludes that plaintiffs have been prejudiced in their ability to prove their claims due to the spoliation of Signal messages, which cannot now be recovered.

## IV. Evans Intentionally Deleted Messages, Warranting Remedies Under Rule 37(e)(2).

Defendants argue "that evidence demonstrates, at worst, negligence or perhaps gross negligence," but that the conduct here does not reach the level of "intent" required for sanctions under Rule 37(e)(2). Opp'n at 15.

The Ninth Circuit has explained:

> Rule 37(e) does not define "intent," but in context, the word is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party. *See Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312 (11th Cir. 2023); Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (stating that negligence or even gross negligence is insufficient). Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions. *See Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018). Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation. *See Laub v. Horbaczewski*, No. CV 17-6210-JAK, 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020).

*Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). "[P]roduction of some evidence

does not excuse destruction of other relevant evidence." *Id.* at 736.

In *Burris v. JPMorgan Chase & Co*., No. 21-16852, 2024 WL 1672263, at * 2 (9th Cir. Apr. 18, 2024), the Ninth Circuit affirmed the district court's finding that the plaintiff intentionally deleted ESI, where "large volumes of ESI were lost" and the plaintiff "was on notice that the destroyed ESI should have been preserved." There, the plaintiff engaged in "systematic efforts to destroy ESI from an array of phones, laptops, email accounts, and external storage devices," and "wiped at least one of his devices the day before he was required to produce it for forensic examination." *Id.* (internal quotation marks omitted). The Ninth Circuit found that the district court "properly relied on the temporal proximity of [plaintiff's] spoliation" as evidence of intent. *Id.* Moreover, the "sheer number of obfuscatory actions undertaken" was adequate evidence of intent. *Id.*

Similarly, in *Jones*, the Ninth Circuit affirmed the district court's finding that an employee's deletion of text messages with coworkers and witnesses was done with intent to deprive the employer of ESI in an employment discrimination action. 95 F.4th at 736. The Ninth Circuit rejected the employee's arguments that her "production of thousands of text messages" negated the destruction of other text messages and that the district court erred because it was not clear "every deletion of a text message was intentional" or how many text messages were deleted. *Id.* at 735. Instead, the Ninth Circuit concluded that there was "ample circumstantial evidence" of intent. *Id.* A screenshot of one message sent to the plaintiff but absent from her phone "show[ed] that Plaintiff deleted at least one message that had a direct bearing on her case[,]" and the plaintiff and one of her witnesses "obtained new phones shortly after they were ordered to hand over their devices for imaging" and did not produce the earlier phones for imaging. *Id.* (citation omitted).

Here, the conduct goes beyond gross negligence. As in *Jones*, "ample circumstantial evidence" supports a finding that Evans deleted relevant Signal messages with the intent to deprive the opposing side of the messages' use in this litigation. *See* 95 F.4th at 735. Evans, when she was acting head of FEMA and a named defendant in this lawsuit, deleted relevant Signal messages on her personal phone through an auto-delete timer that she herself set.

The timing of the messages' deletion and officials' use of the Signal auto-delete feature are

United States District Court
Northern District of California

significant. Evans and FEMA became named defendants in this lawsuit at the end of January 2026, plaintiffs filed their motion for a temporary restraining order on February 10, and on March 3, 9, and 20 the Court issued discovery orders for FEMA/CORE communications to be produced. Evans was well aware of these events, having submitted a declaration in this case dated February 19, 2026. *See* Dkt. No. 312-1; 5/26 Evans Dep. at 47:6-24. And yet she did nothing to change the auto-delete settings on her FEMA Signal chats except that on March 11, 2026, she *shortened* the auto-delete timer on the "FEMA 2.0" chat with Guy and Voorhies from four weeks to one week. 5/26 Evans Dep. at 12:5-17, 17:22-25, 32:12-33:20; 2d Eshleman Decl., Exs. B, C. She did this just two days after the Court issued an Order specifically calling for discovery from FEMA leadership, *see* Dkt. No. 328 at 2-63, and just one day after the DHS Chief Information Officer sent a reminder that "all DHS employees must preserve their electronic messaging records" including on Signal. *See* Dkt. No. 332-1, Ex. A. The Chief Information Officer also reminded employees to use work devices for work-related activities and that "[e]mployees are responsible for ensuring that any auto-delete features for messaging are turned off on DHS work devices." *Id.*

