**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN O. BRENNAN,<br><br>Plaintiff,<br><br>v.<br><br>TODD W. BLANCHE, *et al.*,<br><br>Defendants. | Case No. 26-cv-2323 (JMC) |

**MEMORANDUM OPINION**

Plaintiff John O. Brennan sued several officers and agencies of the federal government, alleging that they are in the process of building multiple criminal cases against him.[1] Brennan alleges that these potential cases are baseless, and he says that he will defend himself against any future charges on grounds of vindictive or selective prosecution.

Brennan filed suit seeking an injunction or writ of mandamus requiring Defendants to preserve certain records that he expects he will use for his defense if he is indicted. He alleges that Defendants are required by law to preserve these records. He makes no specific allegation that Defendants are failing to preserve information that might be relevant to any future case against him; instead, he is concerned that Defendants may not be complying with their preservation obligations based on the conduct of certain government officials in other cases. He moved for preliminary injunctive relief, and Defendants moved to dismiss.

[1] The Defendants Brennan sued are Todd W. Blanche, in his official capacity as Acting Attorney General; the United States Department of Justice (DOJ); Jason A. Reding Quiñones, in his official capacity as U.S. Attorney for the Southern District of Florida; Joseph E. diGenova, in his official capacity as Counselor to the Attorney General; Kash P. Patel, in his official capacity as Director of the Federal Bureau of Investigation; Donald J. Trump, in his official capacity as President of the United States; the Executive Office of the President; Susan L. Wiles, in her official capacity as White House Chief of Staff; John L. Ratcliffe, in his official capacity as Director of the Central Intelligence Agency (CIA); the CIA; and the Office of the Director of National Intelligence. *See* ECF 1.

The Court concludes that Brennan lacks standing to pursue his claims. The Court will therefore **GRANT** the motion to dismiss.[2]

## I. FACTUAL BACKGROUND

On a motion to dismiss, all well-pleaded factual allegations in the complaint are assumed to be true. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 195 (2024). Further, "a district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court presents the facts as alleged in Brennan's complaint and in declarations Brennan submitted in support of his pleadings.

John Brennan is a public servant who supported the national-security interests of the United States for over three decades. ECF 1 ¶ 1. During that time, he won numerous awards, including the National Security Medal, the National Intelligence Distinguished Public Service Medal, the CIA Distinguished Career Intelligence Medal, the CIA Medal for Distinguished Service, and the Defense Intelligence Agency Director's Medal. *Id.* ¶ 17. His work was nonpartisan—over his years of government service, he supported three Republican administrations and three Democratic, *id.* ¶ 1, including by providing direct intelligence briefings to presidents of both parties, *see id.* ¶ 14. He has never registered as a member of any political party. *Id.* ¶ 16.

In early 2013, President Barack Obama nominated Brennan to serve as the Director of the CIA. *See* ECF 1 ¶ 16. The Senate confirmed his appointment in a bipartisan vote. *Id.* Brennan served in that role until President Donald Trump took office in January 2017. *See id.*

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

During his tenure as CIA Director, Brennan participated in the coordination and issuance of a January 6, 2017, "Intelligence Community Assessment" (ICA). ECF 1 ¶ 2. The ICA concluded that Russia had interfered in the 2016 presidential election for the purpose of boosting then-candidate Trump's chances of winning the presidency. *Id.* President Trump has expressed anger at Brennan for his role in the creation of the ICA, the findings of which President Trump evidently disputes. *See id.* That anger towards Brennan has perhaps also been exacerbated by Brennan's "regular public criticism of President Trump, his policies and his actions." *See id.*

President Trump has not kept his feelings about Brennan private. Since he first took office, President Trump has made over one hundred verbal or written statements that directly attack Brennan. ECF 1 ¶ 3; *see also* ECF 1-2 (collection of Trump statements). He has, on different occasions, referred to Brennan as "a very bad guy," "a total low-life," a "loser," and a "political hack." ECF 1 ¶ 3. He has reposted social-media content alleging that "Barack Obama and his CIA puppet John Brennan cooked up the entire Russia Hoax to steal the 2016 election and overthrow a duly elected President Trump." *Id.* ¶ 40. And—most relevantly to this case—he has indicated that he believes Brennan is guilty of any number of crimes, ranging from lying before Congress to all-out treason. *See id.* ¶ 3.