Yet Evans continued to use the auto-delete feature as discovery in this case went on, such that by the time defense counsel conducted a subsequent Court-ordered search of Evans's Signal messages on her personal phone on May 7, 2026, even the two FEMA 2.0 chats that defendants had produced in April no longer existed in Evans's chat history. *See* Dkt. No. 396 at 1-3; 2d Eshleman Decl., Ex. B. Evans has never pled ignorance of how Signal works, nor could she. She held the role of DHS Chief Information Officer from June 2020 to January 2021.[22] 3/31 Evans Dep. at 33:9-23. And at a discovery hearing in this case, her personal counsel expressly requested to put "on the record on behalf of Ms. Evans . . . that Ms. Evans knows far more about Signal than any of these plaintiffs' attorneys, far more than this Court or, frankly, than DOJ's tech people." *See* May 13, 2026 Tr. at 22:24-23:6.

[22] Under DHS's own policies, the Chief Information Officer is tasked with, among other things: "Establish[ing] and oversee[ing] the RIM [Records and Information Management] Program throughout the Department" and "Provid[ing] for the seamless capture and storage of electronic records and associated metadata in DHS enterprise-wide systems and applications." *See* Weissman Decl. Ex. A at 2.

Evans was also evasive and misleading in her statements about what she had used Signal for and what evidence existed. Although Evans emailed herself a screenshot of the "FEMA 2.0" chat on March 11, 2026, *see* Bombard Decl. ¶ 3 & Ex. AA, Evans did not disclose the existence of the FEMA 2.0 chat during her March 31 deposition, and defendants did not produce the screenshot to plaintiffs until April 15. *See* Bombard Decl. ¶ 6 & Ex. DD; Eshleman Decl. ¶¶ 3-4 & Ex. A. Additionally, on April 25, 2026, Evans created a back-up of her Signal messages onto her personal computer. 5/26 Evans Dep. 34:9-35:2, 57:25-58:12. However, the declaration she filed on April 29, in response to this Court's Order, said nothing about the recent Signal back-up. *See* Dkt. No. 356-1.

Defendants largely rely on *Gregory* to argue that plaintiffs cannot meet the "demanding specific-intent standard" required to show intent under Rule 37(e)(2). Opp'n at 13 (quoting *Gregory*, 118 F.4th at 1080). They argue that in *Gregory* "the Ninth Circuit held that an adverse inference was unavailable because there was at most gross negligence when a law enforcement agency lost a video from its surveillance system because it was not downloaded before an autodelete occurred." Opp'n at 16 (citing 118 F.4th at 1076-77). But unlike here, the facts of *Gregory* involved the defendants' failure to halt a surveillance video system's auto-delete function. Where the district court in *Gregory* issued an adverse inference instruction to the jury based on the court's "inherent authority" but without having found intent under Rule 37(e)(2), the Ninth Circuit found the district court erred. Here, the Signal chat participants, and Evans in particular, affirmatively chose to enable auto-delete settings on their work-related chats. *See* Hoshijima Decl. ¶ 7; 2d Eshleman Decl. ¶¶ 3-4, Exs. B, C.