Since returning to office, President Trump has moved to actualize those assertions of guilt by "direct[ing]" the DOJ to investigate and prosecute cases against Brennan. ECF 1 ¶ 4. According to Brennan, the DOJ—whose top officials have described their roles as being "[Trump's] lawyers" and called President Trump their "chief client"—has responded dutifully. *Id.* ¶ 41. First, the DOJ established a "strike force" to determine whether Brennan and other past public servants "conspired to deny President Trump his civil rights," in what has been termed the DOJ's "Grand Conspiracy" case. *Id.* ¶¶ 32–33. Brennan was designated as a "target" of that investigation. *Id.*

Then, the DOJ separately designated Brennan as the target of a *different* investigation, whose purpose was to determine whether Brennan had made "false statements to Congress" when he testified to the House Judiciary Committee about the ICA in 2023. *Id.* ¶¶ 5–6, 32, 34. These two investigations have resulted in three grand jury inquiries: two based in the Southern District of Florida (one each for the "Grand Conspiracy" and the "false statements" investigations), and one based in Washington, D.C. (this one too for the "false statements" investigation). *Id.* ¶ 6.

Those investigations and grand jury inquiries are ongoing to at least some extent. *See* ECF 1 ¶ 4; ECF 32 ¶¶ 6, 9 (declaration from Brennan's counsel noting that Brennan has been "subpoena[ed] to testify on October 15, 2026, before a federal grand jury sitting in Fort Pierce"). To date, however, those inquiries have not resulted in an indictment. *See* ECF 1 ¶ 7; ECF 32 ¶ 9.

Unsurprisingly, Brennan does not believe that he has committed any crime. *See* ECF 1 ¶ 5. Much more surprising are Brennan's allegations regarding DOJ officials who have not found otherwise, despite their alleged marching orders. First, Maria Medetis Long, a long-tenured DOJ prosecutor who was assigned to build a case against Brennan, told senior DOJ leaders that "the case against Director Brennan was too weak to bring." *Id.* ¶ 43. Then later, Defendant Joseph diGenova—who had previously made public statements calling Brennan "evil" and a "traitor," and had declared that the Grand Conspiracy "began with John Brennan and ends with John Brennan," *id.* ¶ 44—reportedly resigned from his position investigating Brennan's cases and stated "if you want indictments where there's no evidence, you have an ethical problem," ECF 32 ¶ 7.

One might think that these statements would lead to the termination of the investigations. Instead, Brennan alleges, it has led to the termination of the investigators. Brennan alleges that it has been reported that Medetis Long was removed from her position shortly after she called the Brennan cases "weak." ECF 1 ¶ 43. So too with diGenova. Despite being "personally appointed"

by President Trump to run the Brennan investigations, *id.* ¶ 44, Brennan's counsel avers that public reporting suggests that diGenova was pressured to resign because of lack of progress towards an indictment, ECF 32 ¶¶ 7–8. Brennan alleges that even former Attorney General Pamela Bondi was removed from her post "in part out of frustration that she had not served up the Grand Conspiracy prosecution that [President Trump] was demanding." ECF 1 ¶ 43; *see also id.* (quoting alleged statement from diGenova that "the president was ripping mad [at Bondi] about the fact that there was no progress on the lawfare investigation" against Brennan). The thrust of Brennan's allegations, then, is that the Trump Administration has no interest in discovering true facts or understanding whether any actual criminality occurred; its interest instead is in executing a personal vendetta on behalf of the President, and Defendants will continue to remove people who fail to achieve that goal. *See id.* ¶ 4.

Brennan indicates that should he ever actually be indicted, he would seek to dismiss the charges against him on grounds that they were the product of vindictive or selective prosecution.[3] ECF 1 ¶ 7. In support of those defenses, Brennan would seek discovery of "materials and communications relating to the government's decision-making throughout the investigation and ultimate prosecution." *Id.* ¶ 53. Brennan's expectation, of course, is that these records would be instrumental in showing the government's true motivation for prosecuting him. *Id.* ¶ 8. And if that motivation was revealed to be retribution rather than justice, then it would become all the more likely that Brennan would succeed in his dismissal attempt. *See id.* ¶¶ 7–9.