For that same reason, the Court finds defendants' other authorities distinguishable, where they involved ESI lost due to the failure to stop automatic deletion processes. *See, e.g., Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1238 (N.D. Cal. 2022) (finding Meta failed to demonstrate BrandTotal acted with intent rather than negligence "in not taking steps to counter [the thirty-day retention] and automatic deletion" of data where the defendant's intentional actions were a "possible" but not "the most likely explanation" for the ongoing automatic deletion of logs); *Porter v. City & Cnty. of San Francisco*, No. 16-cv-03771-CW (DMR), 2018 WL 4215602,

at * 3-4 (N.D. Cal. Sept. 5, 2018) (finding that San Francisco's failure to preserve a recording of a call to law enforcement that was deleted pursuant to a two-year retention policy was not sufficient to show intent); *Estate of Bosco by & through Kozar v. County of Sonoma*, 640 F. Supp. 3d 915, 929 (N.D. Cal. 2022) ("a passive failure to halt an automatic deletion process, without more, often does not rise to a reasonable inference of intent"). Nor is this case like *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), which the advisory committee notes to Rule 37 specifically reject. *See* Fed. R. Civ. P. 37(e)(2) advisory committee's note to the 2015 amendment. There, the Second Circuit held that evidence of "purposeful sluggishness" and "grossly negligent acts" could constitute the intent required for sanctions under Rule 37(e)(2). But here the Court makes no finding that Evans's actions were only reckless or negligent, even grossly so.[23]

For the reasons set forth above, the Court finds that defendants' actions were intentional under Rule 37(e)(2), on the basis of Evans's actions with respect to her Signal messages.

## V. Attorneys' Fees and Costs

Plaintiffs seek their "fees incurred in uncovering and addressing Defendants' spoliation." Mot. at 22. Defendants do not dispute that plaintiffs may be entitled to attorneys' fees and costs due to their officials' destruction of the Signal messages but argue that this remedy should be limited to "costs and fees associated with the second deposition of Guy and Evans and Plaintiffs' pursuit of this Motion." Opp'n at 22.

The Court finds that an award to plaintiffs to compensate for their fees and costs incurred in uncovering and addressing the spoliation is appropriate. *See BrandTotal*, 605 F. Supp. 3d at 1241 (finding award of attorneys' fees may be a proper remedy for sanctions motion under Rule 37(e)(1)).

[23] As to Joseph Guy, it is not believable that Guy did not know relevant communications were on his personal phone, where his deposition later revealed his phone had at least twenty-six Signal chats with the word "FEMA" in the title. And the timing of Guy's deletion of all of the content of his Signal messages on April 30, 2026—when he was under several Court orders to produce Signal messages and had just missed his deadline to file a Court-ordered declaration—is highly suspect. Nevertheless, the record does not show by a preponderance of the evidence that Guy deleted messages with the intent to deprive plaintiffs of their use in this litigation.

The Court DIRECTS the parties to meet and confer in an attempt to resolve the amount of fees that defendants will pay to plaintiffs. If the parties cannot reach agreement, plaintiffs shall file their fee application no later than **October 9, 2026.**

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby **GRANTS** plaintiffs' motion for remedies, under both Federal Rule of Civil Procedure 37(e)(1) and (2).

Accordingly, it is hereby **ORDERED** that:

1. Defendants may not rely on any hindsight testimony that denies Defendants' plan to substantially reduce Federal Emergency Management Agency (FEMA) staffing, denies the Department of Homeland Security's (DHS's) direction over that plan, or denies implementation of that plan through indiscriminate separation of Cadre of On-Call Response/Recovery (CORE) employees.

2. In any future proceedings in this case, the Court will presume that the lost Signal messages would have been unfavorable to Defendants because they would have been further evidence of Defendants' plan, DHS's control, and Defendants' implementing actions.

3. Plaintiffs are entitled to fees incurred in uncovering and addressing Defendants' spoliation. The parties shall meet and confer and attempt to resolve the amount of fees that Defendants will pay to Plaintiffs. If the parties cannot reach an agreement, Plaintiffs are granted leave to file a fee application no later than October 9, 2026.

**IT IS SO ORDERED**.

Dated: September 11, 2026

Susan Illston

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California