[3] *See United States v. Carey*, 816 F. Supp. 3d 129, 138 (D.D.C. 2026) ("While the government can prosecute someone because he broke the law, it cannot prosecute him in retaliation for exercising his rights. If a prosecution is vindictive, then courts can dismiss the resulting indictment."); *United States v. Blackley*, 986 F. Supp. 616, 617–18 (D.D.C. 1997) ("Criminal charges may be dismissed on the basis of selective prosecution if a defendant is (1) singled out for prosecution from among others similarly situated and (2) the prosecution is improperly motivated . . . .").

It is here that we arrive at the core issue of Brennan's complaint. If Brennan is indicted, he wants to be able to obtain those motivation-reflecting records. ECF 1 ¶ 12. But Brennan fears that those records—or at least some part of them—might no longer exist by the time an indictment issues. *Id.* ¶ 10. That is because, Brennan alleges, the government's past actions have demonstrated that various "administration officials" are disregarding the law—either advertently or inadvertently—by deleting, hiding, or otherwise failing to preserve official records. *Id.* ¶¶ 10, 57–59.

Brennan cites numerous instances of this occurring. His pleadings include the following past examples—drawn from the public record—of the Trump Administration's allegedly illegal document-retention practices:

- Defendant President Trump and a non-Defendant DOJ official allegedly deleted social media posts that should have been subject to retention, ECF 1 ¶¶ 58–59;
- Defendant President Trump allegedly physically destroyed hard-copy government records by hand-shredding them or flushing them down a toilet, *id.*;
- Former purported U.S. Attorney Lindsey Halligan allegedly failed to retain records related to the investigation of Letitia James, *id.* ¶ 59;
- A whistleblower allegedly accused former DOJ official Ed Martin of destroying communications, *id.*;
- Several top administration officials (including at least one Defendant) allegedly discussed a national-security matter in a Signal chat set to auto-delete, *id.*; and
- Other district courts allegedly found that records had not been adequately preserved in cases involving certain non-Defendant agencies, *id.* ¶¶ 59, 62; ECF 30.

On top of these examples, Brennan alleges that loss of relevant documents is likely to happen because "government officials are increasingly relying on a variety of ephemeral methods of communication, to include social media posts, encrypted messaging apps that can be set to auto delete, internal messaging systems such as Microsoft Teams, AI queries, and the like." ECF 1 ¶ 57. And Brennan alleges that the government's affirmative policies also evince an apathy towards

record-preservation requirements, as demonstrated by the Office of Legal Counsel's opinion that the Presidential Records Act is unconstitutional (an opinion whose implementation was enjoined by a judge in this District). *Id.* ¶ 61 & nn.63–64; *see also Am. Hist Ass'n v. Trump*, 835 F. Supp. 3d 1 (D.D.C. 2026), *appeals docketed*, No. 26-5185 (D.C. Cir. June 3, 2026), *and sub nom. Freedom of the Press Found. v. Trump*, No. 26-5186 (D.C. Cir. June 3, 2026).

Against this backdrop, Brennan claims that there is a "very real risk" that the records so vital to his eventual defense would dissipate before he could discover them. ECF 1 ¶ 10. And in that eventuality, the court hearing Brennan's criminal case would be hindered, "perhaps fatally," from "divin[ing] the true intentions behind the prosecutors' decisions and actions." *Id.* ¶ 11.

Brennan therefore filed this suit, seeking either a permanent injunction or a writ of mandamus ordering Defendants to preserve records he could eventually use in a vindictive- or selective-prosecution defense. ECF 1 ¶¶ 66–77. He moved for a preliminary injunction to the same effect. *See* ECF 2. Defendants, for their part, moved to dismiss. ECF 21. The Court heard argument on both motions.

## II. LEGAL STANDARD

As relevant for this opinion, Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF 21 at 1. That rule allows a defendant to seek dismissal due to a federal court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

To survive a 12(b)(1) motion, a plaintiff must, at a minimum, plausibly show that they have standing to sue. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Standing—which is derived from Article III's "case or controversy" requirement—is an

"irreducible constitutional minimum" that is required for subject matter jurisdiction. *Lujan*, 504 U.S. at 560. To show standing, a plaintiff must plausibly allege "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "The Court may look to materials outside the complaint in assessing standing, including sworn declarations." *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*, 784 F. Supp. 3d 127, 142 (D.D.C. 2025); *see also Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 28 n.1 (D.C. Cir. 1990).[4]

"In analyzing whether a plaintiff has standing at the dismissal stage," a court "must accept the factual allegations in the complaint as true." *Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 943 (D.C. Cir. 2012). A plaintiff's "general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing, "for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Food & Water Watch*, 808 F.3d at 913. However, a court "do[es] not assume the truth of legal conclusions nor [does it] accept inferences that are unsupported by the facts set out in the complaint." *Id.* And if after accepting the facts in a complaint as true, the complaint still fails to show that all three components of standing are satisfied, then the case must be dismissed. *See Cutler v. U.S. Dep't of Health & Hum. Servs.*, 797 F.3d 1173, 1179 (D.C. Cir. 2015).

## III. ANALYSIS

Brennan has failed to show that he has standing. The Court is therefore without subject matter jurisdiction and dismissal is required.

[4] Brennan has submitted several exhibits and declarations in support of his pleadings, all of which the Court has considered in determining whether Brennan has shown that he has standing.

**A. Standing to seek forward-looking relief requires an imminent injury.**

To have standing to seek forward-looking relief, a plaintiff must allege an injury that is "imminent," rather than one that is "conjectural or hypothetical." *Trump v. New York*, 592 U.S. 125, 131 (2020). Thus, "when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024); *see also Thieme v. Garland*, No. 21-5211, 2022 WL 566455, at *1 (D.C. Cir. Feb. 24, 2022) (per curiam) (mandamus relief is "prospective" when it is "applicable to future criminal prosecutions"). A plaintiff has alleged imminence "if the threatened injury is certainly impending, or [if] there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

Determining whether a future harm is likely enough to occur such that it is "imminent" is necessarily a "question[] of degree." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015). In determining whether a risk of harm is of such a "degree" that it crosses the threshold from being "conjectural" to either "certainly impending" or "substantial[ly]" likely to occur, courts are guided by some core principles. First, a risk of harm that depends on a "chain of possibilities" that is "highly attenuated" or "speculative" falls short of establishing imminence. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). To be sure, when a plaintiff alleges an injury that is predicated on a long chain of possibilities, that "does not necessarily preclude standing." *Dellums v. U.S. Nuclear Regul. Comm'n*, 863 F.2d 968, 973 (D.C. Cir. 1988). But it does make it "substantially more difficult to meet the minimum requirement of Article III," since the plaintiff would have to plausibly link all steps of the chain together and show that, absent court intervention, each and every step would be expected to occur. *See id.* Indeed, a link in a causal chain is usually "speculative," and thus insufficient to show an imminent injury, if the "individual

links in the chain . . . depend on some allegation that cannot be easily described as true or false." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996); *see also Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 413 (D.C. Cir. 2024).

And second, while "past exposure to illegal conduct can serve as evidence of threatened future injury," such past illegal conduct "does not in itself show a present case or controversy regarding injunctive relief." *Murthy v. Missouri*, 603 U.S. 43, 59 (2024). That is because "a showing of imminent *future* injury" is needed to obtain prospective relief, and "the past is relevant only insofar as it is a launching pad" for that showing. *Id.* (emphasis added). Then, because the doctrine of standing separately requires that a plaintiff show "causation"—i.e., that there is "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant," *Hawkins v. Haaland*, 991 F.3d 216, 224 (D.C. Cir. 2021)—allegations of past injury or misconduct that cannot be traced to a *defendant* in particular do little to move the needle in a plaintiff's favor, *see Murthy*, 603 U.S. at 59 (noting that "if a plaintiff cannot trace her past injury to one of the defendants, it will be much harder for her to make [a] showing" that "she faces a continued risk of future [injury]" from those "same defendant[s]"); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009).

**B. Brennan does not plausibly allege an imminent injury.**

Brennan asserts that it is "highly likely" that he will be injured by Defendants' alleged failure to preserve records, such that he has alleged an imminent injury sufficient to show standing. ECF 26 at 9–10. The Court is not convinced. While there is certainly a *possibility* that Brennan is injured by the complained-of conduct in the future, Brennan's theory of standing does not do enough to satisfy the Court that there is a *substantial risk* of injury, such that injunctive or

mandamus relief is appropriate here. That is because Brennan's injury depends on a lengthy causal chain, the completion of which is speculative.

1. Brennan's potential injury depends on a lengthy causal chain.

Brennan describes his injury for standing purposes as follows:

> The injury is the very real prospect that the government will fail to preserve the records [Brennan] would need to challenge an indictment and protect his Due Process and Equal Protection rights not to be vindictively or selectively prosecuted.

ECF 1 ¶ 31 (complaint).

That framing is generally correct, but it is helpful to put a finer point on it.[5] Brennan's injury—the thing that would cause him real-life harm—would be his inability to fully vindicate his constitutional rights by being hampered from presenting otherwise meritorious vindictive- or selective-prosecution defenses. *See United States v. Slatten*, 865 F.3d 767, 798–99 (D.C. Cir. 2017) (Due Process Clause prohibits retaliatory prosecutions); *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000) (Fifth Amendment prohibits selective prosecutions); *All. for Hippocratic Med.*, 602 U.S. at 381 ("An injury in fact can be . . . an injury to one's constitutional rights . . . ."); *see also* ECF 1 ¶ 64 ("Brennan is entitled to injunctive relief[] [because] there is every reason to believe that he will be limited in his ability to protect his constitutional rights . . . ."). For that injury to culminate, it would be necessary for the government to fail to preserve records that would be relevant to Brennan's defense.

But that action—the non-preservation of records—is not alone *sufficient* to confer an injury in this context. That is because Brennan does not allege any freestanding right to access or use the records, and he has not alleged that he has any interest in preserving the records for any reason

[5] Because what constitutes an injury for standing purposes is a legal question, the Court need not credit Brennan's complaint's framing of the issue, even on a motion to dismiss. *See Food & Water Watch*, 808 F.3d at 913 (on 12(b)(1) motion to dismiss, a court "do[es] not assume the truth of legal conclusions").

other than to use them in his eventual defense. *Contra Am. Oversight v. Hegseth*, 788 F. Supp. 3d 14, 19, 28 (D.D.C. 2025) (plaintiff with pending FOIA case alleged concrete injury of "permanent loss of [responsive] federal records" because the deletion of records would harm plaintiff); *Am. Hist. Ass'n v. Trump*, 835 F. Supp. 3d 1, 12, 14, 33–34 (D.D.C. 2026) (plaintiff historians had injury because deletion of records would render plaintiffs unable to use documents for historical purposes). For Brennan's constitutional injury to actually accrue, a series of dominoes must fall, and Defendants' deletion of records is just one of those dominoes. There is no dispute about this: Defendants describe this domino chain in their motion to dismiss (*see* ECF 21-1 at 12), and Brennan accepts it in his response (*see* ECF 26 at 9–16). That chain is as follows:

(1) The government elects to seek one or more indictments of Brennan (*compare* ECF 21-1 at 12, *with* ECF 26 at 10–11);

(2) A grand jury returns an indictment (*compare* ECF 21-1 at 12, *with* ECF 26 at 11–12);

(3) Brennan moves to dismiss on selective-prosecution and/or vindictive-prosecution grounds (*compare* ECF 21-1 at 12, *with* ECF 1 ¶ 51);

(4) The court overseeing the criminal case allows discovery into the government's communications and records to see whether the prosecution was motivated by selectiveness or vindictiveness (*compare* ECF 21-1 at 12, *with* ECF 26 at 12–14); and

(5) Documents that would have been responsive to that discovery inquiry are, by that point, lost or destroyed, such that Brennan suffers an infringement of his constitutional rights (*compare* ECF 21-1 at 12, *with* ECF 26 at 14–16).

Thus, for Brennan to have standing to enjoin Defendants right now, Brennan must show that there is a "substantial risk" that each of the five steps in the chain above happens the way he says they will. That is a tall order. *See Clapper*, 568 U.S. at 410 (expressing skepticism that plaintiff had standing on basis of five-step injury chain); *Fla. Audubon*, 94 F.3d at 670 ("The greater number of uncertain links in a causal chain, the less likely it is that the entire chain will hold true."). If even

one link of the chain is not substantially likely to occur, then Brennan has no imminent injury. *Fla. Audubon*, 94 F.3d at 670–71.

Although Brennan admits that his injury depends on this long chain of contingencies, he simultaneously makes a contradictory argument that he "satisfies the injury-in-fact requirement" simply because he "faces a credible threat of prosecution." ECF 26 at 17. In support of this proposition, he cites *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), and *Steffel v. Thompson*, 415 U.S. 452 (1974).[6] ECF 26 at 17–18. But those cases do not support Brennan's arguments because the injuries alleged in those cases are distinct from the injury alleged here. In both *Susan B. Anthony List* and *Steffel*, the injuries plaintiffs alleged were injuries that stemmed from the threat of enforcement actions under allegedly unconstitutional statutes. *See Susan B. Anthony List*, 573 U.S. at 155 (plaintiff alleged risk of enforcement action under statute that was allegedly "unconstitutional both facially and as applied"); *id.* at 159 (describing similar circumstances in *Steffel*). The injury, then, was an injury that inhered to the risk of prosecution *itself*. *See id.* at 159 ("We have held that a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."); *id.* at 155 (plaintiff alleged chilling of constitutional rights from potential enforcement action). In other words, the plaintiffs in those cases alleged their imminent injuries simply by pleading a credible threat of prosecution under unconstitutional statutes. The chain of causation in those cases, then, was not a chain at all; it was a single link. *See id.* at 159.

This case is different. Brennan does not allege that he is being prosecuted under an unconstitutional statute, nor does he request relief in the form of preventing any eventual

[6] Brennan also cites *League of Women Voters of United States v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016), but that case did not involve the threat of prosecution under a criminal law. *See* ECF 26 at 17–18.

prosecution from taking place by asking the Court to invalidate any law that would give rise to it. Instead, the injury he alleges is, again, an inability to present an affirmative defense due to potential spoliation of records, and the relief he requests is an injunction or writ of mandamus preserving those records. ECF 26 at 9–16; ECF 1 ¶¶ 66–77. That injury definitionally cannot accrue until the multi-step chain laid out above takes place. *See supra*. As such, even if Brennan has shown a "credible threat of enforcement," that does not mean he has established his alleged injury-in-fact; it only means that he has satisfied link number one of five.[7]

So Brennan is stuck with his lengthy chain. But he asserts that he still has standing regardless, because he has pled facts which show that each step of the chain "will lead inexorably" to the other. *See* ECF 26 at 9; *see also* Hearing Tr. (rough) 9/14/26 (hereinafter "Tr.") at 86:3–8. But the facts Brennan pleads—which, taken as true, are certainly troubling—imply not an inexorable injury, but a speculative one.

2. <u>It is speculative whether Defendants are deleting records relevant to a future vindictive- or selective-prosecution defense</u>.

A break in any one link of the chain means that Brennan's case must be dismissed. *See Fla. Audubon*, 94 F.3d at 670. Without deciding whether links one through four are satisfied, the Court concludes that the last link in the chain—the most important one—is speculative. Brennan has not alleged facts sufficient to show that it is likely that Defendants are deleting records that would be relevant to his vindictive- or selective-prosecution defenses.

[7] The Court further notes that the second link in the causal chain—indictment by a grand jury—is not satisfied simply from Brennan's allegations that the government is likely to seek charges against him. That's because a grand jury is an independent actor that can choose to indict or not indict irrespective of whether the government elects to pursue charges. *See Campbell v. Louisiana*, 523 U.S. 392, 399 (1998). Brennan's complaint offers no allegations at all about how he believes a grand jury would act in this case. *See generally* ECF 1. *Contra Murthy*, 603 U.S. at 57–58 (when third-party decisions would lead to injury, plaintiff must offer more than "guesswork" about how those third parties would act).

Brennan devotes much of his pleadings to explaining that under the second Trump Administration, various government officers and agencies have been "disregard[ing]" or "flouting" their document-preservation obligations. ECF 1 ¶ 64. Brennan cites a plethora of examples of this, from both news reports and judicial opinions. *See id.* ¶¶ 10, 54–63; *see also* ECF 2-1 at 34–37; ECF 30; ECF 30-1. Brennan alleges that "officials across the Executive Branch" are using messaging apps such as Signal to make official communications that are set to auto-delete after a certain time. ECF 1 ¶ 59. He claims that certain high-ranking officials (including President Trump, a Defendant) have made official social-media posts, then deleted them shortly after, contrary to preservation obligations. *Id.* ¶¶ 58–59. Brennan further alleges that President Trump has physically destroyed certain government records by flushing them down a toilet or using his own hands to rip them to shreds. *Id.* ¶ 58. And Brennan cites multiple examples of government agencies failing entirely to preserve or produce records that were discoverable in litigation (including criminal litigation), leading multiple judges to lambast and sanction the agencies for their misconduct. *See id.* ¶ 62.

Those allegations, presuming their truth as the Court must at this stage, are damnable and unbecoming of any officer of the federal government. But those allegations are untethered from this case. There is no allegation anywhere in the complaint from which the Court can draw the plausible inference that Defendants are actively failing to preserve records that would be relevant to Brennan's vindictive- or selective-prosecution defenses, to the extent such records exist. Indeed, Brennan's counsel conceded at oral argument that they had no insight into the existence of any such records or those records' hypothetical destruction. *See* Tr. at 5:21–6:24.

Tellingly, most of the failure-to-preserve examples Brennan cites are from governmental parties that are not even Defendants in this case. *See* ECF 1 ¶ 59 (citing breaches of preservation

requirements by Lindsey Halligan, Ed Martin, Mike Waltz, J.D. Vance, Scott Bessent, Tulsi Gabbard, Pete Hegseth, and Marco Rubio); *id.* (citing breaches of preservation requirements by the Department of Homeland Security); ECF 30 (same). That includes examples of government officials failing to preserve records due to the officials' use of "ephemeral" technologies, like encrypted messaging apps with auto-delete features. ECF 1 ¶¶ 57, 59. To be sure, there are a handful of references to instances in which actual Defendants have allegedly failed to comply with record-keeping obligations. *See id.* ¶ 58 (President Trump); *id.* ¶ 59 (John Ratcliffe); *cf. id.* ¶ 59 & n.62 (DHS officials used Signal, and DOJ attorneys "failed to adequately preserve those materials"). But for most Defendants in this case—Blanche, Reding Quiñones, diGenova, Patel, the Executive Office of the President, the CIA, and the Office of the Director of National Intelligence—there are no allegations of non-preservation at all.[8] That is a serious problem for Brennan's injury allegations: "If [Brennan] cannot trace [his] past injury to one of the defendants, it [is] much harder for [him] to make [a] showing" that "[he] faces a continued risk of future [injury]." *Murthy*, 603 U.S. at 59.

Further, Brennan does not even have a "past injury," because where a Defendant *is* alleged to have violated record-keeping requirements in the past, those violations have nothing to do with Brennan or with records that could be relevant to him. *See* ECF 1 ¶¶ 58–59. President Trump's alleged destruction of paper records predates by years the investigations Brennan has alleged here, such that those destroyed records could not conceivably relate to Brennan's potential prosecution. *See id.* ¶ 58 & nn. 55–56. The social-media record President Trump allegedly deleted last year

---

[8] Brennan's concern that the Trump Administration has "demonstrated a willingness to defy record preservation laws and conventions as a matter of policy" is likewise unhelpful to him. ECF 1 ¶ 61. The only allegation he provides in support of that assertion is the allegation that the Office of Legal Counsel recently opined that the Presidential Records Act is unconstitutional. *Id.* The implementation of that opinion is actively enjoined, *see Am. Hist. Ass'n*, 835 F. Supp. 3d at 36, so Brennan has not alleged any active "policy" that could affect retention of records in general, much less records that are relevant to him.

relates to people other than Brennan. *Id.* ¶ 58. And the Signal messages John Ratcliffe allegedly sent and/or received were related to "strikes against [Houthi] targets in Yemen"—not anything about Brennan. *Id.* ¶ 59. At bottom, then, there are no allegations in the complaint which plausibly show that there is a substantial risk that the specific records Brennan wants preserved are *not* being preserved, due to actions from these Defendants. The Court therefore cannot conclude that Brennan has standing for the relief he requests. *See Murthy*, 603 U.S. at 69–70.

Brennan knows that the instances of non-preservation he cites do not involve any records about him, and are not necessarily related to the Defendants in this case. He offers these examples not to show that the complained-of conduct is in fact occurring, but to provide a backdrop against which the Court can "divine the likelihood of preservation in this case based on the government's broader practice across other cases." ECF 26 at 15. Brennan admits that his complaint lacks allegations that records relevant to him are being spoliated. *See id.* at 14–15. Instead, he points out that he simply has "no way of knowing what records and communications are or are not being preserved" by the Trump Administration, because "only the Defendants have that knowledge," and the Defendants "have intentionally decided not to share that knowledge with the Court or to provide any assurance that the government is preserving those records and communications." *Id.* He suggests that it would be "distinctly unfair . . . to hold the absence of evidence on this point" against him given this fact. *Id.* at 15.

That is a legitimate grievance. It does seem "unfair," from Brennan's perspective, that he should be forced to risk the loss of potentially relevant records simply because the people who would destroy those records would do so in secrecy. But whether it is fair or not, the fact remains that this Court only has Article III jurisdiction to issue prospective relief when there is a "substantial risk" that an injury accrues because of the complained-of conduct. *Susan B. Anthony*

*List*, 573 U.S. at 158. And while Brennan's atmospheric allegations might suggest that certain government officials are being far more cavalier with their record-preservation obligations than in years past, those allegations do not suffice to show a "substantial risk" of injury in *this* case, because Brennan's complaint alleges neither the existence of a government policy of non-retention nor that records specific to Brennan have been spoliated. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983) (plaintiff lacked standing for prospective relief even when he alleged that defendant's officers "routinely" engaged in complained-of conduct, because that allegation "[fell] far short of the allegations that would be necessary to establish a case or controversy between *these parties*" (emphasis added)); *see also Murthy*, 603 U.S. at 69 (disapproving of plaintiffs' treatment of government defendants "as a monolith" for standing purposes); *Summers*, 555 U.S. at 495.

The Court is sympathetic to the fact that it might be hard, or nearly impossible, for Brennan to allege that the Trump Administration is taking (or soon will take) unlawful action with respect to records pertaining to his vindictive- and selective-prosecution defenses. "But a plaintiff is not absolved from [his] duty to show a traceable injury just because it is hard to do so." *Citizens for Const. Integrity v. Census Bureau*, 669 F. Supp. 3d 28, 34 (D.D.C. 2023), *aff'd*, 115 F.4th 618 (D.C. Cir. 2024). Injury-in-fact is an "irreducible constitutional minimum" requirement of standing, and without allegations sufficient to show imminent harm, that threshold is unsatisfied here. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *cf. Clapper*, 568 U.S. at 420 (even if "no one would have standing" to sue, that "is not a reason to find standing" in a particular case).

* * *

Brennan's allegations—that he is being targeted by the Trump Administration not because of his conduct, but because he has opposed the current president—are deeply concerning. If he was eventually able to prove those allegations true, that would certainly suggest that his potential

prosecution is vindictive. But even taking all of Brennan's allegations to be truthful at this stage, the injury he alleges is simply too attenuated from the actions he seeks to enjoin to warrant a finding of standing here. Defendants' motion to dismiss, ECF 21, is **GRANTED**. Brennan's motion for a preliminary injunction, ECF 2, is **DENIED AS MOOT**. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: October 15, 2026